UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
: MASTER DOCKET
: 04 MD 1653 (LAK)
:
In re PARMALAT SECURITIES LITIGATION :
:
This document relates to: 04 Civ. 9771 :
: 04 Civ. 9771 (LAK) ECF Case
———————————————————————— : <u>ELECTRONICALLY FILED</u>
:
DR. ENRICO BONDI, :
:
    Plaintiff, :
:
          v. :
:
GRANT THORNTON INTERNATIONAL, et al., :
:
    Defendants. :
———————————————————————— x

**MEMORANDUM IN SUPPORT OF MOTION
OF DEFENDANT DELOITTE TOUCHE TOHMATSU
<u>TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

                                KRAMER LEVIN NAFTALIS & FRANKEL LLP
                                Michael J. Dell (MD-7714)
                                Michael S. Oberman (MO-9838)
                                Timothy P. Harkness (TH-9026)
                                1177 Avenue of the Americas
                                New York, New York 10036
                                (212) 715-9500
                                Attorneys for Deloitte Touche Tohmatsu

KL3:2473211.5

Defendant Deloitte Touche Tohmatsu ("DTT") respectfully submits this memorandum in support of its motion to dismiss the First Amended Complaint (the "FAC") as against DTT pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

## Preliminary Statement

The Court, in its July 18, 2005 Opinion denying DTT's motion to dismiss plaintiff's original complaint, cited plaintiff's allegation that DTT "remov[ed Olivetti] when he sought to qualify his audit opinion," as a key factor in ruling that the complaint "adequately" "alleged an agency relationship between DTT and its member firms engaged in the Parmalat audit" and therefore stated a claim against DTT "to the extent that its claims against Deloitte Italy. . .are sufficient." *Bondi v. Grant Thornton Int'l*, 377 F.Supp. 2d 390, 405, 409 (S.D.N.Y. 2005). The Court did not consider plaintiff's alternative theories of vicarious liability against DTT. *Id.*

DTT's present motion seeks dismissal on three grounds. *First*, Dr. Bondi — as part of his re-writing of his complaint — no longer claims that DTT was responsible for removing Olivetti. DTT shows in Point I that, in light of this change, plaintiff no longer makes out a claim of agency against DTT.

*Second*, we show in Point II that plaintiff has failed to state any other claim for vicarious liability against DTT. If the Court holds that the FAC does not adequately allege a claim of vicarious liability against DTT, the FAC should be dismissed as against DTT because the FAC fails to allege a claim of primary liability against DTT.

*Third*, the Court previously found that plaintiff had stated a claim against DTT "to the extent that [the] claims against Deloitte Italy. . . are sufficient." DT-Italy now moves to dismiss the claims against it in the FAC based on the defenses of *in pari delicto* and lack of

KL3:2473211.5

reliance and on other grounds.  We show in Point III that, to the extent the Court grants DT-Italy's motion, the Court should also dismiss the claims against DTT.

## **Argument**

I.  **THE FAC FAILS ADEQUATELY TO ALLEGE AN AGENCY RELATION-SHIP BETWEEN DTT AND DT-ITALY (OR ANY OTHER MEMBER FIRMS WHICH WORKED ON THE AUDIT OF PARMALAT OR RELATED ENTITIES)**

In ruling on the motions to dismiss Dr. Bondi's original complaint, the Court set forth the requirements to prove an agency relationship under Illinois law:

> A principal-agent relationship exists when the principal has the right to control the manner and method in which the agent performs his work and the agent has the power to act on the principal's behalf.  An agent's authority may be either actual or apparent, and actual authority may be either express or implied.  The existence of an agency relationship may be established by direct or circumstantial evidence, including the situation of the parties, their acts, and other relevant circumstances.  The alleged agent's authority, however, is established only on the basis of words or conduct of the alleged principal.  While the mere licensing of a trade name does not create an agency relationship, either ostensible or actual, a subsidiary nonetheless may be the agent of a parent so long as all the requirements of agency are met.

377 F.Supp. 2d at 402 (citations and internal quotations omitted).

The Court explained, in finding that the original complaint stated a claim against DTT "to the extent that [the] claims against Deloitte Italy . . . are sufficient," that:

> Here, in addition to the statements culled from Deloitte's web site, plaintiff points to DTT's alleged intervention to direct Olivetti in his conduct of the Parmalat audit, and its ultimate removal of him when he sought to qualify his audit opinion.  It could be inferred from these allegations that DTT had control over its member firms in their work for Parmalat and that the member firms audited Parmalat as its agent.  Such nonconclusory allegations are all that is required of plaintiff at this stage.

*Id*. at 405.

