UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re PARMALAT SECURITIES LITIGATION

This document relates to:  04 Civ. 0030 (LAK)

MASTER DOCKET

04 MD 1653 (LAK) ECF Case

ELECTRONICALLY FILED

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF BANCA INTESA S.P.A. TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND IN SUPPORT OF LEAD PLAINTIFFS' REQUEST FOR RULE 56(f) DISCOVERY**

GRANT & EISENHOFER P.A.
Stuart M. Grant (SG-8157)
John C. Kairis (JK-2240)
James J. Sabella (JS-5454)
Diane Zilka (DZ-9452)
Chase Manhattan Centre
1201 North Market Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100

*Of Counsel*:

SPECTOR ROSEMAN & KODROFF, P.C.
Robert M. Roseman
Andrew D. Abramowitz
Daniel J. Mirarchi
Rachel E. Kopp
1818 Market Street, 25th Floor
Philadelphia, PA  19103
Tel: (215) 496-0300
Fax: (215) 496-6611

COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.
Steven J. Toll
Lisa M. Mezzetti (LM-5105)
Mark S. Willis
Julie Goldsmith Reiser
Joshua S. Devore
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005-3964
Tel: (202) 408-4600
Fax: (202) 408-4699

*Co-Lead Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................. 1

INTRODUCTION ...................................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 3

ARGUMENT ............................................................................................................................. 5

I.      THE COMPLAINT STATES A CLAIM AGAINST BANCA INTESA FOR
        VIOLATING RULE 10b-5(a) AND (c) ............................................................................ 5

        A.      The Complaint Specifically Alleges that Banca Intesa Engaged in a
                Fraudulent Scheme and Used a Deceptive Device ................................................. 5

        B.      The Allegations of the Complaint Raise a Strong Inference that Banca
                Intesa Acted with Scienter ..................................................................................... 8

II.     BANCA INTESA'S MOTION FOR SUMMARY JUDGMENT IS PATENTLY
        PREMATURE AND CANNOT BE GRANTED ON THE CURRENT RECORD ....... 11

        A.      Summary Judgment Is Inappropriate In Light Of Plaintiffs' Present
                Incapability to Develop A Full Factual Record With Respect To The
                Allegations Against Banca Intesa ........................................................................ 11

        B.      Lead Plaintiffs Have Abundantly Demonstrated The Need For Discovery ........ 14

        C.      Materials Already In Lead Plaintiffs' Possession Establish A Genuine
                Dispute As To Material Facts .............................................................................. 19

        CONCLUSION ................................................................................................................ 22

## TABLE OF AUTHORITIES

### CASES

*AdiPar Ltd. v. PLD Intern. Corp.*,
No. 01 Civ. 0765 (MBM), 2002 WL 31740622 (S.D.N.Y. Dec. 6, 2002) ........................13

*Aniero Concrete Co., Inc. v. New York City Construction Authority*,
No. 94 Civ. 3506 (CSH), 2000 WL 863208 (S.D.N.Y. June 27, 2000) ...........................15

*Argus Inc. v. Eastman Kodak Co.*,
552 F. Supp. 589 (S.D.N.Y. 1982)....................................................................................16

*Awulonu v. Unified School District #261*,
363 F. Supp. 2d 1300 (D. Kan. 2005) ..............................................................................15

*Cameron v. Community Aid for Retarded Children, Inc.*,
335 F.3d 60 (2d Cir. 2003)................................................................................................12

*Canadian St. Regis Band of Mohawk Indians v. New York*,
146 F. Supp. 2d 170 (N.D.N.Y. 2001) ..............................................................................13

*Cobe Laboratories, Inc. v. Baxter Healthcare Corp.*,
93-C-1938, 1994 WL 804039 (D. Colo. Dec. 28, 1994) ..................................................12

*Colon v. Molina*,
136 F. Supp. 2d 196 (S.D.N.Y. 2000)...............................................................................13

*Community for First Amendment v. Campbell*,
962 F.2d 1517 (10th Cir. 1992) .......................................................................................15

*Eminence Capital, LLC v. Aspeon, LLC*,
316 F.3d 1048 (9th Cir. 2003) .........................................................................................22

*Finnegan v. Univ. of Rochester Med. Ctr.*,
21 F. Supp. 2d 223 (W.D.N.Y. 1998) ...............................................................................12

*Gurary v. Winehouse*,
190 F.3d 37 (2d Cir. 1999)................................................................................................15

*Hellstrom v. United States Dep't of Veterans Affairs*,
201 F.3d 94 (2d Cir. 2000)................................................................................................13

*Investors Title Ins. Co. v. Bair*,
No. 9:05-1434-PMD, 2005 WL 2709373 (D.S.C. Oct. 24, 2005)....................................15

*Johnson v. Goord*,
No. 01 Civ. 9587 (PKC), 2005 WL 2811776 (S.D.N.Y. Oct. 27, 2005)..........................12

*Kissner v. Inter-Continental Hotels Corp*.,
No. 97 Civ. 8400 (SWK), 1998 WL 337067 (S.D.N.Y. June 25, 1998) ..........................13

*Marcolongo v. School Dist. of Phila*.,
No. CIV.A. 98-5196, 1999 WL 1011899 (E.D. Pa. Nov. 5, 1999) ...................................15

*McLaughlin v. Murphy*,
372 F. Supp. 2d 465 (D. Md. 2004) ................................................................................16

*Mendoza v. City of Rome*,
70 F. Supp. 2d 137 (N.D.N.Y. 1999) ..............................................................................15

*Metrokane, Inc. v. The Wine Enthusiast*,
160 F. Supp. 2d 633 (S.D.N.Y. 2001) .............................................................................13

*Mid-South Grizzlies v. NFL*,
720 F.2d 772 (3d Cir. 1983)............................................................................................15

*Nat. Life Ins. Co. v. Solomon*,
529 F.2d 59 (2d Cir. 1975) ..............................................................................................12

*In re Parmalat Sec. Litig*.,
376 F. Supp. 2d 472 (S.D.N.Y. 2005)...................................................................... passim

*Petrosky v. NY State Dep't of Motor Vehicles*,
971 F. Supp. 75 (N.D.N.Y. 1997)....................................................................................12

*Rosenblatt v. Christie, Manson & Woods Ltd.*,
No. 04 Civ. 4205 (PKC), 2005 WL 2649027 (S.D.N.Y. Oct. 14, 2005)..........................12

*Shearer v. Homestake Mining Co.*,
727 F.2d 707 (8th Cir. 1984) ..........................................................................................12

*Weinstein v. Albright*,
261 F.3d 127 (2d Cir. 2001)............................................................................................12

## STATUTES

15 U.S.C. § 78u-4(b)(3)(B)........................................................................................................14

Fed. R. Civ. P. 56(c) ................................................................................................................12

## PRELIMINARY STATEMENT

Lead Plaintiffs,[1] on their own behalf and on behalf of all other purchasers of securities of Parmalat Finanziaria S.p.A. and its subsidiaries and affiliates ("Parmalat" or the "Company") between and including January 5, 1999 and December 18, 2003 (the "Class Period"), respectfully submit this memorandum in opposition to the motion to dismiss, or alternatively, for summary judgment (the "Motion"), filed by defendant Banca Intesa S.p.A. ("Banca Intesa"), and in support of Lead Plaintiffs' request for discovery pursuant to Rule 56(f).  For the following reasons, Banca Intesa's Motion must be denied.

