UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re PARMALAT SECURITIES LITIGATION

This document relates to: 04 Civ. 0030 (LAK)

MASTER DOCKET

04 MD 1653 (LAK) ECF Case

ELECTRONICALLY FILED

**LEAD PLAINTIFFS' STATEMENT PURSUANT TO LOCAL RULE 56.1
OF MATERIAL FACTS AS TO WHICH LEAD PLAINTIFFS
CONTEND THERE IS A GENUINE ISSUE TO BE TRIED**

Lead Plaintiffs Hermes Focus Asset Management Europe, Ltd., Hermes European Focus Fund I, Hermes European Focus Fund II, Hermes European Focus Fund III, Cattolica Partecipazioni, S.p.A., Capital & Finance Asset Management, Societe Moderne des Terrassements Parisiens and Solotrat ("Lead Plaintiffs") submit this Statement pursuant to Local Rule 56.1 in opposition to the Statement of defendant Banca Intesa S.p.A. ("Banca Intesa" or "Movant") of material facts as to which it contends there is no genuine issue to be tried, and to set forth material facts as to which Lead Plaintiffs contend there is a genuine issue to be tried.

Banca Intesa has moved for summary judgment before any discovery whatsoever has been conducted as to Banca Intesa. Because Lead Plaintiffs have been subject to a mandatory discovery stay, *see* 15 U.S.C. § 78u-4(b)(2), they have not had the opportunity, to which they are entitled, to obtain document or deposition discovery of facts solely within the knowledge and possession of Banca Intesa. Therefore, Lead Plaintiffs are unable at this time to provide, and cannot be expected to provide, facts beyond what is set forth below in opposition to Banca Intesa's Rule 56.1 Statement. Lead Plaintiffs are engaging in on-going discovery of other defendants and non-parties and have a good faith basis to believe that additional discovery will reflect that the facts set forth by Movant do not reflect all of the relevant evidence.

1

1. Based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute all of the facts as stated by Movant in ¶ 1. According to Reports issued by PricewaterhouseCoopers, LLP ("PwC"), Wishaw Trading S.A. ("Wishaw") executed contracts of sale of raw materials with Archer Daniels Midland ("ADM") and Global Trade Resources LLC ("Trade Resources"). (*See* PricewaterhouseCoopers LLP Report titled "Wishaw Trading SA - Uruguay Draft For Discussion March 18, 2004" (the "March Report") at pp. 45, 49, 50).[1] Wishaw would issue a one-year promissory note is favor of ADM. (*Id.* at p. 49). Wishaw would then immediately sell the products and receive the payment, thus receiving financing for one year. (*Id.*). Thus, Wishaw would delay for one year the payment on the note and, in the meantime, would receive the payment from the sale of the raw materials, which were to be paid at the time of delivery. (*Id.*). However, it appears that no products would be transferred. (*Id.*). Wishaw would present the note to the New York Branch of Banca Intesa to receive the cash advance immediately. (*Id.*). The commercial transactions with Global Trade described above allowed Wishaw to receive financing in the amount of $258 million from at least 2001 through 2003. (*Id.* at pp. 45, 52, 58). In 2003, Wishaw had received $213 million in financing from various credit institutions. (*Id.* at p. 58). The funds were granted through cash advance payments on "promissory notes" and financing agreements executed in 2003. (*Id.*). Part of the financing received by Wishaw may be related to the discount of promissory notes issued in connection with its activity as intermediary. (*Id.*). PwC concluded that $38 million that Banca Intesa New York received in 2003 can be related to that activity. (*Id.*). Also in 2003, Wishaw made $50 million in payments on promissory notes issued in favor of Trading Resources, which

---

[1] A copy of the relevant portions of the March Report, and an English translation of those portions, are annexed Exhibit 1 to the Declaration of Diane Zilka, dated December 16, 2005 (the "Zilka Declaration").

payments were made in favor of Banca Intesa, among other banks, acting as "discount bank" in the commercial transactions executed by Wishaw and Global Trade. (*Id.* at p. 60).

PwC did not identify the specific promissory notes that form the bases for its observations and conclusions about these commercial transactions. PwC stated that it could not review all the relevant documents and that it was not always able to find the relevant financial and economic effects of Wishaw's commercial transactions due to the lack of supporting documentation. (*Id.* at p. 3). Discovery is expected to show documents that purport to represent promissory notes discounted by Banca Intesa New York, other than those identified by Movant in ¶ 1, at one time existed and may still currently exist, and that other documents relevant to the commercial transactions described in the Complaint exist.

