UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re PARMALAT SECURITIES LITIGATION<br><br>This document relates to: 04 Civ. 9771<br><br><br>DR. ENRICO BONDI,<br><br>    Plaintiff,<br><br>    v.<br><br>GRANT THORNTON INTERNATIONAL, et al.,<br><br>    Defendants. | MASTER DOCKET<br>04 MD 1653 (LAK)<br><br><br><br>04 Civ. 9771 (LAK) ECF Case<br><u>ELECTRONICALLY FILED</u> |

## REPLY MEMORANDUM IN SUPPORT OF MOTION
## OF DEFENDANT DELOITTE TOUCHE TOHMATSU
## TO DISMISS THE COMPLAINT

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Michael J. Dell (MD-7714)
Michael S. Oberman (MO-9838)
Timothy P. Harkness (TH-9026)
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9500
Attorneys for defendant Deloitte Touche Tohmatsu

KL3:2483061.7

Defendant Deloitte Touche Tohmatsu ("DTT") respectfully submits this reply memorandum in further support of its motion to dismiss the First Amended Complaint (the "FAC") as against DTT pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

## Preliminary Statement

Dr. Bondi asserts that DTT is asking the Court to "reconsider" its prior determination, based on the allegations of his initial complaint, that he stated a claim that there was an agency relationship between DTT and its member firms (Pl. Mem. 2, 5). That is mistaken. He does not dispute that his FAC changed the allegation on which the Court expressly rested that holding. Moreover, he fails to show how his new allegation supports the conclusion that was reached by the Court based on his original allegation, or to deny that his change in language was due to "the lack of a good faith basis to allege that DTT removed Olivetti." (DTT Mem. 3). Dr. Bondi retreats to alternative theories for inferring an agency relationship, but – as shown below – the type of conclusory allegations upon which he now relies have been rejected repeatedly by courts as a basis for imposing agency liability. (Point I, *infra*.)

Dr. Bondi also states in passing that he has stated a claim that DTT is vicariously liable for the conduct of its member firms based on joint venture or alter ego (Pl. Mem. 4), but his memorandum does not even argue alter ego liability against DTT (as he does against GT-US). His attempt to plead that DTT was part of a joint venture fails because, among other reasons, DTT is not alleged to have intended to form a joint venture with the member firms, DTT and the member firms are not alleged to have had equal control of the alleged joint venture and DTT is not alleged to have shared in the profits of the alleged joint venture. (Point II, *infra*.)[1]

---

[1] Because the opposition memorandum does not argue alter ego liability against DTT, this reply does not address it.

Finally, for reasons presented by DT-Italy in its reply memorandum, the FAC cannot survive assertion of the *in pari delicto* defense and the other grounds for dismissal presented by DT-Italy (including, without limitation, the lack of reliance). Upon dismissal of the claims against DT-Italy for primary liability, any claims against DTT for vicarious liability must also fail. (Point III, *infra*.)

## Argument

### I. THE FAC FAILS ADEQUATELY TO ALLEGE AN AGENCY RELATIONSHIP BETWEEN DTT AND DT-ITALY (OR ANY OTHER MEMBER FIRMS WHICH WORKED ON THE AUDIT OF PARMALAT OR RELATED ENTITIES)

As the Court noted, DTT's motion to dismiss Dr. Bondi's original complaint relied on "cases in which courts have dismissed claims against international accounting enterprises such as Deloitte absent specific allegations that the international auditors controlled the activities of the member firm." *Bondi v. Grant Thorton Int'l*, 377 F. Supp. 2d 390, 404 (S.D.N.Y. 2005). The Court distinguished those cases where "the plaintiffs did not make specific factual allegations of agency" from the original complaint in this case where "plaintiff points to DTT's alleged intervention to direct Olivetti in his conduct of the Parmalat audit, and its ultimate removal of him when he sought to qualify his audit opinion." *Id.* at 405. The Court found Dr. Bondi's allegations of the alleged "Olivetti incident" were dispositive of the original motion to dismiss.

