UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  | : |  |
|---|---|---|
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
| In re: PARMALAT SECURITIES LITIGATION | : | MASTER DOCKET |
|  | : | 04 MD 1653 (LAK) ECF Case |
| This Document Relates to: 04 Civ. 0030 (LAK) | : |  |
|  | : | ELECTRONICALLY FILED |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW OF BANCA NAZIONALE DEL LAVORO, S.p.A.
IN OPPOSITION TO LEAD PLAINTIFFS' MOTION IN LIMINE**


DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450-4000


*Attorneys for Defendant Banca Nazionale
Del Lavoro, S.p.A.*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT...................................................................................... 1

ARGUMENT ............................................................................................................... 3

POINT I. THE OCTOBER 2004 REPORT CONSTITUTES INADMISSIBLE HEARSAY
          THAT FALLS UNDER NO RECOGNIZED EXCEPTIONS. .................................... 3

    A.      The October 2004 Report Constitutes Hearsay...................................................... 3

    B.      The October 2004 Report Does Not Fit within Any Exception to the Hearsay
          Rule. ..................................................................................................................... 3

          1.      The October 2004 Report does not constitute the "factual findings"
              of an investigation. ....................................................................................... 4

          2.      The October 2004 Report lacks the requisite guarantees of
              trustworthiness. ............................................................................................ 6

               (a)      The October 2004 Report is untrustworthy because it
                  incorporates the improper bias or motivation of both the Italian
                  Tax Police and the subjects interviewed. ......................................... 7

               (b)      The October 2004 Report is preliminary, and should be
                  excluded on that basis alone........................................................... 9

               (c)      The October 2004 Report is untrustworthy because it is based
                  upon substantial amounts of information that would be
                  inadmissible in evidence. ............................................................. 10

               (d)      The October 2004 Report is untrustworthy because the
                  competence of investigators and the procedures employed are
                  suspect. ...................................................................................... 11

          3.      Cases cited by Plaintiffs concerning the introduction of foreign
              documents are inapposite. ........................................................................... 12

    C.      The October 2004 Report Comprises Inadmissible Statements, and Nothing
          Else, and Therefore Should be Excluded as a Whole. ......................................... 13

POINT II. ANY PROBATIVE VALUE OF THE POLICE REPORT IS OUTWEIGHED BY
          THE RISK OF UNFAIR PREJUDICE UNDER F.R.E 403........................................ 15

POINT III. IN ANY EVENT, PLAINTIFFS' MOTION IS PREMATURE AND SHOULD
          BE DENIED AT THIS STAGE OF DISCOVERY.................................................. 16

P<small>AGE</small>

CONCLUSION ........................................................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

PAGE

Anderson v. City of New York,
    657 F. Supp. 1571 (S.D.N.Y. 1987)..........................................................................*passim*

Banyaga v. Univ. of Rochester,
    No. 01-CV-6472L, 2005 U.S. Dist. LEXIS 41886 (W.D.N.Y. May 10, 2005)................ 16

Beech Aircraft Corp. v. Rainey,
    488 U.S. 153 (1988) ......................................................................................... 6

Berger v. United States,
    295 U.S. 78 (1935) ........................................................................................... 8

Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    805 F.2d 49 (2d Cir. 1986) ............................................................................... 4

City of New York v. Pullman,
    662 F.2d 910 (2d Cir. 1981)..............................................................................*passim*

Eng v. Scully,
    146 F.R.D. 74 (S.D.N.Y. 1993) ................................................................. 7,10,13

Felice v. Long Island R.R. Co.,
    426 F.2d 192, 196 (2d Cir. 1970) .................................................................. 14

Fraley v. Rockwell Int'l Corp.,
    470 F. Supp. 1264 (S.D. Ohio 1979).............................................................. 11

Hall v. W. Prod. Co.,
    988 F.2d 1050 (10th Cir. 1993).......................................................................16

In re Parmalat Sec. Litig.,
    376 F. Supp. 2d 472 (S.D.N.Y. July 13, 2005) ............................................... 16

John McShain, Inc. v. Cessna Aircraft Co.,
    563 F.2d 632 (3d Cir. 1977)............................................................................16

LeRoy v. Sabena Belgian World Airlines,
    344 F.2d 266 (2d Cir.), cert. denied, 382 U.S. 878 (1965) .................................7

P AGE

Lewis v. Velez,
  149 F.R.D. 474 (S.D.N.Y. 1993) ................................................................................ passim

Lloyd v. American Export Lines, Inc.,
  580 F.2d 1179 (3d Cir. 1978) ..................................................................................... 8

Lynn v. Bliden,
  No. 00 Civ. 4775 (KMW) (THK), 2004 WL 2181094 (S.D.N.Y. Sept. 27, 2004) .......... 14

McKinnon v. Skil Corp.,
  638 F.2d 270 (1st Cir. 1981) ..................................................................................... 14

Melridge, Inc. v. Heublein,
  125 B.R. 825 (D. Or. 1991) ...................................................................................... 4,12

Miller v. Field,
  35 F.3d 1088 (6th Cir. 1994) .................................................................................... 10,13

Miller v. New York Produce Exch.,
  550 F.2d 762 (2d Cir. 1977), cert. denied, 434 U.S. 823 (1977) ...................................... 6

Monus v. Antonucci,
  Bankr. No. 92-41883, 1995 WL 469694 (Bankr. N.D. Ohio May 18, 1995) ............... 5,10

