UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re PARMALAT SECURITIES LITIGATION

This document relates to:  04 Civ. 0030 (LAK)

MASTER DOCKET

04 MD 1653 (LAK) ECF Case

<u>ELECTRONICALLY FILED</u>

---

## LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RENEWED MOTION FOR CLASS CERTIFICATION

**GRANT & EISENHOFER, P.A.**
Stuart M. Grant (SG-8157)
James J. Sabella (JS-5454)
John C. Kairis (JK-2240)
Diane Zilka (DZ-9452)
45 Rockefeller Center, 15th Floor
New York, NY  10111
646-722-8500

**COHEN, MILSTEIN, HAUSFELD &**
   **TOLL, P.L.L.C.**
Steven J. Toll
Lisa M. Mezzetti (LM-5105)
Mark S. Willis
Julie Goldsmith Reiser
Joshua S. Devore
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
202-408-4600

*Co-Lead Counsel for Plaintiffs*

*Of Counsel*:

**SPECTOR ROSEMAN & KODROFF, P.C.**
Robert M. Roseman
Andrew D. Abramowitz
Daniel J. Mirarchi
Rachel E. Kopp
1818 Market Street, 25th Floor
Philadelphia, PA  19103
215-496-0300

## Table of Contents

Page

Table of Authorities ................................................................................................. iii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 3

ARGUMENT:  THIS CASE AND PLAINTIFFS MEET ALL OF
       THE REQUIREMENTS FOR AND STANDARDS
       APPLICABLE TO CLASS CERTIFICATION ................................................ 5

I.     THE REQUIREMENTS OF FED. R. CIV. P. 23(a) ARE SATISFIED ........................... 8

    A.     The Members of the Class Are So Numerous
          That Joinder of All Members Is Impracticable ........................................ 8

    B.     There Are Numerous Questions of Law or
          Fact Common to the Members of the Class ........................................... 10

    C.     Plaintiffs' Claims Are Typical of the Claims of the Class .................................... 12

    D.     Plaintiffs Will Fairly and Adequately Protect the Interests of the Class ............. 15

II.    THE REQUIREMENTS OF FED. R. CIV. P. 23(b)(3) ARE SATISFIED ...................... 17

    A.     Common Questions of Law or Fact Predominate ................................................... 17

          1.     The Legal Standard for Determining
                Whether Common Questions Predominate .................................. 17

          2.     The Common Questions Predominate ....................................... 18

          3.     The Element of Reliance Poses No Obstacle to Class Certification .......... 18

               a.     Reliance Is Presumed Under *Affiliated Ute* ................................... 19

               b.     Reliance Is Presumed Under the
                    Fraud on the Market Doctrine ........................................... 19

               c.     Reliance Is Presumed Under the
                    Fraud Created the Market Doctrine ................................. 23

i

          d.     Even If Plaintiffs Needed to Prove Direct Reliance,
That Would Not Preclude Class Certification ..............................24

B.    A Class Action Is Superior to Other Available Methods
for the Fair and Efficient Adjudication of the Controversy ..................................26

CONCLUSION.......................................................................................................................28

## Table of Authorities

Page

Cases

*AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676 (N.D. Ala. 2005)...........21, 22, 23, 24

*Abell v. Potomac Ins. Co.*, 858 F.2d 1104 (5th Cir. 1988), *vacated sub nom. Fryar v. Abell*, 492 U.S. 914 (1989) ................................................................................................24

*Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972) ...................................................2, 19

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ..........................................................15, 17

*In re Arakis Energy Corp. Sec. Litig.*, No. 95-3431 (ARR),
    1999 WL 1021819 (E.D.N.Y. April 27, 1999) .................................................................18

*In re Avon Sec. Litig.*, No. 91 Civ. 2287 (LMM),
    1998 WL 834366 (S.D.N.Y. Nov. 30, 1998) .....................................................................8

*In re Badger Mountain Irr. Dist. Sec. Litig.*, 143 F.R.D. 693 (W.D. Wash. 1992) ................ 14-15

*Baffa v. Donaldson*, 222 F.2d 52 (2d Cir. 2000)..........................................................................15

*Basic, Inc. v. Levinson*, 485 U.S. 224 (1988)...............................................................................19

*In re Bell Atlantic Corp. Sec. Litig.*, No. 91-514,
    1995 WL 733381 (E.D. Pa. Dec. 11, 1995).......................................................................25

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975)........................................................................19

*In re Blech Sec. Litig.*, 187 F.R.D. 97 (S.D.N.Y. 1999) ................................................ 6, 8, 12, 26

*Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989) .............................................................21, 22

*Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283 (2d Cir. 1999) ...................................6, 20

*In re Chase Manhattan Corp. Sec. Litig.*, No. 90 Civ. 6092 (LTF),
    1992 WL 110743 (S.D.N.Y. May 13, 1992) .....................................................................16

*Cheney v. Cyberguard Corp.*, 213 F.R.D. 484 (S.D. Fla. 2003) ............................................21, 22

*Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113 (S.D.N.Y. 2001) .............................................. *passim*

*DeAllaume v. Perales*, 110 F.R.D. 299 (S.D.N.Y. 1986) ..............................................................7

*De la Fuente v. DCI Telecomms., Inc.*, 206 F.R.D. 369 (S.D.N.Y. 2002)....................................25

*DeMarco v. Robertson Stephens Inc.*, 228 F.R.D. 468 (S.D.N.Y. 2005) ....................................20

*Dietrich v. Bauer*, 192 F.R.D. 119 (S.D.N.Y. 2000) ..................................................................10

*In re Drexel Burnham Lambert Group*, 130 B.R. 910 (S.D.N.Y. 1991),
    *aff'd*, 960 F.2d 285 (2d Cir. 1992) ...................................................................................12

*Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87 (S.D.N.Y. 1981)...................12, 13, 17

*Eckert v. Equitable Life Assurance Soc'y of the United States*,
    277 F.R.D. 60 (E.D.N.Y. 2005) ........................................................................................5

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).....................................................................6

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985)....................................................................25

*Endo v. Albertine*, 147 F.R.D. 164 (N.D. Ill. 1993).....................................................................16

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 235 F. Supp. 2d 549 (S.D. Tex. 2002) .............20

*Epstein v. Moore*, No. 87-2984, 1998 WL 62213 (D.N.J. June 13, 1988) ...................................16

*Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176 (S.D.N.Y. 2005).......................................10, 19

*Fogarazzo v. Lehman Bros., Inc.*, 341 F. Supp. 2d 274 (S.D.N.Y. 2004) ...................................19

*In re Franklin Nat'l Bank Sec. Litig.*, 599 F.2d 1109 (2d Cir. 1978) ............................................5

*Freedman v. Value Health, Inc.*, 190 F.R.D. 33 (D. Conn. 1999)................................................16

*In re Frontier Ins. Group Sec. Litig.*, 172 F.R.D. 31 (E.D.N.Y. 1997) .........................................9

*In re Gaming Lottery Sec. Litig.*, 58 F. Supp. 2d 62 (S.D.N.Y. 1999) ..........................................7

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990)..............................................................................................5

*Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48 (S.D.N.Y. 1987) .....10, 17

*General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1983) ..................................................13

*In re Globalstar Sec. Litig.*, No. 01 Civ. 1748 (PKC),
    2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) ................................................................8, 11

*Green v. Wolf Corp.*, 406 F.2d 291 (2d Cir. 1968) ............................................................ *passim*

*Heerwagen v. Clear Channel Communications*, 435 F.3d 219 (2d Cir. 2006) ............................. 6

*Hevesi v. Citigroup Inc.*, 366 F.3d 70 (2d Cir. 2004) .................................................... 19

*In re IGI Sec. Litig.*, 122 F.R.D. 451 (D.N.J. 1988) ...................................................... 12

*In re Independent Energy Holdings PLC Sec. Litig.*,
   210 F.R.D. 476 (S.D.N.Y. 2002) ..................................................................... 6, 8

*In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117 (S.D.N.Y. 2002) ......................................... 1

*In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65 (S.D.N.Y. 2004) ............................... *passim*

*In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC),
   2003 WL 22509414 (S.D.N.Y. Nov. 6, 2003) .................................................... 11

*Jones v. Ford Motor Credit Co.*, No. 00 Civ. 8330 (RJH)(KNF),
   2005 WL 743213 (S.D.N.Y. Mar. 31, 2005) ..................................................... 7

*Kline v. Wolf*, 702 F.2d 400 (2d Cir. 1983) .......................................................... 15

