IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE PARMALAT SECURITIES ) <br> LITIGATION ) <br> ) | 04 Civ. 0030 (LAK) <br> ECF Case |

## DECLARATION OF MAURIZIO TRAVERSO

I, Maurizio Traverso, hereby declare as follows:

1. I am a partner in the Italian law firm Traverso & Associati, Studio Legale e Tributario, with offices in Milan and Rome. As a litigator, and as counsel to Dianthus S.p.A., the previous member firm of the Deloitte Touche Tohmatsu verein, I am familiar with the proceedings that have been brought in Italy in connection with the alleged Parmalat fraud, as I describe below.

A. **EXTRAORDINARY ADMINISTRATION BEFORE THE COURT OF PARMA**

2. On December 24, 2003, Parmalat S.p.A. was admitted to Extraordinary Administration by the Ministry of Productive Activities. On the same day, Dr. Enrico Bondi was appointed Extraordinary Commissioner of Parmalat S.p.A. by the Minister for Productive Activities, and obtained the authorization to have Parmalat Finanziaria S.p.A. and other companies of the Parmalat group included in the Extraordinary Administration procedure.

3. On July 23, 2004, Dr. Bondi's restructuring plan, containing a proposal of composition with creditors, was approved by the Minister of Productive

Activities. The proposal of composition with creditors was submitted for approval by all creditors of the companies in Extraordinary Administration in its final version of March 3, 2005. A majority of 71.38% of voting creditors approved the proposal of composition, which was thereafter validated by the Bankruptcy Court of Parma with its decision n° 22 of 2005. An appeal against such decision is currently pending before the Bologna Court of Appeals.

**B.    CRIMINAL PROCEEDINGS BEFORE THE COURT OF MILAN**

*B.1    Criminal proceedings against former directors and officers of the Parmalat companies*

*Criminal defendants*

4.    Twenty-nine individuals have been named by the Milan prosecutors in a proposed indictment. The charges sought by the prosecutor are stock market rigging, false audits and obstruction of CONSOB (a public entity similar to the U.S. Securities and Exchange Commission).

5.    The jurisdiction of the Milan Court over the proceeding is based on the circumstance that the Italian Stock Exchange is in Milan and, hence, on the assumption that the alleged crime of market rigging was committed in Milan. The Court of Milan denied all motions seeking transfer of the proceedings to the Court of Parma.

6.    Under the Italian Code of Criminal Procedure, the proposed indictment is dealt with at the preliminary hearing (*i.e.* a stage in which the individuals named by the prosecutors have the opportunity to review the charges, examine evidence and formulate motions to dismiss the charges as to them).

7. The defendants initially were:

(i) former officers, directors, statutory auditors (roughly equivalent to an audit committee in the U.S., but not including outside auditors) and advisors of Parmalat Finanziaria S.p.A. and Parmalat S.p.A. (Enrico Barachini, Domenico Barili, Gianfranco Bocchi, Giovanni Bonici, Mario Brughera, Luciano Del Soldato, Alberto Ferraris, Oreste Ferretti, Francesco Giuffredi, Franco Gorreri, Piero Mistrangelo, Massimo Nuti, Claudio Pessina, Andrea Petrucci, Paolo Sciumè, Luciano Silingardi, Calisto Tanzi, Giovanni Tanzi, Stefano Tanzi, Fausto Tonna, Paola Visconti, and Gian Paolo Zini);

(ii) two of Grant Thornton S.p.A.'s former partners (Maurizio Bianchi and Lorenzo Penca);

(iii) two of Deloitte & Touche S.p.A.'s former partners (Giuseppe Rovelli and Adolfo Mamoli, respectively); and

(iv) three of Bank of America's former employees (Antonio Luzi, Luis Moncada, and Luca Sala, who worked at Bank of America's Italian branch until he left in the summer of 2003, after which he joined Parmalat as a consultant). The charges against the former Bank of America employees are limited to stock market rigging and relate to one particular transaction.

8. Eleven of the defendants have entered into plea bargains, namely Barili, Bocchi, Del Soldato, Ferraris, Giuffredi, Gorreri, Pessina, Giovanni Tanzi, Stefano Tanzi and Gian Paolo Zini.

9. All other defendants have been indicted and trial began on 28 September 2005. The global number of witnesses to be heard by the Court, including expert witnesses, is about 250. It can be reasonably predicted that trial will last until the end of next year.

*Administrative Liability*

10.  Four corporations are named as parties in the above proceedings and are subject to potential administrative liability under Law n. 231 of 2001 ("Law 231"): Deloitte & Touche S.p.A. (the new entity resulting from the business combination with the Italian member firm of the Arthur Andersen membership association); Dianthus S.p.A. (the previous member firm of the DTT verein); Italaudit S.p.A. (formerly Grant Thornton S.p.A.) and the Italian branch of Bank of America.

