UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
                                          :

In re Parmalat Securities Litigation      : Master Docket
                                          : 04-MD-1653 (LAK) ECF Case
                                          :
                                          : <u>ELECTRONICALLY FILED</u>

This document relates to: 04 Civ. 0030 (LAK)   :
                                          :
------------------------------------- x

## <u>DECLARATION OF TH. M. DE BOER</u>

I, Th. M. de Boer, declare under penalty of perjury under the laws of the United States, as follows:

### I. PERSONAL BACKGROUND

1. I obtained my basic degree in Dutch Law from Utrecht University in 1969. In 1970, I became a Fellow of the Institute of Comparative Law at New York University, from which I earned a Master's degree in Comparative Jurisprudence in February 1972. On completion of a dissertation entitled 'Beyond Lex Loci Delicti, Conflicts Methodology and Multistate Torts in American Case Law', I obtained a doctorate in law (*cum laude*) from the University of Amsterdam in January 1987. My dissertation was favorably reviewed in the *American Journal of Comparative Law,* Vol. 36,. p. 583 ff. (1988) by Professor Willis L.M. Reese, the Reporter of the Restatement (Second) on Conflict of Laws.

2. In May 1972, I was employed as an assistant professor in the Department of Comparative Law and Private International Law of the University of Amsterdam. In February 1987, I received tenure as Professor of Private International Law and Comparative Law and became the Director of the Center for Foreign Law and Private International Law at the University of Amsterdam. I chaired the Department of International Law at the University of Amsterdam and the International Law Institute Amsterdam (now known as the Amsterdam Center for International Law) between 1997 and 2001.

1

3. In 1985, I received an appointment as a substitute judge in the District Court of Alkmaar, one of the nineteen district courts in the Netherlands.

4. I was a visiting professor at the University of Aruba, the Anton de Kom University in Surinam, and Columbia University School of Law in New York. I served as Executive Director (Amsterdam) of the Leyden-Amsterdam-Columbia Summer Program in American Law for ten years between 1989 and 1999.

5. I have been a member of the *Koninklijke Nederlandse Akademie van Wetenschappen* (Royal Netherlands Academy of Arts and Sciences) since 1992, and have chaired the Academy's department of Legal Sciences since 1995. I have been an editor of the *Netherlands International Law Review* since 1991. In 1998, by Royal Decree, I received a Knighthood in the Order of the Netherlands Lion.

6. In June 2003, I was appointed by Royal Decree as a member of the Dutch Standing Committee on Private International Law, an advisory body to the Dutch government on issues of private international law, instituted by the Act of 20 February 1897.

7. Since 1987, I have been engaged by numerous Dutch law firms as an expert on questions of private international law and foreign law, and have provided expert opinions on Dutch law in U.S. cases. Attached, as Annex A, is a copy of my curriculum vitae, which describes my background in more detail. Annex B is a list of my principal publications in English. My principal publications in Dutch are listed in Annex C.

II.   **ISSUES TO BE DISCUSSED**

8. I have been asked to state my expert opinion on the preclusive effect in the Netherlands of a judgment by an American court in a 'class action'. Since collective actions, in which the lead plaintiffs represent unnamed members of the class in an action for monetary damages, are not permitted under the rules of Dutch civil procedure, the question arises whether a foreign judgment in such an action will be recognized in the Netherlands. Specifically, the following issues have been identified:

    A. Will a Dutch court give preclusive effect to an American judgment in a class action as a bar to an action brought in the Netherlands by a Dutch resident who was an unnamed member of the class? ¶¶ 25-33.

    B. Will a Dutch court give preclusive effect to an American judgment in a class action as against unnamed Dutch residents, members of the class, if they did not respond to a notice permitting them to opt out of the class action? ¶¶ 34-53.

### III. SUMMARY OF CONCLUSIONS

9. A Dutch court would not recognize an American class judgment (whether for the plaintiff or for the defendant) as a bar to an action brought by a Dutch resident, member of the class, who did not actually participate in the class proceedings in the United States. Under Dutch Civil Procedure, a (foreign or domestic) judgment is not binding on non-parties. An unnamed class member cannot be considered as a 'party' to a lawsuit.

10. Since a Dutch court would consider unnamed class members as non-parties in the American class action, therefore not bound by the class judgment, it is irrelevant whether or not they responded to an opt-out notice, and whether or not they were properly notified of the opportunity to opt out. Moreover, under the principles laid down in Article 17 of the Dutch Constitution and in Article 6 of the European Convention on Human Rights, no one can be deprived of his right to access to a court of law without an express waiver. Under Dutch law, failure to respond to an invitation to opt out of a class action is not an express waiver. Thus, absent statutory authority to the contrary, unnamed class members who did not expressly opt out cannot be barred from future litigation in the Netherlands.

IV. **INTRODUCTORY REMARKS ON THE DUTCH LEGAL SYSTEM AND ON RECOGNITION AND ENFORCEMENT OF FOREIGN JUDGMENTS IN THE NETHERLANDS**

11.  To understand the context in which these issues will be dealt with, American officers of the court may benefit from a brief description of the main characteristics of the Dutch legal system (¶¶ 12-17) and the rules pertaining to the recognition and enforcement of foreign judgments in the Netherlands (¶¶ 18-24).

