UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re PARMALAT SECURITIES LITIGATION

MASTER DOCKET

This document relates to:    05 Civ. 9934, 06 Civ. 0704             04 MD 1653 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

> Richard I. Janvey
> Joan M. Secofsky
> JANVEY, GORDON, HERLANDS, RANDOLPH & COX, LLP
>
> Allan B. Diamond
> J. Gregory Taylor
> DIAMOND MCCARTHY TAYLOR FINLEY & LEE, LLP
>
> *Attorneys for Plaintiffs*
>
>
> A. Robert Pietrzak
> Joseph B. Tompkins, Jr.
> Thomas McC. Souther
> Daniel A. McLaughlin
> Alan C. Geolot
> Mark P. Guerrera
> SIDLEY AUSTIN LLP
> *Attorneys for Defendant Bank of America*

LEWIS A. KAPLAN, *District Judge.*

Defendant Bank of America ("BoA") served Rule 30(b)(6) deposition notices on

plaintiffs Food Holdings Ltd. ("FHL"), Dairy Holdings Ltd. ("DHL"), and Parmalat Capital Finance

Ltd. (collectively, the "Companies"), which are in liquidation in the Cayman Islands.  Topic 16 of

the notices indicates that BoA seeks testimony concerning "[t]he proceedings in the Cayman Islands

to liquidate FHL and DHL . . . ."  Topic 18 concerns the financing of those liquidation proceedings and the distribution of any recoveries in this and any other litigation.  The Companies objected that discovery on these topics would not be relevant, although they appear not to press this contention with any vigor at this point, and, in any case, that providing information concerning these topics "may" be confidential under Caymans law and that they should not be compelled to respond absent approval of either the relevant principals or the Grand Court of the Cayman Islands.  They assert that they do not oppose seeking such approval and indicate that they "may" voluntarily do so.  BoA moves to compel testimony on these subjects.

The relevancy objection need not long detain us.  While it would be premature to make a definitive determination that any testimony on either of these topics necessarily would be admissible in evidence, BoA's showing of relevancy is sufficient for discovery purposes.  The relevancy objection is overruled for present purposes.

The other objection is based on the Confidential Relationships (Preservation) Law (1995 Revision) of the Cayman Islands (the "Act").[1]  Section 2 of the Act defines "confidential information" as information concerning property which the possessor "is not, otherwise than in the normal course of business, authorised by the principal to divulge."  Section 5 of the Act, broadly speaking, makes it a criminal offense for anyone to divulge "confidential information."

It is the Companies' burden to demonstrate that Caymans law actually bars the testimony in question.[2]  Although they have submitted no such evidence and no affidavit or

---

[1]

Farrow Decl. Ex. B.

[2]

*See British Int'l Ins. Co. v. Seguros La Republica, S.A.,* No. 90 Civ. 2370, 2000 WL 713057, at *8 (S.D.N.Y. June 2, 2000) (citing *Alfadda v. Fenn,* 149 F.R.D. 28, 34 (S.D.N.Y. 1993)).

declaration on the Cayman Islands legal issues, it is reasonably plain that the Companies might have a substantial argument that at least some of the testimony they may be called upon to give on these topics would require disclosure in violation of the statute – if the statute simply made it a criminal offense to divulge "confidential information," irrespective of the circumstances.  But the Act is not nearly so categorical.

To begin with, Section 5 expressly provides that disclosure of confidential information as provided in Section 3(2) is not an offense.  Section 3(2)(c) states that the Act does not apply to disclosure of confidential information "in accordance with [the Act] or any other Law." In the absence of evidence to the contrary, the Court lacks any basis for assuming that disclosure pursuant to an order of this Court would not fall within Section 3(2)(c) and thus come within the exception contained in Section 5.

Even if that were not the case, there would be another possibly pertinent exception. Section 3(2)(a) excludes disclosure "in compliance with the directions of the Grand Court [of the Cayman Islands] pursuant to section 4."  Section 4(1) states that whenever a person intends or is required to give in evidence any confidential information, "he shall before so doing apply for directions and any adjournment necessary for that purpose may be granted."  The Grand Court then is authorized by subsequent portions of Section 4 to permit or refuse the giving of the evidence and to attach appropriate conditions.

In sum, the record strongly suggests that disclosure pursuant to an order of this Court would not violate the Act.  And even if that were not the case, the Companies would not be home free.

The issue presented here is not novel:

4

"Companies subject both to U.S. discovery demands and to foreign blocking statutes barring compliance often have invoked such statutes in resisting motions for orders compelling them or those subject to their control to produce information covered by the statutes.  And while courts have taken different approaches to this question, the modern trend holds that the mere existence of foreign blocking statutes does not prevent a U.S. court from ordering discovery although it may be more important to the question of sanctions in the event that a discovery order is disobeyed by reason of a blocking statute.  In determining whether to enter an order compelling discovery, courts typically consider, among other factors, the national interests of the nations involved, the nature and extent of the hardship that would be imposed upon the discovery target if the two countries took inconsistent positions, the good faith or lack thereof of the party resisting the order, and whether a discovery order reasonably can be expected to achieve compliance."[3]

Here, the Cayman Islands has an interest in protecting the confidentiality of professional relationships.  But that interest at least arguably is outweighed substantially by the United States' interest in obtaining evidence for the fair and orderly disposition of litigation properly in its courts, especially where, as here, foreign plaintiffs have resorted to the U.S. courts yet seek to use foreign law to shield itself and its creditors from discovery.  Indeed, the interest of the United States is especially compelling in light of the fact that the Companies are in liquidation under the laws of the Cayman Islands, which means that officers appointed under the authority of the Caymans government are seeking to use the courts of this country to the extent that doing so suits their purpose but to avoid taking the burdens.

It is far from clear that the Companies would suffer any hardship if an order compelling the testimony were entered.  Even on the assumption that compliance with such an order

---

[3] *In re Auction Houses Antitrust Litig.,* 196 F.R.D. 444, 446 (S.D.N.Y. 2000) (citing *Minpeco, S.A. v. Conticommodity Services, Inc.,* 116 F.R.D. 517 (S.D.N.Y.1987); 1 RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 442 (1987); Lewis A. Kaplan, *International Discovery in Antitrust Litigation* § 15.07 in 2 ANTITRUST COUNSELING AND LITIGATION TECHNIQUES (J.O. von Kalinowski ed. 1996)) (footnotes omitted); *see also First Am. Corp. v. Price Waterhouse LLP,* 154 F.3d 16, 22 (2d Cir. 1998).

would not alone render the Act inapplicable to the disclosure, they still would have the options of seeking consent of their principals or leave from the Grand Court of the Cayman Islands.

Finally, there is no reason to conclude that the Companies would defy an order of this Court.

Hence, even assuming the good faith of the Companies, the balance of considerations favors entry of the order sought by BoA.

For the foregoing reasons, BoA's motion to compel testimony pursuant to Rule 30(b)(6) is granted.  In the interest of comity, however, examination on topics 16 and 18 shall not take place less than 28 days from the date of this order in order to give the Companies time to seek the consent of their principals or instructions from the Grand Court.

SO ORDERED.

Dated:          November 2, 2006

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)