UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE PARMALAT SECURITIES LITIGATION

This document relates to:  04 Civ. 0030 (Cons.)

Master Docket No.
04 MD 1653 (LAK)

ECF Case

## DECLARATION OF TIMOTHY J. CASEY

Timothy J. Casey declares, pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a member of the law firm Clifford Chance US LLP and submit this Declaration in support of the Surreply Memorandum of Law of Citigroup Inc., Citibank N.A., Vialattea LLC, Buconero LLC and Eureka Securitisation plc,  in Opposition to Plaintiffs' Motion for Class Certification, filed today.

2.      Attached hereto as Exhibit A is a true and correct copy of excerpts from the September 20, 2006 deposition of Peter Davies.

3.      Attached hereto as Exhibit B is a true and correct copy of excerpts from the October 31, 2006 deposition of Claudio Pessina.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed on December 28, 2006.

_____
Timothy J. Casey

EXHIBIT A

**9/20/2006  9:00 AM  Davies, Peter  Vol. I - Exhibits and Videos included**

CONFIDENTIAL ATTORNEY-RESTRICTED

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

IN re PARMALAT SECURITIES LITIGATION

This document relates to:

All Actions

MASTER DOCKET

MDL 1653 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

VIDEOTAPED DEPOSITION OF MR. PETER DAVIES

VOLUME I


C O N F I D E N T I A L

A T T O R N E Y - R E S T R I C T E D


Wednesday, September 20th, 2006


AT: 9.00 a.m.

Taken at:

The Offices of Clifford Chance,

10 Upper Bank Street

London, E14 5JJ

United Kingdom

version from the one I originally mentioned.

Mr. Davies, if you would turn to page 2 of this document which is Bates 6154 and the first paragraph of that document mentions Parmalat's dealer network; do you see that?

A.    Yes.

Q.    Do you have an understanding as to what is meant by Parmalat's dealer network?

MR. COHEN:  Objection to form.

A.    I understand what I meant by the dealer network here.

BY MR. WILLIS:

Q.    Did you write that paragraph?

A.    Yes.

Q.    What did you mean?

A.    It's their network of distribution; it's the distribution network used by Parmalat to distribute milk throughout Italy.

Q.    Are you familiar with the term "concessionari"?

A.    Yes.

Q.    Mr. Davies, with respect to Parmalat, is the term "concessionari" used synonymously with "dealer" or are those two different things?

MR. COHEN:  Objection to form.

A.    I always understood them to be the same thing.

BY MR. WILLIS:

Q.    Okay.  Then looking at this first paragraph, am I correct in concluding that Parmalat's dealer network or its concessionari network would be excluded, the receivables from that would be excluded from securitization at Citibank?

A.    It's my recommendation as part of the initial survey of the company that there was a risk concerning levels of dilution and therefore they should be excluded. I wasn't in a position to say: you have to exclude these.

Q.    This was your recommendation?

A.    It was my recommendation, yes.

Q.    Do you know if your recommendation was accepted?

A.    It wasn't accepted, no.

Q.    It wasn't accepted in 1994?

A.    It wasn't accepted in 1994, no.

Q.    Do you know why it wasn't accepted?

A.    I know that another team went back to review the dealer network and the dealer -- well, the processes surrounding the dealer receivables and that happened after this review and then I know that the -- having seen subsequently, that the 1995 receivables purchase agreement did allow the purchase of dealer receivables.  The thought

processes that went around that, that review and then putting that into the legal documentation, I was not part of those discussions.

Q. So you don't know why your recommendation was not accepted?

A. No, I either wasn't part of that or I have no recollection of the discussions about that.

Q. Do you know who made the decision to include dealer receivables in the 1995 receivables purchase agreement?

A. No.

Q. But it's your understanding that the 1995 receivables purchase agreement did include receivables from Parmalat's dealer network?

A. Yes.

Q. Was that done without any limitation?

MR. COHEN: Objection to form.

