UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re PARMALAT SECURITIES LITIGATION

This document relates to:    04 Civ. 9771
                         05 Civ. 4015
                         04 Civ. 0030

MASTER DOCKET
04 MD 1653 (LAK)

**Redacted Version**

Electronically Filed

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**Plaintiffs' Joint Memorandum of Law in Opposition to Defendants'
Motion *in Limine* to Exclude Testimony of Dr. Stefania Chiaruttini,
Oliver Galea, Roberto Megna, and Franco Lagro**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ............................................................................................... 1

Argument ..................................................................................................................... 5

I.  Admissibility of Expert Testimony Is Not Governed by the Admissibility of the Report ................................................................................................................ 5

II.  Megna's Testimony is Admissible Under Rules 702 and 703 ......................... 6

    A.  Megna's Testimony is Reliable.......................................................... 6

        1.  Megna's Testimony Has a Sufficient Basis ............................... 6

        2.  Defendants' Conclusory Cross-References to Inapposite Prior Briefs Do Not Justify Exclusion ............................................. 7

III.  Galea's Testimony is Admissible Under Rules 702 and 703 ........................... 8

IV.  Dr. Chiaruttini's Testimony is Admissible Under Rules 702 and 703 ........... 8

    A.  A Foreign Decision On the Merits Rejecting a Single Conclusion Is Not Grounds For the Wholesale Exclusion of Dr. Chiaruttini's Testimony Here......... 9

    B.  Dr. Chiaruttini's Testimony as to Knowledge Would Assist the Jury .................. 9

V.  Lagro's Testimony is Admissible Under Rules 702 and 703 ......................... 10

    A.  Lagro Followed a Reliable Methodology ......................................... 10

        1.  Accountants Need Not Conduct an "Audit" Under Rule 702 ................. 10

        2.  Defendants' Complaints About Wishaw Procedures Are Without Merit........................................................................ 12

    B.  Lagro's Testimony Has A Sufficient Basis ....................................... 13

    C.  Lagro's Testimony is Accurate .......................................................... 14

    D.  Lagro's Testimony Will Assist the Jury ............................................ 16

VI.  Exclusion of These Four Key Experts Under Rule 37 is Not Warranted ....... 17

    A.  Experts Need Not Disclose Every Document They Had Access To.................... 17

B.    Any Alleged Failure Does Not Warrant Exclusion .............................................. 17

    1.    Dr. Bondi Has Acted in Good Faith to Identify All Materials ................. 18

    2.    Exclusion of These Experts Would Severely Prejudice Dr. Bondi .......... 18

    3.    Defendants Have Not Been Prejudiced .................................................... 18

    4.    Continuance is a Less Drastic Alternative .............................................. 21

VII.    The Deposition Testimony is Admissible in the Class Action ........................................ 21

A.    Class Plaintiffs Are Allowed to Present Expert Testimony Via Deposition ........ 22

B.    There Is No Merit to GT's Argument That It Did Not Have a Full and Fair Opportunity to Cross-Examine These Witnesses at Deposition .......................... 24

    1.    GT Had a Full Opportunity to Cross-Examine These Witnesses ............. 24

    2.    The Refusal of Some of These Witnesses to Sign the Protective Order did Not Preclude GT From Questioning Them About Confidential Documents ........................................................................... 24

C.    The Testimony Would Be Admissible if Presented Live at Trial ........................ 25

Conclusion ....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Adler, Coleman Clearing Corp.*,
   1998 WL 160039 (Bankr. S.D.N.Y. Apr. 3, 1998) ............................................................ 11

*In re Agent Orange Prod. Liab. Litig.*,
   611 F. Supp. 1223 (E.D.N.Y. 1985) ............................................................ 7

*Bauman v. Centex Corp.*,
   611 F.2d 1115 (5th Cir. 1980) ............................................................ 9

*In re Bayou Group, LLC*,
   396 B.R. 810 (S.D.N.Y. 2008) ............................................................ 6, 11

*Beech Aircraft Corp. v. Rainey*,
   488 U.S. 153 (1988) ............................................................ 5

*Berk v. St. Vincent's Hosp. & Med. Ctr.*,
   380 F. Supp. 2d 334 (S.D.N.Y. 2005) ............................................................ 16

*Bonner v. ISP Tech., Inc.*,
   259 F.3d 924 (8th Cir. 2001) ............................................................ 7, 14

*Bouygues Telecom, S.A. v. Tekelec*,
   472 F. Supp. 2d 722 (E.D.N.C. 2007) ............................................................ 7, 10

*Bray Intern. v. Comp. Assoc.*,
   2005 WL 2405924 (S.D. Tex. Sept. 29, 2005) ............................................................ 11

*Carter-Wallace v. Otte*,
   474 F.2d 529 (2d Cir. 1972) ............................................................ 23

*Cerbelli v. City of New York*,
   2006 WL 2792755 (E.D.N.Y. Sept. 27, 2006) ............................................................ 11

*Chicago Title Ins. v. Magnuson*,
   2004 WL 5499517 (S.D. Ohio Dec. 30, 2004) ............................................................ 11

*Converdyn v. Blue*,
   2008 WL 113842 (D. Colo. Jan. 8, 2008) ............................................................ 10, 16

*Crowley v. Chait*,
   322 F. Supp. 2d 530 (D.N.J. 2004) ............................................................ 5

*Daubert v. Merrell Dow Pharmaceuticals*,
   509 U.S. 579 (1993) ............................................................ 1, 6, 14, 16

*DiBella v. Hopkins*,
   403 F.3d 102 (2d Cir. 2005) ............................................................ 7

*Doyle v. U.S.*,
   318 F.2d 419 (8th Cir. 1963) ........................................................................... 17

*Ebron v. U.S.*,
   2008 WL 4298515 (S.D.N.Y. Sept. 17, 2008) ................................................. 19

*Fernandez v. Spar Tek Indus.*,
   2008 WL 2185395 (D.S.C. May 23, 2008) ...................................................... 16

*Gillum v. U.S.*,
   309 Fed. Appx. 267 (10th Cir. 2009) ............................................................. 19

*Green v. McAllister Bros. Inc.*,
   2005 WL 2207024 (S.D.N.Y. Sept. 7, 2005) ................................................. 16

*Hangarter v. Provident Life & Acc. Ins. Co.*,
   373 F.3d 998 (9th Cir. 2004) ........................................................................... 20

*Highland Capital Mgmt., L.P. v. Schneider*,
   379 F. Supp. 2d 461 (S.D.N.Y. 2005) ........................................................ 9, 16

*Hinton v. Patnaude*,
   162 F.R.D. 435 (N.D.N.Y. 1995) ................................................................... 18

*Hoganson v. Menard, Inc.*,
   567 F. Supp. 2d 985 (W.D. Mich. 2008) ....................................................... 11

*In re Holcomb Health Care Svcs.*,
   329 B.R. 622 (Bankr. M.D. Tenn. 2004) ....................................................... 12

*Houser v. Snap-on Tools Corp.*,
   202 F. Supp. 181 (D. Md. 1962) ..................................................................... 23

*Hydrogen Peroxide Antitrust Litig.*,
   240 F.R.D. 163 (E.D. Pa. 2007) ....................................................................... 9

*International Adhesive Coating Co. v. Bolton Emerson Intern.*,
   851 F.2d 540 (1st Cir. 1988) ....................................................................... 6, 14

*Iwanaga v. Daihatsu America, Inc.*,
   2001 WL 1910564 (W.D. Tex. Oct. 19, 2001) ................................................. 9

*In re KZK Livestock, Inc.*,
   290 B.R. 622 (Bankr. C.D. Ill. 2002) ............................................................. 14

*Lagano v. Chrysler Corp.*,
   1998 WL 74850 (2d Cir. Feb. 19, 1998) ........................................................ 11

*Lippe v. Bairnco Corp.*,
   288 B.R. 678 (S.D.N.Y. 2003) ......................................................................... 9

*Local 210 Health & Ins. Fund v. Selecto Prods.*,
   2007 WL 2717870 (S.D.N.Y. Sept 14, 2007) ................................................ 12

*Luke v. Emergency Rooms, P.S.*,
  2008 WL 410672 (W.D. Wash. Feb. 12, 2008) .................................................. 19

*MTX Comm. Corp. v. LDDS/Worldcom, Inc.*,
  132 F. Supp. 2d 289 (S.D.N.Y. 2001) ............................................................. 7

*Melville v. American Home Assur. Co.*,
  443 F. Supp. 1064 (D.C. Pa. 1977) ................................................................. 5

