UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re PARMALAT SECURITIES LITIGATION | : | |
| | : | |
| This document relates to:    04 Civ. 9771 | : | MASTER DOCKET |
|                              05 Civ. 4015 | : | |
|                              04 Civ. 0030 | : | 04 MD 1653 (LAK) ECF Case |
| | : | |
| | : | REPLY MEMORANDUM IN |
| DR. ENRICO BONDI, | : | FURTHER SUPPORT OF |
|       Plaintiff, | : | DEFENDANTS' MOTION *IN* |
| | : | *LIMINE* TO EXCLUDE |
|       v. | : | TESTIMONY (**REDACTED**) |
| | : | |
| GRANT THORNTON INT'L, *et al.*, | : | **FILED ELECTRONICALLY** |
|       Defendants. | : | |
| DR. ENRICO BONDI, | : | ORIGINAL FILED UNDER |
|       Plaintiff, | : | SEAL |
| | : | |
|       v. | : | |
| | : | |
| BANK OF AMERICA CORPORATION, *et al.*, | : | |
|       Defendants. | : | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION
*IN LIMINE* TO EXCLUDE TESTIMONY OF STEFANIA CHIARUTTINI,
OLIVER GALEA, ROBERTO MEGNA, AND FRANCO LAGRO**

**– REDACTED / ORIGINAL FILED UNDER SEAL –**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

KEY TO CITED MATERIALS PREVIOUSLY SUBMITTED .............................................. iv

KEY TO CITED MATERIALS SUBMITTED HEREWITH.................................................. vi

INTRODUCTION .........................................................................................................................1

ARGUMENT ................................................................................................................................1

I.     THE TESTIMONY OF ALL FOUR ITALIAN WITNESSES IS THE PRODUCT OF
UNRELIABLE METHODOLOGY AND IS THEREFORE INADMISSIBLE. ...............................1

II.    LAGRO'S TESTIMONY IS INADMISSIBLE FOR ADDITIONAL REASONS...........................3

     A.    Lagro May Not Provide Narrative Testimony. ........................................................3

     B.    Bondi's Procedures and Methodology Render Lagro's Testimony Unreliable........................4

     C.    Lagro's Unreliability Is Highlighted In His Proposed Wishaw Testimony. ............................4

III.   CHIARUTTINI'S KNOWLEDGE AND INTENT OPINIONS ARE INADMISSIBLE. ...............6

IV.   PLAINTIFFS' RULE 26 FAILURES WARRANT EXCLUSION. ...................................................7

V.    THE ITALIAN WITNESSES' DEPOSITION TESTIMONY IS NOT ADMISSIBLE IN
THE CLASS ACTION....................................................................................................................9

     A.    The Italian Witnesses Are Not Fact Witnesses.......................................................9

     B.    Class Plaintiffs Cannot Use Depositions Merely Because They Prefer Free,
Unavailable Experts...................................................................................................10

     C.    GTI and GT-US Had No Opportunity To Fully Depose These Witnesses. ...........................12

CONCLUSION............................................................................................................................12

## TABLE OF AUTHORITIES

CASES:

*Aniero Concrete Co.* v. *NYC Sch. Constr. Auth.*,
    2002 WL 257685 (S.D.N.Y. Feb. 22, 2002)........................................................................7

*Boucher* v. *U.S. Suzuki Motor Corp.*,
    73 F.3d 18 (2d Cir. 1995)..................................................................................................6

*Carter-Wallace* v. *Otte*,
    474 F.2d 529 (2d Cir. 1972)......................................................................................11, 12

*Design Strategy, Inc.* v. *Davis*,
    469 F.3d 284 (2d Cir. 2006)..............................................................................................8

*Highland Capital* v. *Schneider*,
    379 F. Supp. 2d 461 (S.D.N.Y. 2005)................................................................................3

*Jackson* v. *Scotts Co.*,
    2009 WL 321010 (S.D.N.Y. Feb. 10, 2009)......................................................................9

*Kayongo-Male* v. *S.D. State Univ.*,
    2008 WL 2627699 (D.S.D. July 3, 2008).......................................................................n.7

*Local 210 Health & Ins. Fund* v. *Selecto Prods.*,
    2007 WL 2717870 (S.D.N.Y. Sept. 14, 2007)...................................................................4

*Nichols* v. *Am. Risk Mgmt.*,
    2000 WL 97282 (S.D.N.Y. Jan. 28, 2000) .....................................................................11

