UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re PARMALAT SECURITIES LITIGATION | : |
| | : |
| This document relates to:    04 Civ. 9771 | : |
| 05 Civ. 4015 | : |
| 06 Civ. 0704 | : |
| 06 Civ. 2991 | : |
| DR. ENRICO BONDI, | : |
|     Plaintiff, | : |
| | : |
| v. | : |
| | : |
| GRANT THORNTON INT'L, *et al.*, | : |
|     Defendants. | : |
| DR. ENRICO BONDI, | : |
|     Plaintiff, | : |
| | : |
| v. | : |
| | : |
| BANK OF AMERICA CORPORATION, *et al.*, | : |
|     Defendants. | : |
| PARMALAT CAPITAL FINANCE LIMITED, | : |
|     Plaintiff, | : |
| | : |
| v. | : |
| | : |
| BANK OF AMERICA CORPORATION, *et al.*, | : |
|     Defendants. | : |
| PARMALAT CAPITAL FINANCE LIMITED, | : |
|     Plaintiff, | : |
| | : |
| v. | : |
| | : |
| GRANT THORNTON INT'L, *et al.*, | : |
|     Defendants. | : |

MASTER DOCKET

04 MD 1653 (LAK) ECF Case

REPLY MEMORANDUM IN
FURTHER SUPPORT OF
DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

**FILED ELECTRONICALLY**

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON THE GROUNDS OF *IN PARI DELICTO***

**– Redacted Version –**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

KEY TO CITED MATERIALS PREVIOUSLY SUBMITTED ................................................ vii

KEY TO CITED MATERIALS SUBMITTED HEREWITH.................................................... viii

INTRODUCTION ........................................................................................................................1

ARGUMENT.................................................................................................................................3

    I.    NO ABANDONMENT OCCURRED, TOTAL OR OTHERWISE.........................................3

        A.    Plaintiffs Must Show A Total Abandonment.................................................................3

        B.    The Relevant Focus Is Conduct, Not Subjective Motivation........................................5

        C.    The Critical Inquiry Is Whether Parmalat And PCFL Participated In The
            Wrongdoing With Which Defendants Are Charged. .........................................................5

            1.    Parmalat And PCFL Participated In And Benefited From Their
                Transactions With BoA. ..........................................................................................6

            2.    Parmalat And PCFL Participated In And Benefited From Their Financial
                Statement Fraud.......................................................................................................7

        D.    Plaintiffs Cannot Defeat Imputation By Reframing Parmalat's Fraud As A
            "Net" Harm Or By Focusing On "Looting" Or "Squandering."....................................8

            1.    Parmalat's Fraud Cannot Be Assessed In Hindsight. ............................................8

            2.    Plaintiffs' Cries Of "Looting" Cannot Change The Fundamental
                Corporate Nature Of Parmalat's Fraud.................................................................10

            3.    Plaintiffs' Claims Of "Squandering" Do Not Help Their Case...........................11

    II.    PARMALAT WAS COMPLETELY DOMINATED BY CORRUPT MANAGERS,
        SO ITS CLAIMS ARE BARRED EVEN IF THEY ACTED ADVERSELY.......................13

    III.    PCFL IS THE PERPETRATOR, NOT THE VICTIM, OF A FRAUD, AND IT
         THEREFORE STANDS *IN PARI DELICTO*. ....................................................................14

    IV.    ALL OF PLAINTIFFS' CAUSES OF ACTION ARE BARRED. ........................................18

CONCLUSION............................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Alberts* v. *Tufts*,
353 B.R. 324 (Bankr. D.D.C. 2006) ...................................................................... 14

*Alvis* v. *Ribar*,
421 N.E.2d 886 (Ill. 1981); 225 ILCS 450/30.2 ................................................. 18

*Askanase* v. *Fatjo*,
130 F.3d 657 (5th Cir. 1997) .............................................................................. 20

*Baena* v. *KPMG LLP*,
453 F.3d 1 (1st Cir. 2006) ............................................................................... 8, 9

*BB&T* v. *Thompson*,
418 S.E.2d 694 (N.C. Ct. App. 1992) ................................................................ 19

*Bear Hollow, L.L.C.* v. *Moberk, L.L.C.*,
2006 WL 1642126 (W.D.N.C. June 5, 2006) ..................................................... 16

*Bledsoe* v. *Coxe Lumber*,
48 S.E.2d 50 (N.C. 1948) ................................................................................... 20

*Bloor* v. *Carro*,
754 F.2d 57 (2d Cir. 1985) ................................................................................... 7

*Bondi III – Bondi* v. *BoA (In re Parmalat Sec. Litig.)*,
383 F. Supp. 2d 587 (S.D.N.Y. 2005) ........................................................ *passim*

*Bondi IV – Bondi* v. *BoA (In re Parmalat Sec. Litig.)*,
412 F. Supp. 2d 392 (S.D.N.Y. 2006) ................................................... 3, 7, 9, 11

*Bondi V – Bondi* v. *GTI (In re Parmalat Sec. Litig.)*,
421 F. Supp. 2d 703 (S.D.N.Y. 2006) ....................................................... 3, 4, 5, 14

*Bondi* v. *Citigroup*,
2008 WL 1772647 (N.J. Super. Ct. Law Div. Apr. 15, 2008) ........................ 8, 13

*Brite* v. *Penny*,
72 S.E. 964 (N.C. 1911) ........................................................................................ 4

*Buchwald* v. *Renco Group (In re Magnesium Corp. of Am.)*,
399 B.R. 722 (Bankr. S.D.N.Y. 2009) ............................................................... 13

*Buckner* v. *S. & W. R.R.*,
73 S.E. 137 (N.C. 1911).......................................................................................4

*Bullmore* v. *Ernst & Young Caymans*,
861 N.Y.S.2d 578 (N.Y. Sup. Ct. 2008) ...........................................................14

*Cenco Inc.* v. *Seidman & Seidman*,
686 F.2d 449 (7th Cir. 1982) ......................................................................8, 9, 19

*Claybrook* v. *Broad & Cassel, P.A. (In re Scott Acquisition Corp.)*,
364 B.R. 562 (Bankr. D. Del. 2007) ..................................................................19

*Cowan* v. *Curran*,
75 N.E. 322 (Ill. 1904) .......................................................................................4

*DeCarlo* v. *Gerryco, Inc.*,
264 S.E.2d 370 (N.C. Ct. App. 1980) ................................................................13

*Devor* v. *Knauer*,
84 Ill. App. 184 (1899) .......................................................................................20

*FDIC* v. *Shrader & York*,
991 F.2d 216 (5th Cir. 1993) ...............................................................................6

*Fehribach* v. *Ernst & Young LLP*,
493 F.3d 905 (7th Cir. 2007) ..............................................................................12

*FHL* v. *BoA*,
477 F. Supp. 2d 602 (S.D.N.Y. 2007).............................................................17, 20

*Food Lion* v. *Capital Cities/ABC, Inc.*,
951 F. Supp. 1233 (M.D.N.C. 1996) ...................................................................20

*Global Crossing Estate Representative* v. *Winnick*,
2006 WL 2212776 (S.D.N.Y. Aug. 3, 2006) .......................................................14

*Grassmueck* v. *Am. Shorthorn Ass'n*,
402 F.3d 833 (8th Cir. 2005) ..............................................................................13

*Grede* v. *Bank of N.Y.*,
2009 WL 1657578  (N.D. Ill. June 12, 2009).......................................................17

*Grede* v. *McGladrey & Pullen LLP*,
2008 WL 4425447 (N.D. Ill. Sept. 26, 2008) ..............................................4, 5, 8, 9