- 2 -

> The Court contrasted these allegations with plaintiff's allegations against DT-US, whose motion to dismiss the original complaint was granted:
>
>> Plaintiff argues that the right of control may be inferred from the allegations that Copeland and the greater Deloitte organization removed auditor Olivetti, that several member firms worked on specific tasks together in connection with the Parmalat audit and that they all followed the same auditing standards. But these allegations cut just the other way.
>>
>> To begin with, the Olivetti incident suggests that member firms did not have right to control the work or management of their sister firms and that such control was the province of DTT. To be sure, Copeland was an employee of Deloitte USA and Mamoli therefore could have written to him to request help with Olivetti in that context. However, the complaint is clear that it was the global organization that allegedly removed him. [FN114]

*Id.* at 407. Footnote 114 cited Paragraph 446 of the original complaint which alleged that, when Olivetti threatened not to sign off on the financial statements of a Parmalat Brazilian subsidiary, "the global Deloitte organization 'removed' Olivetti from any further role in auditing Parmalat's Brazilian operations." The Court recognized that plaintiff used the term "the global Deloitte organization" interchangeably with "DTT."

However, Dr. Bondi changes the language of old Paragraph 446 in the FAC. Perhaps in recognition of his lack of a good faith basis to allege that DTT removed Olivetti, paragraph 624 of the FAC now alleges that "Deloitte"—a purposefully vague descriptor— not "the global Deloitte organization," "removed" Olivetti. "Deloitte" cannot be read to refer just to DTT. Paragraph 63 of the FAC states that "'Deloitte' refers collectively to Deloitte Touche Tohmatsu, Deloitte & Touche USA LLP, Deloitte & Touche LLP, Deloitte & Touche S.p.A., DT S.p.A., and the other member firms of the Deloitte worldwide organization that audited Parmalat." Thus, since Dr. Bondi alleges that DT-Brazil in certain years audited the financial statements of certain Parmalat subsidiaries, DT-Brazil fits within Dr. Bondi's collective term,

- 3 -

"Deloitte." Paragraph 624 can, accordingly, be read to allege merely that DT-Brazil (or some other DTT member firm) "removed" Olivetti. That does not state a claim against DTT.

The Court's language quoted above, which formed the holding that a claim of agency was previously stated against DTT, no longer applies when "Deloitte" is put into the allegation in place of the "global Deloitte organization." The Court's opinion criticized Dr. Bondi's prior use of group pleading but allowed allegations to stand which clearly related to DT-Italy. 377 F.Supp. 2d at 408. However, paragraph 624 of the FAC does not clearly relate to DTT, and the use of the word "Deloitte" there is insufficient to support a claim against DTT. *See Rich v. Maidstone Financial, Inc.*, 2002 WL 31867724 at *8, n.7 (S.D.N.Y. Dec. 20, 2002) (declining to consider any allegation using the word "Defendants"); *International Telecom, Inc. v. Generadora Electrica Del Oriente*, 2002 WL 465291 at *7-8 (S.D.N.Y. March 27, 2002) (holding that group pleading does not satisfy rule 9(b)).

Without the specific allegation that DTT "removed" Olivetti, the FAC is bereft of any factual allegations showing control by DTT. The FAC, like the original complaint, makes allegations about a difference of opinion between DT-Brazil and DT-Italy in 2002 (¶¶ 590-602) and includes new allegations apparently intended to show control by DT-US (¶¶ 669-80). But the more detailed allegations show no more than a difference of opinion between DT-Brazil and DT-Italy; a discussion of that difference by Olivetti of DT-Brazil, Mamoli of DT-Italy, certain DT-US partners (almost all seconded to DTT) and other "Deloitte" partners; and a resolution of the difference of opinion. The FAC does not say that any of the participants in this discussion, including anyone from DTT, imposed a resolution and its allegations do not add up to a showing

- 4 -

of an exercise of control by DTT.  These allegations, accordingly, do not state an agency relationship between DTT and its member firms.[1]

## II.     THE FAC FAILS ADEQUATELY TO ALLEGE ANY OTHER BASIS FOR VICARIOUS LIABILITY AS AGAINST DTT

Dr. Bondi attempts, without success, to plead a joint venture relationship among member firms which worked on the Parmalat audit, but it is unclear whether he even intends to allege that DTT was part of the purported joint venture.  Paragraph 32 of the FAC alleges the existence of a joint venture among "DT-Italy and the other member firms involved in the Parmalat audit, which shared risks and rewards, profit and losses, and joint shared control." DTT is not included in these core allegations about the purported joint venture – nor should it be, since it did not work on the Parmalat audit which is the subject of the purported joint venture nor received any part of the compensation for that audit.  Nonetheless, some paragraphs that refer to the alleged joint venture make passing reference to DTT (*e.g.*, ¶¶ 325, 310 and 340).  Therefore, out of an excess of caution, we now show why no joint venture claim can stand as against DTT.