## INTRODUCTION

Banca Intesa has filed a motion to dismiss that so conflates the allegations in Lead Plaintiffs' Second Amended Complaint (the "SAC" or "Complaint") with Banca Intesa's own conflicting version of facts that dismissal pursuant to Rule 12(b)(6) is impossible.  Banca Intesa implicitly recognizes this, as it seeks alternatively to have the Court convert its motion to dismiss to one for summary judgment pursuant to Rule 56.  However, Banca Intesa must now wait until discovery is completed for a fair resolution of its motion.  With discovery only recently underway, and *no* discovery of Banca Intesa conducted yet, summary judgment is plainly inappropriate, and the motion must be denied.

Were the Court to attempt to parse out the well-pled facts contained in the Complaint from those contrary facts attempted to be asserted by Banca Intesa in its motion, the Court would find that Lead Plaintiffs' allegations meet all of the requirements for pleading a claim under Rule 10b-5(a) and (c).  The SAC describes the details of the fraudulent scheme that Banca Intesa used

---

[1]     "Lead Plaintiffs" are Hermes Focus Asset Management Europe, Ltd., Hermes European Focus Fund I, Hermes European Focus Fund II, Hermes European Focus Fund III, Cattolica Partecipazioni, S.p.A., Capital & Finance Asset Management, Societe Moderne des Terrassements Parisiens, and Solotrat.

to provide what were in reality loans to a Parmalat shell company, Wishaw Trading, S.A. ("Wishaw"), in the form of supposed advanced payments on worthless and patently fake notes. The SAC further alleges that Banca Intesa either must have known the notes were fake, or otherwise was extremely reckless in performing none of the customary due diligence that would normally accompany financings in the eight- and nine-figure ranges that Banca Intesa provided to Parmalat's shell entity.  The Court previously has sustained the pleading of nearly identical claims, based on allegations that funds were provided to Parmalat or its affiliates through worthless commercial paper, against other bank defendants in this matter, particularly the claims against BNL and Citigroup involving the factoring and securitization of worthless invoices. Accordingly, the motion to dismiss should be denied.

Recognizing that it has introduced many conflicting alleged facts in its motion to dismiss, Banca Intesa requests, in the alternative, conversion of its motion to one for summary judgment. However, because summary judgment is premature, the motion must be denied or otherwise held in abeyance until discovery is completed.  While the need for discovery from Banca Intesa where there has so far been none should be obvious, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, Lead Plaintiffs have nonetheless articulated precisely what discovery is essential to justify their opposition.  *See* Declaration of James J. Sabella, Esq. In Opposition To Motion Of Defendant Banca Intesa S.p.A. For Summary Judgment And In Support Of Plaintiffs' Request Pursuant To Fed. R. Civ. P. 56(f) For Discovery, dated December 16, 2005, filed herewith (the "Rule 56(f) Declaration").

Even were the Court to consider Banca Intesa's premature summary judgment motion on the current incomplete record, the motion still must be denied.  The submission of supposedly undisputed material facts by Banca Intesa in reality does nothing more than put numerous

material issues of fact in dispute.  As shown in the accompanying Lead Plaintiffs' Statement

Pursuant To Local Rule 56.1 Of Material Facts As To Which Lead Plaintiffs Contend There Is A

Genuine Issue To Be Tried ("Plaintiffs' Rule 56.1 Statement"), numerous factual issues remain

to be resolved, as highlighted by the findings of PricewaterhouseCoopers ("PwC") which was

retained on behalf of Dr. Bondi, the Extraordinary Administrator of Parmalat and its affiliates, to

conduct an independent forensic investigation into Parmalat's finances.  PwC's findings

demonstrate that there are genuine issues of material fact with respect to the role Banca Intesa

played in the fraudulent scheme alleged in the Complaint.  Further, admissions by Parmalat

insiders, such as defendant Fausto Tonna (Parmalat's former Chief Financial Officer) ("Tonna"),

support the allegations of Banca Intesa's role in the fraudulent scheme to provide Parmalat with

illicit funding.  Moreover, documentation from Andrea Ventura, the head of Wishaw, shows that

these notes were processed outside of normal procedures – a fact which entirely undermines the

statements by Antonio DiMaggio purportedly describing all of the transactions with Wishaw by

Banca Intesa, and further demonstrates that there may be other transactions of which Mr.

DiMaggio was unaware.  Given such material disputes of fact exist, and for the other reasons set

forth below, Banca Intesa's motion to dismiss, or for summary judgment, is without merit and

should be denied in its entirety.

## STATEMENT OF FACTS[2]

As alleged in the Complaint, Banca Intesa loaned Parmalat money in transactions devised

to look like advance payments on notes, using facially deficient, worthless notes to perpetrate the

---

[2]     The allegations in Plaintiffs' Complaint must be taken as true for purposes of a motion to dismiss.
*In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 490 (S.D.N.Y. 2005) ("*Parmalat III*" or the "Banks Opinion").  For
purposes of the motion to dismiss, the Court must disregard Banca Intesa's contrary factual assertions, especially the
affidavit of Banca Intesa Vice President Antonio DiMaggio.  As the Court stated at the hearing on the first round of
motions to dismiss:  "I don't get this business of submitting affidavits on a 12(b)(6) motion in the first place.
What's the point of it?  You know it goes in the circular file."  *Tr.* March 25, 2005, at 91:22-24.

scheme.  The Complaint explains that in these transactions Wishaw,[3] Parmalat's Uruguayan shell subsidiary, presented notes to Banca Intesa for sales which were never made, and Banca Intesa made advance cash payments on the promissory notes without making any attempt to verify that the sales occurred.  ¶ 467.[4]  Lead Plaintiffs allege that the notes themselves failed to show that any commercial activity had occurred, as the documents were allegedly incomplete drafts that were not dated, executed or notarized.  *Id.*