2. Movant states that ADM or its affiliates "initiated" most of the Wishaw notes with which Banca Intesa New York dealt and that transactions were "ADM-arranged." ¶ 2. Movant does not state who presented the notes to Banca Intesa New York for payment but appears to suggest that ADM and GSTS L.P. presented the notes to Banca Intesa New York. Based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute those facts and that suggestion. Wishaw acted as an intermediary in transactions involving ADM and Trade Resources. (*Id.* at pp. 49, 50). In connection with those transactions, Wishaw would present the note to the New York Branch of Banca Intesa to receive an immediate cash advance. (*Id.*) In addition, in his April 8, 2004 interrogatory, defendant Fausto Tonna stated that a Mr. Casalini, who was a manager of Banca Intesa-Milan Branch in charge of "large accounts," including Parmalat, recommended that Parmalat use the financing tool to obtain funds whereby instruments were discounted and sold to third parties based on contracts that remained un-performed, and for which the underlying credit did not exist. (*See* Interrogatory of Fausto Tonna

3

dated April 8, 2004).[2] In his December 6, 2004 interrogatory, Tonna stated that the financing transactions "put into place by Wishaw" and the issuance of promissory notes were managed directly by the Brazilian managers. (*See* Interrogatory of Fausto Tonna dated December 6, 2004).[3]

Movant also states in ¶ 2 that the face amount of 49 notes involving transactions with ADM and with GSTS L.P. totaled $125,139,418.51. ¶ 2. Wishaw had executed contracts of sale of raw materials with Trade Resources that, over the period 2001 through 2003, provided Wishaw with a profit of $256 million. (*See* March Report at pp. 45, 52, 58). $38 million that Banca Intesa New York received in 2003 from Wishaw can be related to financing received by Wishaw through the discount of "promissory notes" issued in connection with its activity as intermediary. (*Id.* at 58). Also in 2003, Wishaw made $50 million in payments on promissory notes issued in favor of Trading Resources, which payments were made in favor of Banca Intesa, among other banks, acting as "discount bank" in the commercial transactions executed by Wishaw and Global Trade. (*Id.* at 60). Further, as of December 31, 2001, Wishaw paid $47 million to ADM and $9 million to Trade Resources, and it received $49 million from ADM, and, as of December 31, 2002, Wishaw paid $24 million to ADM and $6 million to ADM-ACTI Trade, and it received $41 million from ADM and $9 million from Trade Resources. (*See* PricewaterhouseCoopers LLP Report titled "Balance of Intercompany Credits Between Wishaw

---

[2] A copy of relevant portions of the Interrogatory of Fasto Tonna dated April 8, 2004, and an English translation of those portions, are annexed as Exhibit 4 to the Zilka Declaration.

[3] A copy of relevant portions of the Interrogatory of Fasto Tonna dated December 6, 2004, and an English translation of those portions, are annexed as Exhibit 5 to the Zilka Declaration.

Trading SA And The Parmalat Group As Of December 31, 2003 Draft For Discussion June 29, 2004" at p. 9; ¶ 1 *supra*).[4]

Therefore, discovery is expected to show that documents that purport to represent promissory notes discounted by Banca Intesa New York, other than those identified by Movant in ¶ 2, at one time existed and may still currently exist, and that other documents relevant to the commercial transactions described in the Complaint exist.

3. Based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute all of the facts as stated by Movant in ¶ 3. (*See* ¶¶ 1-2 *supra)*.

4. Other than the statement that "Soditic, in turn, resold the notes to investors," based on the information currently available to Lead Plaintiffs, Lead Plaintiffs do not dispute the facts as stated by Movant in ¶ 4, and refer the Court to Exhibit A to the DiMaggio Affidavit for a complete and accurate statement of its contents. As to the statement in ¶ 4 that "Soditic, in turn, resold the notes to investors," based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute the facts as stated.