Now, however, Dr. Bondi has made a change in the substance of that allegation, and not merely a semantic change as he argues: the FAC alleges that "Deloitte" (not, as in his original complaint, the "global Deloitte organization" DTT) removed Olivetti. Dr. Bondi does not explain this change, despite DTT's blunt suggestion that he lacks a good faith basis to assert that DTT removed Olivetti. (DTT Mem. 3). Nor does Dr. Bondi dispute DTT's assertion that,

- 2 -

because he defines "Deloitte" as referring "collectively to Deloitte Touche Tohmatsu, Deloitte & Touche USA LLP, Deloitte & Touche LLP, Deloitte & Touche S.p.A., DT S.p.A., and the other member firms of the Deloitte worldwide organization that audited Parmalat" (FAC ¶63), his new allegation "can . . . be read to allege merely that DT-Brazil (or some other Member Firm) 'removed' Olivetti," which "does not state a claim against DTT." (DTT Mem. 4). And there can be no doubt that his old allegation of control by DTT is gone: his memorandum does not point to any paragraph of the FAC that contains that allegation, and argues that the "Olivetti incidents" show *joint* control, not singular control by DTT. (Pl. Mem. 16).[2] With that old allegation gone and with no other specific allegation of an exercise of control by DTT over Olivetti, Dr. Bondi falls back on three defective arguments.

First, Dr. Bondi tries to argue that the Court should deny DTT's motion for the reasons the Court denied GTI's motion to dismiss the original complaint. However, the Court was very careful to distinguish the line of prior cases also relied upon by GTI, and found that Dr. Bondi made the requisite "specific allegations" in his complaint's assertion that "GTI expelled GT-Italy for its part in the fraud." 377 F. Supp. 2d at 408. In contrast, the FAC does not allege that DTT expelled DT-Italy. Instead, while Dr. Bondi asserts *in his brief* that "DTT has exactly the same power" (Pl. Mem. 6), none of the quoted allegations *in his FAC* speaks of expulsion. What Dr. Bondi cites are the types of professional standards that allow member firms to collaborate but that do not give rise to an agency relationship. *See id.* at 404-05.

---

[2] While FAC ¶¶ 597 and 669-80 make allegations about persons who participated in certain communications about a difference of opinion between DT-Italy and DT-Brazil in April 2002, the FAC does not allege – because Dr. Bondi cannot allege – that DTT issued any directive to Olivetti. The predicate for the allegation of control was the purported removal of Olivetti. *See* 377 F. Supp. 2d at 407.

Second, Dr. Bondi misreads (at 5) the moving memorandum of DT-US (at 18-19); DT-US, in describing his "revised version of the Olivetti story" in his FAC, does *not* state – as he now asserts (Pl. Mem. 8) – that the FAC alleges that DTT removed Olivetti. Similarly, DTT's candid acknowledgement that "almost all" of the partners listed on emails concerning the difference of opinion between DT-Italy and DT-Brazil were "seconded to DTT" does not show agency. *See* DTT Mem. 4. Moreover, neither DT-US's nor DTT's moving memorandum could cure his failure to state a claim against DTT *in his FAC*.

Third, Dr. Bondi refers to the type of allegations that have repeatedly been found to be insufficient to state a claim for vicarious liability in the cases that were distinguished by the Court when faced with the different allegations of his initial complaint. *See* 377 F. Supp. 2d at 404, n. 102 (citing and distinguishing cases); *see, e.g., Newby v. Enron Corp.*, 394 F.3d 296, 308-09 (5th Cir. 2004) (rejecting allegation that Anderson member firms were part of one firm where plaintiffs alleged that the Swiss "umbrella" organization promulgated and enforced professional standards); *In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391, 393-94, 396 (S.D.N.Y. 2003) (rejecting allegation that Anderson member firms were part of one firm where plaintiff alleged that there was partner overlap; sharing of costs and profits; global sharing of professional standards; maintenance of a global infrastructure and administration; and marketing of a one-firm concept). However, now that Dr. Bondi has amended his complaint, those cases are no longer distinguishable. For example, Dr. Bondi relies on statements about global cooperation between and among DTT and member firms. (Pl. Mem. 6) (alleging, e.g., that DTT promulgates and exercises oversight over professional standards; that member firms are required to use the Deloitte & Touche name and logo when pitching or delivering client services; that member firms must follow DTT's Professional Practice Manual and DTT's Audit Approach

Manual; and that DTT's global management need agree on member firms' selections of their Managing Partner).