Morgan Guaranty Trust Co. v. Hellenic Lines Ltd.,
  621 F. Supp. 198 (S.D.N.Y. 1985) .................................................................................. 12

Paolitto v. John Brown E.&C., Inc.,
  151 F.3d 60 (2d Cir. 1998) ........................................................................................... 15

Parsons v. Honeywell, Inc.,
  929 F.2d 901 (2d Cir. 1991) ........................................................................................ 4,13

Perfetto v. Hoke,
  898 F. Supp. 105 (E.D.N.Y. 1995) ................................................................................. 14

Spanierman Gallery v. Merritt,
  No. 00 Civ. 5712 (LTS) (THK), 2003 WL 22909160 (S.D.N.Y. Dec. 9, 2003) ............... 4

Strobl v. New York Mercantile Exch.,
  590 F. Supp. 875 (S.D.N.Y. 1984) ............................................................................. 3,5,8

United Air Lines, Inc. v. Austin Travel Corp.,
  867 F.2d 737 (2d Cir. 1989) ....................................................................................... 9,11

PAGE

United States v. Banky-Alli,
    No. 05-0589 CR, 2005 WL 3116754 (2d Cir. Nov. 22, 2005) ........................................ 10

United States v. Demjanjuk,
    367 F.3d 623 (6th Cir. 2004).......................................................................................... 12

United States v. Durrani,
    835 F.2d 410 (2d Cir. 1987)........................................................................................... 9

United States v. Grady,
    544 F.2d 598 (2d Cir. 1976)........................................................................................... 12

United States v. Jacques Dessange, Inc.,
    No. S2 99 CR 1182 (DLC), 2000 WL 294845 (S.D.N.Y. Mar. 21, 2000) .................. 4,7,9

United States v. Rea,
    958 F.2d 1206 (2d Cir. 1992)......................................................................................... 15

United States v. Szehinskyj,
    104 F. Supp. 2d 480 (E.D. Pa. 2000) ............................................................................ 12

United States v. Warren,
    42 F.3d 647 (D.C. Cir. 1994) ......................................................................................... 14

Violette v. Armonk Assocs.,
    849 F. Supp. 923 (S.D.N.Y. 1994).................................................................................. 16

Yates v. Bair Transp., Inc.,
    249 F. Supp. 681 (S.D.N.Y. 1965).................................................................................. 14

Yongo v. Immigration and Naturalization Serv.,
    355 F.3d 27 (1st Cir. 2004) ............................................................................................ 12

Zenith Radio Corp. v. Matsushita Elec. Indus. Co.,
    505 F. Supp 1125 (E.D. Pa. 1980),
    rev'd in part on other grounds, 723 F.2d 238 (3d Cir. 1983),
    rev'd on other grounds, 475 U.S. 574 (1986) .......................................................... *passim*

<u>STATUTES & RULES</u>

<u>PAGE</u>

Fed. R. Evid. 403 ................................................................................................ 15,16

Fed. R. Evid. 701 ................................................................................................ 15

Fed. R. Evid. 702 ................................................................................................ 14

Fed. R. Evid. 801(c) ........................................................................................... 3

Fed. R. Evid. 802 ................................................................................................ 3

Fed. R. Evid. 803(8) ........................................................................................... *passim*

Fed. R. Evid. 803(8)(A) ..................................................................................... 12

Fed. R. Evid. 803(8)(B) ..................................................................................... 12

Fed. R. Evid. 803(8)(C) ..................................................................................... *passim*

Fed. R. Evid. 803(22) ......................................................................................... 8

<u>OTHER AUTHORITIES</u>

28 U.S.C. app. (2000) ......................................................................................... 6, 13

Defendant Banca Nazionale del Lavoro, S.p.A. ("BNL") respectfully submits this memorandum of law in opposition to Lead Plaintiffs' ("Plaintiffs") motion in limine.

## PRELIMINARY STATEMENT

Plaintiffs move for an order providing that a report prepared by the Finance Guard of the Tax Police Command (the "Italian Tax Police") for the Parma Investigations and Prosecutions Office (the "Parma Prosecutor") for the Emilia-Romagna Region of Italy satisfies the hearsay exception of Rule 803(8)(C). Plaintiffs' characterization of the report of the Italian Tax Police (the "October 2004 Report" or "Report") as a trustworthy document that merits admission into evidence for the truth of the matters asserted must be rejected. Far from reflecting objective or careful fact finding, the Report is in the category of "charging documents" (or precursors to charging documents) that courts refuse to admit under Rule 803(8)(C) because they are deemed untrustworthy and highly prejudicial. Indeed, virtually all factors that courts consider to evaluate trustworthiness weigh against admissibility of the Report.

The 50-page Report was prepared by members of the Italian Tax Police for the Parma Prosecutor to support the bringing of charges against certain Ifitalia employees. The Report engages in generalization, speculation, mind-reading, hindsight, and slanted characterizations.[1] Further, nearly all of the October 2004 Report's purported "findings" and "conclusions" are based either on hearsay, or hearsay within hearsay. In fact, the October 2004 Report is nothing more than a compendium of (a) selective quotations from unsworn statements, (b) summaries of unsworn statements of "witnesses"—none of whom have been examined or cross-examined under oath by BNL—and many of whom have already been accused by the Italian Tax Police or

---

[1] (See, e.g., Oct. 2004 Rep. 82 820, 82 829, 82 830, 82 831, 82 832, 82 833, 82 841, 82 844, 82 845, 82 846, 82 861.)

are under investigation or indictment in Italy; (c) hypotheses, conjecture, assumptions and credibility determinations by four members of the Italian Tax Police in reaction thereto; (d) the views of individuals labeled "experts," none of whom has been qualified as an expert in this case; (e) oblique references to assorted documents concerning the factoring transaction; and (f) purported "findings" and "conclusions" of the Italian Tax Police based on all of the above.