*Koppel v. 4987 Corp.*, 191 F.R.D. 360 (S.D.N.Y. 2000) .................................................. 15

*In re Laser Arms Corp. Sec. Litig.*, 794 F. Supp. 475 (S.D.N.Y. 1989) ................................. 20-21

*Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491 (S.D. Tex. 2004) ........................................ 23

*Levine v. SkyMall, Inc.*, No. CIV 99-166-PHX-ROS,
   2001 U.S. Dist. LEXIS 24705 (D. Ariz. 2001) ................................................. 22

*Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 967 F.2d 742 (2d Cir. 1992) .................... 19

*Lyons v. Scitex Corp.*, 987 F. Supp. 271 (S.D.N.Y. 1997) ............................................. 16

*Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51 (S.D.N.Y. 1993),
   *aff'd*, 67 F.3d 1072 (2d Cir. 1995) ........................................................... 8

*In re MobileMedia Sec. Litig.*, 28 F. Supp. 2d 901 (D.N.J. 1998) ...................................... 16

*In re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013 (LAK) (AJP),
   2006 WL 330113 (S.D.N.Y. Feb. 14, 2006) .................................................... 10

*In re Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855 (RMB),
    2003 WL 22077464 (S.D.N.Y. Sept. 8, 2003)..........................................................9, 11, 21

*O'Neil v. Apfel*, 165 F.R.D. 479 (W.D. Mich. 1996) ....................................................22

*In re Oxford Health Plans, Inc.*, 191 F.R.D. 369 (S.D.N.Y. 2000) ................................7, 8

*In re Oxford Health Plans, Inc.*, 199 F.R.D. 119 (S.D.N.Y. 2001) ................................13

*In re Parmalat Sec. Litig.*, 350 F. Supp. 2d 1356 (JPML Dec. 9, 2004) ................................11, 27

*In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005)..................................19, 20, 21

*In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472 (S.D.N.Y. 2005).................................20

*Peil v. Speiser*, 806 F.2d 1154 (3d Cir. 1986)....................................................20

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995)..............10, 13, 17

*Queen Uno Ltd. P'ship v. Coeur D'alene Mines Corp.*,
    183 F.R.D. 687 (D. Col. 1998) ..........................................................16

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993)...............................................9, 13

*Ross v. Bank South, N.A.*, 885 F.2d 723 (11th Cir. 1989)..........................................24

*In re Salomon Analyst Level 3 Litig.*, 350 F. Supp. 2d 477 (S.D.N.Y. 2004)................................14

*In re Saxon Sec. Litig.*, No. 82 Civ. 3103 (MJL), 1984 WL 2399
    (S.D.N.Y. Feb. 23, 1984) ..........................................................16

*Shores v. Sklar*, 647 F.2d 462 (5th Cir. 1981) ....................................................24

*Simpson v. Specialty Retail Concepts*, 823 F. Supp. 353 (M.D.N.C. 1993) ............................21, 22

*Snider v. Upjohn Co.*, 115 F.R.D. 536 (E.D. Pa. 1987)..............................................26

*South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 325 (D.S.C. 1991)......................................24, 25

*Stinson v. Van Valley Dev. Corp.*, 719 F. Supp. 362 (E.D. Pa. 1989),
    *aff'd*, 897 F.2d 524 (3d Cir. 1990) ..........................................................24

*In re TCW/DW North Am. Gov't Income Trust Sec. Litig.*,
    941 F. Supp. 326 (S.D.N.Y. 1996)..........................................................18

*In re Taxable Municipal Bonds Litig.*, Civ. A. MDL No. 863,
    1992 WL 165974 (E.D. La. July 1, 1992) .........................................................................24

*Teachers Ret. Sys. of Louisiana v. ACLN Ltd.*, No. 01 Civ. 11814 (LAP),
    2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ......................................................... *passim*

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
    No. 05 Civ. 1898 (SAS), 2005 WL 2148919 (S.D.N.Y. Sept. 6, 2005) ...........................14

*In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167 (S.D.N.Y. 1997) ........................5, 7

*In re Veeco Instruments, Inc. Sec. Litig.*, No. 05 MD 1695 (CM), 2006 WL 759751
    (S.D.N.Y. Mar. 21, 2006) ......................................................................................6, 9, 25

*In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001) ..............................6

*Wade v. Industrial Funding Corp.*, No. C92-0343,
    1993 WL 650837 (N.D. Cal. Aug. 30, 1993) .................................................................24

*In re WorldCom, Inc. Sec. Litig.,* 219 F.R.D. 267 (S.D.N.Y. 2003),
    *aff'd sub nom. Hevesi v. Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004)............................................................................... *passim*

<u>Statutes and Rules</u>

Securities Exchange Act § 21D, 15 U.S.C. § 78u-4(a)(3)(B)(i) ....................................................15

Fed. R. Civ. P. 23(a) ................................................................................................................1, 7, 8

Fed. R. Civ. P. 23(a)(1)..................................................................................................................8

Fed. R. Civ. P. 23(a)(2)................................................................................................................10

Fed. R. Civ. P. 23(a)(3)................................................................................................................12

Fed. R. Civ. P. 23(a)(4)................................................................................................................15

Fed. R. Civ. P. 23(b)(3)..............................................................................................1, 7, 17, 26

<u>Miscellaneous</u>

4 Bromberg & Lowenfels, *Securities Fraud and Commodities Fraud* § 8.6 (Aug. 1988)............22

5 *Moore's Federal Practice* ¶ 23.22[3] (3d ed. 2005)....................................................................9

4 *Newberg on Class Actions* § 22.48 (3d ed. 1992).......................................................................25

7A Charles A. Wright, Arthur A. Miller & Mary Kay Kane, *Federal Practice &
    Procedure* § 1778 (2d ed. 1986) .......................................................................................17

Plaintiffs, Hermes Focus Asset Management Europe, Limited, Cattolica Partecipazioni S.p.A., Solotrat, Societe Moderne des Terrassements Parisiens, and Capital & Finance Asset Management S.A. (collectively, "Lead Plaintiffs"), respectfully submit this memorandum of law in support of their renewed motion for class certification.

## PRELIMINARY STATEMENT

Lead Plaintiffs, together with additional Named Plaintiffs, Hermes European Focus Fund I, Hermes European Focus Fund II, Hermes European Focus Fund III, Laura J. Sturaitis, Arch Angelus Sturaitis and Margery Louise Kronengold (collectively "Plaintiffs"),[1] seek appointment as representatives of a plaintiff class (the "Class"), certified pursuant to Rules 23(a) and 23(b)(3), Fed. R. Civ. P., consisting of all those who purchased the securities of Parmalat Finanziaria S.p.A. and its subsidiaries and affiliates ("Parmalat")[2] during the period January 5, 1999 and December 18, 2003, inclusive (the "Class Period"), and who were damaged thereby.  Excluded from the Class are the Defendants; persons who, during the Class Period, were officers and/or directors of "Old Parmalat"[3] or of its parent, subsidiaries and/or affiliates or of the corporate

---

[1] It is settled that in appropriate circumstances in a securities case, a court may appoint named plaintiffs who are not lead plaintiffs to serve as additional class representatives.  "[N]othing in the text of the [Private Securities Litigation Reform Act ("PSLRA")] indicates that every named plaintiff who satisfies the requirements of Rule 23 must also satisfy the criteria established under the PSLRA for appointment as lead plaintiff and actually be appointed as a lead plaintiff."  *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 286 (S.D.N.Y. 2003), *aff'd sub nom. Hevesi v. Citigroup Inc.*, 366 F.3d 70, 81-83 (2d Cir. 2004); *see In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002) ("The fact that the lead plaintiff is to be selected in accordance with objective criteria that have nothing to do with the nature of the claims . . . strongly suggests the need for named plaintiffs in addition to any lead plaintiff").

[2] In addition to all purchasers of the publicly traded securities of Parmalat (both bonds, common stock, and American Depository Receipts), the Class also includes all purchasers of bonds which were sold pursuant to prospectuses in private offerings in the United States.