*Civil Claims*

11.  Under the Italian Code of Criminal Procedure, persons claiming to be victims of charged offenses can apply to the court to appear as *parte civile* or "civil party" in pending criminal proceedings and seek a civil judgment for the redress of damages. This procedure enables private parties to rely on the prosecutor to demonstrate liability, so that such parties can avoid the time and expense of bringing individual suits.

12.  Applications to appear as a civil party in the criminal proceedings can be filed at any time during the preliminary hearing and until the beginning of trial. The Court's ruling on these applications is part of the preliminary activities of trial (together with the admission of evidence).

13.  The responding parties to the civil side of the criminal action include the criminal defendants, and any individuals or entities named by the parte civile as potentially liable for the payment of damages stemming from the alleged offense – the latter of whom are referred to as *responsabile civile*, or "civil responsible".

14.     Approximately 50,000 bondholders and shareholders – claiming to have been economically injured by the alleged criminal offenses – are taking part in the proceedings as *parte civile* to seek redress of their claimed damages. Dr. Bondi, in his capacity as Extraordinary Commissioner of (solely) Parmalat Finanziaria S.p.A., also appeared as a civil party against the defendants, but not against the companies facing administrative claims.

15.     The deadline for filing applications has expired upon commencement of the trial and the Court of Milan has ruled by a preliminary order on their admissibility, which will be reviewed together with the merits at the end of the trial.

16.     The *responsabile civile* parties in the Milan proceedings are Deloitte & Touche S.p.A., Dianthus S.p.A., Italaudit S.p.A. (formerly Grant Thornton S.p.A.) and the Italian branch of Bank of America.

  B.2    *Criminal proceedings against banks' employees*

17.     Separate proceedings are pending in Milan against 13 individuals, current or former employees of banks, who have been named by the Milan prosecutor in a request for indictment filed on 16 March 2005.

18.     All these individuals are charged with stock market rigging (essentially for disseminating false information in connection with Parmalat bond issuances). As per the above proceedings, the jurisdiction of the Milan Court is based on the location of the Italian Stock Exchange.

19.     The defendants are: Fabio Lisanti and Patrizia Cozzoli (UBS London Branch); Giovanni Landi, Marco Ratti, Marco Valsecchi and Antonio Cannizzaro (Nextra Investment Management); Carlo Pagliani and Paolo Basso

(Morgan Stanley); Massimo Armanini, Marco Pracca and Tommaso Zibordi (Deutsche Bank); Paolo Botta (Citibank); Giaime Cardi (CSFB).

20. These proceedings are currently in the stage of preliminary hearing. According to press reports, such phase should be concluded within the current year.

21. Seven corporations are named as parties in the above proceedings and are subject to potential administrative liability under Law 231 of 2001: UBS Limited, Nextra Investment SGR S.p.A., Morgan Stanley & Co. International Ltd., Morgan Stanley Bank International Limited - Milan Branch, Deutsche Bank S.p.A., Deutsche Bank AG London, Citibank NA.

22. Should the request for indictment be upheld, trial will be ordered. The deadline for filing applications to appear as a civil party will expire upon commencement of the trial and the Court will rule on their admissibility. All claimants in the action described in B.1 above may seek to join also these proceedings as civil parties by then.

C. **CRIMINAL PROCEEDINGS BEFORE THE COURT OF PARMA**

23. Sixty-four individuals were named by the Parma prosecutor in a request for indictment. They are charged with false accounts, *bancarotta fraudolenta* (i.e. having caused the bankruptcy of the companies as a result of dissipation of assets and falsified accounts and/or having paid some of the creditors or having favored some creditors while knowing the financial distress of the company), unlawful contributions of money to political parties and criminal conspiracy. This action is pending in Parma because Parmalat's registered office and corporate headquarters were in Parma (more precisely, in Collecchio).

24. The named defendants are Calisto Tanzi, Giovanni Tanzi, Francesca Tanzi, Stefano Tanzi, Paolo Tanzi, Paola Visconti, Fausto Tonna, Domenico Barili, Ettore Giugovaz, Gian Paolo Zini, Carlo Zini Luciano Silingardi, Luciano Del Soldato, Alberto Maurizio Ferraris, Franco Gorreri, Pier Giovanni Tanzi, Gianni Grisendi, Piero Mistrangelo, Mario Mutti, Enrico Barachini, Gian Mario Roveraro, Giuliano Panizzi, Giorgio Pedraneschi, Andrea Petrucci, Massimo Baratta, Romano Bernardoni, Maurizio Bianchi, Ugo Bianchi, Gianfranco Bocchi, Claudio Pessina, Giovani Bonici, Renato Trauzzi, Fabio Branchi, Angelo Ugolotti, Andrea Ventura, Marco Verde, Francesco Viotto, Rosario Lucio Calogero, Eric Dailey, Sergio Erede, Camillo Florini, Guido Gerboni, Antonio Gherardi, Francesco Giuffredi, Lorenzo Penca, Paolo Sciumé, Massimo Armanini, Antonio Bevilacqua, Benito Bronzetti, Louis Cayola, Alberto De Dionigi, Oreste Ferretti, Davide Fratta, Giuseppe Gennai, Ettore Gotti Tedeschi, Luigi Guatri, Francesco Maini, Adolfo Mamoli, Pier Giovanni Marzili, Massimo Nuti, Stefano Podestà, Giuseppe Rovelli, Roberto Tedesco.