A.  **MAIN CHARACTERISTICS OF THE DUTCH LEGAL SYSTEM**

12.  While the Netherlands is not, technically, a 'statutory state' (*Gesetzesstaat*), *i.e.* a state in which neither the administration nor the judiciary may perform any action lacking a statutory basis, the Dutch Constitution does guarantee that 'civil law, criminal law, criminal procedure and civil procedure will be enacted in codes' (Article 107 Dutch Constitution). Since the 19th century, virtually all of Dutch law has been codified, either in systematic codes or in single statutes.

13.  Private international law used to be one of the few exceptions in this respect, as there were only a few scattered statutory provisions on choice of law and virtually no provisions on international civil procedure. Since the 1980's, however, the Dutch legislature has enacted a number of statutes on various aspects of choice of law, which is expected to result in a new 'book' on choice of law to be appended to the Civil Code. As a result of a reform of Dutch civil procedure, the Code of Civil Procedure now features a title on international jurisdiction: Title 1 (Articles 1-14), in force since January 1, 2002. As far as recognition and enforcement of judgments from foreign jurisdictions are concerned, there is still no comprehensive set of statutory rules covering cases outside the scope of international or European instruments. The only statutory provisions are found in Articles 985 ff. Code of Civil Procedure allowing an *exequatur* if the foreign judgment is within the scope of an international enforcement treaty, and in Article 431 Code of Civil Procedure, which prohibits enforcement of foreign judgments in the Netherlands in the absence of an enforcement treaty (*infra,* ¶¶ 23-24).

14. In the Netherlands, it is generally accepted that the rules of public law (constitutional law, criminal law, administrative law, tax law and the like) must be enacted in a legislative instrument. The same is true for the rules of procedure, whether pertaining to criminal, administrative or civil cases. Where there are legislative lacunae, the courts are much more reluctant to fill the gap with judge-made law than they are in matters of substantive civil law.

15. The emphasis on legislation as a primary source of law is reflected both in Dutch legal literature, in legal education, and in the approach to legal problems adopted by legal practitioners. The point of departure is the characterization of the issue and finding the relevant statutory provisions. Case law mainly serves as an aid in the interpretation of codified law and can be used to fill an occasional statutory gap.

16. The Dutch courts, including the *Hoge Raad* (Supreme Court of the Netherlands), are not allowed to review the constitutionality of an Act of Parliament: Article 120 Dutch Constitution. Statutory provisions are not subject to any kind of judicial review, and must be applied even if they could be considered unconstitutional. Unlike Austria, Germany, Italy, Portugal or Spain, the Netherlands does not have a constitutional court. On the other hand, Article 120 does not bar judicial review of statutory law if it is deemed to be incompatible with a directly applicable provision in a treaty to which the Netherlands is a party: under Article 94 of the Dutch Constitution, treaties take precedence over Dutch national law.

17. In the Netherlands, all cases – whether civil, criminal or administrative – are adjudicated without the assistance of a jury. All cases are decided by professional judges. The absence of a jury may help to explain not only the inquisitorial character of civil proceedings – issues of fact are decided by the court itself – but also the fairly technical legal language in which judicial opinions are couched.

B. **RECOGNITION AND ENFORCEMENT OF FOREIGN JUDGMENTS IN THE NETHERLANDS**

18. With regard to the recognition and enforcement of foreign judgments a distinction must be made between decisions that are, by nature, only amenable to recognition (personal status deci-

sions,[1] declaratory judgments and dismissals) and decisions that are capable of being enforced (judgments ordering the defendant to act, or not to act, or to pay a sum of money).

19. In the Netherlands, as in most countries, the issue of whether a foreign status decision, declaratory judgment or dismissal can be *recognized*, and the issue of whether an executory judgment can be *recognized and enforced* are subject to rules of private international law or conflicts law. European regulations and treaty law are of increasing importance in this field. However, to the extent that these instruments cover recognition and enforcement of foreign judgments, their scope is limited to situations in which the judgment was rendered in another EU-member state, or, respectively, in a state in which the treaty is in force. There is only one treaty by which the courts in the Netherlands and the United States are mutually obliged to recognize and enforce each other's judgments, provided the conditions of the treaty are met: the Agreement between the Netherlands and the United States for the enforcement of maintenance (support) obligations, which was concluded on May 1, 2001 and entered into force on May 1, 2002. That treaty covers only the cooperation between Central Authorities in the United States and the Netherlands, so as to further the collection of payment arrears on maintenance obligations. Since there are no other agreements between the Netherlands and the United States on recognition and enforcement, any other type of American judicial decision in a civil or commercial matter could only be recognized or enforced in the Netherlands if this would be permissible under relevant Dutch statutory or case law concerning recognition of foreign judgments.