A. I don't remember exactly what the clause says but the spirit of the clause in the legal documentation allows the sale of dealer receivables from Parmalat S.p.A where dealers are not allowed to unilaterally offset credit notes against their invoices.

BY MR. WILLIS:

Q. Okay. Let me turn back to this paragraph, you note in your view that:

"Receivables from Parmalat's dealer network ...
[were] subject to high levels of dilution ..."

Do you see that?

A.   Yes.

Q.   When you say "subject to high levels of dilution", is that another way of saying that these receivables had an increased level of risk?

MR. COHEN:  Objection to form.

A.   No.  No.

MR. COHEN:  There's not a question pending, have you finished answering?

A.   No, I'm trying to think through how to explain really.  I was pointing out there was a risk here but -- and it's difficult to know how to answer this really because here I'm pointing out there is a risk, subsequently a way was found of structuring around that risk, therefore there shouldn't have been a risk.  So here I'm saying there is a risk that, with the high levels of dilution, that there was a risk that these could be applied against invoices that had been purchased.

BY MR. WILLIS:

Q.   If you could turn, please, to page 9 of this document which is Bates 6161 and, under the heading "Invoicing", the second full paragraph.  There's a reference to the issuance of a credit note to the dealer at the same

12/19/2006 1:55 PM

37

EXHIBIT B

**10/31/2006  8:44 AM  Pessina, Claudio Vol. II - Exhibits included**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

IN re PARMALAT SECURITIES LITIGATION

This document relates to:

All Actions

MASTER DOCKET

MDL 1653 (LAK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

Deposition of:

MR. CLAUDIO PESSINA

VOLUME II

CONFIDENTIAL

taken at the offices of:

Lombardi Molinari

Via Andegari 4/A

Milan

Italy

On Tuesday, October 31, 2006

commencing at 8:44 a.m.

127

**10/31/2006  8:44 AM  Pessina, Claudio Vol. II - Exhibits included**

APPEARANCES

Appearing on behalf of Dr. Enrico Bondi:

MR. MARC L. GREENWALD

QUINN EMANUEL URQUHART OLIVER & HEDGES LLP

51 Madison Avenue

22nd Floor

New York

New York 10010

Telephone: 212 849 7140

E-mail: marcgreenwald@quinnemanuel.com

MR. MARCO INDELICATO

QUINN EMANUEL URQUHART OLIVER & HEDGES LLP

865 Figueroa Street

10th Floor

Los Angeles

California 90017

Telephone: 213 443 3000

E-mail: marcoindelicato@quinnemanuel.com

Appearing on behalf of the Citigroup Defendants:

MR. GUY C. QUINLAN

CLIFFORD CHANCE US LLP

31 West 52nd Street

New York

NY 10019 6131

Telephone: 212 878 8219

E-mail: guy.quinlan@cliffordchance.com

MR. MICHAEL P. HOLLAND

CLIFFORD CHANCE US LLP

31 West 52nd Street

New York

NY 10019 6131

Telephone: 212 878 8219

E-mail: michael.p.holland@cliffordchance.com

128

**10/31/2006  8:44 AM  Pessina, Claudio Vol. II - Exhibits included**

Appearing on behalf of Deloitte & Touche SpA:

MR. RICHARD A. MARTIN

HELLER EHRMAN LLP

Times Square Tower

7 Times Square

New York, NY 10036-6524

Telephone: 212 847 8769

E-mail: richard.martin@hellerehrman.com


MS. SARA PILDIS

HELLER EHRMAN LLP

Times Square Tower

7 Times Square

New York, NY 10036-6524

Telephone: 212 847 8609

E-mail: sara.pildis@hellerehrman.com


Appearing on behalf of Grant Thornton LLP:

MS. M. KRISTIN MACE

WINSTON & STRAWN

35 West Wacker Drive

Chicago, Illinois 60601-9703

Telephone: 312 558 8803

E-mail: mmace@winston.com


Appearing on behalf of the Bank of America Defendants:

MR. MARK P. GUERRERA

SIDLEY AUSTIN LLP

1501 K Street, N.W.

Washington, D.C. 20005

Telephone: 202 736 8196

E-mail: mguerrera@sidley.com


MR. BRIAN D. VANN

SIDLEY AUSTIN LLP

1501 K Street, N.W.

Washington, D.C. 20005

Telephone: 202 736 8196

E-mail: bvann@sidley.com

**10/31/2006  8:44 AM  Pessina, Claudio Vol. II - Exhibits included**

Appearing on behalf of the Class Plaintiffs:

MR. JOHN C. KAIRIS

GRANT & EISENHOFER P.A.