*Montgomery Cty. v. Microvote Corp.*,
  320 F.3d 440 (3d Cir. 2003) ......................................................................... 14

*Nichols v. American Risk Mgmt., Inc.*,
  2000 WL 97282 (S.D.N.Y. Jan. 28, 2000) ...................................................... 22

*Outley v. City of New York*,
  837 F.2d 587 (2d Cir. 1988) ......................................................................... 18

*In re Parmalat*,
  477 F. Supp. 2d 637 (S.D.N.Y. 2007) ......................................................... 2, 5

*In re Parmalat*,
  2007 WL 1169217 (S.D.N.Y. Apr. 18, 2007) ............................................... 2, 5

*In re Rezulin Park Prods. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004) ....................................................7, 9, 16

*In re Rezulin Prods. Liab. Litig.*,
  369 F. Supp. 2d 398 (S.D.N.Y. 2005) ............................................................. 7

*Roberts v. Galen of Virginia, Inc.*,
  325 F.3d 776 (6th Cir. 2003) ......................................................................... 18

*S.E.C. v. U.S. Environ., Inc.*,
  2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002) ................................................ 7

*Smolow v. Hafer*,
  513 F. Supp. 2d 418 (E.D. Pa. 2007) ............................................................. 6

*State v. Oxendine*,
  436 S.E.2d 906 (N.C. App. 1993) ................................................................. 17

*Swierczynski v. Arnold Foods Co.*,
  265 F. Supp. 2d 802 (E.D. Mich. 2003) ....................................................... 12

*U.S. v. Bilzerian*,
  926 F.2d 1285 (2d Cir. 1991) ......................................................................... 8

*U.S. v. Forbes*,
  2006 WL 2792883 (D. Conn. Sept. 28, 2006) ............................................... 11

*U.S. v. Jakobetz*,
  955 F.2d 786 (2d Cir. 1992) ........................................................................... 6

*U.S. v. Scop,*
   846 F.2d 135 (2d Cir. 1988) .................................................................. 8

*U.S. v. Eff*
   461 F. Supp. 2d 529 (E.D. Tex. 2006) .................................................. 17

*Waco Intern. Co. v. KHK Scaffolding Houston, Inc.,*
   1999 WL 34973052 (S.D. Tex. Oct. 28, 1999) .................................... 14

*Weaver v. Mobile Diagnostech, Inc.,*
   2009 WL 1230297 (W.D. Pa. Apr. 30, 2009) ...................................... 20

*Wechsler v. Hunt Health Sys.,*
   381 F. Supp. 2d 135 (S.D.N.Y. 2003) ............................................. 6, 16

*Wiand v. Waxenberg,*
   2009 WL 728546 (M.D. Fla. Mar. 19, 2009) ...................................... 14

*In re Williams Securities Litig.,*
   496 F. Supp. 2d 1195 (N.D. Okla. 2007) ........................................ 11, 12

*Wills v. Amerada Hess. Corp.,*
   379 F.3d 32 (2d Cir. 2004) .................................................................. 11

### Statutes

Fed. R. Civ. P. 26 ...................................................................................... 17

Fed. R. Civ. P. 32(a) .................................................................................. 22

Fed. R. Civ. P. 32(a)(4)(B) ........................................................................ 23

Fed. R. Civ. P. 37(c)(1) .......................................................................17, 18

Fed. R. Evid. 702 ..................................................................... 1, 2, 6, 7, 9, 12, 14

Fed. R. Evid. 703 ............................................................................... 7, 13

Fed. R. Evid. 704 ......................................................................................... 8

Fed. R. Evid. 803(8)(c) ............................................................................... 2

### Other Authorities

1993 Committee Notes to Fed. R. Civ. P. 26(a)(2) ................................... 19

2000 Advisory Committee Notes to Fed. R. Evid. 702 ................................ 9

*Preliminary Statement*

The fundamental principles espoused by Rule 702 and by the Supreme Court in *Daubert* concern witnesses' qualifications to testify as experts and the reliability and relevance of their methods and conclusions, not the weight and credibility of their testimony. *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 593 (1993). Once the fog of Defendants' hyperbolic rants is parted, it becomes clear that their motion to preclude Dr. Stefania Chiaruttini and Messrs. Oliver Galea, Roberto Megna and Franco Lagro from testifying *at all* in Dr. Bondi's cases is based primarily on (i) an erroneous application of the hearsay concept of "reliability," and (ii) Defendants' view of the weight and credibility of the experts' anticipated testimony – not their actual work or qualifications to testify as forensic accounting experts.

Despite scouring twenty-four days' worth of deposition transcripts and over 1600 pages of reports prepared by these four forensic accountants, tellingly, Defendants do not:

- Say anything at all about, let alone levy any criticism against, seven of the thirteen expert reports at issue here, or the methodologies, conclusions and testimony they encompass;

- Meaningfully challenge the experts' qualifications, expertise, methodologies or the relevance of their conclusions to issues the jury will consider;

- Identify any errors in their analyses ███████████████████████████████ ███████████████████;

- Identify a single error in Megna's findings and conclusions regarding ████████████ ████████████; or

- Identify a single error in ████████████████████████████████ ████████████████.



Even Defendants' attack on the experts' conclusions concerning ████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████

███████████████████████ – boils down to an attack on the weight and credibility of the experts' anticipated testimony, not their qualifications or reliability.

The central thrust of Defendants' motion is that the fates of these experts were sealed when the Court used the term "not reliable" in finding their reports inadmissible under the Rule 803(c)(8) "public record" hearsay exception. *See In re Parmalat*, 2007 WL 1169217, at *2 (S.D.N.Y. Apr. 18, 2007) ("PwC-Italy Order"); *In re Parmalat*, 477 F. Supp. 2d 637, 642 (S.D.N.Y. 2007) ("Chiaruttini Order"). But Defendants ignore what this Court recognized – as other courts have – in those very Orders: the admission of expert *testimony*, which is subject to cross-examination, is an entirely separate question from the admission of expert *reports*, which are not. *See* Chiaruttini Order at 641.[1] The clear distinction between Rule 803(8)(C) and Rule 702 renders Defendants' near-total reliance on it puzzling, to say the least.

Defendants' remaining arguments fare no better. The few times actual testimony is addressed, the analysis consists of unsupported (or factually wrong) assertions, including repeated instances where they try to bootstrap a criticism of one expert into an indictment of all four.[2] Defendants' vague allegations are simply untethered to these experts' testimony, and do not justify the exclusion of any portion thereof, let alone the blanket exclusion they seek.

Defendants' complaints of purported expert disclosure deficiencies are also makeweight. They assert that these experts should precluded from testifying because Plaintiff's counsel failed to list certain documents that these experts did not otherwise identify, or may have had access to – but Defendants rely on an interpretation of "considered" (i) that is well beyond what the parties agreed

---

[1]   Indeed, the Court explicitly noted that Dr. Bondi could resolve the cross-examination concern by designating these witnesses as experts and making them available for questioning, which he has done. PwC-Italy Order at *2.

[2]   On no less than eight occasions, Defendants first assert that one expert has a particular fault, then shift verbiage (without support) to "Bondi's Italian experts" *all* having that fault. Mot. at 5 n.5, 6, 7, 17-18, 20.

to and (ii) that Defendants themselves have asserted is proper, *i.e.*, that experts need not disclose materials merely because they "had access" to them. But even regardless of the parties' prior agreement and practice for identification of documents "considered," there is no evidence that Defendants have been prejudiced by any of so-called disclosure deficiencies, or that Plaintiff's counsel or the experts were acting in bad faith, a requirement for the drastic sanction of exclusion.

Defendants' high-decibel rhetoric notwithstanding, they have failed to demonstrate that the testimony of Dr. Chiaruttini and Messrs. Galea, Megna and Lagro is inadmissible, and their motion should therefore be denied.

### *The Testimony At Issue*



---

[3]  *See, e.g.*, Galea & Megna Report (Volume I) at 19 (6/12/09 Declaration of Terry L. Wit in Opposition to Defendants' Motion *in Limine* ("Wit Dec.") Ex. A); Megna Tr. (Wit Dec. Ex. N) at 145:20-146:3; Lagro Tr. (Wit Dec. Ex. Y) at 221:8-19; Lagro Tr. (Ex. BB) at 432:21-433:8. Defendants do not suggest otherwise.