*In re Parmalat Secs. Litig.*,
    2006 WL 3592936 (S.D.N.Y. Dec. 1, 2006) ................................................................n.11

*In re Parmalat Secs. Litig.* ("*Chiaruttini Order*"),
    477 F. Supp. 2d 637 (S.D.N.Y. 2007)............................................................................10

*In re Parmalat Secs. Litig.* ("*PwC-Italy Order*"),
    2007 WL 1169217 (S.D.N.Y. Apr. 18, 2007)............................................................10, 12

*In re Parmalat Secs. Litig.* ("*Order of Nov. 19, 2007*")
    MD # 1558 (S.D.N.Y. Nov. 19, 2007)....................................................................7, n.9, 9

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)...............................................................................7

*United States v. Williams,*
    506 F.3d 151 (2d. Cir. 2007)..................................................................................3

*In re Worldcom, Inc. Secs. Litig.,*
    2005 WL 675601 (S.D.N.Y. Mar. 24, 2005) ....................................................10

## RULES:

Fed. R. Civ. P. 26 ................................................................................................ *passim*

Fed. R. Evid. 701 ...................................................................................................n.13

Fed. R. Evid. 702 ................................................................................................ *passim*

Fed. R. Evid. 803 ..................................................................................................1, 2

## KEY TO CITED MATERIALS PREVIOUSLY SUBMITTED

**Short Form**                                          **Long Form**

*Valenti Decl.* ................................................May 29, 2009 Declaration of Avv. Ernesto Gregorio Valenti In Support Of Defendants' Motion To Exclude The Testimony of The Italian Witnesses

*Keeling Decl.*................................................June 1, 2009 Declaration of Robert D. Keeling In Support Of Defendants' Motion To Exclude The Testimony of The Italian Witnesses

*Chiaruttini Fact Tr.*.......................................Oct. 11 to Oct. 24, 2006 Deposition of Stefania Chiaruttini (excerpts submitted as *Keeling Decl. Exh.* A)

*Lagro Fact Tr.*...............................................Feb. 26 to Feb. 27, 2007 Deposition of Franco Lagro (excerpts submitted as *Keeling Decl. Exh.* B)

*Megna Fact Tr.* .............................................Feb. 28 to Mar. 1, 2007 Deposition of Roberto Megna (excerpts submitted as *Keeling Decl. Exh.* D)

*Lagro Expert Tr.* ...........................................Aug. 21 to Aug. 24, 2007 Deposition of Franco Lagro (excerpts submitted as *Keeling Decl. Exh.* E)

*Galea Expert Tr.* ...........................................Aug. 29 to Aug. 31, 2007 Deposition of Oliver Galea (excerpts as *Keeling Decl. Exh.* F)

*May 10, 2007 Hearing Tr.* .............................*In re Parmalat Secs. Litig.*, No. 04 MD 1653 (LAK) (transcript of proceedings on May 10, 2007) (excerpt submitted as *Keeling Decl. Exh.* H)

*Exh. 20,151* .................................................Enrico Bondi's Supplemental Expert Witness Designations in *Bondi* v. *Bank of America* (designation and certain attachments submitted as *Keeling Decl. Exh.* I)

*Exh. 20,098* .................................................Enrico Bondi's Supplemental Expert Witness Designations in *Bondi* v. *Grant Thornton International* (designation and certain attachments submitted as *Keeling Decl. Exh.* J)

*5/19/08 Chen Email* .......................................May 19, 2008 Email from Michael Chen to All Counsel (submitted as *Keeling Decl. Exh.* M)

*Exh. 30,116A*.................................................December 4, 2004 Report of Oliver Galea (excerpts submitted as *Keeling Decl. Exh.* P)

*Chiaruttini Expert Tr.* ....................................July 31 to Aug. 2, 2007 Deposition of Stefania Chiaruttini (excerpts submitted as *Keeling Decl. Exh.* Q)

*Exh. 20,152* ......................................................Mar. 14, 2005 PricewaterhouseCoopers SpA Report entitled "Transactions with Bank of America" (excerpts submitted as *Keeling Decl. Exh.* S)

*Exh. 20,159* ......................................................June 29, 2004 PricewaterhouseCoopers SpA Draft Report entitled "Intercompany Report on Wishaw Trading SA – Procedure Performed in Brazil" (excerpts submitted as *Keeling Decl. Exh.* W)