*Hartmann* v. *Prudential Ins. Co.*,
9 F.3d 1207 (7th Cir. 1993) ....................................................................................4

*Henderson* v. *Fin. Co.*,
160 S.E.2d 39 (N.C. 1968)...........................................................................13, 16, 17

*Hice* v. *Hi-Mil, Inc.*,
273 S.E.2d 268 (N.C. 1981)..................................................................................12

*Holland* v. *Arthur Andersen*,
469 N.E.2d 419 (Ill. App. Ct. 1984) ...............................................................8, 12, 19

*Holland* v. *Arthur Andersen*,
571 N.E.2d 777 (Ill. App. Ct. 1991) .....................................................................12

*Kirschner* v. *Grant Thornton LLP*,
2009 WL 996417 (S.D.N.Y. Apr. 14, 2009).........................................................5, 9, 12

*Kittay* v. *Atl. Bank of N.Y. (In re Global Serv. Group)*,
316 B.R. 451 (Bankr. S.D.N.Y. 2004)......................................................................7

*Ladd Furniture* v. *Ernst & Young*,
1998 WL 1093901 (M.D.N.C. Aug. 27, 1998).......................................................3, 4, 12

*LiButti* v. *United States*,
107 F.3d 110 (2d Cir. 1997)..................................................................................11

*Lloyds Bank PLC* v. *Republic of Ecuador*,
1998 WL 118170 (S.D.N.Y. Mar. 12, 1998) ...........................................................15

*Martin Marietta Corp.* v. *Gould, Inc.*,
70 F.3d 768 (4th Cir. 1995) .................................................................................6

*Mason C. Day Excavating Inc.* v. *Lumbermens Mut. Cas. Co.*,
143 F.R.D. 601 (M.D.N.C. Nov. 4, 1994) ...............................................................19

*Moseley* v. *Auth (In re Vendsouth)*,
2003 WL 22399581 (M.D.N.C. Oct. 9, 2003)..........................................................12

*Nisselson* v. *Lernout*,
469 F.3d 143 (1st Cir. 2006)..............................................................................9, 17

*O'Connell* v. *Arthur Andersen (In re Alphastor Ins. Group Ltd.)*,
383 B.R. 231 (Bankr. S.D.N.Y. 2008)....................................................................13

*Official Comm.* v. *Am. Tower Corp. (In re Verestar),*
343 B.R. 444 (S.D.N.Y. 2006)..................................................................................20

*Official Comm.* v. *R.F. Lafferty & Co.,*
267 F.3d 340 (3d Cir. 2001)....................................................................................13

*Official Comm. of Unsecured Creditors of Color Tile, Inc.* v. *Coopers & Lybrand LLP,*
322 F.3d 147 (2d Cir. 2003)................................................................................13, 20

*Official Comm. of Unsecured Creditors of PSA, Inc.* v. *Edwards,*
437 F.3d 1145 (11th Cir. 2006) ..............................................................................17

*OHC Liquidation Tr.* v. *CSFB (In re Oakwood Homes Corp.),*
389 B.R. 357 (D. Del. 2008)...................................................................................19

*Pappas* v. *BoA (In re Parmalat Sec. Litig.),*
501 F. Supp. 2d 560 (S.D.N.Y. 2007), *aff'd,*
309 F. App'x 5369 (2d Cir. 2009), *petition for cert. filed,*
77 U.S.L.W. 3657 (U.S. May 18, 2009) (No. 08-1436) ............................................7, 12

*Purcell Int'l Textile Group, Inc.* v. *Algemene AFW NV,*
647 S.E.2d 667 (N.C. Ct. App. 2007).......................................................................20

*Quilling* v. *Cristell,*
2006 WL 316981 (W.D.N.C. Feb. 9, 2006) ................................................................14

*Krys* v. *Official Comm. (In re Refco Inc.),*
505 F.3d 109 (2d Cir. N.Y. 2007)...........................................................................14

*Robertson* v. *Va. Elec. & Power Co.,*
168 S.E. 415 (N.C. 1933).........................................................................................4

*Rogers* v. *McDorman,*
521 F.3d 381 (5th Cir. 2008) ....................................................................................9

*Sledge Lumber Corp.* v. *S. Builders Equip. Co.,*
126 S.E.2d 97 (N.C. 1962)........................................................................................4

*Snow* v. *De Butts,*
193 S.E. 224 (N.C. 1937)......................................................................................4, 5

*Terlecky* v. *Hurd (In re Dublin Sec. Litig.),*
133 F.3d 377 (6th Cir. 1997) ..................................................................................19

*Travis* v. *Duckworth*,
75 S.E.2d 309 (N.C. 1953)...................................................................................3, 4

*Vine Street Clinic* v. *HealthLink, Inc.*,
856 N.E.2d 422 (Ill. 2006) ...............................................................................5, 19

*Waggoner* v. *W. Carolina Pub. Co.*,
130 S.E. 609 (N.C. 1925)........................................................................................5

*Wells* v. *N.C. Nat'l Bank*,
261 S.E.2d 296 (N.C. Ct. App. 1980) .................................................................19

*Wight* v. *BankAmerica Corp.*,
219 F.3d 79 (2000)...............................................................................................14

*Wilson* v. *Crab Carolina Orchard Dev. Co.*,
171 S.E.2d 873 (N.C. 1970)................................................................................13

## SCHOLARLY AUTHORITY

Russell M. Robinson, II, *Robinson on N.C. Corp. Law* (7th ed. 2008) .........................................12

## OTHER AUTHORITIES

3 Fletcher Cyc. Corp. (2008) ........................................................................................4, 5

Restatement (Second) of Agency (1957)........................................................................4, 8

Restatement (Third) of Agency (2006).............................................................................20

## KEY TO CITED MATERIALS PREVIOUSLY SUBMITTED

**Short Form**

**Long Form**

*Guerrera Decl.* ...............................................June 1, 2009 Declaration of Mark P. Guerrera In Support Of Defendants' Motion for Summary Judgment on the Grounds of *In Pari Delicto*

*PCFL-BoA Compl.* .........................................Complaint in *Parmalat Capital Finance Limited* v. *Bank of America, et al*, filed Nov. 23, 2005 (submitted as *Guerrera Decl. Exh.* A)

*Curia Tr.* .......................................................Feb. 5, 2007 Deposition of Pietro Curia (excerpts submitted as *Guerrera Decl. Exh.* HH)

*Bondi-BoA SAC*..............................................Second Am. Compl. in *Bondi v. Bank of America, et al.*, filed under seal May 24, 2007 (submitted as *Guerrera Decl. Exh.* JJ)

*Lagro Fact Tr.* ................................................Feb. 26 to Feb. 27, 2007 Fact Deposition of Franco Lagro (excerpts submitted as *Guerrera Decl. Exh.* KK)

*PCFL-Auditor Compl.*.....................................Complaint in *Parmalat Capital Finance Limited* v. *Grant Thornton, et al.*, filed Dec. 9, 2005 (submitted as *Guerrera Decl. Exh.* QQ)