In ruling on the motions to dismiss Dr. Bondi's original complaint, the Court set forth five elements that must be pled to allege a joint venture under Illinois law:

> (1) an express or implied agreement to carry on some enterprise; (2) a manifestation of intent by the parties to be associated as joint venturers; (3) a joint interest as shown by the contribution of property, financial resources, effort, skill or knowledge by each joint venturer; (4) some degree of joint proprietorship or mutual right to exercise control over the enterprise; and (5)

---

[1] In its prior opinion, as quoted above, the Court referred to "statements culled from Deloitte's web site," 377 F.Supp. 2d at 405, but the Court did not hold that these web site statements – standing alone – could make out a claim of an agency relationship.  As the opinion noted, the web site carried a disclaimer that "neither [DTT] nor any of its member firms has any liability for each other's acts or omissions" and that each of the firms "is a separate and independent legal entity."  *Id*.  *See, e.g., Lernout & Hauspie Securities Litigation v. KPMG, LLP*, 230 F.Supp. 2d 152, 170-71 (D. Mass. 2002) (holding that website mentioning "one firm" does not establish vicarious liability, especially when the website has a disclaimer that "belies" this claim).

- 5 -

provision for the joint sharing of profits and losses.

377 F.Supp. 2d at 403 (*quoting Ambuul v. Swanson,* 162 Ill. App. 3d 1065, 516 N.E.2d 427, 429 (1st Dist. 1987).  In particular, plaintiff had to allege that DTT participated in a joint venture that "relates to a single enterprise or transaction," rather than "general business of a particular type." *Yokel v. Hite*, 348 Ill.App.3d 703, 708, 809 N.E.2d 721, 727 (Ill. App. 2004).

The FAC fails at the threshold of the analysis to put DTT in the alleged joint venture with regard to the Parmalat audits.  DTT does not perform any audits, and did not perform any audits of Parmalat or its subsidiaries.  The FAC does not plead otherwise.  Dr. Bondi has thus failed, as against DTT, to "allege any facts from which the . . . court can conclude that [DTT and the member firms] . . . intended to carry on an enterprise in the nature of a partnership" as required to find a joint venture under Illinois law.  *Yokel,* 348 Ill.3d at 709, 809 N.E.2d at 727.  As to DTT, Dr. Bondi does not allege:  "(1) an express or implied agreement to carry on some enterprise" or "(2) a manifestation of intent by the parties to be associated as joint venturers" with regard to the Parmalat audits.  377 F.Supp. 2d at 403.

Nor does the FAC sufficiently allege the fourth element of control.  The Court found in its prior opinion as to DT-US that there were no allegations to "give rise to an inference that any one firm could direct the policies or procedures of another firm, or that if they could, each firm had an equal right to direct the policies of another firm." *Id.*  This holding applies equally to DTT:  The FAC does not allege a reciprocal right to control the Parmalat audits between DTT and any member firm.  Any control allegedly exerted by DTT over the member firms is not said to be reciprocal, and no member firm had an "equal right" to "direct the policies or procedures" of DTT.  *See id.*  Finally, the FAC does not allege that DTT (as opposed to DTT

- 6 -

member firms) shared profits from the purported joint venture. *See* ¶¶ 228-29, 274-79. The joint venture theory, in sum, simply cannot apply to DTT.[2]

### III. ANY CLAIM AGAINST DTT IS LIMITED TO ANY REMAINING CLAIMS OF PRIMARY LIABILTY AGAINST DT-ITALY

The FAC does not, and cannot, plead claims of primary liability against DTT arising from the audits of the financial statements of Parmalat and its subsidiaries, because DTT did not perform any of those audits. Thus, DTT can be held in the case as a defendant only if the Court finds an adequately pled theory that DTT is vicariously liable for any claim against DT-Italy. Were this to occur, the liability of DTT would be limited to the liability of DT-Italy.

DT-Italy now moves to dismiss the FAC on several grounds. DTT joins in the arguments made by DT-Italy. The Court should dismiss any claims as to DTT that are dismissed as to DT-Italy.

### Conclusion

For the foregoing reasons, DTT respectfully requests the Court to enter an Order dismissing the First Amended Complaint as to DTT with prejudice, and granting such other and further relief as the Court deems proper.

Dated: New York, New York
       November 4, 2005

KRAMER LEVIN NAFTALIS & FRANKEL, LLP

By:      /s/ Michael J. Dell
    Michael J. Dell (MD-7714)
    Michael S. Oberman (MO-9838)
    Timothy P. Harkness (TH-9026)
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9500

Attorneys for defendant Deloitte Touche Tohmatsu

---

[2] We do not read the FAC as attempting to allege alter ego liability against DTT, and therefore do not address it.