The Complaint further alleges that, beginning at least as early as 2001, Wishaw purportedly executed contracts for the sale of raw materials to various U.S. companies and presented promissory notes entered into in connection with those alleged sales of commodities to the New York office of Banca Intesa to receive immediate cash advances.  ¶ 469.  According to a report prepared by PwC, Wishaw purportedly made millions of dollars in product sales in 2001, 2002 and 2003 to various U.S. companies, including Global Trade Resources LLC ("Trade Resources"), based in Minneapolis, Minnesota.  *Id.*  PwC found that it appeared that Wishaw was serving as an intermediary in those transactions, supposedly selling products to a joint venture called Rush River Trading Cayman Limited, which products Wishaw had supposedly just purchased from another U.S. company.  *Id.*  However, in reality, no products were ever purchased or sold by Wishaw.  *Id.*  In fact, Wishaw *never* conducted *any* operations whatsoever; it was merely a shell created to play a role in this and other aspects of the fraud.  *Id.*  Parmalat insiders, including defendant Tonna, subsequently have described the fraudulent nature of these transactions in sworn testimony.  ¶ 470.

---

[3]       The SAC alleges that Parmalat established Wishaw solely to obtain financing to prop up Parmalat's ailing Brazilian operations and to improperly funnel money to Parmalat insiders, including Zini and Tanzi (through a Bank of America account).  SAC ¶ 468.  Wishaw's management was headed by the CFO of Parmalat's Brazilian operations.  *Id.*

[4]       All ¶ __ references are to the Second Amended Complaint.

Wishaw presented the fake promissory notes for the product sales to the New York branch office of Banca Intesa. ¶ 470. Rather than conducting any due diligence to verify that Wishaw had actually purchased and sold the products, and that the notes were valid, Banca Intesa simply paid Wishaw immediately. ¶ 471. The fictitious sales with Trade Resources that involved promissory notes presented to Banca Intesa generated at least $256 million in profits for Wishaw. ¶ 472.

Banca Intesa proceeded with the transactions because it was attempting to secure – successfully – lucrative investment banking and financial advisory business with Parmalat. ¶ 473. Indeed, in June 2003, Banca Intesa secured the right, through its asset-management arm Nextra, to purchase an entire €300 million bond issuance of Parmalat Finance Corporation B.V. which Banca Intesa (through Nextra) quickly (within a few months) resold to Morgan Stanley at a substantial profit. ¶¶ 453-65, 473. Additionally, all of the financings provided by Banca Intesa to Wishaw were guaranteed by Parmalat, S.p.A., so Banca Intesa did not bear any risk on these transactions. ¶ 473. This scheme further propped-up Parmalat's Brazilian operations and artificially inflated the market value of Parmalat, particularly Parmalat Brazil. *Id.*

## ARGUMENT

### I. THE COMPLAINT STATES A CLAIM AGAINST BANCA INTESA FOR VIOLATING RULE 10b-5(a) AND (c)

#### A. The Complaint Specifically Alleges that Banca Intesa Engaged in a Fraudulent Scheme and Used a Deceptive Device

This Court set forth in detail the pleading requirements for a claim for violation of Rule 10b-5(a) and (c) in *Parmalat III*. In particular, the Court held that a defendant will be liable under Rule 10b-5(a) and (c) for deceptive transactions if "[i]t is impossible to separate the deceptive nature of the transactions from the deception actually practiced upon Parmalat's investors." *Parmalat III*, 376 F. Supp. 2d at 504. Here, Banca Intesa used a scheme to provide

funds to Parmalat based on entirely fake notes that inflated Parmalat's value and thus deceived the market for Parmalat's securities.

This Court has previously found actionable under Rule 10b-5(a) and (c) claims nearly identical to those alleged against Banca Intesa.  In the Banks Opinion, the Court, *inter alia,* denied Citigroup's and BNL's motions to dismiss claims for their fraudulent factoring and securitization schemes, and found that:

> The complaint alleges that Citigroup securitized, and BNL factored, invoices that, for various reasons, were worthless.  Each thought itself secure from the obvious credit "risk," Citigroup because it sold the receivables or assigned back to Parmalat the right to collect payment … and BNL because it relied on Parmalat's guarantee.  Parmalat's security holders, however, allegedly were not so fortunate.  They were victimized by Parmalat's misleading financial statements.

> The Court concludes that the arrangements involving the regular factoring and securitization of worthless invoices were deceptive devices or contrivances for purposes of Section 10(b).  These were inventions, projects, or schemes with the tendency to deceive because they created the appearance of a conventional factoring or securitization operation when, in fact, the reality was quite different.  *BNL knew when it paid Parmalat for the invoices that they were worth nothing and were in fact a trick to disguise its loan to Parmalat.*  The same is true of Citigroup's purchase of certain invoices.  If the allegations of the complaint are accepted, the banks used these devices.  In the language of Rule 10b-5(c), the banks engaged in acts, practices, or courses of business that would operate as a fraud or deceit upon others.  In these circumstances, it cannot be said that the banks' conduct fell outside of Rule 10b-5 or Section 10(b).

*Parmalat III*, 376 F. Supp. 2d at 504 (emphasis added).

The acts and practices used by Banca Intesa are nearly identical to BNL's scheme.  Banca Intesa provided money to Parmalat on worthless and obviously fake paper.  ¶ 470.  Because payment on the notes was guaranteed by Parmalat, Banca Intesa had no credit risk in the transaction.  ¶ 473.  Moreover, Banca Intesa's reliance on the argument that Parmalat and not Banca Intesa devised the transactions is misplaced.  As Banca Intesa acknowledges, the question is whether Banca Intesa "directly or indirectly *used or employed* any device or contrivance with

6

the capacity or tendency to deceive."[5]  *Parmalat III*, 376 F. Supp. 2d at 504 (emphasis added).  It is the use or employment of the device that gives rise to liability – not the design thereof.  Indeed, Banca Intesa concedes that the Court did not require that a defendant structure the transaction for liability to arise.  *See* Memorandum of Law of Defendant Banca Intesa S.p.A. in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment ("BI Mem."), at 10.

Banca Intesa complains that the allegations against it are not sufficiently particularized to meet the requirements of Rule 9(b).  However, as this Court has stated, what is required is that:

> the plaintiffs must specify what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and what effect the scheme had on investors in the securities at issue.