5. Based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute all of the facts as stated by Movant in ¶ 5.

6. Based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute all of the facts as stated by Movant in ¶ 6. PwC determined that $1.386 billion recorded on Wishaw's balance sheets over the period 1998 through 2003 was <u>devoid of any commercial substance</u>. (*See* PricewaterhouseCoopers LLP Report titled "Addendum to the Report Wishaw

---

[4] A copy of relevant portions of the PricewaterhouseCoopers LLP Report titled "Balance of Intercompany Credits Between Wishaw Trading SA And The Parmalat Group As Of December 31, 2003 Draft For Discussion June 29, 2004," and an English translation of those portions, are annexed as Exhibit 3 to the Zilka Declaration.

Trading SA - Analysis Performed In Brazil Draft For Discussion June 29, 2004" at p. 27).[5] PwC provided a flow chart explaining transactions in 2001 involving Wishaw, ADM and Trade Resources:



(*Id.* at p. 50*; see* ¶¶ 1-2 *supra*).

7. Based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute all of the facts as stated by Movant in ¶ 7. (*See* ¶¶ 1-2, 6 *supra*).

8. Other than the statement that "[t]he aggregate face amount of the Intesa Notes is $39,000,000," based on the information currently available to Lead Plaintiffs, Lead Plaintiffs

---

[5] A copy of relevant portions of the PricewaterhouseCoopers LLP Report titled "Addendum to the Report Wishaw Trading SA - Analysis Performed In Brazil Draft For Discussion June 29, 2004" (the "Addendum Report"), and an English translation of those portions, are annexed as Exhibit 2 to the Zilka Declaration.

6

dispute all of the facts as stated by Movant in ¶ 8, and refer the Court to Exhibit B to the DiMaggio Affidavit for a complete and accurate statement of its contents.

9. Other than the statement that "the Intesa Notes are for even numbers of one to six million dollars," based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute all of the facts as stated by Movant in ¶ 9, and refer the Court to Exhibit B to the DiMaggio Affidavit for a complete and accurate statement of its contents.

10. Based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute all of the facts as stated by Movant in ¶ 10. (*See* ¶¶ 1-2, 6 *supra*).

11. Based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute all of the facts as stated by Movant in ¶ 11. In its March 2004 Report, PwC stated that "Wishaw would present the note" to the New York Branch of Banca Intesa to receive the cash advance immediately. (*See* March Report at p. 49; ¶¶ 1-2, 6 *supra*).

12. Based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute all of the facts as stated by Movant in ¶ 12. (*See* ¶¶ 1-2, 6, 11 *supra*).

13. Based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute all of the facts as stated by Movant in ¶ 13. The balance sheets of Wishaw were manipulated to artificially inflate the profits and eliminate inter-company debts (and to reduce the debt of the Brazilian subsidiaries). (*See* March Report at pp. 2, 3, 10, 11 and 12; Addendum Report at pp. 4-5). PwC determined that $1.386 billion over the period 1998 through 2003 was <u>devoid of any commercial substance</u>. (*See* Addendum Report at p. 27). In his April 8, 2004 interrogatory, defendant Fausto Tonna stated that a Mr. Casalini, who was a manager of Banca Intesa-Milan Branch in charge of "large accounts," including Parmalat, recommended that Parmalat use the financing tool to obtain funds whereby instruments were discounted and sold to

third parties based on contracts that remained un-performed, and for which the underlying credit did not exist. (*See* Interrogatory of Fausto Tonna dated April 8, 2004). In its March Report, PwC described transactions involving ADM and Trade Resources with Wishaw acting as intermediary in which, it appears, no products would be transferred. (*See* March Report at pp. 45, 49, 50). Wishaw would present the note to the New York Branch of Banca Intesa to receive the cash advance immediately. (*Id.* at pp. 49). Wishaw was thus able to delay the payment on the note for one year and, in the meantime, would receive the payment from the sale of the raw materials which were to be paid at the time of delivery. (*Id.*) Since no actual transactions would take place, the promissory notes were issued solely with the intent of obtaining the financing from the banks that discounted such notes. (*Id.*). It did not appear to PwC that Banca Intesa made any verification on the underlying transactions. (*Id.*). Wishaw's management told PwC that Wishaw requested financing through issuance of promissory notes for commercial activity in which Wishaw never actually engaged, since it was formed for financial activities for Parmalat by obtaining and distributing financing, primarily to Parmalat Brazil, to other related entities and to the Parmalat Group. (*See* Addendum Report at p. 27). Based on information from Wishaw's management, it appeared to PwC that the banks that provided financing to Wishaw based on promissory notes never disputed the fact that Wishaw never actually engaged in commercial activities upon which the promissory notes were based. (*Id.*; *see* ¶¶ 1-2, 6 *supra*).