Finally, Dr. Bondi himself provides yet another reason why the Court should reject his assertion that he has stated a claim of agency against DTT. Dr. Bondi now admits that "DTT performs no services, and has no purpose other than to coordinate work and enforce standards among the member firms." (Pl. Mem. 11). Thus, the member firms, in performing audits, are conducting their own business and concededly not any business of DTT. However, it is basic to an agency relationship that the purported agent performs the business of the purported principal and not just the purported agent's own business. See *Maung Ng We & Massive Atlantic Ltd. v. Merrill Lynch & Co.*, 2000 WL 1159835 at *9 (S.D.N.Y. Aug. 15, 2000) (collecting cases), *quoting* Restatement (Second) of Agency § 39 ("Authority is conferred to carry out the purposes of the principal and not of those of someone else."); *Williams v. Ford Motor Company*, 990 F. Supp. 551, 554-55 (N.D. Ill. 1997) ("An agency relationship exists when one 'undertakes to manage some affairs to be transacted for . . . [the] principal."). There is therefore no agency relationship between DTT and any of the member firms.

## II. THE FAC FAILS ADEQUATELY TO ALLEGE A JOINT VENTURE THAT INCLUDES DTT

Dr. Bondi does not dispute the requirements for pleading the existence of a joint venture under Illinois law. *Compare* DTT Mem. 5-6 *with* Pl. Mem. 7. While the FAC leaves it unclear whether he intended to include DTT in the purported joint venture, he flatly proclaims in his brief that "DTT, DT-US and DT-SpA are also liable as joint venturers." (Pl. Mem. 7). But he then fails to show that he has pled facts satisfying each of the requirements of a joint venture including DTT – and the inability to satisfy even one of those elements is fatal to his joint venture claim. *Obrien v. Cacciatore*, 227 Ill.App.3d 836, 843, 591 N.E.2d 1384, 1389

(Ill.App.Ct. 1992) ("In the absence of any of these elements, there is no joint venture."); *Trustmark Insurance Co. v. General Cologne Life Reinsurance of America*, 2001 WL 1268539 at *4 (N.D.Ill. Oct. 22, 2001) ("The failure to prove any of the . . . five elements results in a finding that no joint venture exists."). Accordingly, paragraph 32 of the FAC got it right by not including DTT in the joint venture allegation.

First, Dr. Bondi cannot point to any factual allegations in the FAC showing that DTT and the member firms intended to form a joint venture to audit Parmalat (or for any other purpose); on the contrary, where the FAC alleges an intent for member firms to collaborate, it is through a limited liability entity. (FAC ¶¶ 52, 263-64). Second, Dr. Bondi does not plead any facts which would show the exercise of equal control by DTT and the member firms of an alleged joint venture to audit Parmalat (or for any other purpose). He argues that the "Deloitte entities" shared control of "their specific joint venture to provide services to Parmalat" (Pl. Mem. 15), but none of the FAC allegations he cites in this section alleges facts showing equal control by the member firms and DTT with respect to the services provided to Parmalat, as would be needed to state a claim. *See* 377 F. Supp. 2d at 407. Third, none of Dr. Bondi's allegations in his FAC show DTT sharing in the profits of the purported joint venture. Dr. Bondi points to allegations of the re-allocation of profits from certain member firms to other member firms (Pl. Mem. 17), but not allegations of profits coming from or going to DTT.

### III. ANY CLAIM AGAINST DTT IS LIMITED TO ANY REMAINING CLAIMS OF PRIMARY LIABILITY AGAINST DT-ITALY

DT-Italy shows in its reply memorandum, *inter alia*, that all of the claims in the FAC are barred by the doctrine of *in pari delicto* and that all reliance-based claims must be dismissed. DTT joins in these and all of DT-Italy's arguments.[3]

DT-Italy shows, *inter alia*, how Dr. Bondi misconstrues the Seventh Circuit's decision in *Cenco Inc. v. Seidman & Seidman*, 686 F.2d 449, 456 (7th Cir. 1982), cert. denied, 459 U.S. 880 (1982), as setting forth a multi-factored test that must be assessed before applying the *in pari delicto* defense. But even if the policy considerations set out in *Cenco* were applied as a preliminary test here, they would weigh in favor of a finding of *in pari delicto*.