Without any personal knowledge of the events in question, and without any apparent expertise in the business of factoring, the Italian Tax Police officers have produced an accusatory instrument that is neither "factual" nor "trustworthy" as required by law.  In their final "Executive Summary," the authors assert—as the ultimate conclusion of their report as to Ifitalia—that their analysis leads them "to imply the connivance" of Ifitalia in the alleged factoring transaction.  (Id. at 82 861 (emphasis added).)  After fifty pages, they choose to close with an "implication" of guilt—hardly a factual finding.

Further, as the rationale for bringing their motion prematurely, while discovery is pending and more than a year before trial, Plaintiffs essentially tell the Court that they are unable or unwilling to prove their case against BNL through the testimony of witnesses because of the amount of work that it will entail.  (Pls.' Mem. 3.)  They therefore ask the Court to permit them to do what the case law does not permit—to present to a jury a skewed and preliminary government report cloaked in "an aura of special reliability and trustworthiness," City of New York v. Pullman, 662 F.2d 910, 915 (2d Cir. 1981), as a substitute for live, testifying witnesses, and authenticated and admissible documentary evidence.

While Plaintiffs contend that police and FBI reports "routinely" fall within the provisions of Rule 803(8), their own cases demonstrate that the admissibility of such reports is extremely limited.  (Pls.' Mem. 5, 6.)  Plaintiffs cite no case in which such a preliminary report to a foreign

prosecutor was admitted in evidence under the Rule.  Plaintiffs' effort to usurp the role of the fact-finder must be denied.[2]

## **ARGUMENT**

### POINT I.

### THE OCTOBER 2004 REPORT CONSTITUTES INADMISSIBLE HEARSAY THAT FALLS UNDER NO RECOGNIZED EXCEPTIONS.

A.     The October 2004 Report Constitutes Hearsay.

The October 2004 Report is an out-of-court statement made by four members of the Italian Tax Police that includes and purports to rely upon a collection of excerpts of other out-of-court statements.  Plaintiffs seek to introduce the Report into evidence to prove the truth of the matters asserted.  The October 2004 Report constitutes hearsay, see Fed. R. Evid. 801(c), and is inadmissible at trial, see Fed. R. Evid. 802.

B.     The October 2004 Report Does Not Fit within Any Exception to the Hearsay Rule.

Plaintiffs try to fit the October 2004 Report within the Rule 803(8) exception for records and reports of public offices and agencies, namely those setting forth "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."  Fed. R. Evid. 803(8)(C). This exception is inapplicable because the Report does not constitute the factual findings of a public agency as contemplated by the Advisory Committee, see, e.g., Strobl v. New York Mercantile Exch., 590 F. Supp 875, 879-80 (S.D.N.Y. 1984) (excluding public report not constituting "factual findings"), nor does it possess the requisite guarantees of trustworthiness,

---

[2] While we address solely the question of admissibility in this memorandum, nothing in it should be deemed acceptance of either Plaintiffs' representations as to the operative facts, or the representations made in the October 2004 Report.

3

see, e.g., Lewis v. Velez, 149 F.R.D. 474, 489 (S.D.N.Y. 1993) (excluding public report failing to meet trustworthiness requirement).

     1.   The October 2004 Report does not constitute
           the "factual findings" of an investigation.

        The October 2004 Report is an accusatory instrument that fails to satisfy Rule 803(8)(C)'s threshold requirement that public records or reports represent the factual findings of an investigation pursuant to a legal authority.  United States v. Jacques Dessange, Inc., No. S2 99 CR 1182 (DLC), 2000 WL 294845, at *3 (S.D.N.Y. Mar. 21, 2000).

        The admissibility of reports under Rule 803(8)(C) is a fact-specific analysis.  See Lewis, 149 F.R.D. at 488 ("Investigative reports are admissible at the court's discretion.").  The facts extant in the cases cited by Plaintiffs support the application of Rule 803(8)(C) to record-keeping entries or specific objective analysis only; they do not support the admissibility of a subjective, unverifiable, report such as the document at issue here.  See Parsons v. Honeywell, Inc., 929 F.2d 901, 907 (2d Cir. 1991) (only those portions of police report based on officers' direct, routine observation were admissible under 803(8)(C)); Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 805 F.2d 49, 54 (2d Cir. 1986) (FBI fingerprint analyses were admissible because trier of fact required expert assistance); Spanierman Gallery v. Merritt, No. 00 Civ. 5712 (LTS) (THK), 2003 WL 22909160, at *5-6 (S.D.N.Y. Dec. 9, 2003) (noting that the record before the court did not contain the FBI reports at issue and merely noting in general that certain FBI reports may be admissible under Rule 803(6) or 803(8)); Melridge, Inc. v. Heublein, 125 B.R. 825, 829 (D. Or. 1991) (Swiss police report admissible for limited purpose of showing disbursement of funds upon closing of bank account).

        The accusatory and speculative nature of the October 2004 Report stands in stark contrast to the narrow and objectively verifiable factual findings at issue in cases cited by Plaintiffs.