[3] At the time this action was commenced, Parmalat Finanziaria S.p.A., Parmalat S.p.A. and affiliates (hereinafter referred to as "Old Parmalat") were undergoing extraordinary administration proceedings ("Extraordinary Administration"), akin to bankruptcy proceedings and, therefore, were not named as defendants in this action.  Since then, among other things, a Final Report which concludes the extraordinary administration has been filed and, pursuant to an agreement among creditors ("the Concordato") and Italian law, Parmalat S.p.A ("New Parmalat") was formed as a publicly traded company.  Under the Concordato, New Parmalat, among other things, assumed the liabilities of Old Parmalat, including claims for securities fraud.  By Order of this Court dated July 26, 2006, Lead

*(Cont'd)*

1

Defendants; any entity in which the Defendants have or had a controlling interest; the Defendants' liability insurance carriers and any affiliates or subsidiaries thereof; members of the immediate families of any of the foregoing; and their legal representatives, heirs, successors or assigns.

This action, and the allegations set forth in the Third Amended Consolidated Class Action Complaint (the "Complaint" or "TAC"), arise from the stunning collapse of international dairy conglomerate Parmalat – and the loss of billions of dollars by a broad spectrum of the investing public in the United States and around the world – as a result of what the Securities and Exchange Commission ("SEC") has aptly described as "one of the largest and most brazen corporate financial frauds in history." The Parmalat fraud has resulted in numerous regulatory investigations worldwide, including in the U.S., and criminal proceedings in Italy against several of the Defendants herein and many of their employees, and it triggered bankruptcy proceedings in several countries including in the United States.

This case is ideally suited for adjudication on a class basis. Plaintiffs and the thousands of members of the putative Class in the United States and worldwide have suffered substantial damages by reason of Defendants' deceptive conduct and material misrepresentations and omissions contained in public filings and other statements made by the Defendants throughout the Class Period. There are numerous common questions of law and fact concerning Defendants' conduct and scienter, which clearly predominate over any individual issues that may arise. The question of reliance does not present any individual issues that might preclude class adjudication, because reliance is presumed under the doctrine of *Affiliated Ute Citizens v. United*

---

Plaintiffs filed and served their Third Amended Consolidated Class Action Complaint which names New Parmalat as a defendant. For the purposes of this Motion, the term "Parmalat" refers to Old Parmalat unless otherwise indicated.

*States*, 406 U.S. 128, 153-154, 92 S. Ct. 1456, 1472 (1972), because Parmalat's securities traded in an efficient worldwide market, and because absent the fraud, there would have been no market for the securities.  Because there are numerous Class members with relatively small claims scattered throughout this country and countries around the globe, class treatment clearly is the superior method of adjudication.

This action is, therefore, similar to the numerous securities cases that have been certified as class actions in this and in every other Circuit.  Accordingly, class certification is appropriate.

## STATEMENT OF FACTS

As alleged in the Complaint, this case involves a fraud of breathtaking proportions in which Parmalat's top management, with the direct and active support and participation of its bankers, lawyers, and auditors, concocted a series of transactions whose aim was to show the investing public that the Company was very profitable, when its operations were in fact failing, and that it had assets that, in fact, did not exist.  This web of deceit involved the creation of bogus bank accounts and special purpose entities to hide the Company's massive debt, the use of forged financial records, and the manipulation of Parmalat's balance sheet and income statement through fictitious investments and sham transactions.

With false financial statements in hand, Parmalat repeatedly went to the capital markets for cash while the banking defendants, who profited handsomely from their fees and commissions, joined in the fraud.  In order to portray itself as a growing global company, Parmalat undertook a global acquisition program in which it raised capital on both sides of the Atlantic, including billions of dollars of stocks and bonds sold to American investors.  Parmalat's equity securities and its bonds were traded in countries and markets around the world, including on the Luxembourg Stock Exchange, the Milan Stock Exchange, the Mercato Telematico Azionario, and the Uruguayan stock exchange, as well as in the over-the-counter market in the

United States.  Cplt. ¶ 8.[4]  The offering materials for the bonds sold in the United States and globally included fraudulent audited consolidated financial statements of Parmalat S.p.A. and incorporated by reference the false financial information from Parmalat S.p.A.'s parent, Parmalat Finanziaria S.p.A.  Cplt. ¶ 63.

Throughout the Class Period, Parmalat regularly filed false and misleading reports with Commissione Nazionale per le Società e la Borsa ("CONSOB"), the Italian equivalent of the SEC, including quarterly, half year, and annual reports that were relied upon by investors when making their investment decisions concerning Parmalat securities.  Parmalat posted copies of all of these filings in English on its website to ensure that United States investors would be able to review those documents.  Cplt. ¶ 64.  Representatives of Parmalat and Defendant Bank of America conducted "road shows" in the United States to market Parmalat debt securities to U.S.-based investors, providing such investors with, *inter alia*, the fraudulent Parmalat audited financial statements.  Cplt. ¶¶ 62-63.

The outrageous scheme orchestrated by the Defendants culminated in Parmalat's sudden financial collapse when it was revealed that substantial operating losses by the Company had been concealed for over a decade and that Parmalat's consolidated total debt had been grossly understated.  On December 19, 2003, at the end of the Class Period, Parmalat issued a shocking press release admitting that one of its affiliates, Bonlat, did not have $4.9 billion in a Bank of America account as previously represented.  The very next day, Italian prosecutors initiated a criminal fraud investigation.  Four days later, on December 24, 2003, Parmalat filed for bankruptcy protection with the court in Parma, Italy, and on December 27, 2003, the Parma court declared Parmalat insolvent.  Cplt. ¶ 46.

---

[4] "Cplt ¶" refer to paragraphs in the TAC.

The scale and scope of the falsification of Parmalat's financial statements is staggering. Parmalat's actual consolidated debt as of September 30, 2003 was at least €14.3 billion, or more than two times the €6.4 billion amount that Parmalat reported for that period, and total consolidated shareholders' equity should have been reported as no more than negative €11.4 billion, not the positive €2.1 billion figure that Parmalat reported for that period. Cplt. ¶ 51. As a result of this massive, worldwide fraud, Parmalat's investors lost billions of dollars. Cplt. ¶¶ 4, 51.

## ARGUMENT

### THIS CASE AND PLAINTIFFS MEET ALL OF THE REQUIREMENTS FOR AND STANDARDS APPLICABLE TO CLASS CERTIFICATION

The courts in this Circuit repeatedly have recognized that to promote the indispensable role that private enforcement plays in advancing the goals of the federal securities laws, courts should adopt a liberal construction of Fed. R. Civ. P. 23 in securities cases seeking class action status. Thus, "[t]he Second Circuit has announced its preference for class certification in securities fraud litigation, and has directed district courts to liberally interpret Rule 23 class certification requirements." *In re Towers Fin. Corp. Noteholders Litig.*, 177 F.R.D. 167, 169 (S.D.N.Y. 1997); *see Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179 (2d Cir. 1990) ("In light of the importance of the class action device in securities fraud suits, [the Rule 23] factors are to be construed liberally"); *In re Franklin Nat'l Bank Sec. Litig.*, 599 F.2d 1109, 1110 (2d Cir. 1978); *Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir. 1968); *Eckert v. Equitable Life Assurance Soc'y of the United States*, 277 F.R.D. 60, 62 (E.D.N.Y. 2005); *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 90 (S.D.N.Y. 2004) ("*IPO*"). As the Second Circuit has noted, in securities cases, class treatment is often vital "because a large number of individuals may have been injured, although no one person may have

been damaged to a degree which would have induced him to institute litigation solely on his own behalf." *Green*, 406 F.2d at 296.

Therefore, in securities cases, doubts should be resolved "in favor and not against the maintenance of the class action." *Green*, 406 F.2d at 298; *see also In re Veeco Instruments, Inc. Sec. Litig.*, No. 05 MD 1695 (CM), 2006 WL 759751, at *16 (S.D.N.Y. Mar. 21, 2006) (quoting *In re Blech Sec. Litig.,* 187 F.R.D. 97, 102 (S.D.N.Y. 1999)) ("'in an alleged securities fraud case, when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward'"); *IPO*, 227 F.R.D. at 90; *In re Independent Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002).

The Second Circuit has instructed that a motion for class certification "is not an occasion for examination of the merits of the case*." In re Visa Check/MasterMoney Antitrust Litig*., 280 F.3d 124, 135 (2d Cir. 2001); *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999) ("In deciding a certification motion, district courts must not consider or resolve the merits of the claims of a purported class").[5]  The difference between the law in this Circuit on this aspect and in other Circuits was recently reemphasized in *Heerwagen v. Clear Channel Communications*, 435 F.3d 219, 232 (2d Cir. 2006), where the Second Circuit noted that while some other courts of appeal allow an inquiry into the merits of a claim to determine if the requirements of Rule 23 have been met, "we do not go that far."