25. The list encompasses: former officers, directors, statutory auditors, outside auditors and advisors of Parmalat Finanziaria S.p.A. and Parmalat S.p.A., as well as members of the Tanzi family who benefited from the alleged diversion of assets. The preliminary hearing began on June 5, 2006.

26. According to press reports, separate proceedings are pending in Parma against 7 officers of Capitalia (a major Italian bank), including its former CEO, Cesare Geronzi. They are charged with conspiracy in Parmalat's *bancarotta fraudolenta* and usury against Parmalat companies. The preliminary hearing should begin within the next weeks and it is expected that the proceedings will be consolidated with those described above (Mr Calisto Tanzi, former Chairman and CEO of the Parmalat Group, made an unexpected appearance in Court at the hearing of June 5, 2006 and invited the Court to order the consolidation).

27. The deadline for filing applications to appear as a civil party in these proceedings will expire upon commencement of the trial and the Court will rule on their admissibility. All claimants in the action described in B.1 above may seek to join also these proceedings as civil parties by then.

D. <u>CIVIL ACTIONS BEFORE THE COURTS OF PARMA AND MILAN</u>

    D.1    *Bondi Actions in Parma*

28. In 2004, Dr. Bondi, in his capacity as Extraordinary Commissioner of Parmalat S.p.A. and Parmalat Finanziaria S.p.A., filed two civil claims with the Court of Parma against 27 individuals, including some of Parmalat's former directors, officers, statutory auditors and advisors, seeking damages as a result of their complicity in Parmalat's financial collapse.

29. The plaintiff also sought and obtained a preliminary sequestration order – providing for pre-trial seizure of assets – against these individuals, allowing Dr. Bondi to attach their assets up to a total value of € 11.903 billion.

30. Defendants in the first action are: Calisto Tanzi, Stefano Tanzi, Giovanni Tanzi, Luciano Del Soldato, Giovanni Bonici, Gianfranco Bocchi, Claudio Pessina, Franco Gorreri, Fausto Tonna, Gian Paolo Zini. In this action, trial began on 26 May 2006 and the second hearing was held on October 4, 2006.

31. Defendants in the second action are: Piero Mistrangelo, Paolo Sciumé, Alberto Maurizio Ferraris, Paolo Tanzi, Pier Giovanni Tanzi, Paola Visconti, Francesco Giuffredi, Luciano Silingardi, Domenico Barili, Enrico Barachini, Oreste Ferretti, Mario Brughera, Massimo Nuti, Giuliano Panizzi, Antonio Gherardi, Antonio Bevilacqua and Davide Fratta. Trial in this action began on 4

October 2006. At such hearing, the Parma Court ordered the consolidation of the two actions.

32. In September 2005, Dr. Bondi instituted a new action against Mr. Sergio Erede, a lawyer and a former director of Parmalat Finanziaria S.p.A., and Ms. Maria Martellini, a former statutory auditor of Parmalat Finanziaria S.p.A.. This litigation is still at a preliminary stage, during which the parties are allowed to exchange briefs. Trial should start at the beginning of 2007. The Chief Justice of the Parma Court informally advised that this action could be consolidated with the other two pending litigations.

33. It is to be noted that several of the defendants in the three actions described above asserted separate impleader claims against certain individuals (including Dr. Bondi, Umberto Tracanella and Guido Angiolini), certain entities (including Italaudit S.p.A., Deloitte & Touche S.p.A., Dianthus S.p.A. – formerly known as Deloitte & Touche S.p.A., Capitalia S.p.A., Banca Intesa BCI S.p.A., Nextra Investment Management s.g.r., Banca Popolare di Lodi, San Paolo IMI S.p.A., UniCredit S.p.A., Mediobanca S.p.A., Citibank, Archimede and Eureka) and the Italian regulators (Banca d'Italia and CONSOB).