*a. Recognition*

20. With regard to the *recognition* of foreign judgments, there are a few scattered provisions in Dutch statutory law, all pertaining to decisions affecting personal status (divorce, adoption, affiliation, etcetera). These provisions are based on a general rule, which has been gradually developed by the courts. The point of departure is a landmark decision by the Dutch Supreme Court in the so-called '*Fur coat case*' (Hoge Raad 14 November 1924, *NJ* 1925, p. 91). The Supreme Court held that a dismissal by an English court barred the Dutch plaintiff from re-

---

1. Personal status decisions belong to the category of 'constitutive decisions', *i.e.* judicial decisions that, at a private party's request, effect a change in an existing legal condition (by substitution, termination, or modification of the status quo), usually in the field of domestic relations. Examples are: divorce, adoption, affiliation, guardianship, and the like, but also the dissolution of a contract, or a declaration of bankruptcy.

litigating his case in the Netherlands because the plaintiff had voluntarily brought the action in England and the English court's decision did not contravene Dutch public policy.

21. Since then, recognition of foreign judgments in the Netherlands is subjected to a two-pronged test: (1) that such decision did not offend the due process rights of the party against whom recognition is sought and (2) the public policy of the Netherlands is not offended by the decision. In subsequent case law, the due process requirement has been broken down into three specific criteria: (a) the foreign court must have assumed jurisdiction on an internationally acceptable ground; (b) the proceedings abroad must have been conducted in accordance with the principles of proper administration of justice as observed in the Netherlands; and (c) the defendant must have been notified in a timely and proper fashion to enable him to prepare a defense, so that both sides have had sufficient opportunity to state their case. *Cf.* L. Strikwerda, *Inleiding tot het Nederlandse internationaal privaatrecht*, 8th ed., Deventer, 2005, p. 284 ff., p. 289/290; Hoge Raad 27 June 2003, *NJ* 2004, 615; Hoge Raad 3 December 2004, *NJ* 2005, 562).

22. The second condition, public policy, is a flexible means to ward off recognition of any foreign decision if its contents would be offensive to fundamental principles of Dutch law or if its effects would contravene the interests of the Dutch legal community.

*b. Enforcement*

23. Most litigation on the res judicata effect of foreign judgments in the Netherlands focuses on executory decisions: the plaintiff has won his case in a foreign court and now seeks enforcement in the Netherlands. With regard to the enforcement of foreign judgments outside the scope of an enforcement treaty or a European Regulation, the Dutch Code of Civil Procedure contains but one provision, laid down in Article 431: such a judgment cannot be enforced in the Netherlands. The case must be relitigated in a Dutch court.

24. Gradually, however, the Dutch courts have mitigated the requirements of Article 431. To obtain enforcement of a judgment, the plaintiff must bring a new action asking for the same relief as granted by the foreign court. The defendant must be served with a summons by the proper means of notification. If the judgment is capable of being *recognized* under the standards described above (¶¶ 20-22) the Dutch court will adopt the foreign decision as its own. Thus, if the

7

decision to be enforced meets all conditions for recognition, the facts on which it is based, as ascertained by the foreign court, will be held to be true and need not be proven again, and the foreign court's holding will be adopted by the Dutch court. If not, the case will have to be retried in the Netherlands. *Cf.* Hoge Raad 14 November 1924, *NJ* 1925, p. 91; Hoge Raad 24 June 1932, *NJ* 1932, p.1262; Hoge Raad 17 May 1991, *NJ* 1991, 505, Hoge Raad 26 January 1996, *NJ* 1997, 258; Court of Appeal 's-Hertogenbosch 4 September 1996, *NIPR* 1997, 190; Rechtbank Rotterdam 29 September 1989, *NIPR* 1992, 277; L. Strikwerda, *Inleiding tot het Nederlandse internationaal privaatrecht*, 8th ed., Deventer, 2005, p. 290–291.

## ANALYSIS

A.  **WILL A DUTCH COURT GIVE PRECLUSIVE EFFECT TO AN AMERICAN JUDGMENT ENTERED IN A CLASS ACTION AS A BAR TO AN ACTION BROUGHT IN THE NETHERLANDS BY A DUTCH RESIDENT WHO WAS AN UNNAMED MEMBER OF THE CLASS?**

25.  I conclude that a Dutch court would not give preclusive effect to the American judgment and that it would not consider the judgment or any findings in the case res judicata. Several principles lead to this conclusion. As explained above, ¶¶ 20-22, the preclusive effect of foreign judgments will be tested against due process standards and against public policy. Under the due process test, a Dutch court must determine whether the foreign judgment was rendered between the same parties in the case at bar. Because, as set forth below, under the Dutch law of collective actions, an individual on whose behalf a collective or representative action was litigated is not considered a party and is not bound by the court's decision in the collective action, a Dutch court would conclude that an unnamed member of a U.S. class is a 'non-party' against whom no preclusive effect may be recognized.