Chase Manhattan Centre

1201 North Market Street

Wilmington

DE 19801

Telephone: 302 622 7000

E-mail: jkairis@gelaw.com

Appearing on behalf of the Credit Suisse entities:

MS. SARAH DADUSH

ALLEN & OVERY LLP

1221 Avenue of the Americas

New York

NY 10020

Telephone: 212 756 1174

E-mail: sarah.dadush@allenovery.com

Appearing on behalf of Food Holdings, Dairy Holdings and Parmalat Capital Finance:

MR. J. BENJAMIN KING

DIAMOND McCARTHY LLP

1201 Elm Street

34th Floor

Dallas, Texas 75270

Telephone: 214 389 5328

E-mail: bking@diamondmccarthy.com

Appearing on behalf of Banca Nazionale Del Lavoro:

MR. GEORGE SIRIGNANO

DAVIS POLK & WARDWELL

450 Lexington Avenue

New York

NY 10017

Telephone: 212 450 4624

E-mail: george.sirignano@dpw.com

10/31/2006  8:44 AM  Pessina, Claudio Vol. II - Exhibits included

Appearing on behalf of the deponent:

MR. ENRICO CLAUDIO MILANESI

STUDIO LEGALE RAPIO - GIAMBELLINI

20122 Milano

Largo Augusto, 1

Tel: +39 02 798 642

131

right?

MR. QUINLAN: Objection form.

A. Well, over the last few years they did not carry out as thorough due diligence as they had done in 1995, as they were carrying out detailed checkings; they would come to the EDP Center to see if procedures were regular and in line with the procedures, and that was it.

Q. In 1995 when Mr. Albertini was conducting his due diligence, did you discuss with him the fact that Parmalat was involved in an existing securitization program with Swiss Bank Corporation?

A. Yes, they knew about that.

Q. And did you discuss with with him the risk that the same receivable could be sold to Swiss Bank and to Parmalat in a securitization transaction?

MR. QUINLAN: Objection to form.

A. Okay. From 1995 to the year 2000 Citibank promoted this securitization program with -- but just for some customers, i.e. supermarkets, for a total of some 20 billion. So these supermarkets could be easily controlled; there was no risk whatsoever.

Q. I think what you're trying to tell me is that in the first securitization program Parmalat only sold supermarket receivables to Citibank in the securitization; is that what you're saying?

**10/31/2006  8:44 AM  Pessina, Claudio Vol. II - Exhibits included**

MR. QUINLAN:  Objection, form.

A.  Yes; and also the scope of the program was quite limited because it was not all the supermarkets, it was just some of the supermarkets.

Q.  Did Mr. Albertini tell you that he only wanted supermarket receivables sold into the program to avoid the risk that a receivable would be sold both to Parmalat and to Swiss Bank Corporation?

MR. QUINLAN:  Objection, form.

A.  No, he just wanted receivables of supermarkets because receivables of concessionaries were compensated for with the credit notes and therefore they had no real value...

THE INTERPRETER:  And the witness corrects himself:

A.  ... significant value rather than real value.

Q.  Did Mr. Albertini say that he did not want sold into the program any receivables from concessionaries that sold part of their Parmalat goods to supermarkets and therefore received credit notes?

MR. QUINLAN:  Objection, form.

A.  Well, he just wanted supermarkets because the amount of concessionaries, if you calculated the invoices and the credit notes, was not so much. It had a -- it didn't have so much value; and therefore it was completely