[4] *See, e.g.*, Galea & Megna Report (Volume I) (Wit Dec. Ex. B) at 19; Chiaruttini Report at 1 (Wit Dec. Ex. U); Lagro Tr. (Wit Dec. Ex. Z) at 47:10-15; Megna Tr. (Wit Dec. Ex. O) at 26:9-28:2, 72:6-73:3; Galea Tr. (Wit Dec. Ex. R) at 35:19-36:5, 70:16-18; Chiaruttini Tr. (Wit Dec. Ex. AAA) at 237:9-238:8; Chiaruttini Tr. (Wit Dec. Ex. V) at 26:10-28:22. Because Dr. Bondi's experts signed the Protective Order prior to their expert depositions, Defendants cannot, and do not, argue that their examinations regarding confidential documents were limited in Dr. Bondi's actions. Mot. at 23-24 (asserting examinations were limited in class case only).



[redacted]

[redacted]

[redacted]

[redacted]

---

[5] *See, e.g.*, Galea & Megna Report (Volume II) at 4-9 (Wit Dec. Ex. B); Megna Tr. (Wit Dec. Ex. N) at 8:3-21, 143:6-24; Megna Tr. (Wit Dec. Ex. O) at 75:16-79:7; 5/21/07 Supplemental Designations at Ex. L2 (Wit Dec. Ex. LL and MM).

[6] *See, e.g.*, Galea & Megna Report (Volume I) at 25-27, 34-35, 198-99, 257-61, Appx. 3 (Wit Dec. Ex. A); Galea Tr. (Wit Dec. Ex. Q) at 7:16-12:5; Galea Tr. (Wit Dec. Ex. R) at 11:5-18:4, 24:16-23, 26:7-16; 5/21/07 Supplemental Designations at Ex. L-2 (Wit Dec. Ex. LL and MM).

[7] *See, e.g.*, Chiaruttini Report at 6-14, 30-39, 358-59, 368a, 374a, 437-38 (Wit Dec. Ex. C); Chiaruttini Tr. (Wit Dec. Ex. U) at 14:9-15:13; Chiaruttini Tr. (Wit Dec. Ex. V) at 123:23-127:24, 176:5-181:14; Chiaruttini Tr. (Wit Dec. Ex. W) at 211:17-214:8; Resume (Wit Dec. Ex. RR); 5/21/07 Supplemental Designations at Ex. M-2 (Wit Dec. Ex. LL and MM).

████████████████████████████████████████████

████████████████████████████████████████████

### Argument

### I.    Admissibility of Expert Testimony Is Not Governed by the Admissibility of the Report

Defendants' assertion (at 2) that Plaintiffs are "seek[ing] to avoid" the Court's rulings misstates both the record and the rulings. Contrary to Defendants' characterization, the Court did not analyze these experts' reports under the standards applicable to expert testimony. Indeed, the Court explicitly highlighted the distinction between admitting their *reports* under the hearsay exception, which would not allow for cross-examination, and admitting their *testimony*, which would. *See* PwC-Italy Order at *2; Chiaruttini Order at 641.[9]

Indeed, the core concern of the public report exception – that the subject report was prepared by a neutral official – is not relevant here. *See, e.g.,* Chiaruttini Order at 641 ("[P]arty-retained expert witnesses play an important and usually honorable role in litigation. But it is one thing to have party-retained advocates testify in court . . . It is quite another to receive into evidence their out-of-court statements, which are not subject to cross-examination. That would be at odds with the rationale underlying the public records exception, which rests in important measure on the assumption that public officials perform their duties properly and without motive or interest other

---

[8]  *E.g.*, Default of the Parmalat Group Report at 2-3, 46, 69-85 (Wit Dec. Ex. E); Wishaw Trading Report at 2-3, 9 (Wit Dec. Ex. G); Project Parmatour Report at 2 (Wit Dec. Ex. F); Transactions With Bank of America Report at "Introduction" (Wit Dec. Ex. D); Lagro Tr. (Wit Dec. Ex. X) at 8:10-9:6, 176:15-19; Lagro Tr. (Wit Dec. Ex. Z) at 18:1-14, 81:5-8; Lagro Tr. (Wit Dec. Ex. AA) at 187:5-190:14; 5/21/07 Supplemental Designations at Ex. A-2 through J-2 (Wit Dec. Ex. LL and MM).

[9]  Other courts have similarly highlighted the key differences between the public report hearsay exception and the expert testimony admissibility test. *See, e.g., Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 n.12 (1988); *Melville v. American Home Assur. Co.*, 443 F. Supp. 1064, 1115 (D.C. Pa. 1977) (result of disqualifying a public report is that the author must be produced for cross-examination) (reversed on other grounds at 584 F.2d 1306 (3d Cir. 1978)). Defendants' reliance on *Crowley v. Chait*, 322 F. Supp. 2d 530, 542-43 (D.N.J. 2004) does not help them here, as there the Court simply barred plaintiff's expert from testifying as to whether he agreed or disagreed with plaintiff's own witnesses, in part because the expert did not even review all of those witnesses' testimony.

than to submit accurate and fair reports.") (citations and quotations omitted).  That these experts were paid for their investigations (three of them by the Italian prosecutors) does not impact the admissibility of their testimony any more than it would the testimony of the twenty-two experts Defendants have retained, and paid, to testify in these actions.  Defendants' attempt to end-run a proper Rule 702 analysis for each expert's proffered conclusions should be rejected.

## II.    *Megna's Testimony is Admissible Under Rules 702 and 703*

The liberal approach of the Rules dictates that all doubts be resolved in favor of admissibility.  *See Daubert*, 509 U.S. at 588-89; *U.S. v. Jakobetz*, 955 F.2d 786, 797 (2d Cir. 1992). Defendants do not challenge Megna's qualifications, or that his ███████████████████ would assist the jury.  Nor do they even discuss his report, let alone any evidence suggesting *any* of his conclusions is incorrect, or that he used an unreliable methodology in reaching them.  Instead Defendants simply make conclusory arguments regarding ████████████████████

### A.    *Megna's Testimony is Reliable*

#### 1.    *Megna's Testimony Has a Sufficient Basis*

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████[10]  Such materials are the type reasonably relied on for this type of accounting and audit analysis.  *See, e.g.*, *In re Bayou Group, LLC*, 396 B.R. 810, 837, 841 (S.D.N.Y. 2008); *Wechsler v. Hunt Health Sys.*, 381 F. Supp. 2d 135, 144-45 (S.D.N.Y. 2003); *International Adhesive Coating Co. v. Bolton Emerson Intern.*, 851 F.2d 540, 545 (1st Cir. 1988); *Smolow v. Hafer*, 513 F. Supp. 2d 418, 427 (E.D. Pa. 2007).  On its face, such data is "sufficient" to analyze GT-Italy's work.  Fed. R. Evid. 702.

---

[10]  *See, e.g.*, Galea & Megna Report (Volume II) at 4 (Wit. Decl. Exh. B); 5/21/07 Supplemental Designations at Ex. L-2 (Wit Dec. Ex. LL and MM); Megna Tr. (Wit Dec. Ex. N) at 153:13-21; Megna Tr. (Wit Dec. Ex. P) at 175:2-6.

Defendants' only argument to the contrary (at 6) is to point out that Megna did not consider the entirety of the U.S. discovery record.  Under Rule 702, however, the factual basis for an expert's opinion need only be "sufficient" for the issues relevant thereto, not every issue in the totality of the case the designating party must prove or defend against.  *See* Fed. R. Evid. 702; *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (fact basis goes to weight not admissibility).  Nowhere do Defendants explain why Megna has not met the "sufficient" data threshold, or ███████████ ████████████████████████████████████████████[11]

### 2.    *Defendants' Conclusory Cross-References to Inapposite Prior Briefs Do Not Justify Exclusion*

Defendants' blanket list of perceived problems (at 5 n.5) is no substitute for a proper admissibility analysis as to the individual opinions offered by each expert, including Megna:

- Without citation to Megna, Defendants argue that ***all*** of Dr. Bondi's experts (including Megna) "depend on" "untrustworthy sources" and "hearsay."  But, even if this was assumed to be true, Rule 703 allows reliance on hearsay; further, as to the insiders, Megna testified that █████████████████████████[12]

- Without citation to Megna, Defendants argue that ***all*** of Dr. Bondi's experts (including Megna) "depend on" "assessments of credibility."  But, even if this was assumed to be true, that an expert makes judgments as to the reliability of certain evidence does not make his testimony inadmissible, as long as it is not offered *merely* to support or attack a witnesses' credibility.  *See S.E.C. v. U.S. Environ., Inc.*, 2002 WL 31323832 at *6 (S.D.N.Y. Oct. 16, 2002); *Bouygues Telecom, S.A. v. Tekelec*, 472 F. Supp. 2d 722, 727 (E.D.N.C. 2007).[13]

---

[11]  Defendants' authorities, which deal with specifically identified, actual conflicts, stand in dramatic contrast to their vague and unsupported broadsides here.  *See In re Rezulin Park Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 562-63 (S.D.N.Y. 2004) (drug risk witness failed to grapple with identified contrary medical opinions); *In re Rezulin Prods. Liab. Litig.*, 369 F. Supp. 2d 398, 425 (S.D.N.Y. 2005) (same); *MTX Comm. Corp. v. LDDS/Worldcom, Inc.*, 132 F. Supp. 2d 289, 292 (S.D.N.Y. 2001) (valuation witness failed to consider profit/loss statements, balance sheets, quality of management, or whether bills were even getting paid); *In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1223, 1256 (E.D.N.Y. 1985) (testimony based on "speculation and unfounded assumptions").