*Bondi* v. *Citigroup Trial Tr.* ............................*Bondi* v. *Citigroup* (N.J. Super. Ct. Law Div.) (transcript of proceedings on July 22, 2008) (excerpts submitted as *Keeling Decl. Exh.* BB)

*P07459818* .......................................................*intercia Wishaw.xls* (worksheet labeled "*Wishaw confidencial*" submitted as *Keeling Decl. Exh.* CC)

*Exh. 20,157* ......................................................Mar. 18, 2004 PricewaterhouseCoopers SpA Draft Report entited "Wishaw Trading SA Uruguay" (excerpts submitted as *Keeling Decl. Exh.* DD)

*Keeling Decl. Exh.* HH....................................Selected Supporting Documentation for the March 18, 2004 PricewaterhouseCoopers SpA Draft Report entitled "Wishaw Trading SA Uruguay" (submitted as *Keeling Decl. Exh.* HH)

*Exh. 13,044* ......................................................Index of Reports Prepared by PricewaterhouseCoopers SpA Prepared by Counsel for Enrico Bondi and Entered By The Same At The Fact Deposition of Franco Lagro (submitted as *Keeling Decl. Exh.* MM)

## KEY TO CITED MATERIALS SUBMITTED HEREWITH

| Short Form | First Use | Long Form |
|---|---|---|

*Sec. Keeling Decl.* ..........................................June 22, 2009 Declaration of Robert D. Keeling In Further Support of Defendants' Motion To Exclude The Testimony of The Italian Witnesses

*Exh. 20,152* .................................n.1 ...........Mar. 14, 2005 PricewaterhouseCoopers SpA Report entitled "Transactions with Bank of America" (pages 3-5 and 109-120 submitted as *Sec. Keeling Decl. Exh.* NN)

*Def. PCFL 56.1* ............................n.1 ...........Joint L.R. 56.1 Statement in *PCFL* v. *BoA* (paragraph 104 submitted as *Sec. Keeling Decl. Exh.* OO)

*BoA 56.1*.......................................n.1 ...........Joint L.R. 56.1 Statement in *Bondi* v. *BoA* (paragraphs 6 and 12 submitted as *Sec. Keeling Decl.* Exh. PP)

*Bondi-BoA Compl.* .......................n.1 ...........Complaint filed in *Bondi* v. *BoA* (paragraph 2 submitted as *Sec. Keeling Decl. Exh.* QQ)

*Citigroup Tr.* ................................n.2 ...........*Bondi* v. *Citigroup* (N.J. Super. Ct. Law Div.) (transcript of proceedings on July 22, 2008) (pages 216-218 and 13570 submitted as *Sec. Keeling Decl. Exh.* RR)

*Exh. 20,157* .................................n.2 ...........Mar. 18, 2004 PricewaterhouseCoopers SpA Draft Report entitled "Wishaw Trading SA Uruguay" (page 7 submitted as *Sec. Keeling Decl. Exh.* SS)

*Dubinsky Tr.*.................................6..............Aug. 22 to 24, 2007 Deposition of Bruce G. Dubinsky (pages 389, 399-402, 410-411, 487 and 525-527 submitted as *Sec. Keeling Decl. Exh.* TT)

*Dubinsky Rebuttal Report* .............6..............Rebuttal Expert Report of Bruce G. Dubinsky, MST, CPA, CFE, CVA (submitted as *Sec. Keeling Decl. Exh.* UU)

*Chiaruttini Fact Tr.*.......................6..............Oct. 11 to Oct. 24, 2006 Deposition of Stefania Chiaruttini (pages 485, 593-594 and 1060-1061 submitted as *Sec. Keeling Decl. Exh.* VV)

*Exh. 30,116A* ...............................n.8 ...........December 3, 2004 Report of Oliver Galea (pages 34-35 submitted as *Sec. Keeling Decl. Exh.* WW)

*Sec. Keeling Decl. Exh. XX*..........n.9 ...........Reports of Antonio De A. Amendola, Bala G. Dharan, Richard W. George, Marcel Imery, Alberto Lasheras-Shine, David J. Teece, Luis Santos Theirot, Alessandro Trivoli (excerpts submitted as *Sec. Keeling Decl. Exh.* XX)

## INTRODUCTION

This Court has already ruled that the Italian witnesses' investigations and conclusions are unreliable. Plaintiffs argue that despite these rulings, the witnesses' testimony should nevertheless be permitted under Rule 702. Yet the connection between this Court's earlier ruling and the current inquiry is simple and unavoidable: an expert cannot conduct an unreliable investigation and reach unreliable conclusions and yet satisfy Rule 702 by delivering reliable, admissible testimony about those conclusions. In the two years since this Court's initial rulings, the witnesses have done nothing to fix this problem – the same problem that led the Court of Milan to declare Lagro a "radically unreliable" witness. All testimony by these witnesses should therefore be excluded. Plaintiffs' refusal to make adequate Rule 26 disclosures exacerbates the unreliability problem and is another reason for exclusion.