# KEY TO CITED MATERIALS SUBMITTED HEREWITH

### (in order of initial appearance below)

| Short Form | First Appearance | Long Form |
|---|---|---|
| *Sec. Guerrera Decl.* | vii | June 29, 2009 Second Declaration of Mark P. Guerrera In Further Support Of Defendants' Motion for Summary Judgment on the Grounds of *In Pari Delicto* |
| *Valenti Decl.* | n.13 | May 29, 2009 Declaration of Avv. Ernesto Gregorio Valenti In Support Of Defendants' Motion To Exclude The Testimony of The Italian Witnesses |
| *Walton Decl.* | n.15 | June 29, 2006 Declaration of Jeremy Walton |
| *Supp. Walton Decl.* | n.15 | June 29, 2009 Supplemental Declaration of Jeremy Walton |
| *Lagro Expert Tr.* | 7 | Aug. 21 to Aug. 24, 2007 Expert Deposition of Franco Lagro (page 636 submitted as *Sec. Guerrera Decl. Exh.* WW) |
|  | 18 | (submitted as *Sec. Guerrera Decl. Exh.* XX) |
|  | 18 | (submitted as *Sec. Guerrera Decl. Exh.* YY) |
| *Exh. 11,097* | 18 | Parmalat Capital Finance Limited in Official Liquidation List of Potential Creditors (submitted as *Sec. Guerrera Decl. Exh.* ZZ) |

## INTRODUCTION

In response to Defendants' motion, Plaintiffs were required to come forward with evidence demonstrating a genuine dispute warranting a trial. They have not. Indeed, they do not even address, much less dispute, the vast majority of the points in Defendants' brief. They do not dispute that Parmalat's and PCFL's officers acted within the scope of their authority when they caused the companies to enter into transactions with BoA and issue financial statements. They do not dispute that the fraud occurred as Defendants described, enabling Parmalat to bilk its creditors out of at least                                        . They do not dispute that Parmalat invested at least

                                                                          . Finally, they do not dispute that the fraud involved more than

                             . There can be no doubt that *in pari delicto* bars Plaintiffs' claims.

   *In pari delicto* turns on a single issue – whether the plaintiff was a participant in the wrongdoing of which the defendant is accused. That is indisputably the case here. By proving that Parmalat's and PCFL's managers acted within the scope of their authority, Defendants discharged their burden. The burden thus shifted to Plaintiffs to rebut the presumption of corporate agency by proving "adverse interest." Plaintiffs deny their burden and misstate the standard. They contend that a corporation can disavow its most senior executives' official acts merely on a showing that those executives were *in some way* motivated by self-interest. That is not the case. Under any relevant state's law, to escape the consequences of Parmalat's and PCFL's fraud, Plaintiffs must show *complete* adversity. Bondi admits that he has already lost this exact issue in New Jersey. *Opp.* at 19. He is collaterally estopped from relitigating it here.

   Even if estoppel did not apply, however, neither Plaintiff can prove complete adversity. It is undisputed that Parmalat's and PCFL's transactions with BoA

. *Def. Mem. of Law* ("*Mem.*") at

15-16, 18-19. Plaintiffs come nowhere close to showing that these transactions served no

corporate purpose. And for the claims against GTI and GT-US, Plaintiffs' suggestion that their

financial statement fraud served no corporate purpose is simply absurd. The adverse interest

exception cannot insulate a company from a fraud that enabled it to

Plaintiffs' empty cries of "looting" and "squandering" do not come close to showing

complete adversity. Even accepting Plaintiffs' view of the record, it would show at most that

. In any case, most, if not all, of

Plaintiffs' proffered "looting" evidence is either inadmissible or irrelevant. For its part, PCFL

did not come forward with any evidence that money raised in its transactions wound up in the

pockets of Parmalat's insiders. Further, what Plaintiffs call "squandering" – using money to

cover undisclosed operating losses in a bid to make the company appear successful – is present

in nearly every corporate fraud and is not "adverse" at all. And even if Plaintiffs could show a

"total abandonment," the sole actor rule would still bar their suits, given that Parmalat's and

PCFL's financial affairs were completely dominated by their corrupt managers.

Finally, PCFL's "policy" arguments (in which Bondi would not join) all fail. First, PCFL

cannot step out of its own shoes. Its attempt to do so is belied by its own pleadings and is

inconsistent with both Cayman and domestic law. Second, PCFL's contention that the parties

who stand to recover from its lawsuit are the innocent victims of Parmalat's fraud is false.

. Third, precluding PCFL from bringing suit will not provide a windfall to Defendants, who face suits from various creditors in this MDL.

For all these reasons, Plaintiffs cannot carry their burden of rebutting the standard presumption that the acts of corporate officers are imputed to the corporation. Parmalat and PCFL committed massive fraud, and Parmalat and PCFL must bear the consequences.

## ARGUMENT

Plaintiffs make much of the fact that *in pari delicto* is an affirmative defense, implying that Defendants must prove that the adverse interest exception does not apply. *Opp.* at 4-5. Not so. Defendants' burden was to show that the insiders acted within the scope of their authority (*Mem.* at 23-24), a point Plaintiffs do not even contest. The burden of proving an *exception* to imputation is Plaintiffs' alone. *Bondi IV*, 412 F. Supp. 2d at 401 (Bondi must "prove that transactions that raised millions of dollars for Parmalat served no corporate purpose"); *Bondi V*, 421 F. Supp. 2d at 714 ("Bondi may well have trouble proving [the exception applies]"). In the end, Plaintiffs not only had "trouble" with this burden; they have utterly failed to carry it.

## I.   NO ABANDONMENT OCCURRED, TOTAL OR OTHERWISE.

### A.   Plaintiffs Must Show A Total Abandonment.

Plaintiffs' primary argument is that they can invoke the adverse interest exception as long as their officers acted with *some* adversity to the company. That is simply not the case. The adverse interest exception is no different in Illinois and North Carolina than it is in New York or anywhere else that follows the common law rule:  a corporation is liable for its agents' authorized acts unless it can prove they were acting *completely* adversely to it – in other words, that a *total abandonment* occurred. *Ladd Furniture* v. *Ernst & Young*, 1998 WL 1093901, at *7 (M.D.N.C. Aug. 27, 1998); *Travis* v. *Duckworth*, 75 S.E.2d 309, 311 (N.C. 1953) (principal is

liable for agents' torts unless there was a "*total* departure" from principal's business) (emphasis added); *Hartmann v. Prudential*, 9 F.3d 1207, 1210 (7th Cir. 1993) (in Illinois, agent must act "*entirely* on his own behalf") (emphasis in original); *Grede v. McGladrey & Pullen*, 2008 WL 4425447, at \*5 (N.D. Ill. Sept. 26, 2008) (exception only applicable in Illinois "when the corporate officers act *entirely* for their own interests") (emphasis added); 3 Fletcher Cyc. Corp. § 819; Restatement (Second) of Agency § 282(1).[1]

This Court has already recognized that imputation applies under North Carolina law unless the agents do not act in *any* official or representative capacity.[2] *Bondi III*, 383 F. Supp. 2d at 597. As a result, the actions of Parmalat's and PCFL's managers are imputable to the companies "to the extent . . . the agents were acting for [the companies] as well as themselves." *Id.* In other words, Plaintiffs must show a total abandonment.

Illinois law is no different. *E.g., Hartmann*, 9 F.3d at 1210. Plaintiffs concede elsewhere that the adverse interest exception in Illinois turns on whether the executive "*totally* abandoned its principal's interests," *Opp.* at 22 (emphasis added), and whether benefits to the corporation were not "meaningful" but rather "'illusory'" and meant to conceal benefits "'*solely* intended'" for the individuals in control, *id.* (quoting *Grede,* 2008 WL 4425447, at \*7) (emphasis added).[3]

---

[1] Plaintiffs' assertion that *Ladd Furniture* did not apply North Carolina law, and that *Hartmann* did not apply Illinois law, *Opp.* at 5 n.6, is clearly wrong. The *Ladd Furniture* court expressly stated that its decision was issued "[u]nder North Carolina law." 1998 WL 1093901, at \*5. The *Hartmann* court based its decision on "the common law of Illinois." 9 F.3d at 1212; *see also Bondi V*, 421 F. Supp. 2d at 714 n.93 (noting that *Hartmann* applied Illinois law).