*Parmalat III*, 376 F. Supp. 2d at 493.  The Complaint does precisely this.  It specifically alleges what deceptive acts were performed (provision of cash advances to Parmalat on facially worthless notes, ¶ 467); which defendant performed them (Banca Intesa, through its New York office, ¶ 469); when the acts were performed (beginning in at least 2001 through 2003, *id.*); and the effect the scheme had on investors of Parmalat's securities (inflating the market value of Parmalat, particularly Parmalat Brazil, ¶ 474).[6]

---

[5]     Rather than address its conduct, Banca Intesa attempts to conflate separate allegations of Parmalat's purpose in obtaining funds for Wishaw with those that Banca Intesa knew of the fraudulent nature of the notes and provided funding based on those notes.  BI Mem. at 11.  Yet it is the provision of the funding itself on plainly fake notes that constitutes Banca Intesa's use of a deceptive scheme.  The reasons for the scheme from Parmalat's perspective, and Banca Intesa's scienter in carrying out the scheme, are separate.

[6]     Banca Intesa does not seriously contend that this prong is not satisfied, and for good reason.  As the Court found in the Banks Opinion:

> BNL, but not Citigroup or CSFB, argues that its alleged acts were not connected with the purchase or sale of securities.  It is mistaken.  A plaintiff makes out a sufficient nexus with the purchase or sale of securities when the defendants' deceptive conduct affects a market for securities.  The alleged factoring and securitization schemes would have created the appearance of revenue or assets where there was none and thus distorted the prices of Parmalat's securities.

*Parmalat III,* 376 F. Supp. 2d at 505-06.

The promissory notes were clearly false – as there was no underlying economic activity – rendering Banca Intesa's payment on those notes a deceptive device of the type the Court has deemed actionable.  As Banca Intesa points out, buying *genuine* notes backed by corporate guarantees would be "routine banking."  BI Mem. at 12.  And, seizing on the Court's language denying Bank of America's first motion to dismiss, Banca Intesa argues that these ordinary practices are not "shams" or "fictions."  However, as the Court previously determined with respect to the allegations against BNL and Citigroup, the transactions at issue *here* – buying patently *fake* notes backed by Parmalat's guarantee – constitute a deceptive device dependent on a fiction, and are actionable under Rule 10b-5.[7]  *Parmalat III*, 376 F. Supp. 2d at 505.

Further, contrary to Banca Intesa's assertions, the Complaint clearly alleges that Banca Intesa itself used the deceptive scheme.  Banca Intesa received the facially fake notes and issued payment on those worthless documents to Wishaw.  Again, these are the same actions that BNL took and which the Court found were a deceptive device.  *See Parmalat III,* 376 F. Supp. 2d at 488.  Thus, Banca Intesa's Rule 9(b) argument fails.[8]

### B.     The Allegations of the Complaint Raise a Strong Inference that Banca Intesa Acted with Scienter

In addition to particularly alleging the scheme in which Banca Intesa engaged, the allegations of the Complaint also raise a strong inference that Banca Intesa acted with scienter. To adequately allege scienter, the Complaint need only give rise to a strong inference that Banca

---

[7]     Banca Intesa vaguely asserts that the Court ruled that allegations about "other routine banking services provided by other bank defendants ran 'afoul of both rule 9(b) and *Central Bank*,'" citing footnote 159 of the Banks Opinion.  (BI Mem at 12).  The allegations there (regarding providing accounts that were misused and other banking services) are wholly unrelated to the activities asserted here against Banca Intesa, which by their nature were deceptive.

[8]     Should the Court for any reason accept Banca Intesa's arguments regarding the applicable pleading standard, Plaintiffs respectfully request leave to amend the Complaint to include additional information described below in Part II. C and in Plaintiffs' Rule 56.1 Statement.

Intesa had the motive and opportunity to commit fraud, or that there is "strong circumstantial evidence of conscious misbehavior or recklessness." *Parmalat III,* 376 F. Supp. 2d at 491. The Complaint does both.

The Complaint sets forth strong circumstantial evidence that Banca Intesa knew of the false nature of the transactions, or was severely reckless in its disregard for the veracity of the notes. The Complaint alleges that, rather than make any investigation into the validity of the promissory notes, Banca Intesa simply abandoned its customary procedures and failed to make any attempt to verify that the purported sales had occurred, that the notes were valid, or even that Wishaw actually conducted any commercial activity at all. ¶ 916.[9] In fact, Wishaw never conducted any operations, as it served only as a sham entity designed to perpetrate this and other aspects of the fraud. *Id.*

As the Court recognized in the Banks Opinion, the very participation in a scheme to provide what were in reality concealed loans to Parmalat in exchange for worthless commercial paper itself raises a strong inference of scienter. The Court found with respect to the conduct of BNL in factoring worthless invoices that "BNL['s] and Ifitalia's very participation in the factoring arrangement, which depended on the recycling of stale invoices, if proven, would constitute strong circumstantial evidence that BNL or Ifitalia understood exactly what they were receiving in exchange for their loans to Parmalat." *Parmalat III*, 376 F. Supp. 2d at 506.

Additionally, the SAC alleges that Banca Intesa had the motive and opportunity to commit fraud. The SAC sets forth that Banca Intesa participated in improperly inflating the

---

[9]   Banca Intesa baldly asserts that Parmalat's guarantee obviates any need for it to perform any due diligence because it did not bear any risk, and that this confused logic somehow undermines Plaintiffs' allegations of severe recklessness. BI Mem. at 17. The opposite is plainly true: the fact that Banca Intesa was obviated of any risk infers that Banca Intesa participated in the transaction aware of its true nature. In any event, on this motion to dismiss (or summary judgment) all inferences must be drawn in Plaintiffs', not Banca Intesa's, favor.

market value of Parmalat and its affiliates as a means to obtain new business from Parmalat. ¶ 915. Banca Intesa was rewarded for its scheme with the right, through its asset-management arm Nextra, to purchase an entire €300 million Parmalat Finance Corporation B.V. bond issuance, which Banca Intesa (through Nextra) sold a few months later at a substantial profit. ¶ 918.

Banca Intesa's argument that it was Parmalat and not Banca Intesa that established Wishaw, and that there is no allegation of Banca Intesa's knowledge of the purposes of that establishment, is misplaced. BI Mem. at 14. There is no requirement that Lead Plaintiffs plead Banca Intesa's knowledge of what became of the funds once they were provided to Wishaw – that the funds were improperly provided in the first place through the use of fake invoices has been found sufficient to state a claim. *Parmalat III*, 376 F. Supp. 2d at 506. And it is the very allegations that the promissory notes were patently fake – given the lack of any underlying commercial activity and as described in testimony and documents (¶ 470) – that raises a strong inference that Banca Intesa carried out the scheme with scienter. As Lead Plaintiffs' allegations show, even the most cursory investigation into the validity of the notes (much less due diligence than ought to have been customary at Banca Intesa and necessary under industry practice) would have revealed their fraudulent nature. Thus, it is reasonable to infer that Banca Intesa knew the notes were fake, or deliberately and recklessly failed to carry out the customary types of due diligence which would have revealed their falsity.