14.   Based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute all of the facts as stated by Movant in ¶ 14. Andrea Ventura, a senior executive at Parmalat Brazil and a manager of Wishaw, noted that the procedures that were used to process notes issued by Wishaw to Banca Intesa New York were outside of the normal procedures used to process Wishaw's promissory notes. (*See* Email from Andrea Ventura to Andrea Dall'Olio,

8

A. Masetti, R. Carini and Scimmiettta Pongo dated October 15, 2003).[6] In its review of details on some transactions involving Wishaw, PwC was not able to find the relevant financial and economic effects due to the lack of supporting documentation. (*See* March Report at p. 3). What PwC did find were nearly always "photocopies" of the original documents. (*Id.*). PwC further noted that "some documents did not have headings, signatures and dates." (*Id.*).

15. Based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute all of the facts as stated by Movant in ¶ 15. (*See* ¶ 14, *supra*).

16. Based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute all of the facts as stated by Movant in ¶ 16. (*See* ¶¶ 1-2, 6, 13 *supra*).

17. Other than the statement that "[b]oth ADM and ConAgra are large, well-known American agribusiness companies who are major players in international agricultural commodities transactions and are among the largest agribusinesses in the world," based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute the remaining facts as stated by Movant in ¶ 17. (*See* ¶¶ 1-2, 6, 13 *supra*).

18. Based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute all of the facts as stated by Movant in ¶ 18. (*See* ¶¶ 1-2, 6, 13 *supra*).

19. Based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute the facts as stated by Movant in ¶ 19. (*See* ¶¶ 1-2, 6, 13 *supra*).

20. Based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute all of the facts as stated by Movant in ¶ 20. (*See* ¶¶ 1-2, 6, 13 *supra*).

21. Based on the information currently available to Lead Plaintiffs, Lead Plaintiffs dispute all of the facts as stated by Movant in ¶ 21. (*See* ¶¶ 1-2, 6, 13 *supra*).

---

[6] A copy of the email from Andrea Ventura to Andrea Dall'Olio, A. Masetti, R. Carini and Scimmiettta Pongo dated October 15, 2003, and an English translation of it, are attached as Exhibit 6 to the Zilka Declaration.

| | |
|---|---|
| Dated: December 16, 2005 | Respectfully submitted,<br><br>COHEN, MILSTEIN, HAUSFELD & TOLL, P.L.L.C.<br><br>By: /s/ Catherine A. Torell<br>Catherine A. Torell (CT-0905)<br>150 East 52nd Street<br>30th Floor<br>New York, New York 10022<br>Tel: (212) 838-7797<br><br>Steven J. Toll<br>Lisa M. Mezzetti (LM-5105)<br>Mark S. Willis<br>Julie Goldsmith Reiser<br>Joshua S. Devore<br>1100 New York Avenue, N.W.,<br>Suite 500, West Tower<br>Washington, D.C. 20005-3964<br>Tel: (202) 408-4600<br>Fax: (202) 408-4699 |
| *Of Counsel*:<br><br>SPECTOR ROSEMAN & KODROFF, P.C.<br>Robert M. Roseman<br>Andrew D. Abramowitz<br>Daniel J. Mirarchi<br>Rachel E. Kopp<br>1818 Market Street, 25th Floor<br>Philadelphia, PA 19103<br>Tel: (215) 496-0300<br>Fax: (215) 496-6611 | GRANT & EISENHOFER, P.A.<br>Stuart M. Grant (SG-8157)<br>John C. Kairis (JK-2240)<br>Diane Zilka (DZ-9452)<br>Chase Manhattan Centre<br>1201 North Market Street<br>Wilmington, DE 19801<br>Tel: (302) 622-7000<br>Fax: (302) 622-7100<br><br>James J. Sabella (JS-5454)<br>45 Rockefeller Center<br>630 Fifth Avenue<br>15th Floor<br>New York, NY 10111<br>Tel: (646) 722-8500<br>Fax: (646) 722-8501<br><br>*Co-Lead Counsel for Plaintiffs* |