The first objective, according to *Cenco*, is to compensate the victims of the wrongdoing and avoid rewarding those responsible. 686 F. 2d at 455. However, here as in *Cenco*, a judgment in favor of plaintiff "would be perverse from the standpoint of compensating the victim." *Id.* While Dr. Bondi correctly points out that the corrupt insiders would not benefit from such a judgment (Pl. Mem. 53), that is only half the story. The beneficiary of a judgment in favor of Plaintiff would be the new Parmalat S.p.A. and its shareholders, many of whom are the

---

[3] Dr. Bondi disputes that DTT, DT-Italy and DT-US may raise the *in pari delicto* defense because it was not raised in response to the original complaint. He is wrong. *See Vega v. State Univ. of New York Bd. of Trustees*, No. 97 Civ. 5767 (DLC), 2000 WL 381430, at *2 (S.D.N.Y. April 13, 2000) (defendant may bring successive motions to dismiss given the procedural and legal complexities of the litigation; this is also supported by the language of Rules 12(g) and 12(h)(2)); *see also Sharma v. Skaarup Ship Management*, 699 F. Supp. 440, 444 (S.D.N.Y. 1985). Moreover, Dr. Bondi should not be permitted to assert that the FAC renders the original complaint not binding (Pl. Mem. 38), while arguing that defendants are precluded from moving to dismiss the FAC based on grounds not raised in response to the original. (Pl. Mem. 36-38). Finally, it would make little sense to preclude defendants from raising new substantive arguments in their motions to dismiss the FAC when they could simply answer the FAC and then move pursuant to Rule 12(c), which is governed by the same legal standard as Rule 12(b)(6). *Vega* at *1 ("The same standard applies to a motion for dismissal on the pleadings under Rule 12(c).").

KL3:2483061.7

very banks that Plaintiff claims conspired with and aided the culpable insiders. For example, both Bank of America and Citigroup, Inc. are shareholders of the new Parmalat S.p.A., and Dr. Bondi has sued both alleging that they conspired with and aided the culpable insiders in looting Parmalat. *Bondi v. Bank of America*, No. 04 MD 1653 (LAK) (S.D.N.Y.); *Bondi v. Citigroup, Inc.*, No. L-1092-04 (N.J. Super. Ct. Law Div.). Therefore, this consideration, as in *Cenco*, weighs in favor of a finding of *in pari delicto*.

The second consideration is deterrence. *See Cenco*, 686 F.2d at 455. As *Cenco* pointed out, "[f]rom the standpoint of deterrence, the question is whether the type of fraud that engulfed [Parmalat]… will be deterred more effectively if [Parmalat] can shift the entire cost of the fraud from itself… to the independent auditors." *Id*. *Cenco*'s answer applies here too: "if the owners of the corrupt enterprise are allowed to shift the costs of the wrongdoing entirely to the auditor, their incentives to hire honest managers and monitor their behavior will be reduced." *Id*. As in *Cenco*, any alleged failure of DT-Italy to detect the fraud at Parmalat pales in comparison to Parmalat's admitted, intentional crafting and execution of that fraud. Thus, this consideration also weighs in favor of a finding of *in pari delicto*.

### Conclusion

DTT respectfully requests the Court to enter an Order dismissing the First Amended Complaint as to DTT with prejudice, and granting such other and further relief as the Court deems proper.

Dated: New York, New York
December 19, 2005

KRAMER LEVIN NAFTALIS & FRANKEL, LLP

By: ___/s/ Michael J. Dell___
Michael J. Dell (MD-7714)
Michael S. Oberman (MO-9838)
Timothy P. Harkness (TH-9026)

        1177 Avenue of the Americas
        New York, New York 10036
        (212) 715-9500

        Attorneys for defendant Deloitte Touche Tohmatsu