Indeed, the limited scope of the term "findings" as delineated in Plaintiffs' cases wholly undermines Plaintiffs' contentions.  In contrast to the above cases, courts have declined to admit as "factual findings" public records that are essentially accusatory reports of investigations undertaken for the purpose of developing a complaint against a defendant.  Strobl, 590 F. Supp at 879-80; see also Zenith Radio Corp. v. Matsushita Elec. Indus. Co., 505 F. Supp 1125, 1180 (E.D. Pa. 1980) (excluding "findings" of report used as precursor to a "charging document"), rev'd in part on other grounds, 723 F.2d 238 (3d Cir. 1983), rev'd on other grounds, 475 U.S. 574 (1986).  The court in Strobl noted that these types of documents represent "'findings' in name only . . . [and] do not constitute a reasoned result based on an impartial weighing of evidence and the operation of a disinterested mind."  590 F. Supp. at 880.  The document here is, in effect, akin to an indictment, or the precursor to one, prepared by the foreign equivalent of an enforcement division.  As such, the Italian Tax Police's prosecutorial investigation into the factoring arrangement between Parmalat and Ifitalia cannot reasonably be viewed as an examination by an "impartial" or "disinterested" party.

Furthermore, a report drawing debatable conclusions from unreliable or unverifiable sources does not fit within this hearsay exception.  See Monus v. Antonucci, Bankr. No. 92-41883, 1995 WL 469694, at *9 (Bankr. N.D. Ohio May 18, 1995) (conclusory findings of bankruptcy examiner inadmissible when based on unsworn testimony and unverifiable sources; the court found it unlikely that such report was "one of those public records or reports which the drafters of the Federal Rules of Evidence had in mind in creating the Rule 803(8) exception").  The document Plaintiffs seek to admit is a prosecutorial instrument comprised of accusations drawn from layer upon layer of otherwise inadmissible hearsay.  As such, it falls outside the Rule 803(8)(C) exception and cannot be admitted.

5

2.  The October 2004 Report lacks the
    <u>requisite guarantees of trustworthiness.</u>

Even if the October 2004 Report could somehow be characterized as a "factual finding"

under Rule 803(8)(C), it still must be excluded as a matter of law because it lacks

trustworthiness.  <u>See</u> <u>Lewis</u>, 149 F.R.D. at 489 (excluding otherwise admissible report upon

finding of untrustworthiness).  The Advisory Committee made plain that "broad leeway is

accorded to the trial judge to exclude 803(8) material where the sources of information and other

circumstances indicate lack of trustworthiness." <u>Zenith</u>, 505 F. Supp at 1146; <u>accord</u> <u>Miller v.</u>

<u>New York Produce Exch.</u>, 550 F.2d 762, 769 (2d Cir. 1977), <u>cert. denied</u>, 434 U.S. 823 (1977);

<u>see also</u> Advisory Committee's Note to Fed. R. Evid. 803(8), 28 U.S.C. app. 910-11 (2000))

("[T]he rule . . . assumes admissibility in the first instance but with ample provision for escape if

sufficient negative factors are present.").

The Supreme Court has identified a non-exclusive list of factors to consider in

determining whether evidence is trustworthy for the purposes of Rule 803(8).  These include (a)

possible bias if reports are prepared with a view to litigation; (b) the timeliness of an

investigation; (c) the skill and experience of the investigators; and (d) whether a hearing was

held and on what level it was conducted.  <u>Beech Aircraft Corp. v. Rainey</u>, 488 U.S. 153, 168

n.11 (1988) (citing Advisory Committee's Note to Fed. R. Evid. 803(8), 28 U.S.C. app. 725

(1982)).

The motivation of the officials conducting the investigation is also a critical factor, <u>see</u>

<u>Anderson v. City of New York</u>, 657 F. Supp. 1571, 1578 (S.D.N.Y. 1987) (Leisure, J.), as are

the extent to which evidence is supplied by interested parties; the extent to which "findings" are

based on information that would be inadmissible in evidence; the finality of the findings; and

whether procedural safeguards were employed during the investigation.  <u>See</u> <u>Zenith</u>, 505 F. Supp

at 1147; <u>see also</u> <u>Jacques Dessange</u>, 2000 WL 294845, at *3 (excluding report where information was supplied by interested parties); <u>Eng v. Scully</u>, 146 F.R.D. 74, 80 (S.D.N.Y. 1993) (excluding report based on inadmissible evidence); <u>Pullman</u>, 662 F.2d at 915 (excluding report containing non-final "findings"); <u>Anderson</u>, 657 F. Supp. at 1579 (excluding report where procedural safeguards were not observed).

In asserting the trustworthiness of the October 2004 Report, Plaintiffs rely solely on the fact that the report was prepared by persons whose organization has the term "police" in its title. (Pls.' Mem. 6.)  This is entirely insufficient to override the factors above which mandate exclusion.