Therefore, on a class certification motion, all that is required of the plaintiff is "some showing" that the requirements for class certification are satisfied.  *Caridad*, 191 F.3d at 292.

---

[5] *See also WorldCom*, 219 F.R.D. at 279 ("At class certification, the court determines whether the requirements of Rule 23 are met, not whether the claims are adequately pleaded or who will prevail on the merits"); *Teachers Ret. Sys. of Louisiana v. ACLN Ltd*., No. 01 Civ. 11814 (LAP), 2004 WL 2997917, at *2 (S.D.N.Y. Dec. 27, 2004) ("In reviewing a motion for class certification, 'the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met'") (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 2153 (1974)).

Moreover, because the class determination usually is made before discovery is completed, the substantive allegations in the complaint are accepted as true for purposes of the class motion. *See, e.g., Jones v. Ford Motor Credit Co*., No. 00 Civ. 8330 (RJH) (KNF), 2005 WL 743213, at *18 (S.D.N.Y. Mar. 31, 2005) (quoting *DeAllaume v. Perales*, 110 F.R.D. 299, 305 (S.D.N.Y. 1986)) ("for purposes of determining class certification issues, the allegations are taken as true and the merits of the complaint are not examined").

This case embodies all of the hallmarks traditionally considered when certifying a class. The putative Class consists of a large group of geographically dispersed purchasers of Parmalat securities, over a several year period, who sustained damages as a result of, *inter alia,* a common set of material facts that were misrepresented or omitted by the Defendants.  As a class, these purchasers share a joint interest in litigating common questions and responding to class-wide defenses.  Indeed, absent this class action, the burden and expense on individual investors of litigating independent actions against these well-financed defendants would leave most investors "without any recourse."  *WorldCom,* 219 F.R.D. at 304.

For these reasons, in this Circuit securities fraud cases like this one are routinely found to be appropriate for class treatment.  *See, e.g*., *Teachers Ret. Sys. of Louisiana*, 2004 WL 2997957, at *11; *WorldCom,* 219 F.R.D. at 307; *In re Oxford Health Plans, Inc*., 191 F.R.D. 369, 381 (S.D.N.Y. 2000); *In re Gaming Lottery Sec. Litig*., 58 F. Supp. 2d 62, 77 (S.D.N.Y. 1999); *In re Towers Fin. Corp. Noteholders Litig*., 177 F.R.D. at 172.  As Judge Scheindlin stated in *IPO*, 227 F.R.D. at 71, "class wide adjudication under Rule 23 of the Federal Rules of Civil Procedure is particularly well-suited to securities fraud cases."

As Lead Plaintiffs will now show, this case meets all of the requirements for class certification under Rule 23(a) and (b)(3).

I.      **THE REQUIREMENTS OF FED. R. CIV. P. 23(a) ARE SATISFIED**

The general criteria for class certification are set forth in Fed. R. Civ. P. 23(a):

One or more members of a class may sue or be sued as representative parties on behalf of all only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Each of these requirements is satisfied in this case.

**A.      The Members of the Class Are So Numerous**
**That Joinder of All Members Is Impracticable**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members would be "impracticable." "[T]he rule does not require impossibility of joinder." *Blech*, 187 F.R.D. at 103. "Joinder of all members need not be impossible, but only impracticable in the sense that joinder would needlessly complicate and hinder efficient resolution of the litigation." *In re Avon Sec. Litig.*, No. 91 Civ. 2287 (LMM), 1998 WL 834366, at *5 (S.D.N.Y. Nov. 30, 1998) (internal quotation marks omitted); *see also In re Independent Energy*, 210 F.R.D. at 479; *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 55 (S.D.N.Y. 1993), *aff'd*, 67 F.3d 1072 (2d Cir. 1995)*; Blech*, 187 F.R.D. at 103; *Oxford*, 191 F.R.D. at 374.

"[I]t is not unusual for district courts to certify plaintiff classes in securities actions based on the volume of outstanding shares." *In re Globalstar Sec. Litig.*, No. 01 Civ. 1748 (PKC), 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant

period." *Teachers Ret. Sys. of Louisiana*, 2004 WL 2997957, at *3; *see also In re Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855 (RMB), 2003 WL 22077464, at *2 (S.D.N.Y. Sept. 8, 2003); *In re Frontier Ins. Group Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997); 5 *Moore's Federal Practice* ¶ 23.22[3] (3d ed. 2005) ("In securities litigation, courts generally assume that the numerosity requirement is satisfied for classes of sellers or buyers of nationally traded securities"). "Precise calculation of the number of class members is not required, and it is permissible for the court to rely on reasonable inferences drawn from available facts." *IPO*, 227 F.R.D. at 86-87; *see also Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).

Numerosity cannot be disputed here. As of November 30, 2002, there were more than 804 million Parmalat common shares and ADRs issued and more than $5 billion face amount of Parmalat debt outstanding. Throughout the Class Period, Parmalat securities were purchased in numerous countries worldwide and were actively traded on the Luxembourg Stock Exchange, the Mercato Telematico Azionario (an electronic exchange located in Italy), the Milan Stock Exchange, the stock exchange in Uruguay, and in the over-the-counter market in the United States. Additionally, over $1.5 billion of Parmalat bonds were sold to U.S. investors in private offerings. While the exact number of Class members is unknown to Plaintiffs at this time, Plaintiffs believe that there are thousands of members in the Class. Cplt. ¶ 1139.[6] Here as in *Veeco Instruments*, 2006 WL 759751, at *17, "[t]he large size and geographical diversity of the putative class makes joinder impracticable."

---

[6] While there have been a few opt-out cases seeking rescission, filed by large insurance companies that purchased Parmalat bonds, those opt-outs do not materially reduce the number of Class members.

**B.     There Are Numerous Questions of Law or
         Fact Common to the Members of the Class**

Rule 23(a)(2) requires prospective class members to share common questions of law or fact.  "The commonality requirement has been applied permissively by courts in the context of securities fraud litigation," *Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000), so that not every question of law or fact must be common to every class member.  *See, e.g., Teachers Ret. Sys. of Louisiana*, 2004 WL 2997957, at *4 ("Factual variations among class members' claims will not defeat the commonality requirement so long as the claims arise from a common nucleus of operative facts"); *Dietrich*, 192 F.R.D. at 124 ("minor variations in the class members' positions will not suffice to defeat certification") (internal citations omitted).  The commonality test has been characterized as a "low hurdle" that is "easily surmounted."  *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 206 n.8 (S.D.N.Y. 1995); *see also In re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013 (LAK) (AJP), 2006 WL 330113, at *6 (S.D.N.Y. Feb. 14, 2006).  All that is required is the existence of "some common question of law or fact."  *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 51 (S.D.N.Y. 1987).  "In general, where putative class members have been injured by similar material misrepresentations and omissions, the commonality requirement is satisfied."  *IPO*, 227 F.R.D. at 87 (internal citations omitted); *see also Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 179-80 (S.D.N.Y. 2005).

The case at bar clearly satisfies this test.  The claims against Defendants are based upon common operative facts and legal issues, such as:

- Whether the federal securities laws were violated by Defendants' acts as alleged herein;

- Whether Parmalat's financial statements, and the audit reports thereon issued by the Deloitte defendants and the Grant Thornton defendants, contained material misrepresentations and omissions in violation of Rule 10b-5(b);

- Whether Defendants engaged in a deceptive scheme and fraudulent course of conduct in violation of Rule 10b-5(a) and (c);

- Whether Defendants acted willfully or with recklessness in connection with the scheme and the misrepresentations alleged herein;

- Whether Defendants are controlling persons of other culpable persons or entities within the meaning of § 20 of the Securities Exchange Act;

- Whether the conduct engaged in by Defendants caused the Class members' losses; and

- Whether the members of the Class have sustained damages.

These are precisely the types of questions regularly found by courts to be "common questions of fact" in securities fraud actions. *See, e.g., Globalstar*, 2004 WL 2754674, at *4 (commonality satisfied by questions such as whether false "statements were knowingly and recklessly issued"); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC), 2003 WL 22509414 (S.D.N.Y. Nov. 6, 2003) ("whether damages to investors were caused by the defendants' misstatements" satisfied common question requirement); *Nortel Networks*, 2003 WL 22077464, at *3 ("whether defendants violated the federal securities laws" met common question requirement); *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (question whether "audited financial statements prepared by Deloitte materially misrepresented the Fund's financial condition and results" satisfied commonality requirement).   Indeed, in consolidating all of the Parmalat cases in this Court, the Judicial Panel on Multidistrict Litigation found "common

questions of fact . . . arising from alleged misrepresentations or omissions concerning Parmalat's financial condition."  *In re Parmalat Sec. Litig.*, 350 F. Supp. 2d 1356, 1357 (JPML Dec. 9, 2004).