### D.2  Bondholder Actions in Milan

34. It should also be noted that as recently as October 3, 2006 Deloitte & Touche S.p.A., Dianthus S.p.A. and Grant Thornton S.p.A. were served with a complaint filed by approximately 2,500 bondholders (individuals and legal entities) who had purchased bonds issued by various companies of the Parmalat Group. At this time, it is not possible to ascertain whether these plaintiffs have also entered an appearance as parte civile in the Milan or Parma criminal proceedings. The plaintiffs seek from the Court of Milan an award of damages in an amount equal to the face value of the bonds. The aggregate

amount sought is Euro 38,390,196.34 plus interest, monetary depreciation and costs.

### E. CONNECTIONS AMONG CIVIL CLAIMS IN THE CRIMINAL ACTIONS AND CLAIMS BEFORE THE CIVIL COURTS

*E.1    Possibility for the civil parties to bring claims before the civil courts*

35. Nothing prevents the *parte civile* who are taking part in the criminal proceedings from commencing later proceedings before the Civil Courts. However, Article 75 of the Code of Penal Procedure ("**c.p.p.**") provides that if the action before the Civil Court is brought by a plaintiff whose appearance as *parte civile* has been admitted by the Criminal Court, the civil proceedings are stayed until the criminal judgment becomes *res judicata*.

36. The same Article 75 c.p.p. further provides that the action instituted before the Civil Court can be transferred, until a judgment is issued, to the criminal proceedings by entering an appearance as *parte civile*. Such a transfer implies waiver of the civil action, unless the plaintiff decides not to move his claim and pursue the civil proceedings.

37. Moreover, it is to be noted that criminal and civil liability may have different grounds. In case of auditors' liability, for instance, auditors are criminally liable only in case of willful misconduct or fraud (if they have acted with the purpose of obtaining for themselves or for third parties an unlawful advantage), but they might be found liable in civil claims also on the grounds of recklessness or negligence. Investors and other civil parties are therefore allowed, regardless of having filed an appearance in the criminal action, to commence proceedings before the Civil Court seeking the redress of damages they have suffered.

38. On 5 June 2006, Dr. Bondi, in his capacity as Extraordinary Commissioner of both Parmalat S.p.A. and Parmalat Finanziaria S.p.A. (as well as of all other companies in Extraordinary Administration), entered an appearance as *parte civile* in the Parma criminal proceedings described in paragraph 23. At the hearing of 4 October 2006 in the Bondi civil actions described in D.1, several defendants sought an order of the Civil Court of Parma declaring that Dr. Bondi has waived his actions before the Civil Court as a result of his appearance entered as a civil party in the criminal action. Dr. Bondi's counsel explained that a decision of the Parma Criminal Court on the admission of the Extraordinary Commissioner as *parte civile* is still pending and should be issued prior to or at the hearing of 24 October. Dr. Bondi's counsel also argued that the defendants' motion is without merit. The Parma Court allowed the parties to file written pleadings on this and other preliminary matters and set the hearing of December 6 2006 for the decision on these procedural issues.

F. **MULTIPLE CLAIMS UNDER ITALIAN LAW**

39. The Italian legal system does not allow class actions or lawsuits of a similar kind. In July 2006, a new draft bill was presented to the Italian Parliament to introduce a form of group action within the Italian legal system. The proposal, whose future is uncertain, would allow group action, but only by consumer associations, professional associations, and the chambers of commerce, industry, craftsmanship and agriculture. A basic principle of Italian law is that each plaintiff must assert his or her claim before the Court having jurisdiction over the case and prove the damages actually suffered. Under specific circumstances, consumers' associations are allowed to commence lawsuits in the common interests of consumers, but this does not lead to an award of damages in favor of individuals, the purpose of such actions being essentially to prohibit certain unlawful conducts carried out by businesses.

40. Although Italy does not recognize class actions, individual plaintiffs can join together in large groups by giving powers of attorney to a common lawyer or a representative who then retains a common lawyer.

41. With specific regards to civil proceedings, under Article 103 of the Italian Code of Civil Procedure ("CPC") several parties may sue in the same action whenever such actions are connected by reason of their object or cause of action or whenever the decision depends in whole or in part on the resolution of identical issues. The procedural positions of each individual plaintiff (and particularly the burden of proof in relation to damages) remain separate and the actions are simultaneously treated in the same process simply as a matter of efficiency. Article 103 CPC, in fact, provides that the Judge may at any time order that the proceedings be severed on the request of all parties or whenever their joint examination may delay or aggravate the process.

42. Finally, it is worth mentioning that, in the criminal proceedings before the Court of Milan described in paragraph B.1 above, a single counsel, Mr. Carlo Federico Grosso, is acting on behalf of about 30,000 shareholders and bondholders who had purchased Parmalat securities through the bank Sanpaolo IMI S.p.A. or its affiliates.

43. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 9, 2006

Maurizio Traverso