26.  The Dutch law of collective actions is relevant for determining whether an unnamed class member is a 'party' against whom res judicata may be asserted. The Dutch law of collective actions (excepting a few circumstances, not relevant here) was codified in the Act of 6 April 1994 (*Staatsblad* 1994, 269), which entered into force on July 1, 1994 as Article 3:305a

of the Dutch Civil Code (CC).[2] The Dutch collective action cannot be equated with an American class action. First, the only remedy that can be sought in collective actions under Dutch law is injunctive or declaratory relief. Second, under Dutch law, a collective action can only be brought by a foundation ('*stichting*') or association ('*vereniging*') with full legal capacity – not by an individual, corporation or interest group that does not have the legal status of a foundation or association – which must show that the interest it asserts is specifically mentioned in its '*statuten*' (by-laws, or charter, or articles of association), and that it actively promotes the interest concerned: *cf.* Article 305a(1). Finally, a collective action under Dutch law differs from an American class action in that a member of the group whose interests are asserted by the plaintiff in a collective action will not be bound by the judgment, regardless of whether the group member was given an opportunity to opt out.

27.   The preclusive effect of a judgment in a collective action pursuant to Article 3:305a CC is expressly discussed in the Explanatory Memorandum accompanying the government's proposal for the introduction of a general collective action (*Tweede Kamer 1991-1992*, Bill 22486, no. 3, p. 26 ff.). The collective action as it is now known in the Netherlands is considered a 'subsidiary action': the right of an interest organization to institute a collective action does not replace the (primary) right of individuals to have their claim adjudicated by a court of law. As explained in the Explanatory Memorandum, this is because under Dutch law a collective action can only bind the parties to the action, *not* the parties on whose behalf the action was brought. Even though some interest groups had urged the government to expand the res judicata effect of judgments in collective actions to the members of the interest group, the government did not enact such law because it would contravene fundamental principles of Dutch civil procedure (*Tweede Kamer 1991-1992*, Bill 22486, no. 5, p. 13-14, p. 17-18).

---

2. In translation, that statute provides:
   (1) A foundation or association with full legal capacity can institute an action intended to protect identical interests of other persons to the extent that it actively promotes such interests in accordance with its by-laws.
   (2) A legal person referred to in paragraph (1) shall have no locus standi if, under the circumstances, it has not made sufficient attempts to achieve the objective of the action through consultations with the defendant.
   (3) The action referred to in paragraph (1) may have as its objective to obtain a decision ordering the defendant to publish the decision or have it published in a manner to be determined by the court and at the expense of the party or parties, as directed by the court. Monetary compensation may not be sought.
   (4) The action referred to in paragraph (1) may not be founded on conduct if the person affected by that conduct has objected to its being used as a ground for the action.
   (5) A judicial decision has no consequences for a person on whose behalf the action was brought if that person objects to the way the decision affects him, unless it is in the nature of the decision that its binding effect cannot be excluded with regard to that person alone.

28. In a landmark decision on the interpretation of Article 3:305a, which was held to be a codification of legal practice before its enactment, the Dutch Supreme Court held that the res judicata effect in a collective action does not include the individual members of the interest group (Hoge Raad 7 November 1997, *NJ* 1998, 268). In that case, a collective action for a declaratory judgment was brought by the Dutch *Vereniging van Effectenbezitters* ('VEB', Association of Stockholders) against the Dutch multinational Philips alleging that Philips had given false information on its present and future financial condition. As a defense, Philips asserted that the action should be dismissed because the VEB had failed to submit a list of the stockholders it represented. The court held that plaintiff VEB was under no such obligation, since it had brought the action in its own right. The main reason for this conclusion was the court's view that a declaratory judgment in which Philips' representation of financial facts would be declared unlawful would be binding only on the *parties* in the proceedings, not on the members of the VEB, or other stockholders who might have bought Philips stock during a certain period of time: '… a judgment for the plaintiff will only be binding on the VEB and on Philips, so that each of the stockholders claiming to have suffered damages as a consequence of Philips' allegedly unlawful conduct will have to bring an action of his own. In those individual actions Philips will have sufficient opportunity to argue that it cannot be held liable to this particular plaintiff.'

29. In 2002, the *Hoge Raad* held, again, that a judgment in a collective action under Article 305a CC can only confer rights on the parties in whose favor it was rendered, and that non-parties – even if they may benefit from the practical consequences of such a judgment – will not be precluded from raising the same claim or the same issue in a subsequent action of their own (Hoge Raad 14 June 2002, *NJ* 2003, 689). In his comment (*ibid.*), Professor H.J. Snijders emphasized that a judgment in a collective action cannot bind unnamed group members, since res judicata only applies between parties (Article 236 Code of Civil Procedure), and unnamed group members are not parties.

30. Hence, a claimant who was not a party in a collective action in the Netherlands (but on whose behalf the collective action was brought) will not be precluded from bringing an individual action against the same defendant, and both parties will be allowed to prosecute or defend as they see fit. They are neither bound by the evidence adduced in the collective action, nor by the claims and defenses asserted in that action. The court chosen by the individual class

member will have to adjudicate the case on the merits, deciding on each claim and each defense the parties advanced. The same rule would apply to unnamed members of a U.S. class action because the situation of an unnamed class member is analogous to that of a claimant who was not a party in a Dutch collective action.