[12]  Megna Tr. (Wit Dec. Ex. O) at 146:10-16.

[13]  Defendants' authority does not support the novel proposition that experts cannot use their judgment as to what is and what is not reliable evidence in order to reach their opinions.  Quite the contrary.  *See DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005) (upholding exclusion of testimony of "personal view of the veracity" of another testifying witness).

- Without citation to Megna, Defendants claim that *all* of Dr. Bondi's experts (including Megna) "depend on" "opinions as to legal conclusions."[14] Even if assumed true, however, as Defendants' own authorities recognize, experts are allowed to testify as to ultimate issues, Fed. R. Evid. 704, and this is only an issue of the actual verbiage allowed at trial.[15]

Defendants' unsupported generalizations are not grounds to exclude Megna's testimony.

### III.    Galea's Testimony is Admissible Under Rules 702 and 703

Defendants do not challenge Galea's qualifications, his methodologies, or that his ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ would assist the jury.  Nor do they identify any evidence suggesting *any* of his opinions are substantively incorrect.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[16] Defendants again fail to justify their claim that the "sufficient basis" threshold could not be met by Galea *per se* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defendants' only remaining criticisms, contained in their conclusory footnote 5, fail for the same reasons noted above.

### IV.    Dr. Chiaruttini's Testimony is Admissible Under Rules 702 and 703

Defendants do not challenge Dr. Chiaruttini's qualifications, methodologies, or that her ▮▮▮▮▮▮▮ would assist the jury ▮▮▮▮▮▮▮▮▮▮▮▮.  Nor do they identify any evidence suggesting her conclusions are substantively incorrect.

Irrespective of Defendants' vague references to their U.S. litigation materials, ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[14] ▮▮▮▮▮▮▮▮▮▮▮▮ DTT's February 16, 2007 Motion to Preclude at 15-16 (MDL Docket No. 1117) (Wit Dec. Ex. WW).

[15]    *See U.S. v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) (recognizing that "factual conclusions [] may be included . . . though they embrace an ultimate issue to be decided by the jury"); *U.S. v. Scop*, 846 F.2d 135, 140 (2d Cir. 1988) (error to allow testimony simply adopting the exact language of a criminal statute).

[16]    Galea & Megna Report (Volume I) at 34-35 (Wit Dec. Ex. A); 5/21/07 Supplemental Designations at Ex. L-2 (Wit Dec. Ex. LL and MM); Galea Tr. (Wit Dec. Ex. Q) at 96:22-99:11.

████████████████████████████ and accordingly there is a sufficient basis for her

testimony under Rule 702.[17]   Defendants' only other challenges rely on: (a) a Milan tribunal

decision, and (b) their contention that experts cannot opine on "knowledge."

### A.    A Foreign Decision On the Merits Rejecting a Single Conclusion Is Not Grounds For the Wholesale Exclusion of Dr. Chiaruttini's Testimony Here

Defendants' effort (at 6-7) to malign Dr. Chiaruttini based on language in a Milan tribunal

decision – a decision on the merits of the case and not excluding her testimony[18] – ignores that

admissibility here is to be judged only by what is being offered in *this* case.  *See Hydrogen Peroxide*

*Antitrust Litig.*, 240 F.R.D. 163, 170 n.8 (E.D. Pa. 2007), *vacated on other grounds*, 552 F.3d 305

(3d Cir. 2008); *Iwanaga v. Daihatsu America, Inc.*, 2001 WL 1910564, at *9 (W.D. Tex. Oct. 19,

2001); 2000 Advisory Committee Notes to Fed. R. Evid. 702 (evidentiary standard of reliability

lower than merits standard of correctness).  Defendants also omit that although the tribunal criticized

an opinion that is not offered in this case (█████████████████), it *credited* the core of

what she *is* offering here (██████████████████).[19]

### B.    Dr. Chiaruttini's Testimony as to Knowledge Would Assist the Jury

Defendants (at 19-20) seek an order barring testimony on knowledge or intent.  As an initial

matter, the referenced issues form only a small portion of her proffered testimony.  Further, such

testimony is in fact proper if it will assist the jury.[20]  *See Bauman v. Centex Corp.*, 611 F.2d 1115,

---

[17]  *See, e.g.*, Chiaruttini Report at 6-14 (Wit Dec. Ex. C); 5/21/07 Supplemental Designations at Ex. M-2 (Wit Dec. Ex. LL and MM); Chiaruttini Tr. (Wit Dec. Ex. V) at 144:18-24.  Their argument further fails as against Dr. Chiaruttini inasmuch as ███████. Chiaruttini Tr. (Wit Dec. Ex. W) at 295:25-296:24.

[18]  5/29/09 Declaration of Avv. Ernesto Gregorio Valenti, at ¶ 2 ("Valenti Dec.") (decision was acquittal on all charges).

[19]  2/12/08 Milan Decision at 50 ("The careful, in-depth examination of the Parfin and Parmalat financial statements by [Dr. Chiaruttini] allowed us to clarify that they were falsified to a large extent . . . ") (Wit Dec. Ex. DDD); Valenti Dec. at ¶ 10a-c & Ex. B at 301.

[20]  Defendants' cases (at 19) do not hold otherwise.  *See Rezulin*, 309 F. Supp. 2d at 546-47 (excluding testimony on matters jury can understand); *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) (same); *Lippe v. Bairnco Corp.*, 288 B.R. 678, 687-88 (S.D.N.Y. 2003) (excluding expert who was to argue to jury).

1120-21 (5th Cir. 1980). Here, given the complexity, volume, and specialized nature of the evidence, the testimony Dr. Chiaruttini will offer as to ███████████████████████ ████████████████████████, which is based on her years of experience working on financial engagements, plainly would be helpful to a jury. *See id.* ("intent" and "knowledge" testimony allowed where case involved "issues of . . . sufficient complexity"); *Bouygues*, 472 F. Supp. 2d at 726 (same). Any disputes over the final verbiage (███████████████████ █████████ etc.) can be properly handled at trial and are not grounds for wholesale exclusion now. *See, e.g., Converdyn v. Blue*, 2008 WL 113842, at *4 (D. Colo. Jan. 8, 2008).

## V. *Lagro's Testimony is Admissible Under Rules 702 and 703*

Defendants do not challenge Lagro's qualifications to perform the forensic accounting work at issue here, and their nebulous assertions (at n.5) of inadmissibility due to "legal conclusions" and "credibility assessments" fail for the same reasons above. Their remaining arguments that Lagro's analysis (a) was not an audit, (b) relied on "questionable" materials, (c) is "error-prone," and (d) would not be helpful to the jury, are similarly without merit.

### A. *Lagro Followed a Reliable Methodology*

#### 1. *Accountants Need Not Conduct an "Audit" Under Rule 702*

Defendants offer no analysis of the actual work Lagro did on any report other than the Wishaw reports, instead taking the position (at 8-10, 12, 13) that only a full re-audit would suffice, not ████████████████ Misstating the record, they also try to make much (at 9-10) of a ██████████████████████████. Their innuendo misses the mark.