Independently, Class Plaintiffs cannot justify using the witnesses' depositions in lieu of live testimony. A party cannot use its own expert's deposition at trial unless no comparable expert is available, a situation plainly not present here. Nor should this Court entertain Plaintiffs' preposterous complaint that retaining their own experts would have been too costly. Class Counsel's false plea of poverty cannot change the rules of evidence, particularly when they seek more than $138 million from GTI and GT-US. Thus, even if it were proper for the Italian witnesses to testify, the class may not use their depositions.

## ARGUMENT

## I.     THE TESTIMONY OF ALL FOUR ITALIAN WITNESSES IS THE PRODUCT OF UNRELIABLE METHODOLOGY AND IS THEREFORE INADMISSIBLE.

Rules 803 and 702 both focus on reliability. Plaintiffs' central argument therefore boils down to the notion that the concept of reliability is entirely different under Rule 803 than it is under Rule 702. Not surprisingly, none of the cases on which Plaintiffs rely supports this

1

contorted interpretation of the rules.

Since this Court rejected their reports, these witnesses have done nothing to cure the unreliable nature of their work. And as this Court held, the witnesses' unreliable methods infected not only the reports but also their findings and conclusions. *See Mem.* at 5-6. Plaintiffs might have had a point if this Court had excluded the Italian witnesses' reports under Rule 803 simply on the ground that they were not reports of a public office or agency. In that event, the ruling would not have touched on the reliability of the conclusions contained in those reports. But this Court's findings directly addressed whether the Italian witnesses used reliable methods, and it found they did not. In the two years since then, Plaintiffs have done absolutely nothing to have the Italian witnesses perform the "broad and unbiased factual investigation" that would be the minimum necessary to produce reliable opinions. Their findings and conclusions were unreliable two years ago, and they remain unreliable today.

Plaintiffs cannot succeed by arguing that the materials Megna or Galea considered met some "'sufficient' data threshold." *Opp.* at 7. The issue is not whether those materials are in the abstract "sufficient" or not. The issue is that neither witness conducted a reliable investigation to support the opinions he now offers. In any event, Plaintiffs do not show that Megna or Galea did, in fact, review "sufficient" materials. They concede that Galea relied on information that has not been preserved, *id.* at 23, and Megna admitted that

In short, Plaintiffs offer nothing to question this Court's finding two years ago that Megna and Galea did not conduct meaningful or reliable investigations.

Throughout their Response, Plaintiffs attempt to evade Defendants' arguments and this Court's findings by pushing onto ***Defendants*** the burden of showing that the testimony is

2

*in*admissible.  They assert, for example, that Defendants have not proven the testimony to be

"substantively incorrect," *Opp.* at 8 – a particularly odd assertion given that Plaintiffs never

disclosed all the materials these witnesses considered, thereby denying Defendants a meaningful

opportunity to test and challenge the witnesses' opinions.  But more fundamentally, the burden is

not on Defendants in the first place.  It is ***Plaintiffs'*** burden to prove that all the proffered expert

testimony is reliable and admissible.  *United States* v. *Williams*, 506 F.3d 151, 160 (2d. Cir.

2007).  They have not even tried to do so, and the testimony must be excluded as a result.

## II.    LAGRO'S TESTIMONY IS INADMISSIBLE FOR ADDITIONAL REASONS.

### A.    Lagro May Not Provide Narrative Testimony.

Plaintiffs do not dispute that Lagro's testimony would consist solely of summaries of

transactions of which he has no personal knowledge.  They instead argue only that the testimony

should be permitted because it may assist the jury.  But "an expert cannot be presented . . . solely

for the purpose of constructing a factual narrative based upon record evidence." *Highland

Capital* v. *Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005).  In addition, Plaintiffs'

assertion that Lagro's summaries would be "helpful" is belied by his many factual errors.[1]  *See

Mem.* at 9 & n.7.  Finally, Plaintiffs are wrong to describe the Court of Milan's rejection of

Lagro as "inapposite." *Opp.* at 14.  The current inquiry is all about reliability, and the Court of

---

[1] Plaintiffs attempt to conceal those errors by misrepresenting Lagro's report and his testimony.  Lagro repeatedly wrote

Plaintiffs argue that Lagro was merely describing an alternative "mechanism" rather than what actually happened, but those are Plaintiffs' words, not Lagro's.  Lagro wrote that
    Most importantly, nowhere in his report does Lagro ever describe what actually happened.