[2] Plaintiffs' contention that North Carolina courts never use "qualifiers" to cabin the scope of the adverse interest exception is refuted both by this Court's finding and a mountain of case law. *See, e.g., Sledge Lumber v. S. Builders Equip. Co.*, 126 S.E.2d 97, 100 (N.C. 1962) ("any official or representative capacity"); *Snow v. De Butts*, 193 S.E. 224, 227 (N.C. 1937) ("wholly for his own purpose"); *Robertson v. Va. Elec. & Power Co.*, 168 S.E. 415, 415-16 (N.C. 1933) ("total departure"); *Brite v. Penny*, 72 S.E. 964, 965 (N.C. 1911) ("any official or representative capacity"); *Buckner v. S. & W. R.R. Co.*, 73 S.E. 137, 138 (N.C. 1911) ("wholly for [his] own purposes").

[3] Plaintiffs' only contrary authority is a 100-year-old state court decision about when notice to an agent is deemed notice to a principal – a very different context than here, where a company is trying to avoid liability for a the official acts of its most senior officers. *Cowan v. Curran*, 75 N.E. 322, 329 (Ill. 1904), *cited in Opp.* at 5.

**B.    The Relevant Focus Is Conduct, Not Subjective Motivation.**

Plaintiffs also misstate the law when they suggest that the adverse interest exception is purely a question of subjective intent that cannot be resolved without a trial. Where, as here, the undisputed evidence shows that a corporation

, the company is liable, and its claims against third parties must be dismissed as a matter of law. *See, e.g., Vine Street Clinic* v. *HealthLink, Inc.*, 856 N.E.2d 422, 436-37 (Ill. 2006); *Waggoner* v. *W. Carolina Pub. Co.*, 130 S.E. 609, 609-10 (N.C. 1925).

As Plaintiffs admit (at 6), the ultimate question is "whether [Parmalat's] officers were conducting their own business or the corporation's." *Bondi III*, 383 F. Supp. 2d at 597-98. That inquiry, by its terms, focuses on the agents' conduct and not subjective motivation. *See Grede*, 2008 WL 4425447, at *5 ("[t]he exception is applicable when the corporate officers act entirely for their own interests and the actions do not benefit the corporation") (citing 3 Fletcher Cyc. Corp. § 821); *De Butts*, 193 S.E. at 227 (liability exists "irrespective of the intent of the agent"). Any other construction of the exception would swallow the rule. *Grede*, 2008 WL 4425447, at *5 ("The reason one must carefully examine what benefit accrued to the corporation is that corporate officers, even in the most upright enterprises, can always be said, in some meaningful sense, to act for their own interests."); *Kirschner* v. *Grant Thornton LLP*, 2009 WL 996417, at *7, n.14 (S.D.N.Y. Apr. 14, 2009) (exception must focus on fraud's "nature and consequences" because "[t]o hold otherwise would be to explode the adverse-interest exception, transforming it from a 'narrow' exception into a new, and nearly impermeable rule barring imputation").

**C.    The Critical Inquiry Is Whether Parmalat And PCFL Participated In The Wrongdoing With Which Defendants Are Charged.**

As this Court has already recognized, *in pari delicto* turns on whether the plaintiff was "a participant in the complained-of wrong." *Bondi III*, 383 F. Supp. 2d at 595; *accord Bondi V*, 421

F. Supp. 2d at 713.  Thus Plaintiffs cannot succeed in divorcing *in pari delicto* from their allegations against these Defendants.  *See Opp.* at 9-10, n.11, n.13.  Not only are Plaintiffs' allegations relevant; they must be the starting point for the entire question before the Court.

### 1.   Parmalat And PCFL Participated In And Benefited From Their Transactions With BoA.

Plaintiffs' claims against BoA are based on a series of specific transactions. *Bondi III,* 383 F. Supp. 2d at 598.  Plaintiffs do not dispute that Parmalat's officers were authorized to enter Parmalat into the transactions with BoA, *Mem.* at 14-15, 23-24, and thus must prove that the officers acted solely for themselves in doing so.  They cannot come close.  Plaintiffs do not deny that the transactions

. *Id.* at 12-16.

Importantly, they cannot show that                                                                        . *Id.*

at 18-19.  They also do not contest that

. *Id.*  Plaintiffs thus do not even try to dispute that Parmalat's transactions with BoA were ***Parmalat's*** business, and not that of its managers.

Instead, Plaintiffs offer three specious arguments. ***First***, they say that their inability to show "looting" from these transactions is "irrelevant" because the transactions helped "prop [Parmalat] up" and allegedly facilitated theft from other companies on other continents. *Opp.* at 11 n.13, 24, 26.  This theory is supported solely by inadmissible speculation. *See BoA's Resp.* to A-1565-1567, 1586.  It is also not the law.  *In pari delicto* looks no farther than the specific transactions at issue. *Martin Marietta Corp.* v. *Gould, Inc.,* 70 F.3d 768, 773-74 (4th Cir. 1995); *FDIC* v. *Shrader & York,* 991 F.2d 216, 224-25 (5th Cir. 1993); *cf. Penny,* 72 S.E. at 965-66 (first question is to identify the transaction at issue).  Transactions between other Parmalat companies and other financial institutions are irrelevant to any dispute Plaintiffs have with BoA.

*See Pappas*, 501 F. Supp. 2d at 579-80; *Bloor* v. *Carro*, 754 F.2d 57, 63 (2d Cir. 1985); *Kittay* v.

*Atl. Bank of N.Y.*, 316 B.R. 451, 461 (Bankr. S.D.N.Y. 2004).

     ***Second***, Plaintiffs argue that money's fungibility excuses them from having to tie their

looting allegations (*e.g.*, *Bondi-BoA SAC* ¶ 269; *PCFL-BoA Compl* ¶ 137) to any BoA

transaction.  *Opp.* at 26.  But money is fungible only after

                                           , so

"fungibility" is not an issue.  In fact, Bondi's expert said

                . Bondi's experts also

     ***Third***, Plaintiffs claim that alleged

                    . Even assuming *arguendo* that

                    , that conduct

remains fully attributable to Parmalat.  *Bondi III*, 383 F. Supp. 2d at 601.

                , there remains no evidence that Parmalat's insiders profited from its

transactions with BoA.  No rational jury could conclude that

                "served no corporate purpose." *Bondi IV*, 412 F. Supp. 2d at 401.[4]

    **2.**       **Parmalat And PCFL Participated In And Benefited From Their
Financial Statement Fraud.**

     It is also undisputed that Parmalat's managers participated in everything with which GT-

---

[4] To the extent any "looting" claim survives summary judgment, it must be limited to amounts allegedly "looted" from BoA's transactions with Parmalat –

Italy is charged, all within the scope of their authority. They prepared false financial statements through which Parmalat raised more than

[5]

"The approval and oversight of [financial] statements is an ordinary function of management that is done on the company's behalf, which is typically enough to attribute management's actions to the company itself." *Baena* v. *KPMG LLP*, 453 F.3d 1, 7 (1st Cir. 2006) (citing, *inter alia*, Restatement (Second) of Agency § 257). Plaintiffs do not dispute that the thirteen-year fraud enabled Parmalat to

. *See Mem.* at 5-6, 9-11; *see also Bondi* v. *Citigroup*, 2008 WL 1772647, at 4 (N.J. Super. Ct. Apr. 15, 2008). Even the alleged

. This was undeniably a financial statement fraud "on behalf of" the company. *See Holland* v. *Arthur Andersen*, 469 N.E.2d 419, 426 (Ill. App. Ct. 1984); *Cenco Inc.* v. *Seidman & Seidman*, 686 F.2d 449, 456 (7th Cir. 1982); *see also, e.g.*, *Grede*, 2008 WL 4425447, at *4-5.