For these reasons, the allegations in the Complaint adequately allege a violation of Rule 10b-5(a) and (c) against Banca Intesa. The motion to dismiss must be denied.

## II.   BANCA INTESA'S MOTION FOR SUMMARY JUDGMENT IS PATENTLY PREMATURE AND CANNOT BE GRANTED ON THE CURRENT RECORD

Presumably recognizing that Lead Plaintiffs' allegations satisfy the pleading requirements for purposes of Rule 12, Banca Intesa resorts inappropriately to facts outside the pleading and moves, in the alternative, for summary judgment.  Simply put, adjudication on the merits at this early stage in the case, in which Lead Plaintiffs have not had the opportunity to take discovery from Banca Intesa, would be wholly improper and highly irregular.  Indeed, Banca Intesa's factual submissions and statements only create additional issues of disputed material facts.

Banca Intesa, a defendant named for the first time in the SAC, has not yet produced any discovery – not surprising in light of the PSLRA stay.  To convert this motion to dismiss into one for summary judgment without providing an opportunity for discovery would unfairly subject Lead Plaintiffs' allegations at this early stage of the litigation to the more rigorous scrutiny of Rule 56, as opposed to the appropriate Rule 12(b)(6) standards which apply prior to the commencement of discovery.  Summary judgment would be particularly inappropriate here because not only have Lead Plaintiffs identified facts as to which there clearly are genuine disputes, but Lead Plaintiffs have also furnished an affidavit, pursuant to Rule 56(f), setting forth what discovery is necessary to resist this motion, and why such information is essential to justify Lead Plaintiffs' opposition to Banca Intesa's motion.  *See* Rule 56(f) Declaration.  Thus, Banca Intesa's alternative motion for summary judgment must fail as well.

### A.   Summary Judgment Is Inappropriate In Light Of Plaintiffs' Present Incapability to Develop A Full Factual Record With Respect To The Allegations Against Banca Intesa

Summary judgment is only "appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law."

11

*Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001).  *See also Cameron v. Community Aid*
*for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003); *Johnson v. Goord*, No. 01 Civ. 9587
(PKC), 2005 WL 2811776, at *2 (S.D.N.Y. Oct. 27, 2005).  In considering a motion for
summary judgment, the Court must "view the evidence in the light most favorable to the non-
moving party and draw all reasonable inferences in its favor, and may grant summary judgment
only when no reasonable trier of fact could find in favor of the non-moving party."  *Rosenblatt v.*
*Christie, Manson & Woods Ltd.*, No. 04 Civ. 4205 (PKC), 2005 WL 2649027, at *3 (S.D.N.Y.
Oct. 14, 2005) (quotations omitted).

A core aspect of Rule 56 – one that requires rejection of Banca Intesa's motion – is that it
is predicated upon the parties' opportunity to gather and present competing evidence.  The Rule
states that summary judgment may be rendered only "if the pleadings, *depositions, answers to*
*interrogatories, and admissions on file, together with the affidavits*, if any" demonstrate that
there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c) (emphasis added).  As
courts within this Circuit and elsewhere have acknowledged, "'because summary judgment is a
*drastic device*, it should not be granted where parties have yet to exercise their opportunity for
pre-trial discovery.'"  *Finnegan v. Univ. of Rochester Med. Ctr.*, 21 F. Supp. 2d 223, 228
(W.D.N.Y. 1998) (quoting *Petrosky v. NY State Dep't of Motor Vehicles*, 971 F. Supp. 75, 77
(N.D.N.Y. 1997) (emphasis added)).[10]

Courts have repeatedly held that converting a Rule 12(b)(6) motion into a motion under
Rule 56 is inappropriate where the parties have not had an opportunity to *complete discovery*.

---

[10]     *See also Shearer v. Homestake Mining Co.*, 727 F.2d 707, 708 (8th Cir. 1984) (noting that district
court was "reluctant to resort to the drastic remedy of summary judgment so early in the proceedings"); *Nat. Life*
*Ins. Co. v. Solomon*, 529 F.2d 59, 61 (2d Cir. 1975) ("summary judgment is a 'drastic device'" and should not be
resorted to where a party has not had the opportunity to develop facts); *Cobe Laboratories, Inc. v. Baxter Healthcare*
*Corp.*, 93-C-1938, 1994 WL 804039, at *2 (D. Colo. Dec. 28, 1994) ("Summary judgment is a drastic remedy and
should not be granted when the parties have not had an opportunity to conduct pretrial discovery.").

*See Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633, 637 (S.D.N.Y. 2001) (summary judgment premature; "it is generally inappropriate for a court to [convert a 12(b)(6) motion into a motion for summary judgment] when … the parties have not had the opportunity to *complete* discovery.") (quotations omitted, emphasis added); *Colon v. Molina*, 136 F. Supp. 2d 196, 201 (S.D.N.Y. 2000) (converting to summary judgment motion inappropriate "when, as here, the plaintiffs have not submitted materials other than the pleadings nor have they had the opportunity to *complete* discovery.") (emphasis added).

Similarly, courts have held that they cannot (or rarely will) make an informed ruling on the merits of a claim where the parties have not conducted any fact-finding whatsoever. *See, e.g., Hellstrom v. United States Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) ("Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."); *AdiPar Ltd. v. PLD Intern. Corp.*, No. 01 Civ. 0765 (MBM), 2002 WL 31740622, at *4 (S.D.N.Y. Dec. 6, 2002) (the issues presented in a Rule 56 motion are not ripe for summary adjudication before discovery); *Canadian St. Regis Band of Mohawk Indians v. New York*, 146 F. Supp. 2d 170, 183 n.12 (N.D.N.Y. 2001) (conversion of Rule 12 motion is premature where the court does not have documentary evidence necessary to decide complex factual issues); *Kissner v. Inter-Continental Hotels Corp.*, No. 97 Civ. 8400 (SWK), 1998 WL 337067, at *4 n.2 (S.D.N.Y. June 25, 1998) (declining to convert defendant's motion to dismiss to a Rule 56 motion because significant factual discovery which would make the case ripe for a summary judgment motion had not been completed).

These principles amply demonstrate why Banca Intesa's motion is premature at this early stage in the litigation – discovery of the bank has not yet begun.  Added as a defendant for the first time in the SAC filed on August 22, 2005, Banca Intesa has been shielded from discovery

by the automatic stay imposed by the PSLRA.  *See* 15 U.S.C. § 78u-4(b)(3)(B).[11]  Indeed, this Court denied Lead Plaintiffs' previous request to lift the automatic stay during the pendency of the initial motions to dismiss in this matter.  Accordingly, Banca Intesa has not yet been asked to respond to document requests or interrogatories, nor to produce any witnesses for deposition.