<blockquote>
(a)  The October 2004 Report is untrustworthy because it incorporates the improper bias or motivation of <u>both the Italian Tax Police and the subjects interviewed.</u>
</blockquote>

In assessing admissibility, the "likelihood of improper motivation on the part of a witness can outweigh all other trustworthiness factors." <u>Lewis</u>, 149 F.R.D. at 488.  The term "witness" encompasses both the preparers of a report as well as the individuals who provided the basis for the report's conclusions.  <u>See</u> <u>id.</u> (bias of report's author); <u>Jacques Dessange</u>, 2000 WL 294845, at *3 (bias of individuals interviewed).  Indeed, the Second Circuit noted that in most cases in which reports have been excluded despite the Rule 803(8) exception, "there has been reason to suspect bias." <u>LeRoy v. Sabena Belgian World Airlines</u>, 344 F.2d 266, 272 (2d Cir.), <u>cert. denied</u>, 382 U.S. 878 (1965).  Bias as contemplated by courts and the Advisory Committee refers "principally to reports compiled in anticipation of litigation." <u>Lewis</u>, 149 F.R.D. at 488.

The court in <u>Zenith</u> discussed the bias inherent in a report created specifically for the purpose of determining whether to initiate judicial proceedings:

<blockquote>
[S]erious questions of motivation . . . arise from the fact that the factual "findings" . . . are the precursor to the charging document which initiates the
</blockquote>

> prosecution, much as the facts gathered in a grand jury investigation are those resulting in an indictment.  The factual findings in both cases are then memorialized in documents whose purpose is not to "find" facts but to accuse.

505 F. Supp at 1180.  Finding that the report was accusatory and generated from an investigation leading to formal proceedings, the court held that it could not be considered trustworthy under Rule 803(8)(C).  Id.; see also, e.g., Strobl, 590 F. Supp. at 880 (excluding factual allegations in CFTC Enforcement Division's complaint as inherently untrustworthy notwithstanding the ALJ's adoption of the same findings); cf. Anderson, 657 F. Supp. at 1579 (excluding as biased the report of a Congressional committee that, inter alia, "articulate[d] findings based upon a dubious, highly charged process of essentially 'interviewing' interested parties").[3]

Here, there is no question that the October 2004 Report is, and was intended to be, an accusatory document.  The Italian Tax Police prepared it in their capacity as an arm of the prosecutor, and it is tainted by prosecutorial bias.[4]  The authors plainly selected from among the testimony and documentary evidence that which promotes their agenda.  (See supra Prelim. Statement, citing Oct. 2004 Rep.)

An additional source of bias arises where, as here, individuals contributing to a report's contents may be charged with wrongdoing.  Lewis, 149 F.R.D. at 488.  Such statements are

---

[3] Plaintiffs cite Lloyd v. American Export Lines, Inc., 580 F.2d 1179, 1191 (3d Cir. 1978), for the proposition that a prosecutor or investigating officer has an interest in prosecution for the sake of justice.  (Pls.' Mem. 6.)  Lloyd is inapplicable here, first because the court made this statement in the context of evaluating a final judgment admissible under Rule 803(22) rather than an untested report under 803(8)(C), and second because the language quoted referred specifically to a United States investigatory body.  See 580 F.2d at 1191.  Indeed, the Third Circuit in Lloyd specifically observed that "the reliability and procedural safeguards surrounding a foreign country's criminal proceeding may be far less comparable to our own."  Id. at 1190.  Plaintiffs' citation to Berger v. United States, 295 U.S. 78 (1935), is similarly inapposite, as it concerns the charge of a United States prosecutor, not that of a foreign prosecutorial agency.  Id. at 88.

[4] Should Plaintiffs disagree that this is the role of the Italian Tax Police within the Italian legal system, we recognize the Court may wish to explore these issues in more detail prior to deciding this motion.  If the Court desires, BNL will present expert testimony explaining applicable Italian law, and will cross-examine any expert put forward by Plaintiffs regarding these issues.

infused with a witness' "desire to exculpate himself and to relieve himself or his employer of liability," undermining a finding of trustworthiness.  Id.; see also United States v. Durrani, 835 F.2d 410, 425 (2d Cir. 1987) (noting lower court's exclusion of report based on sources' motivation to mislead); Jacques Dessange, 2000 WL 294845, at *3 (excluding report when witness' statements were arguably self-interested).

The October 2004 Report is doubly infected, both by the motivation of the Italian Tax Police to assist the prosecution, and by any motivation on the part of those interrogated to minimize their own liability (and possibly obtain leniency in treatment) by implicating others. This applies not only to Parmalat insiders who were interviewed, but also to other pool members involved in the factoring transaction who have civil cases pending against Ifitalia in Italy. Because the October 2004 Report is based so heavily on such interviews, it is untrustworthy at its core.

        (b)     The October 2004 Report is preliminary,
                 and should be excluded on that basis alone.

Another factor affecting the trustworthiness of a public record under Rule 803(8)(C)—the degree of finality of its findings—weighs in favor of excluding the Report.  Pullman, 662 F.2d at 914; see also United Air Lines, Inc. v. Austin Travel Corp., 867 F.2d 737, 743 (2d Cir. 1989) (finding interim report inadmissible).  A conclusion made in the initial stages of a protracted process, susceptible to modification or reversal, is not trustworthy.  Zenith, 505 F. Supp. at 1147-48, 1180; Pullman, 662 F.2d at 914.  Ostensibly, the administrative or judicial process following an interim report of investigation serves as the test of factual findings, but prior to such process the findings are untested and thus, as here, untrustworthy.  Zenith, 505 F. Supp. at 1180.  The purported findings of the October 2004 Report are far too preliminary, and too likely to be modified upon review, to satisfy the trustworthy requirements under Rule 803(8)(C).