### C.   Plaintiffs' Claims Are Typical of the Claims of the Class

Rule 23(a)(3) requires that "the claims  . . . of the representative parties [be] typical of the claims  . . . of the class."  As stated in *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. at 99:

> Typicality refers to the nature of the claim of the class representatives, and not to the specific facts from which the claim arose or relief is sought.  The proper inquiry is whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.

The focus of the typicality inquiry is not the plaintiffs' behavior but rather the defendants' actions.  *See, e.g.*, *Teachers Ret. Sys. of Louisiana*, 2004 WL 2997957, at *4; *see also In re IGI Sec. Litig.*, 122 F.R.D. 451, 456 (D.N.J. 1988) ("it is **Defendants'** course of conduct . . . upon which the court must focus in determining typicality") (emphasis in original).

The critical question is whether the named plaintiffs and the Class can point to the same common course of conduct to support a claim for relief.  *See Cromer*, 205 F.R.D. at 122-23 ("The purpose of both the typicality and the commonality requirements is to ensure that maintenance of a class action is economical and that the named plaintiff's claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence") (citation and internal quotation marks omitted); *accord In re Drexel Burnham Lambert Group*, 130 B.R. 910, 919 (S.D.N.Y. 1991), *aff'd*, 960 F.2d 285 (2d Cir. 1992); *Blech*, 187 F.R.D. 97, 105.  The Supreme Court has noted that the "commonality and

typicality requirements of Rule 23(a) tend to merge." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58 n.13, 102 S. Ct. 2364, 2371 n.13 (1983).

Courts in this Circuit have emphasized that the typicality requirement is not demanding, and that typical is not identical. *In re Oxford Health Plans Sec. Litig.*, 199 F.R.D. 119, 123 (S.D.N.Y. 2001); *see also IPO*, 227 F.R.D. at 87; *Cromer*, 205 F.R.D. at 122. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). Thus, a difference in the amount of damages, size or manner of purchase, type of purchase and even the specific documents influencing the purchase will not render the claim atypical in most securities actions. *Dura-Bilt Corp*, 89 F.R.D. at 99; *Prudential Sec.*, 163 F.R.D. at 208.

Here, the claims asserted by Plaintiffs are typical, if not identical, to the claims of the other Class members. Like the members of the Class, Plaintiffs seek to recover damages based on the same materially false and misleading statements contained in, or material facts omitted from, documents and statements disseminated by Defendants to the investing public generally. Lead Plaintiff Hermes Focus Asset Management Europe, Limited and Named Plaintiffs Hermes European Focus Fund I, Hermes European Focus Fund II, and Hermes European Focus Fund III each purchased Parmalat ordinary shares during the Class Period. Named Plaintiffs, Laura J. Sturaitis and Arch Angelus Sturaitis each purchased Parmalat ordinary shares in the United States during the Class Period. Lead Plaintiffs Cattolica Partecipazioni S.p.A., Solotrat, Societe Moderne des Terrassements Parisiens, and Capital & Finance Asset Management S.A. and Named Plaintiff Margery Louise Kronengold (a U.S. citizen at the time of her purchase) each

purchased Parmalat bonds during the Class Period.  Cplt. ¶¶ 105-14.  These Plaintiffs purchased
numerous different series of Parmalat bonds issued by a variety of Parmalat entities.[7]  While they
did not purchase every one of the dozens of series of bonds, convertible notes, private
placements or other forms of debt issued by Parmalat during the Class Period, their claims are
typical of all purchasers of each debt instrument issued by Parmalat, and certification of a class
including all purchasers of Parmalat debt is appropriate.  *See, e.g., Teamsters Local 445 Freight
Div. Pension Fund v. Bombardier Inc.*, No. 05 Civ. 1898 (SAS), 2005 WL 2148919, at *8
(S.D.N.Y. Sept. 6, 2005) ("plaintiff has standing to represent a class of all purchasers [of each
series of Certificates] who relied on the same repeated, material misstatements and thus suffered
the same injury when the value of their securities declined.") (citing *In re Salomon Analyst
Level 3 Litig.*, 350 F. Supp. 2d 477, 497 (S.D.N.Y. 2004)).

Defendants' deceptive schemes and material misrepresentations and omissions affected
the market prices of Parmalat equity and debt securities in the United States and worldwide and
thereby affected all members of the Class.  The losses of the proposed class representatives
therefore arise out of the same wrongful course of conduct affecting all class members.[8]
Accordingly, Plaintiffs' claims are typical of the claims of the Class.[9]

---

[7] As set forth in the certifications that they filed pursuant to the PSLRA, Cattolica Partecipazioni purchased Parmalat
Finance Co. 6.25% Notes due 07/02/2005 and Parmalat Finance Corp. B.V. 6.125% notes due 9/29/2010; Solotrat
purchased Parmalat Finance Co. 6.25% Notes due 07/02/2005 and Parmalat Fin. Co. 6% notes due 06/2/2006;
Societe Moderne des Terrassements Parisiens purchased Parmalat Finance Co. 6.25% Notes due 07/02/2005, Capital
& Finance Asset Management S.A. purchased Parmalat Netherlands B.V. 0.875% notes convertible until 6/30/21,
Parmalat Finance Corp. B.V. 5.875% senior notes due 1/18/2007, and Parmalat Capital Netherlands, B.V. 1%
Convertible senior notes due 12/31/2005; and Kronengold purchased Parmalat Finance Corp. B.V. 6% notes due
2/06/2006.

[8] The offering memoranda for the note offerings included or incorporated by reference the fraudulent Parmalat
financial statements.  *See, e.g.,* Cplt. ¶¶ 494, 516, 518, 520, 529, 532, 534, 536, 538, 540, 573, 588, 597, 599, 623,
626, 645, 649, 653, 675, 678, 697, 700, 749.

[9] The typicality requirement is satisfied whether Plaintiffs purchased the bonds on the offerings or in the secondary
market.  *See, e.g., In re Badger Mountain Irr. Dist. Sec. Litig.*, 143 F.R.D. 693, 699 (W.D. Wash. 1992) (holding

*(Cont'd)*

**D.**     **Plaintiffs Will Fairly and Adequately Protect the Interests of the Class**

Rule 23(a)(4) requires that Plaintiffs must adequately protect the interests of the Class.

"To determine whether a named plaintiff will be an adequate class representative, courts inquire

whether:  '1) plaintiff's interests are antagonistic to the interests of other members of the class

and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'"

*WorldCom*, 219 F.R.D. at 282 (quoting *Baffa v. Donaldson*, 222 F.2d 52, 60 (2d Cir. 2000)).

Both aspects are satisfied here.

"'[A] court must be wary of a defendant's efforts to defeat representation of a class on

grounds of inadequacy when the effect may be to eliminate any class representation.'"  *Koppel v.*

*4987 Corp.*, 191 F.R.D. 360, 367 (S.D.N.Y. 2000) (quoting *Kline v. Wolf*, 702 F.2d 400, 402 (2d

Cir. 1983)).  To satisfy the first prong of the adequacy requirement, a proposed class

representative must "possess the same interest and suffer the same injury as the class members."

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26, 117 S. Ct. 2231, 2251 (1997).  Plaintiffs

here have been injured by the same course of conduct that injured the other members of the Class

and they seek the same measure of damages.  Plaintiffs have no interests antagonistic to those of

the Class.  To the contrary, their interests coincide.  Their commitment to vigorous prosecution

of this case has already been amply demonstrated.[10]  Indeed, in its May 25, 2004 Order

appointing the Lead Plaintiffs, this Court has already determined, pursuant to § 21D of the

Securities Exchange Act, that each of the Lead Plaintiffs are capable of adequately representing

the interests of Class members.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).

---

that as long as the same course of conduct by defendants allegedly caused all of the plaintiffs' injuries, the
requirement of typicality between public offering purchasers and aftermarket purchasers is satisfied).

[10] For example, each Plaintiff has produced documents responsive to Defendants' document requests, responded to
interrogatories and traveled to New York for depositions taken by Defendants, most of which lasted two days.