31. It should be noted that there is fundamental difference between a collective action within the meaning of Article 3:305(a) CC and an action in which the plaintiff institutes proceedings on behalf of one or more interested indvidulas. In Dutch civil procedure, a distinction is made between the "formal" party (*i.e.* the plaintiff or the defendant as such) and the "material" parties on whose behalf the action is brought. An example is an action brought by a guardian on behalf of his/her ward, or an action brought by one of a number of joint partners on behalf of all partners. The capacity of the formal party to institute proceedings on behalf of one or more other parties may be based on a statutory provision, or, in the absence of such provision, on proxy or mandate. A mandate to bring a lawsuit is implied in an agreement between one or more creditors (of the same debtor) and a debt-collection agency. Technically, there may be only one plainitff, but he/she may represent the interests of a number of (other) claimants. The statutory representative or the mandatary has a duty to reveal the identity of the material party or parties (Hoge Raad 19 October 1979, *NJ* 1980, 299). Thus, the names of all interested individuals, even if they are not "formal" parties, are disclosed to the opposing party. Under Dutch law, judgments are binding on both "formal" and "material" parties.

In a collective action, on the other hand, those on whose behalf the action is brought need not be identified by name, and they are not considered "material parties". As "non-parties", they are not bound by a judgment in a collective action.

32. It should be emphasized that a Dutch court, in deciding whether or not to give preclusive effect to a foreign judgment in a class action, would not be guided by "fairness" or "reasonableness", since such consideratons have not found statutory expression in the Code of Civil Procedure. As I have demonstrated above, both the Dutch legislature (¶ 27) and the Dutch Supreme Court (¶¶ 28-29) have expressly held that an unnamed class member is *not* bound by a judgment rendered in a collective action and accordingly, it is neither 'reasonable' nor 'fair' to so preclude such unnamed class members. Moreover, there is no principle of Dutch law providing for recognition of judgments because the court found it "reasonable and

fair" to do so. As set forth above (*supra* ¶¶ 21-23), Dutch law requires a showing of due process and public policy before recognition is given to a foreign judgment.

33. Thus, question **A** (*supra*, ¶ 8) must be answered in the negative: a Dutch court would not recognize an American class judgment (whether for or against the plaintiff) as a bar to an action brought by a Dutch resident, member of the class, who did not actually participate in the class proceedings in the United States. Since claim preclusion can only be used in later litigation between the same parties that were involved in the original litigation, and since unnamed class members must be considered as non-parties, they are free to raise the same claims and issues that were decided in the class action. Contrary to U.S. law, Dutch law does not allow an exception to this principle with regard to non-parties in a defended collective action.

**B.   WILL A DUTCH COURT GIVE PRECLUSIVE EFFECT TO AN AMERICAN JUDGMENT ENTERED IN A CLASS ACTION AS AGAINST UNNAMED DUTCH RESIDENTS, MEMBERS OF THE CLASS, IF THEY DID NOT RESPOND TO A NOTICE PERMITTING THEM TO OPT OUT OF THE CLASS ACTION?**

34. The next question to be addressed focuses on a Dutch resident's lack of response to a notice allowing him to be excluded from the class (opting out). Since a Dutch court will consider unnamed class members as non-parties in a foreign lawsuit, therefore not bound by a class judgment (*cf.* ¶¶ 25-33), the question whether or not they responded to an opt-out notice is moot. Moreover, as set forth below, a decision that an unnamed class member who failed to respond to an opt-out notice is precluded from bringing an action of his own would violate the Dutch Constitution and the European Convention on Human Rights. Such violation presents another obstacle to preclusion of any future litigation brought by a shareholder.

35. Leaving aside, for the moment, the implications of the Dutch Act of 2005 on the Collective Settlement of Mass Damages (to be discussed *infra*, ¶¶ 42 ff.), I conclude that both Article 17 of the Dutch Constitution and Article 6 of the European Convention on Human Rights, as well as the fundamental principles of party autonomy in civil procedure, would compel a Dutch court to allow any member of a class in an action under FRCP Rule 23 – except those who actually intervened and thereby became parties in the action – to bring an ac-

tion against a Dutch defendant on the merits, regardless of the outcome of the case in the United States.

36. The official translation of Article 17 of the Dutch Constitution by the Dutch Ministry of Foreign Affairs, states: 'No one may be prevented against his will from being heard by the courts to which he is entitled to apply under the law.' It is therefore inconceivable that anyone – without an express waiver of these rights – could be bound by any judgment without having been heard.

37. Article 6(1) of the Convention on Human Rights guarantees that 'in the determination of his civil rights and obligations ... everyone is entitled to a fair and public hearing within a reasonable time by an impartial tribunal established by law.'