███████████████████████████████████████████████████
███████████████████████████████████████[21]███████████████████

---

[21] *See, e.g.*, Lagro Tr. (Wit Dec. Ex. Y) at 404:9-405:19; Lagro Tr. (Wit Dec. Ex. Z) at 70:17-71:11; Lagro Tr. (Wit

████████████████████████████████████████████████████████ – is

irrelevant, as such is not required for his conclusions to be admissible. *See U.S. v. Forbes*, 2006 WL

2792883, at *1 (D. Conn. Sept. 28, 2006); *In re Williams Securities Litig.*, 496 F. Supp. 2d 1195,

1240 (N.D. Okla. 2007).[22] Defendants' aspersions are an attempt at misdirection, as they point to no

procedure (other than Wishaw) they actually find fault with,[23] and ignore Lagro's ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████[25] Defendants' assertion

to the contrary and their failure to inform the Court accurately of the record is misleading at best.[26]

The court in *Bray Intern. v. Comp. Assoc.*, 2005 WL 2405924 (S.D. Tex. Sep. 29, 2005)

(reversed in part on other grounds at 2005 WL 3371875 (S.D. Tex. Dec. 12, 2005)) rejected similar

complaints. The court there also dealt with an accounting firm's engagement to use "criteria

identified," accounting disclaimers as to an inability to provide an "opinion," and warnings against

reliance. *Id.* at *9-10. The court held exclusion was not appropriate because none of the foregoing

meant that the author could not "accurately testify," particularly as the objecting party had not shown

---

Dec. Ex. AA) at 218:20-220:10; Lagro Tr. (Wit Dec. Ex. BB) at 401:2-17, 405:20-406:6; Lagro Tr. (Wit Dec. Ex. CC) at 628:3-24, 635:15-636:2.

[22] Defendants' authorities are irrelevant, as none deal with the "rigor" required of accountants. *Wills v. Amerada Hess. Corp.*, 379 F.3d 32, 49 (2d Cir. 2004) (discussing "oncogene theory" of cancer causation); *Cerbelli v. City of New York*, 2006 WL 2792755, at *7 (E.D.N.Y. Sept. 27, 2006) (discussing police practices); *Hoganson v. Menard, Inc.*, 567 F. Supp. 2d 985, 990 (W.D. Mich. 2008) (discussing speed of automatic door).

[23] Many cases accept accountants' reconstructions based on the review of materials as Lagro did here. *See, e.g.*, *In re Bayou*, 396 B.R. at 837; *In re Adler, Coleman Clearing Corp.*, 1998 WL 160039, at *4 (Bankr. S.D.N.Y. Apr. 3, 1998); *Chicago Title Ins. v. Magnuson*, 2004 WL 5499517, at *6-7 (S.D. Ohio Dec. 30, 2004).

[24] Lagro Tr. (Wit Dec. Ex. X) at 53:25-54:11.

[25] Lagro Tr. (Wit Dec. Ex. Y) at 413:8-415:12; Lagro Tr. (Wit Dec. Ex. BB) at 412:7-423:24; Lagro Tr. (Wit Dec. Ex. CC) at 630:23-632:23.

[26] That Lagro received assignments for particular tasks makes him no different than any other expert, and Defendants' criticisms here go only to the weight to be given to his testimony, not its admissibility. *See generally Lagano v. Chrysler Corp.*, 1998 WL 74850, at *3 (2d Cir. Feb. 19, 1998).

anything actually wrong with the opinion.[27] *Id.* Defendants' similar attempt to exclude the entirety of Lagro's testimony regardless of his actual analysis – without identifying a single thing they contend is wrong in *six* of his reports – is meritless.[28]

### 2. Defendants' Complaints About Wishaw Procedures Are Without Merit[29]

Defendants allege (at 13) that Lagro's team did not ████████████████████████ ████████████████████████████████████████████████████████████████ But Lagro's extensive investigation in fact examined the materials Defendants claim were omitted, and their outrageous conspiracy theory (at 13) that Lagro's work was part of a plan by Dr. Bondi to get "the result for which he paid," or "pre-determined" (Mot. at 9), fails accordingly.[30]

The investigation began in Holland, where bank statements showed large amounts of money flowing into Uruguay.[31] Lagro's team spoke with the Vice President of Wishaw and two accountants from Uruguay (where Wishaw's records were kept).[32] During the review of the transactional documents and bank statements,[33] the team noticed a monthly cash summary report,

---

[27] *See also In re Williams Sec. Litig.*, 496 F. Supp. 2d at 1240 ("Attest services are the gold standard; expert opinions in litigation are more like base metal."); *In re Holcomb Health Care Svcs.*, 329 B.R. 622, 666 (Bankr. M.D. Tenn. 2004) (accepting use of "agreed upon procedure" valuation). *See generally Swierczynski v. Arnold Foods Co.*, 265 F. Supp. 2d 802, 808 (E.D. Mich. 2003) ("preliminary" report accepted where testimony confirmed accuracy).

[28] Defendants' "agreed upon procedure" authority, *Local 210 Health & Ins. Fund v. Selecto Prods.*, 2007 WL 2717870 (S.D.N.Y. Sept. 14, 2007), denied the use *of the report itself* on summary judgment, *id.* at *5, and thus has nothing to do with admissibility under Rule 702 of trial *testimony* subject to cross-examination.

[29] Defendants' prediction (at 10-11) that Lagro's testimony will be the only evidence on Wishaw is not only wrong, but irrelevant. Whatever other evidence may or may not be offered at trial has no bearing on the factors applicable to admitting Lagro's testimony, *i.e.*, who he is, what he will say, and what he did to reach his conclusions.

[30] Although Defendants seek to use both the Milan and New Jersey courts to attack Lagro, they omit that both courts *allowed* testimony into evidence testimony based on similar procedures reaching nearly identical conclusions regarding Wishaw outflows. Milan Decision at 61 (Wit Dec. Ex. DDD); Citigroup Trial Tr. (Wit Dec. Ex. DD) at 9464:25-9476:17, 9610:13-9611:5, 9626:1-9630:8; Citigroup Trial Tr. (Wit Dec. Ex. FF) at 14658:19-14661:5.

[31] Citigroup Trial Tr. (Wit Dec. Ex. EE) at 13568:12-13569:24.

[32] Citigroup Trial Tr. (Wit Dec. Ex. EE) at 13570:6-13, 13590:21-13591:6, 13595:10-23, 13630:3-15, 13631:22-13632:11; Wishaw Trading Report at 5, 7 (Wit Dec. Ex. G).

[33] Lagro's report directly states: ████████████████████████████████ Wishaw Trading Report at 5 (Wit Dec. Ex. G). The quote Defendants rely on to assert that ██████████████

which consisted of printouts from a worksheet in the *intercia Wishaw* Excel file.[34]  That sheet was "used as a control file, to keep track of the balances in the bank accounts" of Wishaw, and the Vice President of Wishaw said he had created it.[35]  Lagro's team not only cross-referenced it against the supporting materials (including bank statements), but also against accounting records, finding the (internally-used, password-protected) spreadsheet to be more accurate than any other accounting record.[36]  Defendants' assertion (at 13) that these procedures were not performed misstates the record and is not grounds for excluding Lagro's Wishaw analysis.

### B.    *Lagro's Testimony Has A Sufficient Basis*

[37]  Defendants' broadsides again fail to call into doubt that these materials provide Lagro with a "sufficient" basis for his Wishaw conclusions:

- Defendants allege (at 6) that Lagro did not ▓▓▓▓▓▓.  But they again fail to explain how this *per se* negates the sufficiency of the data he did review, particularly as ▓▓▓▓▓▓.[38]

- Defendants claim (at 14, n.12) that Lagro did not ▓▓▓▓▓▓.  But this is false.  *See supra*, at n.33.

- Defendants imply (at 11-12) that the *intercia Wishaw* report is inadmissible.  That, of course, is yet to be determined in these cases, but even if it is not admissible, that would be irrelevant to the present motion.  Fed. R. Evid. 703.

_____

. Citigroup Trial Tr. (Wit Dec. Ex. EE) at 13613:13-13614:2.

[34]  Citigroup Trial Tr. (Wit Dec. EE) at 13572:19-13574:11, 13591:12-13592:23.

[35]  Certification of F. Navia (Wit Dec. Ex. CCC); Citigroup Trial Tr. (Wit Dec. Ex. EE) at 13630:12-13632:11.

[36]  Citigroup Trial Tr. (Wit Dec. Ex. EE) at 13577:11-16, 13593:2-13594:19, 13597:23-13599:21, 13626:11-13627:2 (Wit Dec. Ex. EE). ▓▓▓▓▓▓ Lagro Tr. (Wit Dec. Ex. BB) at 346:19-349:6.

[37]  *See, e.g.*, 5/21/07 Supplemental Designations Ex. A-2 through H-2 (Wit. Decl. Exh. LL and MM); Default of the Parmalat Group Report at 69-85 (Wit Dec. Ex. E); Lagro Tr. (Wit Dec. Ex. X) at 76:4-77:5; Lagro Tr. (Wit Dec. Ex. Y) at 229:4-11.

[38]  Lagro Tr. (Wit Dec. Ex. AA) at 206:19-207:10.