Lagro also wrote that

    As Plaintiffs put it, Lagro's conclusions are "directly contradicted [by the] offering party's own admissions." *Opp.* at 16 n.48.  Furthermore, the Court of Milan's conclusion that Lagro presented "deceptive and specious" data, *Valenti Decl. Exh. B* at 318, is a specific reference to Lagro's report on BoA.  *Exh. 20,152* at 3, 5.

Milan (after reviewing his reports and hearing Lagro's testimony) concluded that Lagro is a "***radically unreliable witness***." *Valenti Decl. Exh. B* at 260 (emphasis added).

**B.    Bondi's Procedures and Methodology Render Lagro's Testimony Unreliable.**

Unable to deny that (1) Lagro did not choose the methods for his work, (2) Bondi alone determined when the results were sufficient, and (3) Bondi's proposed use of these reports violates the rules of Lagro's profession, *see Mem.* at 8-10, Plaintiffs construct a straw man. They inaccurately claim that Defendants' position is that only a full audit would suffice. *Opp.* at 10. Defendants suggested no such thing. Forensic and fraud investigations are not "full audits" but rather well-developed procedures with established methodologies tested through scholarship and peer review. Lagro's methods, by contrast, were created by Bondi and have never been reviewed or tested. They are not GAAS or GAAP or any other established method. That Lagro's opinions resulted from this *ad hoc* approach mandates exclusion. *Cf. Local 210 Health & Ins. Fund* v. *Selecto Prods.*, 2007 WL 2717870, at *2, 5 (S.D.N.Y. Sept. 14, 2007).

Plaintiffs fall back on the fact that Lagro is an accountant, but that is precisely the problem. His "conclusions" – though not the product of any expert analysis – would be presented to the jury with an air of authority to which they are not entitled, because they are espoused by an Italian CPA. Lagro may have experience in accounting matters, but he did not use that expertise in this case. His testimony is thus inadmissible.

**C.    Lagro's Unreliability Is Highlighted In His Proposed Wishaw Testimony.**

Lagro's proposed testimony about Wishaw illustrates the unreliability of all his opinions. As an initial matter, Plaintiffs' characterization of Lagro's Wishaw methodology as an "extensive investigation" is false. *Opp.* at 12. Lagro had no control over

He did not recall his team

His team did not

4

2

His team found                                                                Instead,

they cross-referenced about 1500 entries on a spreadsheet against a mass of photocopies.[3]

They found no documents

Others are supported solely by

Simply comparing a spreadsheet to an incomplete photocopied set of drafts[4] is

not a reliable methodology.

Plaintiffs' proposed use of Lagro's Wishaw work also fails for want of "fit."  Lagro

himself refuses

Plaintiffs now concede there are alternative explanations.

*Opp.* at 16 n.50.  Defendants, who have no burden here, proved that

This startling error

rate shows both that Bondi's *ad hoc* procedures were not reliable and that the conclusion

Plaintiffs hope to draw –                            – is based on a false "apples and

---

[2] Plaintiffs claim that Lagro's team spoke to "the Vice President of Wishaw and two accountants from Uruguay," *Opp.* at 12, to imply that they spoke to Wishaw's auditors and employees.  This is sleight of hand.  Lagro's team spoke to two accounting employees of Parmalat Uruguay, an entirely different company.  *7/22/08 Citigroup Tr.* at 13570:2-13.

[3] Plaintiffs assert that the spreadsheet was checked against bank statements, but according to Lagro
                                                      Plaintiffs' reading – that this only means that there are no *original* bank records, *Opp.* at 12 n.33 – does not help their cause.  As Lagro's colleague testified,

[4] Plaintiffs claim that PwC-Italy also checked the spreadsheet against Wishaw's journals, *Opp.* at 12, but at most the testimony from the Citigroup trial establishes that PwC-Italy compared the spreadsheet only against accounting records of other Parmalat entities.  *See 7/22/08 Citigroup Tr.* at 13594:5-19.  Lagro and his team

oranges comparison." *See Boucher* v. *U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1995).