### D. Plaintiffs Cannot Defeat Imputation By Reframing Parmalat's Fraud As A "Net" Harm Or By Focusing On "Looting" Or "Squandering."

#### 1. Parmalat's Fraud Cannot Be Assessed In Hindsight.

Plaintiffs contend that the fraud was adverse to Parmalat because it was "not a net

---

[5] Oddly, Plaintiffs argue that Defendants acted improperly by "cit[ing] to evidence." *Opp.* at 8 n.10. Plaintiffs cannot shield from evidentiary consideration their various admissions (*e.g.*, Bondi's pleadings in Italy, his summary judgment admissions in New Jersey, the testimony he recently gave in Milan, etc.). Their further contention that Defendants have violated L.R. 56.1 – when all parties to this MDL spent months preparing 56.1 statements, which are cited throughout Defendants' brief – is so plainly untrue as to not merit further comment.

benefit" in hindsight. *Opp.* at 2, 14-15, 23. But the relevant issue is whether the company benefited *at the time*: "A fraud by top management to overstate earnings, and so facilitate stock sales or acquisitions, is not in the long-term interest of the company" but "profits the company in the first instance and the company is still criminally and civilly liable." *Baena*, 453 F.3d at 8.

> [T]he adverse interest exception is not automatically triggered whenever misconduct contributes to a future financial harm. If it were, it would effectively eliminate the *in pari delicto* doctrine altogether, since unmasked frauds resulting in lawsuits rarely, if ever, benefit a company in the long run.

*Grede*, 2008 WL 4425447, at *6 (internal quotation marks omitted).[6]

Further, Plaintiffs' argument proves too much. They suggest (at 2) that once Parmalat was insolvent, *none* of its transactions served "a legitimate business purpose." This is absurd. Plaintiffs cannot seriously contend that hundreds of

from 1990-2003 were all "illegitimate." In any case, the adverse interest exception does not turn on "legitimacy." It turns on whether the transactions were *Parmalat's* business as opposed to the personal affair of its agents. *Bondi III*, 383 F. Supp. 2d at 597-98; *Bondi IV*, 412 F. Supp. 2d at 401 (test is "corporate purpose"). Parmalat and PCFL cannot now repudiate transactions and accounting that enabled them to raise

. *Mem.* at 9-11. Clearly, the fraud served *at least some* "corporate purpose."

Parmalat remains a beneficiary of its fraud even today. Through its successful bilking of capital markets (the adverse consequences of which were washed away in bankruptcy), Parmalat

---

[6] *See also Rogers* v. *McDorman*, 521 F.3d 381, 394-95 (5th Cir. 2008) (that corporation was ultimately damaged does not trigger the adverse interest exception); *Nisselson* v. *Lernout*, 469 F.3d 143, 156 n.4 (1st Cir. 2006) ("subsequent implosion is of no moment"); *Cenco*, 686 F.2d at 456 (that a corporation may not be a "net" beneficiary after the fraud is unmasked goes only to damages and does not trigger the adverse interest exception); *accord Kirschner*, 2009 WL 996417, at *6 (citing *Cenco* and *Baena*).

became "a truly international player in the dairy and fruit-based beverage Industry." *Mem.* at 11.

Many of the companies and brands Parmalat acquired through fraud remain among its "core"

businesses and "local jewels." *Id.* Thus even if hindsight were the proper perspective, Parmalat

clearly enjoyed some benefit from the fraud.

### 2.    Plaintiffs' Cries Of "Looting" Cannot Change The Fundamental Corporate Nature Of Parmalat's Fraud.

In the context of

. *Mem.* at 28-31.


. Plaintiffs have repeatedly admitted as much. *See Mem.* at 27 (and references

cited). Their brief has nothing to say about those admissions, nor does it seriously suggest that

the looting can be isolated from the rest of the fraud. *See Opp.* at 24 (reaffirming that Plaintiffs

are suing for not only "looted" amounts but also the amounts supposedly "squandered"). In light

of these concessions – and the indisputable record – Plaintiffs cannot possibly show that

Parmalat's insiders were not acting in at least some "official or representative capacity" in

raising                for the company. *Bondi III*, 383 F. Supp. 2d at 597. To slice up Parmalat's

fraud after the fact – isolating the self-serving aspects of the insiders' conduct from its

undeniable corporate purposes and benefits – has no basis in reality and no support in law. *See*

*infra* at 19-20.

An additional problem with Plaintiffs' "looting" claims is the inadmissibility and

irrelevance of their evidence. Specifically:

- The "sworn statements" Plaintiffs reference, *Opp.* at 11-12, were not sworn, were merely summarized non-verbatim by the Italian police in anticipation of litigation, do not include the questions allegedly asked, and frequently show the insiders shifting blame to one another rather than speaking against their own interests. They thus present at least two

layers of hearsay. *See. e.g., Def. Resp. to SSF* 777-78. Further, GTI and GT-US never had an opportunity to question these insiders. *See, e.g., Def. Resp. to IPD* ¶ 436.[7]

- The GdF reports are also hearsay, as they were prepared for litigation based on conversations with, and documents prepared by, the fraudfeasors themselves. *Mem.* at 18. Contrary to Plaintiffs' assertion,

. No change in form or "proper foundation" at trial, *Opp.* at 12, will fix these problems. Further, what the GdF identified as "misappropriations" is not the same as "looting." *Mem.* at 17.

- The reports by Bondi's Italian experts are inadmissible for the reasons stated in support of Defendants' pending motion *in limine.* For example,

. *See Def. Mot. in Limine*, at 14-15.[8]

Thus there is, in fact, nothing close to "overwhelming proof" of looting. *Opp.* at 6. For this reason as well, Plaintiffs cannot convert this undeniably corporate fraud into a personal one.

### 3.   Plaintiffs' Claims Of "Squandering" Do Not Help Their Case.

Plaintiffs also assert that the fraud was adverse to Parmalat because it involved what they call "squandering" – funds spent to cover operating losses, pay taxes, refinance debt, obtain new capital, and generally conceal the fraud rather than give up the ghost and send Parmalat into liquidation. *Opp.* at 2 & n.2, 13-16. But again, the question is not whether such transactions can be regarded as serving a "legitimate" purpose. The question is whether they served a "***corporate*** purpose." *Bondi IV*, 412 F. Supp. 2d at 401 (emphasis added). Obviously, they did. By keeping Parmalat's losses hidden, the fraud conferred a benefit by allowing the company to stay in

---

[7] That the corrupt insiders were willing to

. Indeed, such cooperation shows that, if anything, those invocations should be construed against Bondi. *See LiButti* v. *United States*, 107 F.3d 110, 123-24 (2d Cir. 1997) (relevant factors include compatibility of interest and degree of control).