Rule 56 should not be used as a mechanism to hold the non-moving party hostage, forcing Lead Plaintiffs to rely only upon the factual support that gave rise to the pleading, while denying them the opportunity to explore further.  Were this Court to consider Banca Intesa's motion under Rule 56 at this time without allowing discovery, it would subject Lead Plaintiffs' allegations to summary judgment scrutiny when, at this stage, they need only satisfy Rule 12.[12]

### B.  Lead Plaintiffs Have Abundantly Demonstrated The Need For Discovery

Banca Intesa has put before the Court an affidavit, pursuant to Local Rule 56.1, and supporting documents in an attempt to show that there is no genuine dispute as to any material fact.  Plaintiffs' Rule 56.1 Statement demonstrates that, indeed, the parties dispute many material factual issues.  Nevertheless, the complete lack of discovery of Banca Intesa severely limits and unfairly prejudices Lead Plaintiffs' ability to fully counter Banca Intesa's factual averments. "Rule 56(f) allows a court to deny or postpone a motion for summary judgment for the purpose of conducting discovery if the party opposing the motion furnishes an affidavit showing 'that the party cannot for reasons stated present by affidavit facts essential to justify the party's

---

[11]      Banca Intesa was mentioned, but not named as a defendant, in Lead Plaintiffs' First Amended Complaint, filed on or about October 18, 2004.  However, the automatic stay prevented any discovery, regardless of whether Banca Intesa was a party or not.

[12]      Further emphasizing the premature nature of Banca Intesa's motion is the fact that this Court has already scheduled the appropriate time for summary judgment.  By Order dated August 2, 2005, the Court set summary judgment motions to be filed by October 31, 2006 – *three months after the close of fact discovery*.  *See* Aug. 2, 2005 Order, at 2.

opposition.'" *Aniero Concrete Co., Inc. v. New York City Construction Authority*, No. 94 Civ. 3506 (CSH), 2000 WL 863208, at *23 (S.D.N.Y. June 27, 2000) (quoting Fed. R. Civ. P. 56(f)).

As the Second Circuit has stated, a party resisting summary judgment on the ground that it needs to conduct discovery must provide an affidavit which shows:  (1) what facts are sought to oppose the motion, as well as how they are to be obtained; (2) how those facts are reasonably expected to establish a genuine issue of material fact; (3) efforts made to obtain such discovery; and (4) why such efforts have been unsuccessful.  *See Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999); *see also Mendoza v. City of Rome*, 70 F. Supp. 2d 137, 142 (N.D.N.Y. 1999).  Courts routinely hold that information furnished pursuant to Rule 56(f) is to be "liberally treated." *Awulonu v. Unified School District #261*, 363 F. Supp. 2d 1300, 1303 (D. Kan. 2005) (quoting *Community for First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) (summary judgment premature without opportunity for discovery by plaintiff)).  "Although the affidavit need not contain evidentiary facts, it must explain why facts precluding summary judgment cannot be presented."  *Community for First Amendment*, 962 F.2d at 1522.  As the Third Circuit has stated:

> Where Rule 56(f) affidavits have been filed, setting forth specific reasons why the moving party's affidavits in support of a motion for summary judgment cannot be responded to, and the facts are in the possession of the moving party, … *a continuance of the motion for purposes of discovery should be granted almost as a matter of course.*

*Mid-South Grizzlies v. NFL*, 720 F.2d 772, 779 (3d Cir. 1983) (emphasis added).  *See also Marcolongo v. School Dist. of Phila.*, No. CIV.A. 98-5196, 1999 WL 1011899, at *5 (E.D. Pa. Nov. 5, 1999).[13]  An affidavit that asserts that plaintiffs "are presently unable to present facts to

---

[13]     In fact, some courts do not even insist on the submission of an affidavit where the non-moving party "through no fault of its own, has had little or no opportunity to conduct discovery" and has adequately informed the court of that fact.  *Investors Title Ins. Co. v. Bair*, No. 9:05-1434-PMD, 2005 WL 2709373, at *2

*(cont'd)*

support their opposition to [summary judgment] *since no discovery has yet been had*" regarding their claim is sufficient. *Argus Inc. v. Eastman Kodak Co.*, 552 F. Supp. 589, 600 (S.D.N.Y. 1982) (emphasis added).

Here, Plaintiffs' Rule 56(f) Declaration is reasonably tailored to the specific discovery Lead Plaintiffs believe is essential to justify their opposition to the factual assertions made by Banca Intesa in its motion and supporting materials.  Banca Intesa argues, based exclusively on the affidavit of its Vice President Antonio DiMaggio, that it never made any advance cash payments to Wishaw, never purchased or discounted any notes representing receivables for sales by Wishaw, and never dealt with fake notes or notes not properly executed, dated, or otherwise facially questionable.  BI Mem. at 19-20.  Banca Intesa asserts instead that 49 promissory notes payable by – not to – Wishaw were presented to the bank on behalf of either Archer Daniel Midland Corp. ("ADM") or ConAgra Foods, Inc. ("ConAgra"), and that another 14 notes were issued by Wishaw directly to Banca Intesa representing working capital loans to Wishaw with respect to Parmalat's Brazilian operations.  BI Mem. at 20-24.  This, according to Banca Intesa, entirely refutes Lead Plaintiffs' allegations and leaves no factual issue in dispute.

Perhaps most obviously, Lead Plaintiffs must be afforded complete discovery of Mr. DiMaggio, who claims to single-handedly refute Lead Plaintiffs' entire case and upon whose affidavit Banca Intesa exclusively relies.  The DiMaggio Affidavit details at length the nature of the promissory notes presented for payment to Banca Intesa.  As such, Lead Plaintiffs must be permitted to depose Mr. DiMaggio as to all matters in his affidavit and also as to matters alleged in the Complaint against Banca Intesa that go unaddressed in the affidavit.  Additionally, Lead

---

(D.S.C. Oct. 24, 2005).  *See also McLaughlin v. Murphy*, 372 F. Supp. 2d 465, 471 (D. Md. 2004) (objections satisfied the purpose of the affidavit, and the plaintiff "could not have been lax in discovery because he has not yet had the opportunity to conduct discovery.").

Plaintiffs must be permitted access to the documents upon which Mr. DiMaggio relies to factually dispute Lead Plaintiffs' well-pled allegations, including, at a minimum, all supporting documentation underlying, and all communications concerning, the working capital financing that Banca Intesa extended to Wishaw, and the applicable laws and internal policies governing Banca Intesa's discounting or payment of promissory notes.[14] Thus, Lead Plaintiffs must be permitted discovery of, *inter alia*, all investigatory or due diligence efforts to confirm the sales underlying promissory notes issued to or by Wishaw, and the documents evidencing payments made by Banca Intesa in discounting any such promissory notes. Also, as made pertinent by the DiMaggio Affidavit, Lead Plaintiffs should be permitted to review Banca Intesa's correspondences with and to depose employees of ADM, GSTS L.P., and ConAgra. *See, e.g.,* DiMaggio Affidavit at ¶¶ 4-5.