      (c)    The October 2004 Report is untrustworthy because
                it is based upon substantial amounts of information
                <u>that would be inadmissible in evidence.</u>

Courts also deem untrustworthy findings, such as those here, that are "pervaded by the receipt of ordinarily inadmissible material or that are notably lacking in procedural safeguards." <u>Zenith</u>, 505 F. Supp. at 1148. Indeed, a report may be excluded if inadmissible hearsay dominates. <u>Id</u>. In explaining this result, the <u>Zenith</u> court reasoned that when hearsay is the basis of a report's "factual" conclusions, the possibility that individual sources are unreliable could lead to an unreliable report. <u>See id.</u> at 1167; <u>see also</u> <u>United States v. Banky-Alli</u>, No. 05-0589 CR, 2005 WL 3116754, at *3 (2d Cir. Nov. 22, 2005) (excluding a report merely repeating the inadmissible hearsay conclusions of a third party); <u>Miller v. Field</u>, 35 F.3d 1088, 1092 (6th Cir. 1994) (excluding factual findings based on inadmissible hearsay because underlying information is untrustworthy); <u>Eng</u>, 146 F.R.D. at 79-80 (excluding findings in report that investigator would be unable to testify to in open court); <u>Monus</u>, 1995 WL 469694, at *9 (excluding report prepared in reliance on countless statements and materials inadmissible under the Federal Rules of Evidence).

Nearly all the conclusions in the October 2004 Report are derived from hearsay statements which are inadmissible against BNL in court, as lacking the requisite safeguards inherent in adversarial proceedings. These safeguards are not mere technicalities. Plaintiffs should be required to present these witnesses and documents directly at trial or, at a minimum, in depositions, permitting BNL to test the authenticity, foundation and credibility of the "evidence" Plaintiffs would present. <u>See</u> <u>Eng</u>, 146 F.R.D. at 80-81 (excluding Inspector General reports where witness statements could be obtained directly). <u>See also</u> <u>infra</u> Point I.C.

(d)     The October 2004 Report is untrustworthy
        because the competence of investigators
        and the procedures employed are suspect.

The procedural safeguards employed in the creation of the October 2004 Report present

another factor militating against the admission of the Report under Rule 803(8)(C).  See Zenith,

505 F. Supp. at 1148; Anderson, 657 F. Supp. at 1579.  This factor includes an evaluation of the

skill and experience of a report's authors and investigators.  Id.; see also Fraley v. Rockwell Int'l

Corp., 470 F. Supp. 1264, 1267 (S.D. Ohio 1979) (noting that an opinion an investigator is not

qualified to give is subject to exclusion); United Air Lines, 867 F.2d at 742-43 (affirming

exclusion of a Congressional investigation report as untrustworthy because it "[did] not reflect

real concerns of the business world").  Courts have also excluded as untrustworthy evidence

obtained by investigators employing questionable processes.  See, e.g., Pullman, 662 F. 2d at 915

(no formal verification or procedure); Lewis, 149 F.R.D. at 488 (no hearing); Anderson, 657 F.

Supp. at 1579 (reliance on one-sided and self-interested witness testimony).  Thus, it is important

that there be some evidence of a respect for due process.

There is no such evidence here—no hearing, no sworn testimony, but instead, selective

reliance on the statements of self-interested witnesses.  Beyond that, it is unknown what, if any,

procedural safeguards applied; whether investigators had sufficient expertise in factoring

transactions to form conclusions independent of the untested statements of witnesses; whether

witnesses were pressured or offered concessions; and what witnesses were told at the time of

their interviews about the alleged transaction.  Given the above, the potential abuse from the

process itself weighs against a finding of trustworthiness.

3.   Cases cited by Plaintiffs concerning the introduction
     of foreign documents are inapposite.

Plaintiffs note that both foreign and domestic documents may be admissible under Rule 803(8).  (Pls.' Mem. 6).  While that is true, the cases cited by Plaintiffs involving foreign documents are inapposite.  They involve neither reports prepared to assist a foreign prosecutor, nor reports based on unsworn statements by alleged wrongdoers.  All but one fail even to involve Rule 803(8)(C).  See United States v. Demjanjuk, 367 F.3d 623, 631 (6th Cir. 2004) (affirming admission of evidence kept in the regular course of business when petitioner failed to object under Rule 803(8) at trial); Yongo v. Immigration and Naturalization Serv., 355 F.3d 27, 30 (1st Cir. 2004) (admitting INS documents because the hearsay rules of the "Federal Rules of Evidence do not apply in INS proceedings"); United States v. Grady, 544 F.2d 598, 604 (2d Cir. 1976) (admitting Irish police records under 803(8)(B) because they did not concern observation of crimes, rather the routine function of recording serial numbers); United States v. Szehinskyj, 104 F. Supp. 2d 480, 492 (E.D. Pa. 2000) (admitting official German documents, including government manual and court judgments, under various hearsay exceptions including Rules 803(6) and 803(8)); Melridge, 125 B.R. at 829 (admitting Swiss police report showing disbursement of funds upon closing of account); Morgan Guaranty Trust Co. v. Hellenic Lines Ltd., 621 F. Supp. 198, 216-17 (S.D.N.Y. 1985) (admitting minutes of Hellenic shareholders meetings under Rule 803(8)(B)).

Plaintiffs have cited no authority that would permit the introduction of the "findings" and "conclusions" of a 50-page accusatory report under Rule 803(8)(C), or any other exception.  As the Advisory Committee highlighted, compared to 803(8)(A) and (B) exceptions, 803(8)(C) is the "more controversial area of public records," eliciting disagreement among decisions due to both "the variety of situations encountered, as well as to differences in principle."  Advisory

Committee's Note to Fed. R. Evid. 803(8), 28 U.S.C. app. 910 (2000). It would thus be inappropriate to stretch the boundaries of the cases cited by Plaintiffs, pertaining to other Rule 803 exceptions, to the facts here.