Plaintiffs seek certification of one unitary class including debt and equity purchasers located in the United States and abroad.  As there are no material conflicts among class members, certification of a single unitary class is appropriate.  In a case of this magnitude, in the absence of an **actual** conflict, it is appropriate to certify Plaintiffs as representatives of a unitary Class including both debt and equity purchasers.  *WorldCom*, 219 F.R.D. at 280.  As stated in *In re MobileMedia Sec. Litig.*, 28 F. Supp. 2d 901, 911 (D.N.J. 1998), "[c]ourts have allowed those with valid securities claims to represent the interests of the purchasers of other types of securities in class action suits."  *See Queen Uno Ltd. P'ship v. Coeur D'alene Mines Corp.*, 183 F.R.D. 687, 694 (D. Col. 1998) ("Many courts have recognized that debt and equity purchasers may be certified in one class"); *Epstein v. Moore*, No. 87-2984, 1998 WL 62213 (D.N.J. June 13, 1988) (appointing purchaser of stock to represent class of purchasers of stock and debt); *Endo v. Albertine*, 147 F.R.D. 164, 167 (N.D. Ill. 1993); *In re Saxon Sec. Litig.*, No. 82 Civ. 3103 (MJL), 1984 WL 2399 (S.D.N.Y. Feb. 23, 1984); *see also Freedman v. Value Health, Inc*., 190 F.R.D. 33, 35 (D. Conn. 1999); *Lyons v. Scitex Corp.*, 987 F. Supp. 271 (S.D.N.Y. 1997).  Plaintiffs here share a common interest with all Class members in proving that Defendants violated the federal securities laws.  "This common interest far outweighs [any] potential conflicts of interests between class members."  *In re Chase Manhattan Corp. Sec. Litig.*, No. 90 Civ. 6092 (LTF), 1992 WL 110743, at *2 (S.D.N.Y. May 13, 1992).

As to the second prong of the adequacy requirement, Plaintiffs have retained counsel highly experienced in securities class action litigation, and the Court's May 25, 2004 Order approved Lead Plaintiffs' selection of counsel.  There can be no dispute as to the adequacy of counsel in this case.

## II.     THE REQUIREMENTS OF FED. R. CIV. P. 23(b)(3) ARE SATISFIED

Lead Plaintiffs seek certification under Rule 23(b)(3).  Therefore, in addition to satisfying the foregoing requirements, Lead Plaintiffs must also show:

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As demonstrated below, these requirements are satisfied.

### A.     Common Questions of Law or Fact Predominate

#### 1.     The Legal Standard for Determining Whether Common Questions Predominate

Rule 23(b)(3) does not require that there be an absence of any individual issues.  *See Dura-Bilt*, 89 F.R.D. at 99 ("To be sure, individual issues will likely arise in this as in all class action cases.  But, to allow various secondary issues of plaintiffs' claim to preclude certification of a class would render the rule an impotent tool for private enforcement of the securities laws").  Generally, common questions of law or fact are held to predominate if they represent a significant aspect of the case and can be resolved for all class members in a single adjudication.  *See* 7A Charles A. Wright, Arthur A. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778, at 528 (2d ed. 1986).

The Supreme Court has stated that the predominance requirement "is a test readily met in certain cases alleging consumer or securities fraud."  *Amchem Prods.*, 521 U.S. at 625, 117 S. Ct. at 2250.  "[C]ourts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual issues."  *Prudential Sec.*, 163 F.R.D. at 206 (internal citations omitted); *accord Genden*, 114 F.R.D. at 52.

## 2.      The Common Questions Predominate

As discussed above, this case presents numerous common issues of law and fact relating to Defendants' liability.  *See* pp. 10-11 *supra*.  These are precisely the types of common questions that courts have held sufficient to show a predominance of common questions in securities fraud cases.  *See, e.g., Cromer*, 205 F.R.D. at 127 (common questions held to predominate where "[t]he proof for the claims of misrepresentation or omission, materiality, and Deloitte's scienter are all based on a common nucleus of facts and a common course of conduct"); *In re Arakis Energy Corp. Sec. Litig.*, No. 95-3431 (ARR), 1999 WL 1021819, at *4 (E.D.N.Y. April 27, 1999) ("in securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues"); *In re TCW/DW North Am. Gov't Income Trust Sec. Litig.*, 941 F. Supp. 326, 342 (S.D.N.Y. 1996) ("common questions of law concerning the adequacy of disclosure in the prospectus of certain facts . . . predominate").

## 3.      The Element of Reliance Poses No Obstacle to Class Certification

Like defendants invariably do on class certification motions in securities cases, the Defendants here can be expected to argue that the need to show reliance in Rule 10b-5 cases means that individual issues will predominate and, therefore, defeat class certification.  As shown below, however, with respect to all of Parmalat securities involved here – equity and debt publicly offered – reliance is presumed under several independent doctrines.

### a.    Reliance Is Presumed Under *Affiliated Ute*

Under the doctrine set forth in *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-154, 92 S. Ct. 1456, 1472 (1972), reliance is presumed where "a plaintiff's claim is based on a defendant's failure to disclose material information."  *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, 967 F.2d 742, 748 (2d Cir. 1992).  "There is no burden to prove reliance on an omission."  *WorldCom*, 219 F.R.D. at 298.

Previously in this action, when the Court denied Defendants' motions to dismiss, the Court held that the Complaint pleads facts sufficient to invoke the *Affiliated Ute* presumption of reliance.  *See In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 303 (S.D.N.Y. 2005) ("reliance for purposes of transaction causation may be presumed where, **as here**, defendants are alleged to have made material omissions.  Insofar as the complaint turns on alleged omissions, this principle alone suffices to plead transaction causation.") (emphasis added).  Furthermore, even "where plaintiffs' claims are based on a combination of omissions and misstatements, courts in this Circuit have acknowledged the applicability of the *Affiliated Ute* presumption."  *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 186 (S.D.N.Y. 2005).

Because the *Affiliated Ute* presumption of reliance applies to all of the securities involved herein, the reliance issue poses no barrier to class certification.  *See, e.g., Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975); *IPO*, 227 F.R.D. at 106.

### b.    Reliance Is Presumed Under the Fraud on the Market Doctrine

Plaintiffs are also entitled to a presumption of reliance under the "fraud on the market" doctrine.  *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d at 303; *Fogarazzo v. Lehman Bros., Inc.*, 341 F. Supp. 2d 274, 286 (S.D.N.Y. 2004).  The Supreme Court explained this theory as follows:

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the

19

> available material information regarding the company and its business…. Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements…. The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.

*Basic, Inc. v. Levinson*, 485 U.S. 224, 241-42, 108 S. Ct. 978, 989 (1988) (quotations omitted);

*see also Hevesi v. Citigroup, Inc*., 366 F.3d 70, 77 (2d Cir. 2004).[11]

The fraud on the market theory "presumes that the market is a transmission belt which efficiently translates all information concerning a security into a price.  In other words, it presumes the operation of an efficient market."  *See Cromer*, 205 F.R.D. at 130 n.21 (internal quotations omitted).

Market efficiency is an issue of fact.  *In re Parmalat Sec. Litig*., 375 F. Supp. 2d at 303. Consistent with the mandate of the Supreme Court and the Second Circuit that a class certification motion is not the occasion for courts to adjudicate the merits of a plaintiff's claim, courts in this Circuit do not require on such a motion a conclusive showing of market efficiency. Instead, all that is required on a class certification motion is that the plaintiff  "make 'some showing' that the stocks in question traded on an efficient market."  *IPO*, 227 F.R.D. at 107 (quoting *Caridad*, 191 F.3d at 292).  On a class certification motion, Plaintiffs must merely show "that they will be able to make a colorable presentation at summary judgment or trial as to the propriety of applying the fraud on the market theory."  *DeMarco v. Robertson Stephens Inc*., 228 F.R.D. 468, 474 (S.D.N.Y. 2005).  "Ultimately, whether the relevant markets were efficient is a question of fact to be resolved at trial."  *IPO*, 227 F.R.D. at 107; *see In re Laser Arms Corp. Sec.*

---

[11] The fraud on the market doctrine applies not only to cases under Rule 10b-5(b) but also "to instances of alleged market manipulation or other schemes to defraud."  *In re Parmalat Sec. Litig*., 375 F. Supp. 2d at 303; *see also In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 509 (S.D.N.Y. 2005).  "Reliance under prongs (a) and (c) [of Rule 10b-5] can also be established by the fraud-on-the-market doctrine."  *In re Enron Corp. Sec., Deriv. & ERISA Litig*., 235 F. Supp. 2d 549, 693 (S.D. Tex. 2002); *see also Peil v. Speiser*, 806 F.2d 1154, 1163 (3d Cir. 1986) ("the fraud on the market theory pertains to rule 10b-5(b) claims as well as claims brought under clauses (a) and (c)").