38. It is a fundamental principle of civil law – not only in the Netherlands but in most legal systems – that no one be can deprived of a right by the unilateral act of someone else. In Dutch law, a distinction is made between *afstand van recht* (renunciation of a right) and *rechtsverwerking* (forfeiture of a right). The Dutch Supreme Court has ruled consistently that rights can only be renounced if the right owner has made an express and unambiguous declaration to that effect. *Cf.* Hoge Raad 11 October 1989, *NJ* 1990, 812; Hoge Raad 16 April 1993, *NJ* 1993, 367; Hoge Raad 7 October 1994, *NJ* 1995, 171; Hoge Raad 15 November 1996, *NJ* 1997, 275). A failure to respond to an opt-out notice cannot be considered as an express and unambiguous declaration and therefore is not a willful renunciation of a right.

39. Rights can be forfeited by implied consent (*rechtsverwerking*). If a right owner has created legitimate expectations that he has relinquished his right, it would be contrary to good faith if he would nevertheless try to enforce it. In a consistent line of decisions, the Dutch Supreme Court has held that 'doing nothing' cannot be considered a relinquishment of a right. *Cf.* Hoge Raad 29 September 1995, *NJ* 1996, 89; Hoge Raad 24 April 1998, *NJ* 1998, 621; Hoge Raad 21 June 2002, *NJ* 2002, 540; Hoge Raad 24 May 2002, *NJ* 2003, 267; Hoge Raad 11 July 2003, *NJ* 2003, 551; Hoge Raad 28 November 2003, *NJ* 2004, 328. Motions to dismiss a right owner's action on the ground of *rechtsverwerking* are usually denied for lack of proof that the obligee's expectations were justified by the right owner's actions. Failure to respond to an opt-out notice – in other words, 'doing nothing' when one receives such notice

– cannot be considered as an 'action' from which it can be legitimately inferred that an unnamed class member consented to relinquish his rights.

40. Likewise, as expressed in Article 6:217 CC: contractual obligations can only result from the acceptance of an offer. For that reason, an agreement for the benefit of a third party, or a civil judgment affecting the rights and obligations of a party not involved in the litigation, does not bind those parties unless they have expressed an intention to be bound. A failure to respond to an opt-out notice cannot be construed as consent to be bound by a judgment in a collective action.

41. Because the Dutch Constitution and the Convention on Human Rights guarantee litigants access to the Dutch courts, such right may only be renounced explicitly or forfeited by implied consent (¶¶ 38-39). Failure to respond to an opt-out notice cannot, under Dutch law, be considered a renunciation or forfeiture of the constitutional right of access to the courts (¶ 40). Thus, I conclude that Dutch courts would not accept failure of a non-party to respond to an opt-out notice as sufficient ground to recognize the preclusive effect of a foreign judgment, as such recognition would be violative of the due process (and likely the public policy) requirement for recognition of foreign judgments under Dutch private international law.

*Collective Settlement of Mass Damages: the Act of 23 June 2005*

42. It could be asked whether this conclusion still holds true since the recent enactment of the *Wet collectieve afwikkeling massaschade* (Act on Collective Settlement of Mass Damages, *Staatsblad* 2005, 340). The Act (referred to herein as the "Act of 2005") entered into force on 27 July 2005. It provides for judicial approval of collective settlements, which is binding on all interested parties unless they opted out. I submit that the Act of 2005 is irrelevant to the issues here in dispute and, in fact, supports the proposition that a Dutch resident would not be precluded from later asserting claims presented in the class action.

43. Irrespective of the test used to determine recognition of foreign judgments, the Act of 2005 does not support any argument that indicates that Dutch courts would grant preclusive effect to a U.S. class action judgment. First, by its terms, the Act of 2005 applies only to settlements submitted for judicial approval to a Dutch court, not foreign judgments. Second, such

agreements may be entered into only by foundations or associations specifically created to promote the interests of their members or affiliated persons, not by private litigants. Absent statutory authority, a Dutch court could not extend the scope of the Act beyond its terms. Third, the opt-out procedure recognized in the Act of 2005 is a statutorily created exception to the constitutional and fundamental right of access to the courts recognized in Article 17 of the Dutch Constitution and Article 6 of the European Convention on Human Rights. Fourth, the Act of 2005 actually shows that the Dutch legislature wished to limit the preclusive effects of prior proceedings, thus permitting Dutch residents to wait until a final settlement of their claims before deciding whether or not to opt out.

44. The Act of 2005 was enacted to permit certain settlements of mass disaster or mass exposure claims. The Act applies only where an interest organization representing the victims of a mass disaster accident or a mass exposure accident has reached an agreement on compensation with the party or parties held liable for the accident. There is no provision for the injured parties collectively, or in a representative capacity, to initiate and prosecute an action under the Act. The basis of liability, whether sounding in contract or tort, is not established judicially. Where a settlement has been reached, both sides may submit a joint application requesting that a court declare their agreement of settlement binding on all parties in whose interest it was made, with the exception of victims who have chosen to 'opt out' by notifying the interest organization that they do not want to be bound. All other victims are precluded from maintaining their own claims against any party to the agreement whom they hold responsible for their injury or damage.