- Defendants claim that the records are incomplete[39] or possibly involve some unidentified portion of falsified records. But this is "not a *Daubert* issue," because drawing conclusions from such records is exactly what forensic accountants do. *See Waco Intern. Co. v. KHK Scaffolding Houston, Inc.*, 1999 WL 34973052, at *2 (S.D. Tex. Oct. 28, 1999); *In re KZK Livestock, Inc.*, 290 B.R. 622, 625 (Bankr. C.D. Ill. 2002); *Wiand v. Waxenberg*, 2009 WL 728546, at *12 (M.D. Fla. Mar. 19, 2009).[40]

In short, forensic accountants routinely draw valid conclusions from the type of materials reviewed here, and Lagro's testimony has met the Rule 702 "sufficient facts" threshold. *See generally Bonner*, 259 F.3d at 929; *International Adhesive*, 851 F.2d at 545 (same).

### C.    *Lagro's Testimony is Accurate*

Defendants' offensive rhetoric (at 9) that Lagro's analysis is "riddled with error and bias" and that his results were "pre-determined," is not supported by the examples they cite. Although they had 750 pages of Lagro's ten reports to scour, Defendants offer just two supposed "errors" from one report (██████████████) and refer the Court to three criticisms by the Milan tribunal, each of which, although admittedly harsh, is inapposite here. More significantly, the two "errors" they cite are not, in fact, errors, and Defendants have nothing at all to say about Lagro's six reports analyzing Parmalat's insolvency or the amounts diverted from Parmalat in Italy.[41]

Defendants cite two of Lagro's BofA transaction analyses and assert (at 9 n.7) that "errors abound" – but the errors here are their own. ████████████████████



---

[39] ██████████████████ Wishaw Trading Report at 9 (████████████████████) (Wit Dec. Ex. G).

[40] Defendants' *Montgomery Cty. v. Microvote Corp.*, 320 F.3d 440, 448 (3d Cir. 2003) does not suggest otherwise, for it dealt not with a forensic accountant, but a voting machine expert's use of a "guesstimate" of unknown origin. ████████ Lagro Tr. (Wit Dec. Ex. X) at 78:9-79:25, 86:3-87:4.

[41] Defendants' Wishaw complaints go more to relevance, and so are dealt with separately in Section V.D, *infra*.



Defendants' baseless accusation that Lagro intentionally "invents non-existent transactions and cash flows" (at 9 n.7) is both irresponsible and insulting.  It is not analysis.

Although Defendants' refer the Court to the Milan tribunal's criticism of Lagro, they only identify three points, each dealing only tangentially with his opinions on ████████████, each of which is inapposite here:

- That Lagro's translation into Italian of an English-language BofA email was purportedly "biased:"[44]  Such a translation would not be used here, but instead the English original.

- That Lagro's claim that side letters were "more a rarity than a practice" was inaccurate:[45]  Lagro is not offered here to testify as to the commonality of side letters.

- That Lagro's calculation of BofA's "gross" exposure (based on loan documentation) versus its "net" exposure (taking into account its insurance coverage, etc.) was irrelevant:[46]  This

---

[42]   6/22/01 Letter Agreement at P03472866 (DHL to pay BofA $18,094,717 on Dec. 22, 2003) (Wit Dec. Ex. QQ); Transactions With Bank of America Report at 137 (Wit Dec. Ex. D).

[43]   Feb. 10, 2006 Defendants' Proposed Counterclaims at ¶ 206 (MD# 303) (Wit Dec. Ex. VV); McCormick (BofA 30(b)(6)) Tr. (Wit Dec. Ex. II) at 1891:15-1893:16, 1897:23-1898:16.

[44]   Valenti Dec. at ¶ 7d & Exh. B at 268.

[45]   Valenti Dec. at ¶ 7a-c & Exh. B at 259-260.

has no impact on whether BofA's repeated separation of its transactions into complex and often-hidden parts is relevant in *this* case.[47]

In sum, Defendants' isolated complaints as to Lagro's BofA analysis fall well short of the numerous and fundamental flaws that their own authorities require to justify exclusion.[48] And of course they have no impact whatsoever on his six separate ████████████████████████████████ reports, about which Defendants have nothing to say.

### D.    Lagro's Testimony Will Assist the Jury

Defendants imply (at 7-8) that the jury would not be assisted in understanding a case of this financial complexity by the testimony of an accountant.[49] This strains credulity. *See, e.g., Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 146-47 (S.D.N.Y. 2003) (even if facts could be presented directly, accountants' testimony allowed because it related to "complicated series of transactions and [the party's] records" thereof); *Converdyn*, 2008 WL 113842 at *4.

Defendants separately argue (at 13-14) that Lagro's ████████████████ are not helpful because ██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

---

[46]    Valenti Dec. at ¶ 7d-f & Exh. B at 318-19.

[47]    As for the Milan tribunal's general comments on Lagro's credibility, the law is clear that such is not relevant here. *See generally Green v. McAllister Bros. Inc.*, 2005 WL 2207024, at *1 n.1 (S.D.N.Y. Sept. 7, 2005) ("[T]he purpose of a *Daubert* hearing is not to decide an expert's credibility.").

[48]    *See Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 355 (S.D.N.Y. 2005) (expert presented "no" evidence "that would withstand adversarial scrutiny"); *Fernandez v. Spar Tek Indus.*, 2008 WL 2185395, at *7 (D.S.C. May 23, 2008) (conclusion directly contradicted offering party's own admissions).

[49]    That Defendants' "narrative" objection is one of relevance is unstated, but clear from their authorities. *See Rezulin*, 309 F. Supp. 2d at 551 (testimony rejected because juror "is equally capable of understanding" evidence); *Highland Capital*, 379 F. Supp. 2d at 469 (same).

[50]    Defendants' alternative explanations (at 14-15) are just that, alternatives. ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████ Procedure Performed in Brazil Rep. at 2-3 (Wit Dec.

[51] Case law from other contexts further supports the reasonableness of this conclusion. *See generally Doyle v. U.S.*, 318 F.2d 419, 424-25 (8th Cir. 1963); *State v. Oxendine*, 436 S.E. 2d 906, 910 (N.C. App. 1993).[52] Defendants may disagree, but that does not make the testimony inadmissible.

## VI.    *Exclusion of These Four Key Experts Under Rule 37 is Not Warranted*

### A.    *Experts Need Not Disclose Every Document They Had Access To*

Although Defendants couch their assertion of a purported discovery violation (at 15-18) in terms of a failure to disclose documents "considered," what they actually seek in substance is the disclosure of documents the Italian experts "had access to." The parties here, however, have not interpreted "considered" so broadly, instead agreeing that disclosure would only be required for documents "considered *and relied upon*."[53] And BofA has explicitly confirmed that it has allowed its experts to distinguish between "had access to" and "considered."[54] Defendants cannot use this distinction as a shield for their experts during discovery, then as a sword against Dr. Bondi's now.

### B.    *Any Alleged Failure Does Not Warrant Exclusion*

Because the Rules excuse "substantially justified" and "harmless" and failures, and because of the "drastic" nature of exclusion, courts consider the following factors before excluding a witness for Rule 26 violations: (1) the party's explanation; (2) the importance of the testimony; (3) prejudice to the opposing party; and (4) the possibility of a continuance. *See, e.g.*, Fed. R. Civ. P. 37(c)(1);

---

Ex. H); Dubinsky (BofA Expert) Tr. (Wit Dec. Ex. HH) at 399:25-402:21.

[51] Dubinsky (BofA Expert) Tr. (Wit Dec. Ex. HH) at 487:13-491:8, 515:10-516:15, 519:25-522:7.

[52] *United States v. Eff* (Mot. at 15) is irrelevant on this point. 461 F. Supp. 2d 529, 534 (E.D. Tex. 2006) (testimony that firefighter started fires because of mental condition excluded where experts ignored defendant's confession that he did it to obtain additional training and hazard pay).

[53] 3/27/07 Goodyear Email (Wit Dec. Ex. YY) (agreement as to disclosure of documents "considered *and relied upon*") (emphasis added).

[54] Aug. 17, 2007 Vann Email (Wit Dec. Ex. ZZ).

*Outley v. City of New York*, 837 F.2d 587, 590 (2d Cir. 1988); *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y. 1995) (exclusion only where flagrant bad faith).

### 1.     *Dr. Bondi Has Acted in Good Faith to Identify All Materials*

Lagro, Galea, Megna, and Dr. Chiaruttini all performed Parmalat-related tasks beyond the reports here, the latter three for prosecutors not a party here.  It is not a bad-faith "refusal" (at 15) for them to be unable to identify every scrap of paper (or computer image not reduced to hard copy) they saw years before their reports were designated in these cases, particularly when Defendants have not held their experts to such an "access" standard.[55]  Nor, with respect to Lagro, was counsel's inadvertent erroneous identification of the Wishaw Bates range – in a case involving millions of pages – bad faith.