Finally,

## III.    CHIARUTTINI'S KNOWLEDGE AND INTENT OPINIONS ARE INADMISSIBLE.

Plaintiffs mistakenly assert that Defendants do not challenge Chiaruttini's qualifications

or methodologies. *Opp.* at 8.  In fact, Defendants challenge both. *Mem.* at 19-20.

*Qualifications*:  Plaintiffs admit that Chiaruttini opines on

Indeed, as this Court has written,

opinions regarding "the intent, motives or states of mind of corporations . . . have no basis in any

---

[6] Contrary to what Plaintiffs say,

relevant body of knowledge or expertise." *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004).

>    ***Methodology:*** Chiaruttini's

Plaintiffs do not refute this point.

## IV.    PLAINTIFFS' RULE 26 FAILURES WARRANT EXCLUSION.

Plaintiffs were required to disclose all information "considered" by their experts. Fed. R. Civ. P. 26(a)(2)(B)(ii); *Order of Nov. 19, 2007*, at ¶ 3, MD # 1558. "Considered" is broader than "relied" and reaches any materials "reviewed." *Aniero Concrete Co.* v. *NYC Sch. Constr. Auth.*, 2002 WL 257685, at *3 (S.D.N.Y. Feb. 22, 2002). Even after this Court's order requiring them to do so, Plaintiffs have not disclosed the documents the Italian witnesses considered, and even some documents on which they relied. For example, Bondi failed to: produce

>    *Mem.* at 15-16; produce

>    [8] *id.* at 15; produce materials

>    *id.* at 16; identify                                    *id.* at 16-17; identify the

>    *id.* at 18; and timely produce the "starting point" for Lagro's

Wishaw report, *id.* at n.11, 18. Each of the foregoing is a substantive, harmful, and unjustified violation of Rule 26 and this Court's order and merits exclusion of their proposed testimony.

---

[7] Galea relied on

*See, e.g.,*

*Kayongo-Male* v. *S.D. State Univ.*, 2008 WL 2627699, at *3-4 (D.S.D. July 3, 2008).

[8] Plaintiffs' assertion that Galea found these documents irrelevant is belied by

Plaintiffs' attempts to justify those violations fail: ***First***, there was no agreement limiting the Rule 26 expert disclosure obligations to those documents on which the expert "relied." The email on which Plaintiffs' argument depends merely reflects the common sense agreement that there was no need to produce a second time documents that had been previously produced. *Wit Decl. Exh. YY*.[9] ***Second***, Plaintiffs' claim that BoA distinguished between materials "considered" and those to which the experts merely "had access" is a non sequitur. Plaintiffs failed to disclose materials that the witnesses actually reviewed. ***Third***, Plaintiffs claim that the violations were "inadvertent," but this is untenable given their failure to comply with this Court's clear order to disclose *all* the documents considered or reviewed.[10] ***Fourth***, Plaintiffs' assertion that Defendants must show "flagrant bad faith" is not the law. *Design Strategy, Inc.* v. *Davis*, 469 F.3d 284, 296 (2d Cir. 2006). ***Fifth***, Plaintiffs' objection that Defendants cannot point to any specific document that has not been disclosed is backwards. Of course Defendants cannot point to documents that were never disclosed. ***Sixth***, Plaintiffs' statement that Defendants were aware of the true location of the Wishaw attachments is wrong. Defendants deposed Lagro not knowing that the Wishaw attachments existed because Defendants relied on Bondi's and Lagro's repeated representations claiming to identify those documents. [11]

***Finally***, the *intercia Wishaw* spreadsheet was not, as Plaintiffs claim, previously produced. The

---

[9] Plaintiffs' strained interpretation of *Wit Decl. Exh. YY* conflicts with their own practice:

Furthermore, nothing in the email could possibly limit the scope of this Court's November 2007 Order, which Bondi has also violated.