[8]

business, grow dramatically, pay its employees, and continue to improve and sell its products. This is not adverse. *Accord Kirschner*, 2009 WL 996417, at *2-3, 6; *Ladd Furniture*, 1998 WL 1093901, at *7 (false appearance of profitability not a total abandonment).[9]

The cases Plaintiffs cite (at 13-14, 20-23) are not to the contrary. Each required proof that prolonging the corporation's life harmed the shareholders, whereas here, the fraud helped the then-current shareholders at creditors' expense. *Mem.* at 27-28. In *Holland*, for example, the complaint alleged that an insurance company's failure to maintain adequate loss reserves led it to operate past the point of insolvency and ultimately collapse. *See* 469 N.E.2d at 423, 426-27. But the court had reason to conclude that at the outset the corporation was still "worth something to the shareholders" despite its inability to pay its bills. *Fehribach*, 493 F.3d at 908. Indeed, the court later granted summary judgment against the plaintiff because, by hiding the company's insolvency and allowing it to borrow more, the fraud harmed the creditors, not the company – a ruling conveniently ignored by Plaintiffs. *Holland* v. *Arthur Andersen,* 571 N.E.2d 777, 782 (Ill. App. Ct. 1991). Here, it is undisputed

. *Mem.* at 5; *see also Pappas*, 501 F. Supp. 2d at 576. By

continuing to                                                        , Parmalat worked a fraud against its

creditors, not its shareholders. *See generally Mem.* at 27-28 & n. 21.

---

[9] Plaintiffs' heavy reliance on *In re Vendsouth* is misplaced, as that case involved a simple check-kiting scheme. 2003 WL 22399581 (Bankr. M.D.N.C. Oct. 9, 2003). Unlike here, the scheme provided no benefit to the company. *Id.* Moreover, *Vendsouth* relied on just one case – *Hice* v. *Hi-Mil, Inc.*, 273 S.E.2d 268 (N.C. 1981) – when it incorrectly concluded that imputation applied only if "the interests of the corporation and [its agents] are clearly aligned." However, *Hice* considered whether to impute the conduct of a non-agent to a company that had not yet been formed. That the *Hice* court was willing to expand agency principals to impute conduct of a non-agent when interests were "clearly aligned" is not the same as a statement that imputation of an agent is only proper when interests are "clearly aligned." The "clearly aligned" language in *Hice* was thus an exception, not the rule. *Robinson on N.C. Corp. Law* § 16.06 (7th Ed. 2008). As the *Vendsouth* court began from a false premise, its conclusions do not represent the law of North Carolina.

Plaintiffs' reliance on the *Grede* court's statement that corporate benefits might in some instances be "illusory" is also misplaced. *See Opp.* at 22. Just as this Court did at the pleadings stage, the court in *Grede* merely noted the burden of proof the plaintiff would later face. *Id.* ("potential success rate" of plaintiff's theory was "less than certain"). Here, as Judge Harris recognized in the *Citigroup* case, "[d] iscovery. . . has plainly demonstrated that the narrow application of [the adverse interest exception] has no currency." 2008 WL 1772647, at *18.

## II. PARMALAT WAS COMPLETELY DOMINATED BY CORRUPT MANAGERS, SO ITS CLAIMS ARE BARRED EVEN IF THEY ACTED ADVERSELY.

Plaintiffs do not contest that

. *Mem.* at 8. Thus, Plaintiffs are left to argue only that it "would be illogical" to apply the sole actor rule to "a company of Parmalat's size." *Opp.* at 28.[10] But there is no point at which a company becomes too large to be subject to traditional agency principles. Plaintiffs conveniently ignore the many cases applying the sole actor rule to claims brought by large corporations.[11] Contrary to Plaintiffs' assertion, a company's size is no defense to imputation where, as here,

. Having abdicated authority over its financial affairs to a cabal of fraudsters, Parmalat cannot now renounce their actions.[12]

---

[10] Contrary to Plaintiffs' claim, *Opp.* at 27-28, the rule does exist in North Carolina. Imputation applies where the corporation was "completely dominated" by the adverse agents. *Mem.* at 37 n.24; *see also Wilson* v. *Crab Carolina Orchard Dev. Co.*, 171 S.E.2d 873, 882 (N.C. 1970); *Henderson* v. *Fin. Co.*, 160 S.E.2d 39, 44 (N.C. 1968); *De Carlo* v. *Gerryco, Inc.*, 264 S.E.2d 370, 374 (N.C. Ct. App. 1980). It is not significant or surprising that the North Carolina courts do not use the phrase "sole actor": they also do not use the phrase "adverse interest exception."

[11] *See, e.g., Grassmueck*, 402 F.3d 833, 835, 840-41 (8th Cir. 2005); *Official Comm. of Unsecured Creditors of Color Tile, Inc.* v. *Coopers & Lybrand LLP*, 322 F.3d 147, 152, 165-66 (2d Cir. 2003); *Buchwald* v. *Renco Group*, 399 B.R. 722, 736, 767-69 (Bankr. S.D.N.Y. 2009); *O'Connell* v. *Arthur Andersen*, 383 B.R. 231, 242-43, 273 (Bankr. S.D.N.Y. 2008).

[12] Plaintiffs' arguments about shareholders and "innocent insiders," *see Opp.* at 29 & n.30, are makeweight. The sole actor rule applies not just to literal sole-shareholder situations, but also where all of the corporation's relevant decision makers are involved in the fraud. *Color Tile*, 322 F.3d at 165; *Official Comm.* v. *R.F. Lafferty & Co.*, 267 F.3d 340, 360 (3d Cir. 2001). Plaintiffs do not even attempt to show that any of the non-Tanzi shareholders played a

*(Note Continued)*

Nor can Plaintiffs defeat the sole actor rule under Illinois law based on their contention that GT-Italy knew about "wrongdoing" by Parmalat's managers. *See Opp.* at 28-29.[13] At the pleading stage, this Court denied dismissal based on Bondi's allegation that GT-Italy "**knew** that the corrupt insiders **were stealing from the company**." *See Bondi V*, 421 F. Supp. 2d at 715 (emphasis added). GTI and GT-US challenged Plaintiffs to prove this charge, *Mem.* at 39, but Plaintiffs have failed to do so. The supposed facts they cite, *GTI* ¶¶ 790-799, show only that

*See id.* Plaintiffs offer no evidence at all to prove the allegation that enabled them to survive a motion to dismiss – namely, that GT-Italy knew about the looting itself.

## III.   PCFL IS THE PERPETRATOR, NOT THE VICTIM, OF A FRAUD, AND IT THEREFORE STANDS *IN PARI DELICTO*.

*PCFL is Subject to the In Pari Delicto Defense.* PCFL concedes that this Court has already determined, as have countless others, that *in pari delicto* applies to bankruptcy trustees. *Opp.* at 36; *see, e.g., Alberts* v. *Tufts*, 353 B.R. 324, 362 (Bankr. D.D.C. 2006) ("veritable mountain of precedent" on this point). This includes liquidators of Cayman companies. *Bullmore* v. *Ernst & Young Caymans*, 861 N.Y.S.2d 578, 582 (N.Y. Sup. Ct. 2008); *In re Refco Inc.*, 505 F.3d 109, 120 (2d Cir. 2007); *Wight* v. *BankAmerica*, 219 F.3d 79, 86 (2d Cir. 2000).[14]

---

decision-making role at Parmalat. It is also undisputed that the alleged "innocent insiders" at Parmalat

[13] Plaintiffs do not even attempt to argue that there is a "knowledge" limitation under North Carolina law. *See Opp.* at 28-29. In addition, Plaintiffs' speculation regarding BoA's knowledge is contradicted by consistent sworn testimony – *see, e.g., Def. Resps. to IPD* ¶¶ 664-65 – and the recent opinion from the Court of Milan, which fully acquitted the Bank's employees on all charges, *Valenti Decl.* ¶ 2, and found that the Bank and its employees did not have knowledge of Parmalat's true financial condition, *id.* at Exh. B pp. 319-20.