    As importantly, Lead Plaintiffs must be permitted to explore with Mr. DiMaggio and other Banca Intesa personnel further details of the relationship between Banca Intesa, Wishaw, and other Parmalat entities, and whether there were other Banca Intesa personnel who had dealings with Parmalat or were involved in discounting promissory notes or extending working capital financing to Wishaw, of which Mr. DiMaggio may not have been aware. Such discovery could reveal facts that seriously undermine the DiMaggio Affidavit.

    Additionally, that Banca Intesa relies exclusively on the testimony of a single witness, and the documents he chooses to provide, underscores the need for wider discovery. An important component of such discovery will consist of documentary and testimonial evidence

---

[14]     Banca Intesa does attach the promissory notes referenced in the DiMaggio Affidavit. However, Lead Plaintiffs should not be forced to rely upon what Mr. DiMaggio or Banca Intesa unilaterally – and selectively – deigns to produce. Such documents were not produced in response to any document request served by Lead Plaintiffs, in light of the PSLRA stay, and Lead Plaintiffs would insist on viewing far more materials from Banca Intesa before they could consider the factual record complete.

from PwC whose reports to Mr. Bondi support Lead Plaintiffs' claims against Banca Intesa. PwC, in the course of its investigation into and reconstruction of Parmalat's finances, observed that Wishaw purportedly made $84 million in product sales in 2001, $109 million in 2002, and $63 million in 2003 to various U.S. companies, including Trade Resources. Wishaw presented notes pertaining to these purported sales to Banca Intesa's New York branch for payment and received immediate financing. However, PwC has raised doubts as to the existence of the transactions underlying the promissory notes, and importantly, found evidence from which it inferred that Banca Intesa never verified the underlying transactions. As such, Lead Plaintiffs must be permitted the opportunity to review the documents underlying the findings by PwC, and to depose PwC's personnel involved in its investigation of Banca Intesa's dealings with Wishaw.[15] The PwC reports and the investigation that generated them go completely unmentioned in both Banca Intesa's motion and the DiMaggio Affidavit. Banca Intesa deliberately ignores this highly material fact clearly pled in the Complaint. ¶ 469.

Lastly, it should be apparent that *the very existence of the PwC reports warrants the denial of summary judgment*. Simply put, PwC's reports show that Banca Intesa perpetrated the conduct alleged in the Complaint while the DiMaggio Affidavit asserts that Banca Intesa did not engage in any misconduct. These opposing contentions clearly establish a genuine factual dispute. Discovery, therefore, must be conducted to probe the competing assertions and determine which is supported by the greater weight of the evidence.

---

[15]     Plaintiffs have recently received and analyzed documents produced by PwC in response to a subpoena served by defendant Deloitte Touche Tomhatsu ("DTT"). Thus far, PwC has produced its reports prepared for Mr. Bondi, but not the supporting data.

**C.    Materials Already In Lead Plaintiffs' Possession Establish A Genuine Dispute As To Material Facts**

Even if the Court were to consider Banca Intesa's motion for summary judgment at this time, despite the incomplete record, the material facts already in Lead Plaintiffs' possession establish that a genuine dispute exists as to numerous material facts which render summary judgment impossible.  For instance, in its report dated March 18, 2004 that analyzed transactions executed by Wishaw, PwC concluded that Wishaw did not perform any commercial activity. (*See* PricewaterhouseCoopers LLP Report titled "Wishaw Trading SA - Uruguay Draft For Discussion March 18, 2004" (the "March Report") at p. 2).[16]  Specifically, PwC found that from 1997 to 2003, Wishaw obtained $3.983 billion in financing (for Parmalat's Brazilian operations) and made various payments in the amount of $3.998 billion.  *Id.*  According to PwC, the balance sheets of Wishaw were manipulated to artificially inflate the profits and eliminate inter-company debts (and to reduce the debt of the Brazilian subsidiaries).  *See* March Report at pp. 2, 3, 10, 11 and 12; PricewaterhouseCoopers LLP Report titled "Addendum to the Report Wishaw Trading SA - Analysis Performed In Brazil Draft For Discussion June 29, 2004" at pp. 4-5.[17]  In fact, PwC determined that $1.386 billion over the period 1998 through 2003 was devoid of any commercial substance.  *See* Addendum Report at p. 27.

PwC found that in 2001, 2002 and 2003, Wishaw executed contracts for the sale of raw materials to Minneapolis-based Trade Resources.  *See* March Report at pp. 45, 49, 50.  PwC explained that Wishaw, as an intermediary, purported to buy raw materials from ADM and sell them to Rush River Trading Cayman Ltd., a joint venture owned 50% by Trade Resources and

---

[16]       A copy of the relevant portions of the March Report, and an English translation of those portions, are annexed Exhibit 1 to the Declaration of Diane Zilka, dated December 16, 2005 (the "Zilka Declaration").

[17]       A copy of relevant portions of the PricewaterhouseCoopers LLP Report titled "Addendum to the Report Wishaw Trading SA - Analysis Performed In Brazil Draft For Discussion June 29, 2004" (the "Addendum Report"), and an English translation of those portions, are annexed as Exhibit 2 to the Zilka Declaration.

50% by ADM.  *Id.* at 49.  Wishaw issued a promissory note in favor of ADM, and then immediately sold the products and received payment, thus receiving financing for one year.  *Id.* Wishaw presented the notes to Banca Intesa in New York, which would discount them and thus provide Wishaw with an immediate cash advance.  *Id.*  Wishaw was thus able to delay the payment on the note for one year and, in the meantime, would receive the payment from the apparent sale of the raw materials which were to be paid at the time of delivery.  *Id.*  However, according to PwC, no products would actually be transferred.  *Id.*  Since no actual transactions took place, the promissory notes were issued solely with the intent of obtaining the financing from the banks that discounted such notes.  *Id.*

PwC found no indication that Banca Intesa made any efforts to verify the underlying transactions.  *Id.*  Wishaw's management told PwC that Wishaw requested financing through issuance of promissory notes for commercial activity in which Wishaw never actually engaged, since it was formed to engage in financial activities for Parmalat by obtaining and distributing financing, primarily to Parmalat Brazil, and to other related entities and to the Parmalat Group. *See* Addendum Report, at 6.  Based on information from Wishaw's management, it appeared to PwC that the banks, including Banca Intesa, that provided financing to Wishaw based on promissory notes never disputed the fact that Wishaw never actually engaged in commercial activities upon which the promissory notes were based.  *Id.*

That Banca Intesa discounted Wishaw promissory notes despite full knowledge of the lack of any underlying transactions is supported by admissions of defendant Fausto Tonna, Parmalat's CFO during the Class Period:

> I reiterate that almost all such instruments were discounted by Ecoban [a commercial bank] and sold to third parties.  This was the mechanism through which the private placements were issued:  the parties signed a contract that remained un-performed.