C.    The October 2004 Report Comprises
      Inadmissible Statements, and Nothing Else, and
      <u>Therefore Should be Excluded as a Whole.</u>

Plaintiffs seek to dodge the issue of hearsay within hearsay in an opening footnote by noting that they are not asking the Court "to decide [now] whether every page of the [October 2004] Report . . . will be admissible at trial, but merely that the Rule 803(8) hearsay exception applies." (Pls.' Mem. 1 n.1.) In so doing, Plaintiffs ignore, and ask the Court to ignore, the fact that after "specific objections" are raised to "every page of the Report," there is virtually nothing left for the Court to admit in evidence. (<u>Id.</u>) On this basis, the October 2004 Report should be denied admission in its entirety.

Statements of third party interviewees within public agency reports are not covered by the Rule 803(8)(C) exception, even if the report itself is, and must be excluded. <u>See</u> <u>Miller v. Field</u>, 35 F.3d at 1091-92 ("[w]hile a court may presume that a preparer of a report [offered under 803(8)(C)], under a duty to relate information, will perform the task required and formulate justified conclusions and reasonable opinions based on evidence actually observed by the preparer, no such presumption arises when the preparer relies on potentially untrustworthy hearsay evidence from another individual under no duty to provide unbiased information"); <u>Parsons</u>, 929 F.2d at 907 (the statement of an individual under no business duty to report "is plainly not admissible merely because [it is] contained in a police report"); <u>Eng</u>, 146 F.R.D. at 79 (any double hearsay in report is only admissible if each level of hearsay qualifies for hearsay

exception).[5]

The October 2004 Report is a collection of conclusions drawn entirely from what other individuals said.  The preparers rely upon interrogations of and testimonials from potential trial witnesses—none of whom were under oath when providing these prior statements—to support the record's findings.[6]  (See, e.g., Oct. 2004 Rep. 82 816, 82 817, 82 818, 82 819.)  Such hearsay information is inadmissible.  See United States v. Warren, 42 F.3d 647, 657-58 (D.C. Cir. 1994) (noting approval of lower court's decision to exclude hearsay statements in a police report); McKinnon v. Skil Corp., 638 F.2d 270, 278 (1st Cir. 1981) (excluding from a report data that was essentially paraphrasing of involved parties' statements).  With respect to the remainder of the document—the assorted conclusions drawn by the authors of the October 2004 Report— neither the members of the Italian Tax Police who signed it, nor the various referenced "experts" throughout, have been certified as experts under Rule 702 of the Federal Rules of Evidence. There is no indication that any of them possess "scientific, technical, or other specialized knowledge" that might "assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.

At the same time, because the Report's authors have no personal knowledge of the events discussed, the numerous opinions and inferences found in the October 2004 Report are based not on the four officers' own perceptions but rather on assumptions and conjecture about the

---

[5] Courts applying New York state law consistently exclude portions of police reports when officers "did not personally observe the events recorded, and the purported lay eye-witnesses were under no business duty to relate the facts to the police officers preparing the reports."  Lynn v. Bliden, No. 00 Civ. 4775 (KMW) (THK), 2004 WL 2181094, at *7 n.9 (S.D.N.Y. Sept. 27, 2004); see also Felice v. Long Island R.R. Co., 426 F.2d 192, 196 (2d Cir. 1970); Perfetto v. Hoke, 898 F. Supp. 105, 114 (E.D.N.Y. 1995).  One court noted that a broadening of the records exception would make it a "limitless dragnet . . . for the introduction of random, irresponsible testimony beyond the reach of the usual tests for accuracy."  Yates v. Bair Transp., Inc., 249 F. Supp. 681, 683 (S.D.N.Y. 1965).

[6] See supra note 5.

14

perceptions of others.  This evaluation of others' perceptions constitutes inadmissible lay opinion under Rule 701 and should be left to the jury.[7]  Fed. R. Evid. 701.

Accordingly, neither the hearsay statements themselves, nor the October 2004 Report's "findings" and "conclusions," which constitute lay opinion based almost entirely on these statements, can be properly admitted.  Without them, the October 2004 Report is an empty document that should be denied admission in its entirety.

POINT II.

ANY PROBATIVE VALUE OF THE
POLICE REPORT  IS OUTWEIGHED BY THE
RISK OF UNFAIR PREJUDICE UNDER F.R.E 403.