*Litig.*, 794 F. Supp. 475, 490 (S.D.N.Y. 1989) ("Whether in fact Laser Arms traded in an efficient market is a question of fact.  Therefore, resolution of that issue must await presentation of further proof at trial."); *Nortel Networks*, 2003 WL 22077464, at *5.

While not the exclusive means of analyzing whether a market is sufficiently efficient to warrant application of the fraud on the market doctrine, courts often employ the factors set out in *Cammer v. Bloom*, 711 F. Supp. 1264, 1276 (D.N.J. 1989), to make that determination:  the existence of a significant number of analyst reports; the existence of market makers (dealers) and arbitrageurs in the security; a large weekly trading volume; the eligibility of the company to file an S-3 registration statement; and a history of immediate movement of the stock price caused by unexpected corporate events or financial releases.  *See, e.g.*, *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d at 303; *IPO*, 227 F.R.D. at 107 n.323.  In order to establish market efficiency, the plaintiff "is not required to show the existence of each of these factors."  *AAL High Yield Bond Fund v. Ruttenberg*, 229 F.R.D. 676, 683 (N.D. Ala. 2005) (internal citations omitted); *see also Simpson v. Specialty Retail Concepts*, 823 F. Supp. 353, 355 (M.D.N.C. 1993); *Cammer*, 711 F. Supp. at 1287.

The facts at bar support a finding that the Parmalat equity and debt securities traded in efficient markets:

- As of November 30, 2002, there were more than 800 million Parmalat shares issued and more than $5 billion face amount of Parmalat debt outstanding. Cplt. ¶ 1139.[12]

- Parmalat's equity securities were actively traded on several exchanges worldwide, including the Luxembourg Stock Exchange, the Mercato Telematico Azionario, and the Milan Stock Exchange--all highly efficient

---

[12] Market capitalization is a factor considered by some courts in determining market efficiency. *See, e.g., Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 498 & n.15 (S.D. Fla. 2003).

markets.  Cplt. ¶ 1144.[13]  There was a single worldwide market for Parmalat securities, which were priced based on trades reported from various exchanges throughout the world.  Cplt. ¶ 59.

- Parmalat was followed by numerous securities analysts employed by major brokerage firms, including defendant Citigroup's Solomon Smith Barney unit, who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms.  Investext lists 159 analysts' reports from 24 analysts during the Class Period, and Multexnet lists 225 documents from 23 analysts including 136 research documents and 89 "morning reports."  Each of these reports was publicly available and entered the public marketplace.  Cplt. ¶ 1144.[14]  *See* Exhibit A to the Declaration of Robert M. Roseman, dated September 21, 2006 ("Roseman Decl.").

- There were a large number of market makers (dealers) for Parmalat bonds.  *See* Roseman Decl. Exh. A.[15]

- The spread between the bid and ask prices for Parmalat bonds was exceedingly narrow.  *See* Roseman Decl. Exhs. C-T.[16]

- The bid and ask prices of Parmalat's publicly traded bonds reacted to the disclosures about the Company.  For example, the bond prices were all relative stable until November 11, 2003, when Standard & Poor's placed Parmalat's bonds on CreditWatch.  Then, beginning on December 8, 2003, when trading in Parmalat shares was suspended, bond prices dropped sharply.  On December 19, 2003, when the non-existence of the $5 billion Bonlat account was disclosed, bond prices immediately dropped some 50%.  *See* Roseman Decl. Exhs. C-T.

- As a regulated issuer, Parmalat filed periodic public reports with Italian securities regulator CONSOB.

---

[13] "[T]he market system upon which a particular stock trades provides some insight as to the likelihood that the market for that stock is efficient."  *O'Neil v. Apfel*, 165 F.R.D. 479, 504 (W.D. Mich. 1996).

[14] "The number of securities analysts following and reporting on a company's stock during the class period is a persuasive factor as the existence of a significant number of analysts implies that company reports are closely reviewed by investment professionals, who, in turn, make buy/sell recommendations to client investors."  *Cheney v. Cyberguard Corp.*, 213 F.R.D. at 499; *see also Levine v. SkyMall, Inc.*, No. CIV 99-166-PHX-ROS, 2001 U.S. Dist. LEXIS 24705, at *14-16 (D. Ariz. 2001).

[15] The existence of market makers (dealers) helps "ensure completion of the market mechanism," as "these individuals would react swiftly to company news and report financial results."  *Cammer*, 711 F. Supp. at 1286-87.  "[T]en or more market makers (dealers) leads to a strong presumption that the market operated efficiently, while five market makers (dealers) indicates a more modest presumption of efficiency."  *Simpson*, 823 F. Supp. at 355 n.3 (citing 4 Bromberg & Lowenfels, *Securities Fraud and Commodities Fraud* § 8.6 (Aug. 1988)).

[16] "This fairly small spread indicates a liquid and informationally efficient market" for the bonds.  *AAL High Yield Bond Fund*, 229 F.R.D. at 685 n.9; *see also Cheney*, 213 F.R.D. at 501.

- Parmalat regularly communicated with public investors *via* established market communication mechanisms, including regular disseminations of press releases on the major news wire services and other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.  Cplt. ¶ 1144.

- There was extensive media coverage of Parmalat.  For example, during the Class Period, *Factiva.com* news retrieval service (a service of Dow Jones & Reuters) lists 10,591 articles mentioning Parmalat.  The *Factiva.com* news retrieval service shows 5,330 articles from "major" sources only and 10,591 articles from "all" sources.  Cplt. ¶ 1144.

- The market reacted to public information disseminated by Parmalat.  For example, during the Class Period, there was media coverage of Parmalat on the twenty largest percentage price changes for its common shares, the largest twenty percent price change in Parmalat's bonds, and the twenty largest days in Parmalat's daily share volume.  On each date, there were multiple news articles from multiple sources regarding Parmalat according to the *Factiva.com* news retrieval service.  Clearly, there was market reaction to information on each of the above exchanges regarding Parmalat.  Cplt ¶ 1144.

- There was a substantial amount of institutional ownership of Parmalat bonds during the Class Period, including Lead Plaintiffs, which indicates that sophisticated and knowledgeable investors were actively assimilating information about Parmalat and trading on that information.  Cplt. ¶ 62.[17]

These facts, which demonstrate that the Parmalat securities traded in efficient markets, apply to all of Parmalat's equity and debt securities, including the privately placed debt securities.  *See, e.g., AAL High Yield Bond Fund*, 229 F.R.D. at 685 (holding that debt securities sold in private placements traded in efficient markets).  Plaintiffs are therefore entitled to a presumption of reliance under the fraud on the market doctrine.

### c.    Reliance Is Presumed Under the Fraud Created the Market Doctrine

Plaintiffs are also entitled to a presumption of reliance under the fraud created the market doctrine.  This doctrine, which applies where securities are newly issued, provides a presumption

---

[17] *See Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 508 (S.D. Tex. 2004) (agreeing with plaintiff that "there is a general understanding that a high level of institutional interest in a security serves to increase the efficiency of the market").

of reliance when a plaintiff can show that a fraud allowed securities that otherwise would have been unmarketable to enter and exist in the market.  *See, e.g.*, *Ross v. Bank South, N.A.*, 885 F.2d 723, 729 (11th Cir. 1989) (en banc); *Abell v. Potomac Ins. Co.*, 858 F.2d 1104, 1122-23 (5th Cir. 1988), *vacated on other grounds sub nom. Fryar v. Abell,* 492 U.S. 914, 109 S. Ct. 3236 (1989); *AAL High Yield Bond Fund*, 229 F.R.D. at 685; *Stinson v. Van Valley Dev. Corp.*, 719 F. Supp. 362, 366 (E.D. Pa. 1989), *aff'd*, 897 F.2d 524 (3d Cir. 1990); *Shores v. Sklar*, 647 F.2d 462, 470-71 (5th Cir. 1981) (en banc); *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 325, 332-33 (D.S.C. 1991).  Under this doctrine, the causal connection between the fraud and the injury is established by alleging that the securities could not have been marketed at any price absent fraud.  *Ross*, 885 F.2d at 731; *Shores*, 647 F.2d at 469-71.[18]  As set forth in the Complaint, during the Class Period, Parmalat was in dire financial trouble, and without Defendants' wrongdoing, there would have been no market for Parmalat securities, especially the bonds which sold through both public and private offerings, as Parmalat's true financial condition would have given it an impossibly low credit rating.  *See* Cplt. ¶¶ 1146, 1158.