45. The main issue to be decided by the court in a proceeding under the Act of 2005 is the question whether the settlement can be considered 'reasonable' in light of the damage and the interests of the beneficiaries: Article 7:907(3)(b) and (e) CC. Additionally, in accordance with their purpose, the proceedings covered by the Act of 2005 are not adversarial, as the parties that have reached a settlement must submit a joint application for judicial approval. The court is not allowed to rule on any of the substantive issues, such as misrepresentation, recklessness, causality, or the amount of compensation. An American class action, on the other hand, is a defended action. This is a fundamental distinction between the Act of 2005 and Rule 23 FRCP.

46. The agreement submitted for judicial approval under Article 7:907(1) CC must have been concluded between a *foundation or an association with full legal capacity* acting under its by-laws in behalf of the interests of the beneficiaries on the one hand, and the parties who have agreed to compensate the beneficiaries on the other. Whether the law holds the latter group liable or not is irrelevant as long as they have bound themselves to participate in the compensatory scheme. As far as the other party is concerned, Dutch law does not allow (a group of) natural persons or a legal person other than a foundation or association to bring a collective action under Article 3:305a CC, nor does it allow them to apply for judicial approval of a settlement under Article 7:907. Thus, neither a corporation (like the lead plaintiffs in the Parmalat action) notwithstanding its status as a legal entity with full legal capacity, nor a natural person is allowed to represent an interest group under either of these provisions.

47. Underlying the requirement that proceedings can only be started by a foundation or association is the notion in the Netherlands that the protection of collective interests by legal means should be entrusted only to interest organizations (Explanatory Memorandum, *Tweede Kamer 1991-1992*, Bill 22486, no. 3, p. 20). The Dutch legislature determined that a foundation or association is likely to have less difficulty satisfying the requirement of adequate representation than a group of individuals, who have no charter or by-laws in which their goals are enunciated. The legislature also determined that a corporation, pension fund, or other entity with purposes other than the representation of an interest group cannot be expected to pursue the interests at stake in a collective action or in proceedings under the Act of 2005. It is clear that investment companies or securities dealers are not allowed to act as representatives of all others under Dutch law.

48. As noted, the provisions of the Act of 2005 do not apply to judgments (foreign or domestic) or to actions taken by private litigants. A Dutch court could not extend the statute beyond its text to cover a U.S. class action judgment. Such extension of the statute would be exclusively the province of the Dutch legislature.

49. At the time of its adoption, the opt-out provision of the Act of 2005 caused a storm of protest among the members of the *Raad van State* (Council of State), the judiciary, scholars,

and private interest groups.[3] They asserted that it would be a violation of the European Convention on Human Rights and the Dutch Constitution if the beneficiaries lost their right to have their day in court as a result of the judicial endorsement of an agreement concluded by others. To the critics, an opt-out provision was clearly insufficient to satisfy an individual's internationally and constitutionally guaranteed right to access to justice. As a result, the Act would be construed narrowly.

50. The Act of 2005 – which permits binding non-parties to a settlement of collective damages unless they opted out – is a singular (and controversial) statutory departure from the principle that rights can only be renounced by express declaration or forfeited by justified expectations created by the right owner, and to the principle that third parties cannot be bound by agreements made by others. Even so, it does not support the view that the Dutch courts would hold unnamed class members bound by an American class judgment if they failed to respond to a an opt-out notice. The Act of 2005 is the only instance in Dutch law where an opt-out notice is permitted. It does not cover the situation here, and absent legislative action permitting opt-out notices in other circumstances, it could not be interpreted by Dutch courts beyond what is prescribed in the statute because it violates the Dutch Constitution and the European Convention on Human Rights.

51. I am informed that, in an American class action, class members, as a rule, are bound by a judgment (whether the court found for the plaintiff, for the defendant, or approved a settlement reached by the litigants), unless they opted out *before* the case was decided on the merits or a settlement was reached. In the Netherlands, as discussed above, there is no need for an opportunity to opt out in a collective action under Article 3:305a CC, as the members of the group on whose behalf the action was brought – being non-parties – are not bound by the court's decision (*supra*, ¶¶ 25-33). Under the Act of 2005, judicial approval of a settlement of mass damages will bind the beneficiaries only if they were notified of the terms of the settlement and the court's decision, and then decided not to opt out. Here, the *moment of opting out*

---

3. Council of State: *Tweede Kamer* 2003/2004, Bill 29414, no. 4, p. 1-14; *Nederlandse Vereniging voor Rechtspraak* (Dutch Association for the Judiciary), advisory opinion of 5 December 2002 (no. 232); www.verenigingvoorrechtspraak.nl (see: 'Adviezen'). In the Explanatory Memorandum, *Tweede Kamer* 2003/2004, Bill 299414, no. 3, p. 7-9, advisory opinions by other groups are discussed at p. 7-9. See also the objections raised by a Dutch expert on collective actions for damages: Niels Frenk, De afwikkeling van massaschade, *Nederlands Tijdschrift voor Burgerlijk Recht* 1993, p. 89-94, at p. 93. Objections raised by Dutch interest groups, such as the *Consumentenbond* (Consumers Association), are discussed by A.W.E.S. van Duyneveldt-Franken & C. van Oosten, Een mass disaster of uitkomst?, *Advocatenblad* 2004, p. 650-653.

reveals another major difference between an American class action and the proceedings under the Act of 2005. Pursuant to Article 7:908(2) CC, the court's (irrevocable) ruling does not bind any beneficiary who does not want to be bound. A declaration to that effect must be made within a period of at least three months after publication of the decision, or a longer period if the court so decides. From Rule 23(e)(3) FRCP, I gather that class members may (but not necessarily) be given a (second) opportunity to request exclusion from the class, but they can only do so before the settlement is judicially approved. However, if they do not opt out before judgment is rendered they are bound by the court's determination of liability and the amount, if any, of damages.