### 2.     *Exclusion of These Experts Would Severely Prejudice Dr. Bondi*

The four experts Defendants seek to exclude cover key issues – ███████████████

███████████████████████████████████████████

███████ – and thus their exclusion plainly would be highly prejudicial.

### 3.     *Defendants Have Not Been Prejudiced*

Defendants identify no instance where their experts contended that their analysis was inhibited by the lack of documents made available by these experts.  Defendants have known the substance of these witnesses' conclusions for *four* years, and identify no prejudice from any disclosure failures.  This "alone makes this case atypical of cases where sanctions have been justified under Rule 37(c)(1)." *Roberts v. Galen of Virginia, Inc.*, 325 F.3d 776, 783 (6th Cir. 2003) (also,

---

[55]   Aug. 17, 2007 Vann Email (Wit Dec. Ex. ZZ) (distinguishing "considered" and "had access to"). ███████████

████████     12/3/07 Kieve Letter(Wit Dec. Ex. NN); Galea Tr. (Wit Dec. Ex. S) at 126:10-127:18; Galea Tr. (Wit Dec. Ex. T) at 264:15-265:10; Chiaruttini Tr. (Wit Dec. Ex. V) at 135:25-136:10; Lagro Tr. (Wit Dec. Ex. AA) at 199:14-200:12; Megna Tr. (Wit Dec. Ex. O) at 99:9-18.

that counsel knew of alleged failures for five months but did nothing until eve of trial "suggest[s]

that these violations should be considered substantially justified or harmless"); *Gillum v. U.S.*, 309

Fed. Appx. 267, 269-70 (10th Cir. 2009).[56]

    ***Megna.***  Defendants do not identify any documents they believe Megna considered but did

not identify, and, as they have accordingly not been prejudiced, exclusion is not proper.

    ***Galea.***  In claiming a virtual total inability to cross-examine Galea, Defendants point (at 15-

16)



just because Galea

had access to them would not have better enabled Defendants to cross-examine him, which is the

central purpose of the disclosure rules.[58]  *See* 1993 Committee Notes to Fed. R. Civ. Pro. 26(a)(2).

    Defendants also completely ignore the materials they *do* have, including

---

[56]   Defendants' authorities do not hold otherwise, as both dealt with situations where the non-disclosure was of *opinions*, not materials "considered."  *See Luke v. Emergency Rooms, P.S.*, 2008 WL 410672, at *3 (W.D. Wash. Feb. 12, 2008); *Ebron v. U.S.*, 2008 WL 4298515, at *3 (S.D.N.Y. Sept. 17, 2008).

[57]   9/15/05 Steiger Letter (Wit Dec. Ex. SS); 9/28/05 Tompkins Letter (Wit Dec. Ex. TT); 11/18/05 Andersen Email (Wit Dec. Ex. UU).

[58]   3/6/07 Calamari Letter at 3 (Wit Dec. Ex. XX); 9/28/05 Tompkins Letter (Wit Dec. Ex. TT).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████[59] Defendants spent three days cross-examining Galea and have made

no showing of prejudice or of how having, ████████████████, would have significantly

assisted them in that effort when they already had turned down the similar ledger data.[60]

**Chiaruttini.** Defendants' claim (at 17) ████████████████████████████

████████████████. And although it is not clear if they intended to make the

same arguments as to her that they did as to Galea – which would fail for the same reasons – they

make no showing as to how they would have spent the *six days* they already had to cross-examine

her any differently if there were any other such materials.

**Lagro.** Defendants do not specify any documents that they believe Lagro "considered" but

that have not now been identified, but rather complain about the timing of the disclosures. As to the

December 2007 correction of the Bates ranges, it seems unlikely that Defendants were not already

independently aware (nor do they claim otherwise) of the actual tables they point to prior to the

Bates correction, inasmuch as ████████████████████████████

████████████████[61] As for the two later productions Defendants mention (at 18),

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[59]  *See, e.g.*, Galea & Megna Report (Volume I) at 14 (Wit Dec. Ex. A); Chiaruttini Tr. (Wit Dec. Ex. V) at 139:5-21 (Bocchi CD); *see also* Wit. Dec. ¶ 59 (witness statements); 3/6/07 Calamari Letter at 3 (Wit Dec. Ex. XX) (SAP).

[60]  Further, the "test" factor Defendants' rely on here is only one of a non-exhaustive list of "methodological factors" that may be considered in appropriate cases – factors that are often held to be inapplicable to fields such as accounting. *See Weaver v. Mobile Diagnostech, Inc.*, 2009 WL 1230297, at *8 (W.D. Pa. Apr. 30, 2009); *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004).

[61]  Wit Dec. Ex. OO.

[62]  *Compare* Wit Decl. Wit Dec. Ex. OO (tables identified in 2007 as being "considered") *with* Ex. PP (*intercia Wishaw* summary table, printed from May 2008 native-file production).

████████████████████████████████████████████████████████

██████████████████████████████████████████ The

prejudice from these corrections is hardly "self-evident."  Mot. at 19.

### 4.     Continuance is a Less Drastic Alternative

No trial date has been scheduled in Dr. Bondi's actions.  Should the Court determine that

Defendants have actually been prejudiced in their ability to cross-examine Dr. Bondi's Italian

experts, Dr. Bondi respectfully submits that the appropriate remedy is a continuance for further

examination of these experts, not the drastic measure of exclusion.

## VII.    The Deposition Testimony is Admissible in the Class Action

Insofar as the Grant Thornton ("GT") entities' motion is directed specifically to use of the

deposition transcripts in the class action, the motion is based on several flawed premises.

*First*, the motion is defective on its face, because it fails specifically to identify the particular

testimony to which it is addressed.  This is crucial, because notwithstanding the misleading

impression that GT seeks to create that all of the testimony from these four witnesses is opinion

testimony, in actuality, they also offered *fact* testimony.[64]  The motion supplies no basis whatsoever

for excluding such testimony, and the admissibility of such fact testimony should be judged on an

item-by-item basis like any other fact testimony.

*Second*, GT argues as if there was some rigid dividing line whereby certain of the

---

[63]   5/9/09 Andersen Email (Wit. Decl. Exh. EEE).

[64]   For example, ████████████

████████████████████████████████████

████████████████████ Lagro Tr. (6/12/09 Declaration of

Lydia Ferrarese ("Ferrarese Dec.") Ex. 4) at 119-21.  Such fact testimony is clearly admissible either as an admission or

as a statement against penal interest.  Megna provided fact testimony that ████████████████████

██████████████████ Megna Tr. (Ferrarese Dec.

Ex. 1) at 31.  Other witnesses similarly provided fact testimony as to ████████████

████████████.  *See, e.g.*, Chiaruttini Tr. (Ferrarese Dec. Ex. 7) at 201-03; Lagro

depositions involved strictly fact testimony and others involved strictly opinion testimony.  That is not so.  At their so-called expert depositions, the witnesses could and did provide fact testimony, and such fact testimony is admissible on the same basis as any other fact testimony.  Similarly, at the so-called fact depositions, there was nothing to stop GT's counsel from inquiring about the witnesses' opinions, and the admissibility of any opinion testimony elicited at those depositions should be evaluated like any other opinion testimony.

  *Third*, GT asserts that Class Plaintiffs failed to heed the Court's statement that they should retain their own experts.  In fact, Class Plaintiffs have retained Douglas Carmichael, the former Chief Accountant of the Public Company Accounting Oversight Board, who is one of the foremost accounting experts in the world.  He will testify at the trial, but this cannot substitute for the Italian witnesses' testimony because, as set forth below, there are aspects of their testimony that neither Carmichael nor anyone else could realistically duplicate, relating to their exclusive knowledge of facts of the fraudulent scheme at Parmalat and GT's role in it.

  **A.**  ***Class Plaintiffs Are Allowed to Present Expert Testimony Via Deposition***

  It is clear that under Fed. R. Civ. P. 32(a), the deposition testimony of an expert may, in general, be used for any purpose at trial.  Directly on point is *Nichols v. American Risk Mgmt., Inc.*, 2000 WL 97282 (S.D.N.Y. Jan. 28, 2000), *objections overruled*, 2000 U.S. Dist. LEXIS 4164 (S.D.N.Y. Mar. 16, 2000), which denied a defendant's motion to preclude the plaintiff from using the deposition testimony of an expert who lived over 100 miles from the courthouse and was retained by another party (a settling defendant).  The court explained that Rule 32(a) does not make any distinction between use of depositions of fact and expert witnesses, and that "although the case law in this area is sparse, courts have permitted the admission of expert testimony by deposition."