[10] For example, Plaintiffs fail to explain why Bondi finally produced the *intercia Wishaw* document in the middle of the Citigroup trial only after Judge Harris struck Lagro as a witness as a sanction for the "untoward circumstances" created by Bondi's "discovery violation." *Compare 5/5/08 Citigroup Tr.* at 216:2-218:4, *with 5/19/08 Chen Email.*

[11] Plaintiffs criticize Defendants for not discovering on their own the attachments to the Wishaw report, when those attachments appeared more than 750,000 pages earlier in Bondi's production. *See Opp.* at 20. Yet Bondi admits that he cannot locate even a single page in his own database. *See id.* at 21. Defendants cannot be expected to be more familiar with Bondi's flawed 10 million page production than Plaintiffs. *Cf. In re Parmalat Secs. Litig.*, 2006 WL 3592936, at *1, *6 (S.D.N.Y. Dec. 1, 2006) (discussion of the technical problems plaguing Bondi's production).

document they cite was not identified until after Lagro's deposition and

Disclosure violations cause clear prejudice where they preclude the opposing party from challenging the testimony, as occurred here.[12]  For example:

- *Galea*.

- *Chiaruttini*.

- *Lagro*.

Disclosures should have been made by May 1, 2007, and this Court has already given Bondi two additional chances. *See May 10, 2007 Tr.* at 17; *Order of Nov. 19, 2007*, at ¶ 3, MD # 1558.  Still, Bondi never complied, and offers no explanation *at all* concerning his withholding of the *intercia Wishaw* document until he needed it in the Citigroup trial. *See supra* n.10. Repeated, unjustified non-compliance is more than sufficient cause for the Court to exclude all four witnesses' testimony. *Jackson* v. *Scotts Co.*, 2009 WL 321010, at *9-10 (S.D.N.Y. Feb. 10, 2009) (Kaplan, J.) (unexplained violation of discovery order is "wilful and in bad faith").

## V.    THE ITALIAN WITNESSES' DEPOSITION TESTIMONY IS NOT ADMISSIBLE IN THE CLASS ACTION.

### A.    The Italian Witnesses Are Not Fact Witnesses.

---

[12] The Rule 26 violations also interfered with the work of Defendants' experts.

Given their failure to retain the Italian witnesses as experts, it is no surprise that Class Plaintiffs now claim they are fact witnesses. Even were that true, the Class still could not use their *opinion* testimony,[13] all of which should be excluded. But it is not true.

Fact witnesses are individuals with personal knowledge of relevant events, not individuals who merely read documents or speak to percipient witnesses long after events have concluded. It is conclusively established that these witnesses *Chiaruttini Order*, 477 F. Supp. 2d 637, 639 (S.D.N.Y. 2007); *PwC-Italy Order*, 2007 WL 1169217, at *1, *2 (S.D.N.Y. Apr. 18, 2007);

"Facts"

learned during an accounting investigation are "properly characterized as expert testimony and shall be governed by the requirements of Rule 702." *In re Worldcom, Inc. Secs. Litig.*, 2005 WL 675601, at *3 (S.D.N.Y. Mar. 24, 2005). Class Plaintiffs cannot escape Rule 702 by now reverting to the "fact" label.

Class Plaintiffs also claim that by actually retaining one expert (Douglas Carmichael), they heeded this Court's warning to retain their own experts. This is specious. Even after Carmichael issued his opening expert report, this Court continued to warn Class Plaintiffs about retaining their own experts to cover the subjects for which Class Plaintiffs now hope to use the Italian witnesses. Class Plaintiffs ignored that warning.

**B.    Class Plaintiffs Cannot Use Depositions Merely Because They Prefer Free, Unavailable Experts.**

Class Plaintiffs protest they did not "actively" "prevent" the Italian witnesses from coming to trial. Yet a party that wants to introduce expert testimony in this circuit must bring the

---

[13] Class Plaintiffs now concede that they "are not relying on the lay opinion provision in Rule 701," *Opp.* at 25, so this Court should exclude all lay opinions.

10

expert to trial. To select unretained, unavailable experts is to procure the experts' absence.

The Ferrarese Declaration, attached to the Response, reveals the lack of any real effort to bring the Italian witnesses to trial. During a roughly two-week span in April 2009, Class Counsel made a few phone calls and sent a few e-mails, but "none of the witnesses have agreed to come to trial to testify" (¶ 9). These feeble efforts reveal the exercise for what it was: an attempt to show that these unretained witnesses would not volunteer to travel from Italy to New York City to give trial testimony, rather than a true attempt to retain them and bring them to trial.