[14] PCFL's position is not advanced by *Quilling* v. *Cristell*, 2006 WL 316981 (W.D.N.C. 2006), which involved a receiver, not a liquidator, and was based on *Scholes* v. *Lehmann*, which does not apply to bankruptcy trustees in this Circuit. *See Global Crossing Estate Rep.* v. *Winnick*, 2006 WL 2212776, at *16 n.21 (S.D.N.Y. Aug. 3, 2006). The JOLs are bankruptcy liquidators, not receivers. *See Def. PCFL* ¶ 200; *In re Refco*, 505 F.3d at 120.

PCFL also admits that North Carolina and Illinois law govern both its causes of action and the application of *in pari delicto*, *Opp.* at 5, 30-34, and cannot now use Cayman law as a shield. *See Lloyds Bank PLC* v. *Republic of Ecuador*, 1998 WL 118170, at *7-8 (S.D.N.Y. Mar. 12, 1998) (it would be "illogical" and "lack[] support" to apply the laws of one jurisdiction to a claim and another to affirmative defenses).[15]  In any event, this Court need not determine whether PCFL's wrongdoing can be attributed to its liquidators, as those liquidators are not the plaintiffs in these actions. PCFL is. *PCFL-BoA Compl.* at 1; *PCFL-Auditor Compl.* at 1.

   ***PCFL's Transactions Were Not a Total Abandonment.***  PCFL does not contest that it was merely

            . *Mem.* at 7, 20.  Nor does it contest that

   . PCFL is therefore left to argue that by carrying out the very tasks PCFL was created for and authorized to perform, its agents totally abandoned PCFL's interests because their dual roles as directors of PCFL and Parmalat conflicted. *Opp.* at 16-18.  This makes no sense.

   The very business PCFL's directors were appointed to carry out was

                        . PCFL did nothing else.  Accordingly, the interests of the directors' "dual masters" were necessarily aligned, and the only interest the directors were obliged to pursue on PCFL's behalf was raising funds for the Parmalat group. *Def. PCFL* ¶¶ 12-16.  There is no dispute that all their actions served this interest.  Although Plaintiff claims that every action taken by PCFL's directors was a total abandonment of PCFL's interests, *Opp.* at 16-18, they cannot articulate how PCFL's "interests" diverged from that of

---

[15] Even if Cayman law applied here, it recognizes both *in pari delicto* and the related doctrine of *ex turpi causa non oritur action* (a claim does not arise from a wrongful cause). *See Walton Decl.* ¶¶ 6-7; *Supp. Walton Decl.* ¶¶ 5-8. Also as here, those doctrines are applicable to a bankruptcy trustee or liquidator, who "stands in no better position than the company itself" and therefore "takes them as they stand, warts and all." *See Walton Decl.* ¶¶ 8-10; *Supp. Walton Decl.* ¶¶ 9-13.

Parmalat. This "know it when I see it" approach falls well short of satisfying Plaintiffs' burden.

Moreover, because PCFL was created to perpetrate a fraud and was operated as an "instrumentality of . . . wrongdoing," *PCFL-BOA Compl.* ¶ 3, 52-53, as a matter of law any separate PCFL interest is washed away. *See Henderson*, 160 S.E.2d at 44 ("[When a] corporation is so operated that it is a mere instrumentality . . . of the sole . . . shareholder and a shield for his activities in violation of the declared public policy . . . the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person."); *Bear Hollow LLC v. Moberk LLC*, 2006 WL 1642126, at *16 (W.D.N.C. June 5, 2006). Stripped of their separate corporate identity, PCFL's and Parmalat's interests must be treated as the same.

When all else fails, PCFL, like Bondi, falls back to "looting." But despite its rhetoric (at 10-12), PCFL fails to identify any money that passed through PCFL and wound up in the pockets of one of its insiders. *See also supra* at 7-8. PCFL cannot create a triable issue simply by arguing, without any evidentiary support, that all of PCFL's transactions were "designed to conceal the insiders' dissipation of assets," *Opp.* at 3, or that informal transactions lacking documentation were "wrongful." *Id.* at 16.[16] This is especially true where, as here, Defendants affirmatively proved (with no burden to do so) that the transactions between PCFL and Parmalat affiliates were

. *Mem.* at 20; *supra* at 7-9. Finally, the fact that

is fatal to PCFL's claims. *Mem.* at 13-19.

The sole actor rule also defeats PCFL's attempt to avoid imputation. *See Mem.* at 39. PCFL argues that it was not completely dominated by either its corporate parent or its corrupt

---

[16] PCFL asserts throughout the brief that it made loans to other Parmalat entities that PCFL's directors knew could not be repaid – loans that they describe as looting or squandering. *See, e.g., Opp.* at 2 n. 2, 14. However, this is

*(Note Continued)*

insiders. *Opp.* at 29. This argument fails as a matter of law and fact. First, the sole actor rule is not limited in the way that Plaintiffs suggest. *See supra* at 13-14 & n.12; *see also Henderson*, 160 S.E.2d at 44.[17] Second, having been created and controlled by Parmalat as a vehicle of fraud, PCFL cannot seriously dispute that Parmalat – its ultimate corporate parent – completely dominated and controlled its affairs. *Lernout*, 469 F.3d at 154. Third, PCFL cannot deny that all of its transactions were

. *Mem.* at 8, 39-40.[18] As a result, even if PCFL's directors had totally abandoned its interests, their wrongdoing would still be attributed to the company.

**Public Policy Considerations Bar Any Recovery By PCFL.** PCFL was a vehicle of fraud from inception; it is not a party to whom any remedy should be awarded. PCFL's claim – that it can avoid the implication of *in pari delicto* because any recovery will ultimately inure to the creditors victimized by Parmalat's and PCFL's fraud, *Opp.* at 38 – has been routinely rejected. *See, e.g., Official Comm. of Unsecured Creditors of PSA, Inc.* v. *Edwards*, 437 F.3d 1145, 1151 (11th Cir. 2006) (applying *in pari delicto* and explaining the preference for individual creditors' suits against third parties because "those creditors would not risk dilution through apportionment to senior creditors or unharmed creditors of equal priority").[19]

---

directly contrary to its prior admission that "

." *Def. PCFL* ¶ 23.

[17] This Court has held that where the allegedly corrupt managers of a corporation have "unfettered discretion" to manage a corporation and the company becomes a "puppet entit[y]" of such managers, the "sole actor exception to the adverse interest exception applies." *FHL* v. *BoA*, 477 F. Supp. 2d 602, 610 (S.D.N.Y. 2007). Here,

[18]                                                                                          irrelevant, given the control wielded by Tonna and Del Soldato. *See, e.g., Grede* v. *Bank of N.Y.*, 2009 WL 1657578, at *2-3 (N.D. Ill. June 12, 2009).

[19] *See also Lernout*, 469 F.3d at 157-58 ("This arrangement is especially preferable because the Trust beneficiaries may well include parties (most notably [the corporate parent]) who were themselves complicit in the underlying
*(Note Continued)*

PCFL's claim further ignores

. The assertion that *in pari delicto* would "only hurt the very entities who were originally victimized by these companies' former insiders" is categorically false.