* * * * * *

The bank was aware of this.  The credit underlying the promissory note did not exist, and the bank, let me restate it again, was aware of this because its own executives and managers provided us with the boilerplate contract that accompanied the promissory note.  Since the contract was always the same, we reused it each time we wished to avail ourselves of this form of financing.  *In 2002 we used this financing tool to obtain funds from Banca Intesa on the recommendation made by Casalini, a manager in charge of "large accounts" including Parmalat, at the Milan branch of that bank*.  I do not believe that this operation was executed to repay a previous loan; rather, I believe that the promissory notes were discounted to re-finance another maturing [bond] debt. But I can exclude that this operation was carried out in aid to Parmalat's expansion in South America since our acquisition campaign, by that time, was already over.  I do not know whether Wishaw Trading executed similar operations with Banca Intesa in 2003.  Perhaps it did.

Interrogatory of Fausto Tonna dated April 8, 2004)[18] (emphasis added).

Moreover, as evidenced by the email communication of Andrea Ventura, the Administrative and Financial Director of Parmalat Brazil and the President of Wishaw, the procedures that were used to process notes issued by Wishaw to Banca Intesa New York *were outside of the normal procedures Parmalat  used to process Wishaw's promissory notes.  See* Email from Andrea Ventura to Andrea Dall'Olio, A. Masetti, R. Carini and Scimmiettta Pongo dated October 15, 2003.[19]  Thus, it may well be that Mr. DiMaggio was not aware of these transactions.  Indeed, even Mr. DiMaggio admits that Banca Intesa New York's branch made payment on the promissory note involving ConAgra directly into a Wishaw bank account at another bank.  DiMaggio Aff. at ¶8.  Thus, his own affidavit raises serious doubts as to Banca Intesa's assertion that it never made payments directly to Wishaw.

---

[18]        A copy of relevant portions of the Interrogatory of Fasto Tonna dated April 8, 2004, and an English translation of those portions, are annexed as Exhibit 4 to the Zilka Declaration.

[19]        A copy of the email from Andrea Ventura to Andrea Dall'Olio, A. Masetti, R. Carini and Scimmiettta Pongo dated October 15, 2003, and an English translation of it, are attached as Exhibit 6 to the Zilka Declaration.

21

In fact, in its review of the transactions involving Wishaw, PwC often encountered a notable lack of supporting documentation, noting that "some documents did not have headings, signatures and dates."  March Report at p. 3.

As these material facts, and the many other material facts set forth by Lead Plaintiffs in their Rule 56.1 Statement, are contrary to the assertions of Banca Intesa and create substantial issues for trial, summary judgment is not appropriate, and Banca Intesa's motion must be denied.

## CONCLUSION

For all of the foregoing reasons, defendant Banca Intesa's motion should be denied in its entirety or converted to one for summary judgment and held in abeyance pending the completion of discovery.  In the alternative, should the Court find any infirmity in the allegations of the Complaint, Lead Plaintiffs respectfully request leave to amend.[20]

---

[20]   The reasons leave to amend is appropriate are set forth in Lead Plaintiffs' Plaintiffs' Memorandum Of Law In Opposition To Defendants' Motions To Dismiss The First Amended Consolidated Class Action Complaint, dated February 18, 2005, at pp. 144-48.  That Lead Plaintiffs have amended the Complaint previously is no reason to deny leave to amend where defects are curable.  *See, e.g., Eminence Capital, LLC v. Aspeon, LLC,* 316 F.3d 1048, 1052-53 (9th Cir. 2003) (rejecting argument that leave to amend should be denied because Plaintiffs had "three bites at the apple").  Indeed, here, Lead Plaintiffs have filed only one complaint alleging claims against Banca Intesa.

Dated: December 16, 2005

Respectfully submitted,

COHEN, MILSTEIN, HAUSFELD &
   TOLL, P.L.L.C.

By: /s/ Catherine A. Torell
Catherine A. Torell (CT-0905)
150 East 52nd Street
30th Floor
New York, New York  10022
Tel: (212) 838-7797

Steven J. Toll
Lisa M. Mezzetti (LM-5105)
Mark S. Willis
Julie Goldsmith Reiser
Joshua S. Devore
1100 New York Avenue, N.W.,
Suite 500, West Tower
Washington, D.C.  20005-3964
Tel: (202) 408-4600
Fax: (202) 408-4699

*Of Counsel*:

SPECTOR ROSEMAN & KODROFF, P.C.
Robert M. Roseman
Andrew D. Abramowitz
Daniel J. Mirarchi
Rachel E. Kopp
1818 Market Street, 25th Floor
Philadelphia, PA  19103
Tel: (215) 496-0300
Fax: (215) 496-6611

GRANT & EISENHOFER, P.A.
Stuart M. Grant (SG-8157)
John C. Kairis (JK-2240)
Diane Zilka (DZ-9452)
Chase Manhattan Centre
1201 North Market Street
Wilmington, DE 19801
Tel: (302) 622-7000
Fax: (302) 622-7100

James J. Sabella (JS-5454)
45 Rockefeller Center
630 Fifth Avenue
15th Floor
New York, NY  10111
Tel:  (646) 722-8500
Fax:  (646) 722-8501

*Co-Lead Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing Lead Plaintiffs' Memorandum of

Law In Opposition to Banca Intesa S.p.A.'s Motion to Dismiss and Motion for Summary

Judgment and In Support Of Lead Plaintiffs' Request for Rule 56(f) Discovery, and the

accompanying Plaintiffs' Statement Pursuant To Local Rule 56.1 Of Material Facts As To

Which Plaintiffs Contend There Is A Genuine Issue To Be Tried, Declaration Of James J.

Sabella In Opposition To Motion Of Defendant Banca Intesa S.p.A. For Summary Judgment

And In Support Of Lead Plaintiffs' Request Pursuant To Fed. R. Civ. P. 56(f) For Discovery, and

Declaration of Diane Zilka, Esq., were electronically served on all parties registered with the

Court's CM/ECF system in this matter.

      /s/ Catherine A. Torell      
Catherine A. Torell