The October 2004 Report should not be admitted in evidence because its probative value is outweighed by its unfair prejudice under Rule 403 of the Federal Rules of Evidence.  See Fed. R. Evid. 403; Paolitto v. John Brown E.&C., Inc., 151 F.3d 60, 64 (2d Cir. 1998).  In addition to its lack of trustworthiness, the October 2004 Report summarily disposes of numerous factual questions that should properly be presented to and independently evaluated by a jury.  Moreover, the document also contains many conclusory statements by the Italian Tax Police that reflect a process of assimilating facts, weighing contradictory evidence, and ultimately drawing inferences as to what a reasonable person or entity would have known or would have done in a given factual situation—a process that is clearly a province of the jury in the American judicial system.  See Paolitto, 151 F.3d at 65 (upholding district court's exclusion of a state employment agency's report on the grounds that the party seeking the report's admission had a full

---

[7] See United States v. Rea, 958 F.2d 1206, 1216 (2d Cir. 1992) ("[W]hen a witness has fully described what a defendant was in a position to observe, what the defendant was told, and what the defendant said or did, the witness's opinion as to the defendant's knowledge will often not be 'helpful' within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant knew.")

opportunity to present to the jury all the evidence it had submitted to the agency); <u>Hall v. W. Prod. Co.</u>, 988 F.2d 1050, 1058 (10th Cir. 1993) (finding no abuse of discretion where district court refused to admit state employment agency's report upon determining that all evidentiary matter before the agency could be presented to the jury in some other form and thus the only purpose for admitting the report "would be to suggest to the jury that it should reach the same conclusion"); <u>Pullman</u>, 662 F.2d at 915 (excluding government report based on hearsay because to a jury, such report may invoke "'an aura of special reliability and trustworthiness' which would not have been commensurate with its actual reliability.")[8]  As such, the Report should be excluded under Rule 403 as more prejudicial than probative.

POINT III.

IN ANY EVENT, PLAINTIFFS' MOTION IS PREMATURE<br><u>AND SHOULD BE DENIED AT THIS STAGE OF DISCOVERY</u>.

Plaintiffs argue that considerations of judicial efficiency and economy support a ruling that the October 2004 Report be allowed into evidence under Rule 803(8).  (Pls.' Mem. 3.) Plaintiffs' argument is undermined by the current status of discovery and discrete nature of the allegations against BNL, and should accordingly be disregarded.

Plaintiffs implicitly concede that its motion <u>in limine</u> is premature. (<u>See</u> Pls.' Mem. 3); <u>see also</u> <u>Banyaga v. Univ. of Rochester</u>, No. 01-CV-6472L, 2005 U.S. Dist. LEXIS 41886 at *1-2 (W.D.N.Y. May 10, 2005) (denying motion <u>in limine</u> as premature where motion was filed well in advance of any trial date); <u>Violette v. Armonk Assocs.</u>, 849 F. Supp. 923, 931 (S.D.N.Y.

---

[8] Because the value of the evidence must be weighed by a jury, reception of the Report will involve a "lengthy attempt to sift out admissible hearsay, as well as an inquiry into the 'circumstances bearing on the trustworthiness' of the investigators' conclusions."  <u>John McShain, Inc. v. Cessna Aircraft Co.</u>, 563 F.2d 632, 636 (3d Cir. 1977) (<u>citing</u> Fed. R. Evid. 403).  At the very least, BNL is entitled to depose each of the Report's authors as well as the purported experts identified in the Report.  Thus, contrary to Plaintiffs' efficiency argument (Pls.' Mem. 3), any probative value of such report might actually be outweighed by its cost in undue delay and waste of time, <u>see</u> <u>infra</u> Point III.

16

1994) (denying as premature a motion in limine excluding evidence where the matter was not yet

on trial, and it was unknown whether any of the disputed items would be offered as evidence

and, further, in what context these documents may be admissible).  While acknowledging that

"motions in limine are commonly made just prior to trial and not, as here, at an early stage of

discovery," Plaintiffs speak about millions of pages of documents and 1,500 hours of depositions

as countervailing considerations to the general rule that motions in limine are normally brought

just prior to trial.  (Pls.' Mem. 3.)  Nonetheless, not one of these countervailing assertions apply

to BNL, the party against whom Plaintiffs seek to use the October 2004 Report.  To the contrary,

as this Court stated, the allegations against BNL relate to discrete transactions unrelated to those

allegedly engaged in by other defendants.  In re Parmalat Sec. Litig., 376 F. Supp. 2d 472, 510 n.

191 (S.D.N.Y. July 13, 2005).  Likewise, the documents that relate to the factoring transaction,

and the number of witnesses with knowledge, is relatively circumscribed.[9]

---

[9] Further, Plaintiffs' statement that the Court's granting of the motion will enable them to short-circuit the discovery process, and promote efficiency, is unfounded and not borne out by Plaintiffs' actions to date.  Plaintiffs scheduled five depositions of BNL and Ifitalia witnesses to commence on July 17, 2006 in Milan (long before this motion is likely to be decided).  Each deposition is expected to be completed within a day or slightly longer.  Moreover, on the same day that Plaintiffs submitted this motion in limine they advised BNL that they would be seeking the deposition of a sixth Ifitalia witness, and within days after that advised BNL that they would be seeking testimony from yet a seventh witness.  At no time have Plaintiffs remotely suggested that they would cancel such depositions, or put them on hold, based on the outcome of this motion.

## <u>CONCLUSION</u>

For the reasons set forth herein, Defendant Banca Nazionale del Lavoro S.p.A.

respectfully requests that Plaintiffs' motion <u>in limine</u> be denied in its entirety.


Dated:   New York, New York
         July 11, 2006

                                  DAVIS POLK & WARDWELL

                                  By:   /s/ Nancy B. Ludmerer
                                        Dennis E. Glazer (DG-2289)
                                        Nancy B. Ludmerer (NL-4309)
                                        Christine A. Murtha (CM-9589)
                                        Kevin Troy (KT-6294)

                                  450 Lexington Avenue
                                  New York, New York 10017
                                  (212) 450-4000

                                  *Attorneys for Defendant Banca Nazionale
                                  del Lavoro S.p.A.*

18