### d.     Even If Plaintiffs Needed to Prove Direct Reliance, That Would Not Preclude Class Certification

Even if it might be argued that with respect to certain of the Parmalat securities, none of the foregoing doctrines were to apply and direct reliance might need to be proven, this does not preclude class certification.  Notwithstanding the existence of individual issues of reliance, it is more appropriate to determine the common issues in one proceeding with separate hearings if

---

[18] *See also Wade v. Industrial Funding Corp.*, No. C92-0343, 1993 WL 650837, at *6 (N.D. Cal. Aug. 30, 1993) (finding allegations that plaintiffs relied on defendant's misrepresentation of "its stability and fiscal well-being to the extent that its entire public image was distorted" sufficient to state a claim based on the fraud created the market presumption); *In re Taxable Municipal Bonds Litig.*, Civ. A. MDL No. 863, 1992 WL 165974, at *6-7 (E.D. La. July 1, 1992) (finding allegations sufficient to invoke the doctrine where plaintiffs alleged that the bonds were "patently worthless" and that "no investor would have purchased the bonds had the market known the truth at the time of the initial issuance").

necessary regarding any individual issues.  "In most cases, common issues of liability are deemed to predominate even when reliance and damages issues must be individually proved." 4 *Newberg on Class Actions* § 22.48 (3d ed. 1992).  "'Individual questions of reliance do not preclude class certification.'"  *Veeco Instruments*, 2006 WL 759751, at *18 (quoting *De la Fuente v. DCI Telecomms., Inc*., 206 F.R.D. 369, 390 (S.D.N.Y. 2002)).

      In *WorldCom*, for example, Judge Cote stated that "common questions would predominate even if some plaintiffs would have to show reliance in connection some or all of their bond holdings."  219 F.R.D. at 294.  As she there noted, "[p]rior to the development of the law establishing in appropriate cases a presumption of reliance, the Second Circuit had held that the Rule 23(b)(3) predominance standard would still be met even if it were necessary to provide separate trials on reliance, at least where the defendants' alleged misrepresentations were standardized."  *Id.* at 292 n.29 (citing *Green*, 406 F.2d at 301, where the Second Circuit stated: "We see no sound reason why the trial court, if it determines individual reliance is an essential element to proof, cannot order separate trials on that particular issue, as on the question of damages, if necessary.").  *See also Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) ("the presence of individual questions as to the reliance of each investor does not mean that the common questions of law and fact do not predominate over questions affecting individual members as required by Rule 23(b)(3) . . . ."); *In re Bell Atlantic Corp. Sec. Litig*., No. 91-514, 1995 WL 733381, at *7 (E.D. Pa. Dec. 11, 1995) (common questions still predominate "where the court can resolve [the reliance issues] through a variety of mechanisms, including questionnaires, separate hearings, or special masters, if needed"); *South Carolina Nat'l Bank*, 139 F.R.D. at 333 ("Even if individual issues of reliance should arise, it is more appropriate to determine the common issues in one proceeding, which may be followed by separate hearings

regarding any individual issues"); *Snider v. Upjohn Co.*, 115 F.R.D. 536, 541 (E.D. Pa. 1987)

("individual . . . issues of reliance and damages . . . fail[] to outweigh the common questions of

whether defendants made materially false and misleading statements and failed to disclose

material information").

### B.    A Class Action Is Superior to Other Available Methods for the Fair and Efficient Adjudication of the Controversy

Rule 23(b)(3) also requires that the Court determine whether a class action is superior to

other possible methods of fairly and efficiently resolving the controversy.  In determining

whether the "superiority" requirements of Rule 23(b)(3) are met, the Court must consider the

following factors:

> (A)    the interest of members of the Class in individually controlling the prosecution of separate actions;
>
> (B)    the extent and nature of any litigation concerning this controversy already commenced by potential Class members;
>
> (C)    the desirability of concentrating the litigation of the claims in this particular forum; and
>
> (D)    the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).  "In general, securities suits such as this easily satisfy the

superiority requirement of Rule 23." *Blech*, 187 F.R.D. at 107.  Each of the foregoing factors

militates strongly in favor of class certification here.

With respect to the first factor, the interest of members of the Class in individually

controlling the prosecution of separate actions, a class action is the only economically feasible

method of adjudication where those who have been injured are in a poor position to seek legal

redress, because of either a lack of sufficient information, or the disproportionate expense of

pursuing individual claims.  The costs and expense of such individual actions, when weighed

against the individual recoveries potentially available, would be prohibitive.  Comparatively few members of the proposed Class, who are located in countries around the world, would, as a practical matter, be in a position to proceed individually against Defendants.  *See Green*, 406 F.2d at 301; *Cromer*, 205 F. Supp. 2d at 133.

The second factor, the extent and nature of any litigation concerning this controversy already commenced by potential Class members, also militates in favor of certification here.  This Court appointed Lead Plaintiffs to run this litigation.  While there are a small number of opt-out cases seeking the remedy of rescission, filed by insurance companies that purchased Parmalat bonds,[19] and some claims have been filed against some defendants in Italy,[20] to Lead Plaintiffs' knowledge, the only individual actions pending against defendants in U.S. courts seeking damages relating to the specific wrongs alleged in the Complaint are before this Court.

The third factor, the desirability of concentrating the litigation of the claims in this particular forum, has already been decided by the Judicial Panel on Multidistrict Litigation.  *See In re Parmalat Sec. Litig.*, 350 F. Supp. 2d at 1356-57.  The JPML found that this Court provides the optimal forum for resolution of the claims of the Class.

Finally, no difficulties are likely to be encountered in the management of a class action.  Indeed, prosecution of this action on a class basis is much more efficient than individual adjudication of thousands of claims.  In addition, Lead Plaintiffs are endeavoring, where possible, to coordinate discovery in this action with discovery being taken in the actions brought

---

[19] Several large insurance companies that purchased Parmalat bonds have filed cases under the federal securities laws and under state law, seeking rescission.

[20] There is a procedure in Italy whereby injured persons can file civil claims in a criminal case against the defendants in that case.  A number of Class members have filed such claims in the criminal proceedings in Italy.  Such procedure does not, however, negate the superiority of the class action vehicle here.  For example, those claims can be filed only against the defendants in the criminal proceeding, who are primarily individuals, whereas the case at bar includes numerous entities that are not criminal defendants in Italy.

against certain of the defendants herein by Dr. Enrico Bondi, the court-appointed Extraordinary

Commissioner of Parmalat, on behalf of Parmalat, Parmalat S.p.A. and their subsidiaries and

affiliated companies, and brought against certain defendants by other entities formerly affiliated

with Parmalat.  Further, as noted above, because Class members may find individual litigation

cost-prohibitive, the class mechanism provides a means of fair and efficient resolution of these

claims.  Lead Plaintiffs' counsel, who have substantial experience in complex securities litigation

and class actions, do not anticipate any significant or unusual difficulties in the management of

this action as a class action.  Therefore, the class action device is the superior method for

adjudicating the claims of the Class members.

## CONCLUSION

For the reasons set forth herein, it is respectfully submitted that Lead Plaintiffs' motion for class certification should be granted.

Dated: September 21, 2006

Respectfully submitted,

**GRANT & EISENHOFER, P.A.**

/s/ James J. Sabella
Stuart M. Grant (SG-8157)
James J. Sabella (JS-5454)
John C. Kairis (JK-2240)
Diane Zilka (DZ-9452)
45 Rockefeller Center, 15th Floor
New York, NY  10111
646-722-8500

**COHEN, MILSTEIN, HAUSFELD &
     TOLL, P.L.L.C.**
Steven J. Toll
Lisa M. Mezzetti (LM-5105)
Mark S. Willis
Julie Goldsmith Reiser
Joshua S. Devore
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
202-408-4600

*Co-Lead Counsel for Plaintiffs*

*Of Counsel*:

**SPECTOR ROSEMAN & KODROFF, P.C.**
Robert M. Roseman
Andrew D. Abramowitz
Daniel J. Mirarchi
Rachel E. Kopp
1818 Market Street, 25th Floor
Philadelphia, PA  19103
215-496-0300