52.    The Act of 2005 supports the proposition that as a matter of policy, the Dutch legislature would not give preclusive effect to a U.S. class action. As noted, claimants[4] can only be bound by a settlement under the Act after they have had a full opportunity to review its terms. They can wait and see if a settlement, as approved by a Dutch court under the Act of 2005, is satisfactory. If they decide it is not, they are free to opt out after they have been notified of the court-approved settlement, and commence their own action. Unlike class members in U.S. proceedings, Dutch claimants do not have to make a determination as to their waiver of rights until after the completion of the procedure.

53.    For the reasons stated above, it cannot be said that the recognition and enforcement of a judgment in a class action hinges on the foreign members of the class receiving fair notice of the action and the opportunity to opt out. Recognition of an American class judgment in the Netherlands does not hinge on proper notification of unnamed class members informing them of an opportunity to opt out, but on (an exception to) the rule that non-parties cannot be bound by a judgment in a civil or commercial matter absent affirmative steps indicating their consent to be so bound. While the Act of 2005 permits an exception in the Netherlands for a judicially

---

4. It is questionable whether foreign claimants would be bound under the terms of the Act of 2005. One of the objections raised by the Dutch judiciary (*supra* note 4) focused on the absence of any information in the (Draft) Explanatory Memorandum on transnational complications. According to the Minister of Justice, settlements of mass damages subject to the Act would 'normally' benefit Dutch claimants only, as an interest organization acting on behalf of the victims of mass damage would probably not be representative of foreign claimants: Explanatory Memorandum, *Tweede Kamer* 2003/2004, Bill 29414, p, 15/16. In his reply to the Senate (*Memorie van Antwoord, Eerste Kamer*, 2004/2005, Bill 29424, p. 14), the Minister conceded that foreign claimants *might* be represented by the interest organization concluding a settlement agreement, but nothing was said about the extraterritorial effect of a Dutch court's binding approval of a settlement.

approved settlement of collective damages, any suggestion that its scope could be extended to foreign class judgments is not only speculative but in direct conflict with the objections raised both by the Council of State, members of the Dutch legislature and the judiciary to this limited violation of the principles underlying Article 17 of the Dutch Constitution and Article 6 of the European Convention on Human Rights, as well as to the intention of the Dutch legislature, as expressed in the narrowly circumscribed provisions of the Act of 2005. The fact that judgments in collective actions under Article 3:305 ff. CC are not binding on non-parties, that no damages can be claimed in such an action, that the Dutch legislature has not felt the need for a revision of these provisions and determined in enacting the Act of 2005 that a Dutch citizen would not have to decide whether or not to be bound until after the completion of the proceedings further contradict all speculations on the preclusive effect of an American class judgment in the Netherlands.

## V.  CONCLUSION

54.  I conclude as follows:

   A.  A Dutch court would not recognize an American class judgment (whether for the plaintiff or for the defendant) as a bar to an action brought by a Dutch resident, member of the class, who did not actually participate in the class proceedings in the United States. Even if, under American law, an unnamed class member would be barred from relitigating the claims adjudicated in the class action, under Dutch law he would not be bound by the American judgment because res judicata does not extend to non-parties, and a Dutch court would consider non-participating class members as non-parties.

   B.  Because a Dutch court would consider unnamed class members as non-parties in the American class action, therefore not bound by the class judgment, it is irrelevant whether they responded to an opt-out notice or not. In any event, such notices violate fundamental principles of civil procedure, as laid down in Article 6 of the European Convention on Human Rights and in Article 17 of the Dutch Constitution and cannot deprive a Dutch resident of his right to access the courts to pursue his own claim.

    C.    Any reliance on the Act of 2005 to assert that a Dutch court would bar subsequent litigation by an unnamed class member is without basis. The Act of 2005 has no bearing on the recognition of foreign judgments, or settlements approved by foreign courts. It only covers joint applications for judicial approval, by a *Dutch* court, of settlements of mass damages. Nor does the policy underlying the Act support the assumption that an opt-out notice with respect to a U.S. class action will preclude a Dutch resident from asserting his claim in a Dutch court. First, the Act, by its terms, does not apply to judgments or actions commenced by private litigants. Second, such interpretation would violate the Dutch Constitution and European Convention on Human Rights, which only may be contravened by an express statute. Third, the Act of 2005 actually expresses an intent that claimants not make a determination to be bound until after they are informed of the terms of the settlement and of the court's approval.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. My views are based on my professional experience.

Amsterdam, The Netherlands

July 22, 2006

Th. M. de Boer