---

Tr. (Ferrarese Dec. Ex. 4) at 93-94, 101-02.

*See id.* at \*1-\*2.

Cognizant of this general rule, GT attempts to avail itself of the narrow exception where the witness's "absence was procured" by the party offering the deposition testimony. *See* Fed. R. Civ. P. 32(a)(4)(B). That rule, intended to deal with situations where parties "actively took steps to keep the deponents from setting foot in the courtroom,"[65] does not apply here. GT does not and could not suggest that Class Plaintiffs have taken any steps to prevent these witnesses from coming to the trial.



[66]

GT's reliance on *Carter-Wallace v. Otte*, 474 F.2d 529 (2d Cir. 1972), is misplaced. First, the court's statements in that case concerning the use of the deposition testimony taken in a prior case (not in the current case as is true here) were *dicta*, because it held that the District Court acted within its discretion in admitting the testimony. *Id.* at 537. Second, the court indicated that use of an expert's deposition testimony would be proper if the party attempted to secure the voluntary attendance of the expert, as Class Plaintiffs did here.[67] *Id.* at 536-37. Third, the court indicated that use of an expert's deposition testimony would be proper where, as here, the expert had some "unique knowledge" or their testimony otherwise could not be duplicated by someone else.[68]

[69] And it would be cost-prohibitive and entirely unreasonable for another expert to recreate

---

[65]    *Houser v. Snap-on Tools Corp.*, 202 F. Supp. 181, 189 (D. Md. 1962).

[66]    *See* Ferrarese Dec.

[67]    *See* Ferrarese Dec. at ¶¶ 3-9.

[68]    *Id.*

[69]    Chiaruttini Tr. (Ferrarese Dec. Ex. 7) at 45-46; Lagro Tr.(Ferrarese Dec. Ex. 4) at 87-88, 119-20, 154-167; Lagro Tr. (Ferrarese Dec. Ex. 5) at 408-09; Megna Tr. (Ferrarese Dec. Ex. 1) at 112; Megna Tr. (Ferrarese Dec. Ex. 3) at 218-21.

what these witnesses did. ███████████████████████████████████████

███████████[70]  Procuring other experts to replicate this work would not have been possible

economically.

**B.    There Is No Merit to GT's Argument That It Did Not Have a Full and Fair Opportunity to Cross-Examine These Witnesses at Deposition**

**1.    GT Had a Full Opportunity to Cross-Examine These Witnesses**

Citing only two isolated examples from hundreds of pages of testimony, GT asserts (at 23)

that counsel for Galea and Megna directed them not to answer relevant questions.  GT's argument is

belied by the very examples it cites.  The objectionable questioning had nothing whatsoever to do

with the opinions or fact testimony provided by Galea and Megna, but instead ████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████  These were the bases

for the instruction from counsel for Galea and Megna.[72]  No relevant questioning was blocked.

**2.    The Refusal of Some of These Witnesses to Sign the Protective Order did Not Preclude GT From Questioning Them About Confidential Documents**

Because the Protective Order, which was heavily negotiated, explicitly provides that

---

[70]  Lagro Tr. (Ferrarese Dec. Ex. 4) at 176-77.  It is acknowledged that not all of this time would have been devoted to activities relevant to the case at bar.  An allocation is not available and probably not feasible.

[71]  Galea Tr. (Ferrarese Dec. Ex. 6) at 301; Megna Tr. (Ferrarese Dec. Ex. 2) at 223, 227-28, 232; 247, 253.

[72]  Megna Tr. (Ferrarese Dec. Ex. 2) at 227-28, 232, 247, 253; Galea Tr. (Ferrarese Dec. Ex. 6) at 301.

confidential documents may be shown to witnesses even if they refuse to sign the Protective Order,[73] that these witnesses did not sign the Order until their "expert" depositions did not preclude GT's counsel from questioning them about confidential documents prior thereto.[74]

Further, any alleged limitations that might have existed regarding the scope of the depositions noticed only in Dr. Bondi's cases (Mot. at 24) simply did not apply to the depositions taken in the Class case, where GT's counsel was free to ask whatever questions they wanted.[75] Moreover, given that Class Plaintiffs will not be offering any evidence from these witnesses other than what was elicited at the depositions, any narrowing of scope at the depositions in Dr. Bondi's cases necessarily limited not only what GT could ask, but also what the Class Plaintiffs can offer at trial. There accordingly is no asymmetry, as GT had a full opportunity to cross-examine on the same subjects as Class Plaintiffs can present at trial.[76]

### C.    The Testimony Would Be Admissible if Presented Live at Trial

Class Plaintiffs are not relying on the lay opinion provision in Rule 701, and hence GT's arguments about this Rule are irrelevant. As set forth above, these witnesses provided both fact and expert testimony, and such testimony is admissible whether presented live or by deposition.

### Conclusion

For the foregoing reasons, Plaintiffs respectfully submit the motion should be denied.

---

[73]  *See* Protective Order, Aug. 3, 2005, ¶¶ 11(d) and (e) (D.I. 179 in 04 MD 1653). ███████████████████████████████████████████████ Galea Tr. (Ferrarese Dec. Ex. 6) at 168-69.

[74]  ████████████████████████████████████████████████████████████████ *See* Chiaruttini Tr. (Ferrarese Dec. Ex. 8) at 51, 53; Lagro Tr. (Ferrarese Dec. Ex. 9) at 47; Megna Tr. (Ferrarese Dec. Ex. 10) at 72-73; Galea Tr. (Ferrarese Dec. Ex. 11) at 70.

[75]  In the Class case, each deposition was multi-day:  Chiaruttini (6 days); Lagro, Megna and Galea (2 days each).

[76]  GT's alleged inability to question Lagro about a statement by another court regarding his reliability (Mot. at 24) makes no difference, as a third party's view of the credibility of a witness in another proceeding would not be admissible at the trial herein.

New York, New York
Dated:  June 15, 2009

QUINN EMANUEL URQUHART
OLIVER & HEDGES LLP

By _____

John B. Quinn (JQ 0716)
Peter E. Calamari (PC 3964)
R. Brian Timmons (*pro hac vice*)
Terry L. Wit (TW 3078)
Jeremy Andersen (*pro hac vice*)

terrywit@quinnemanuel.com

51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000
(212) 849-7100 (fax)

*Attorneys for plaintiff Dr. Enrico Bondi,*
*Extraordinary Commissioner of Parmalat*
*Finanziaria S.p.A., Parmalat S.p.A. and other*
*affiliated entities in Extraordinary Administration*
*under the laws of Italy*

GRANT & EISENHOFER, P.A.

By _____

    Stuart M. Grant  (SG 8157)
    James J. Sabella (JS 5454)
    John C. Kairis  (JK 2240)
    Diane Zilka  (DZ 9452)
    Lydia Ferrerase  (LF 8880)

    jsabella@gelaw.com

485 Lexington Avenue
New York, NY  10017
646-722-8500


COHEN MILSTEIN SELLERS & TOLL PLLC

By _____

    Steven J. Toll
    Lisa M. Mezzetti  (LM 5105)
    Julie Goldsmith Reiser
    Joshua S. Devore

    lmezzetti@cohenmilstein.com

1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005-3964
202-408-4600

*Co-Lead Counsel for Class Plaintiffs*

*Of Counsel*

SPECTOR ROSEMAN KODROFF & WILLIS, P.C.

    Robert M. Roseman  (RR 1103)
    Andrew D. Abramowitz
    Daniel J. Mirarchi
    Rachel E. Kopp

    rroseman@srkw-law.com

1818 Market Street, 25th Floor
Philadelphia, PA  19103
215-496-0300

27

**CERTIFICATE OF SERVICE**

I, Joseph D. Hammond, hereby certify that on June 15, 2009, I caused to be served copies of (i) Plaintiffs' Joint Memorandum of Law in Opposition to Defendants' Motion *in Limine* to Exclude Testimony of Dr. Stefania Chiaruttini, Oliver Galea, Roberto Megna, and Franco Lagro, (ii) the Declaration of Terry L. Wit in Opposition to Defendants' Motion *in Limine* to Exclude Testimony of Dr. Stefania Chiaruttini, Oliver Galea, Roberto Megna, and Franco Lagro, and (iii) the Declaration of Lydia Ferrarese in Opposition to Defendants' Motion *in Limine* upon all parties by electronic mail.

Dated: June 15, 2009
New York, New York

Joseph D. Hammond