Class Plaintiffs cite just a single case for their argument that they may use their own experts' depositions at trial, but ignore that court's recognition that insistence on "live testimony" from an expert "would be warranted" if the opposing party was not able to conduct a full cross-examination at the deposition. *Nichols* v. *Am. Risk Mgmt.*, 2000 WL 97282, at *2 (S.D.N.Y. Jan. 28, 2000). That is precisely the situation here. Further, the *Nichols* court premised its decision on the fact that the defendant failed to identify any case treating the use of expert depositions differently than fact depositions. *Id.* at *1. But GTI and GT-US cite many such cases: *Carter-Wallace* v. *Otte*, 474 F.2d 529, 536-37 (2d Cir. 1972), and the cases following it. Class Plaintiffs disparage *Carter-Wallace* as *dicta* but do not even attempt to explain why courts in and outside this circuit follow it. *See Mem.* at 21-22 & n.19. No court has ever cited *Nichols* to support the argument Class Plaintiffs advance here.

Class Plaintiffs' most incredible claim, however, is that it would have been "cost-prohibitive" for them to retain their own experts. That is an absurd statement from well-funded Class Counsel, who once sought $8.4 billion in damages, today seek more than $138 million from GTI and GT-US, and who have already received tens of millions of dollars in fees and expenses. Class Counsel's preference for free experts cannot justify breaking the rules of

evidence to the prejudice of GTI and GT-US, which face crippling damages claims. In addition, like Bondi, Class Plaintiffs could have retained these witnesses to testify at trial, thereby limiting the expense. *Opp.* at 3. "[I]t is not too much to ask" that Class Plaintiffs "spend a bit more" to have the Italian witnesses "testify in person." *PwC-Italy Order*, 2007 WL 1169217, at *2.

Class Plaintiffs' claim that the Italian witnesses have "unique knowledge" is also baseless. *Opp.* at 23. Plenty of other auditors and financial consultants in Italy and elsewhere have the same expertise, which is the knowledge to which *Carter-Wallace* refers. The only sense in which the Italian witnesses have "unique" knowledge is that they are the ones who did the work they have done. Their knowledge would not be "unique" at all if Class Plaintiffs had hired their own experts to do their own work. Their failure to do so ends the analysis.

### C.    GTI and GT-US Had No Opportunity To Fully Depose These Witnesses.

GTI and GT-US have explained in detail how they were barred from examining these witnesses about                                                         Class Plaintiffs' response – that these questions were irrelevant – is wrong. Among other things, these questions were relevant to showing that

. Defendants were barred from these topics because the Italian witnesses were then being deposed, at Class Counsel's insistence, only as "fact" witnesses. This problem was not cured later, when *in the Bondi case only*, these witnesses were deposed as experts on a different set of reports and opinions. This is yet another reason to exclude their testimony.

### CONCLUSION

For the foregoing reasons, Defendants respectfully urge this Court to exclude all testimony, live or by deposition, of Galea, Megna, Chiaruttini, and Lagro.

12

Dated:  June 22, 2009

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP

SIDLEY AUSTIN LLP

By:  _____/s/ James L. Bernard_____
James L. Bernard (JB-4273)
180 Maiden Lane
New York, NY  10038
(212) 806-5400
(212) 806-6006 (fax)
jbernard@stroock.com

*Attorneys for Grant Thornton International*

By:  _____/s/ Joseph B. Tompkins, Jr._____
Joseph B. Tompkins, Jr.
Alan C. Geolot
Mark P. Guerrera
Robert D. Keeling
1501 K Street N.W.
Washington, DC  20005
(202) 736 – 8000
(202) 736 – 8711 (fax)
jtompkins@sidley.com

A. Robert Peitrzak (AP-6711)
Thomas McC. Souther (TS-6615)
Daniel A. McLaughlin (DM-2688)
787 Seventh Avenue
New York, NY  10019
(212) 839 – 5000
(212) 839-5599 (fax)
dmclaughlin@sidley.com

WINSTON & STRAWN LLP

By:  _____/s/ Bruce R. Braun_____
Bruce R. Braun (BB-2505)
Linda T. Coberly (LC-8078)
Andrew R. Devooght (AD-0250)
35 West Wacker Drive
Chicago, IL  60601
(312) 558-5600
(312) 558-5700 (fax)
adevooght@winston.com

*Attorneys for Grant Thornton LLP*

*Attorneys for Bank of America Corporation,
Bank of America, N.A., Bank of America
National Trust & Savings Association, Banc of
America Securities LLC, Banc of America
Securities Limited, and BankAmerica
International Limited*