## IV.    ALL OF PLAINTIFFS' CAUSES OF ACTION ARE BARRED.

Plaintiffs do not deny that if *in pari delicto* applies here, it would bar most of their claims, including RICO, fraud, aiding and abetting fraud, unjust enrichment, conversion, and negligent misrepresentation. These concessions are telling, but they do not go far enough. Under both Illinois and North Carolina law, Plaintiffs' suits are barred in their entirety. *See Mem.* at 40. Thus there is no need for this Court to parse the various causes of action. But even if it were to do so, Plaintiffs' arguments in defense of their remaining claims all fail.

***Malpractice Claim against GT-Italy.*** For their malpractice claims, Plaintiffs resort to the oft-criticized "audit interference doctrine." *Opp.* at 31-34. But even assuming that this doctrine has continued vitality, it cannot be invoked here. Plaintiffs themselves agree that its function generally operates as a limit on contributory negligence, *Opp.* at 32 – a tort doctrine that Illinois has now abandoned. *Alvis* v. *Ribar*, 421 N.E.2d 886 (Ill. 1981); 225 ILCS 450/30.2. More

---

fraud. If we were to suspend the operation of the in pari delicto defense in this case, creditors with unclean hands would profit equally with innocents. If, however, each creditor must proceed by individual suit, the righteous may recover while the tainted, unable to circumvent the in pari delicto bar, will be hoist by their own petard.")

important, however, contributory negligence has nothing to do with *in pari delicto*, which is a completely different defense. Malpractice claims are often dismissed on *in pari delicto* grounds (including in Illinois), without reference to any special rule or exception for auditors. *See Mem.* at 40; *Opp.* at 32 n.33 & 34 n.34. Plaintiffs cite only one case to suggest that *in pari delicto* applies less strenuously in auditor cases, but in that case the court specifically declined either to find imputation or to apply the auditor interference doctrine. *Holland*, 469 N.E.2d at 427.

In pari delicto* is a categorical bar: "the law will not aid either party to an illegal act, but will leave them without remedy as against each other, with the caveat that they are of equal knowledge, wilfulness and wrongful intent, or in pari delicto." *Vine Street Clinic*, 856 N.E.2d at 436 (internal quotation marks omitted); *see also Cenco*, 686 F.2d at 456 (where the fraud permeated top management, "the corporation should not be allowed to shift the entire responsibility for the fraud to its auditors"). Pleading an auditor malpractice claim does not change this basic principle, nor does it make Plaintiffs any less wrongdoers themselves.

**Breach of Fiduciary Duty Claim against BoA.** No one disputes that *in pari delicto* does not bar a company from suing its own officers and directors. That is all Plaintiffs' cases hold. But *in pari delicto* applies with full force to fiduciary duty claims brought against third parties. *See, e.g., Terlecky* v. *Hurd*, 133 F.3d 377, 379, 381 (6th Cir. 1997); *OHC Liquidation Tr.* v. *CSFB*, 389 B.R. 357, 365-68 (D. Del. 2008); *Claybrook* v. *Broad & Cassel, P.A.*, 364 B.R. 562, 574 (Bankr. D. Del. 2007). Labeling their claims against BoA as "fiduciary" – when no such duty exists in law or in fact[20] – does not relieve Plaintiffs of their burden to prove that

---

[20] *See, e.g., BB&T* v. *Thompson*, 418 S.E.2d 694, 699 (N.C. Ct. App. 1992); *Wells* v. *N.C. Nat'l Bank*, 261 S.E.2d 296, 298 (N.C. Ct. App. 1980); *Mason C. Day Excavating* v. *Lumbermens Mut. Cas.*, 1994 U.S. Dist. LEXIS 21062, at *16 (M.D.N.C. Nov. 4, 1994) (to show a fiduciary duty, plaintiffs must prove the bank "dominated the will of its debtor"). Here, it is undisputed that

transactions                                          served no corporate purpose. Nor does it

excuse Parmalat or PCFL for committing

     *Claims for Aiding and Abetting and Civil Conspiracy.* Plaintiffs are simply wrong when

they suggest that "as a matter of law and logic," *in pari delicto* does not apply to claims for civil

conspiracy or aiding and abetting breach of fiduciary duty. *Opp.* at 34. As Plaintiffs' own

authority makes clear, the entire point of *in pari delicto* is to preclude claims where the parties

are "in the role of joint conspirators." *Food Lion* v. *Capital Cities*, 951 F. Supp. 1233, 1235

(M.D.N.C. 1996). Moreover, a breach of fiduciary duty does not, without more, prove that an

officer has totally abandoned a company's interests. *Color Tile*, 322 F.3d at 165 n.13; *Askanase*

v. *Fatjo*, 130 F.3d 657, 666 (5th Cir. 1997); Restatement (Third) of Agency § 5.04; *Purcell Int'l*

*Textile Group, Inc.* v. *Algemene AFW NV*, 647 S.E.2d 667, 671 (N.C. App. 2007). Plaintiffs

also ignore the fact that even if an aiding and abetting or conspiracy claim does fall within the

adverse interest exception, it can still be barred by the sole actor rule. *See, e.g., FHL*, 477 F.

Supp. 2d at 610; *In re Verestar*, 343 B.R. 444, 478-80 (S.D.N.Y. 2006).

     Finally, Plaintiffs' argument that "imputation" applies only where it will protect "the

innocent," *Opp.* at 34-35, conflates *in pari delicto* with other agency principles. The *in pari*

*delicto* doctrine *presumes* that the defendants were not "innocent." The purpose of the defense is

not to protect the innocent; it is to prevent the courts from coming to the aid of a fraudfeasor who

"requires the aid of the illegal transaction to establish his case. If a plaintiff cannot open his case

without showing that he has broken the law, a court will not assist him." *Devor* v. *Knauer*, 84

Ill. App. 184, 186 (1899); *accord Bledsoe* v. *Coxe Lumber*, 48 S.E.2d 50, 56 (N.C. 1948).

## CONCLUSION

     For the above reasons, and those in Defendants' opening brief, this Court should enter

summary judgment in Defendants' favor and dismiss all of Plaintiffs' claims with prejudice.

Dated:  June 29, 2009

Respectfully submitted,

STROOCK & STROOCK & LAVAN LLP

By:       /s/ James L. Bernard
      James L. Bernard (JB-4273)
      180 Maiden Lane
      New York, NY  10038
      (212) 806-5400
      (212) 806-6006 (fax)
      jbernard@stroock.com

*Attorneys for Grant Thornton International*

WINSTON & STRAWN LLP

By:       /s/ Bruce R. Braun
      Bruce R. Braun (BB-2505)
      Linda T. Coberly (LC-8078)
      Andrew R. DeVooght (AD-0250)
      35 West Wacker Drive
      Chicago, IL  60601
      (312) 558-5600
      (312) 558-5700 (fax)
      lcoberly@winston.com

*Attorneys for Grant Thornton LLP*

SIDLEY AUSTIN LLP

By:       /s/ Joseph B. Tompkins, Jr.
      Joseph B. Tompkins, Jr.
      Alan C. Geolot
      Mark P. Guerrera
      Robert D. Keeling
      1501 K Street N.W.
      Washington, DC  20005
      (202) 736 – 8000
      (202) 736 – 8711 (fax)
      jtompkins@sidley.com

      A. Robert Peitrzak (AP-6711)
      Thomas McC. Souther (TS-6615)
      Daniel A. McLaughlin (DM-2688)
      787 Seventh Avenue
      New York, NY  10019
      (212) 839 – 5000
      (212) 839-5599 (fax)
      dmclaughlin@sidley.com

*Attorneys for Bank of America Corporation,*
*Bank of America, N.A., Bank of America*
*National Trust & Savings Association, Banc of*
*America Securities LLC, Banc of America*
*Securities Limited, and BankAmerica*
*International Limited*